# Exhibit A-1

# State Court File
# (Part 1 of 2)



Missouri Case.net

Search for Cases by: [Select Search Method...]

Judicial Links  |  eFiling  |  Help  |  Contact Us  |  Print          GrantedPublicAccess Logoff ELIZABETHMUSHILL

**1316-CV27529 - STEFANIE AYALA ET AL V. MISSION GROUP KANSAS ET AL (E-CASE)**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |
|---|---|---|---|---|---|---|---|---|

This information is provided as a service and is not considered an official court record.

Click here to eFile on Case Click here to Respond to Selected Documents Sort Date Entries: ⦿ Descending   Display Options: [All Entries]
◯ Ascending

---

**10/07/2014**    ☐ **Amended Motion/Petition Filed**

First Amended Petition
**Filed By:** STEFANIE AYALA

☐ **Order Granting Leave**

for Plaintiff to file first amended petition
**Filed By:** KENNETH R GARRETT III

☐ **Motion Granted/Sustained**

**Associated Entries:** 09/12/2014 - Motion for Leave ⊞

**10/02/2014**    ☐ **Order**

Protective Order
**Filed By:** KENNETH R GARRETT III

☐ **Motion Granted/Sustained**

**Associated Entries:** 10/01/2014 - Motion Filed ⊞

**10/01/2014**    ☐ **Motion Filed**

Joint Motion For Protective Order; Protective Order; Electronic Filing Certificate of Service.
**Filed By:** ELIZABETH ANN MUSHILL
**Associated Entries:** 10/02/2014 - Motion Granted/Sustained

☐ **Proposed Order Filed**

**09/26/2014**    ☐ **Reply**

Plaintiffs Reply to Defendants Opposition to Motion for Protective Order; Electronic Filing Certificate of Service.
**Filed By:** ANDREW K SMITH
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**09/23/2014**    ☐ **Order Granting Leave**

Leave for Plaintiff to file reply to Defendants' Opposition to Plaintiffs Motion for Protective Order on or before September 26, 2014
**Filed By:** KENNETH R GARRETT III

☐ **Motion Granted/Sustained**

**Associated Entries:** 09/19/2014 - Motion for Leave ⊞

**09/19/2014**    ☐ **Proposed Order Filed**

proposed Order regarding Plaintiffs Stipulated Motion for Leave to File Reply; Electronic Filing Certificate of Service.
**Filed By:** ANDREW K SMITH
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

☐ **Motion for Leave**

Plaintiffs Stipulated Motion for Leave to File Reply; Exhibit 1 - email from Martin Loring; Electronic Filing Certificate of Service.
**Filed By:** ANDREW K SMITH

Associated Entries:09/23/2014 - Motion Granted/Sustained

09/17/2014    **Order Granting Ext of Time**

for Defendant to file responses to Plaintiffs interrogatores to September 30, 2014
**Filed By:** KENNETH R GARRETT III

**Motion Granted/Sustained**

Associated Entries:09/16/2014 - **Motion for Extension of Time**

09/16/2014    **Hearing Scheduled**

Scheduled For: 10/02/2014; 11:45 AM ; KENNETH R GARRETT III; Jackson - Independence

**Notice of Court Hearing Sent**

Hearing 10/02/14 @ 1145
**Filed By:** KENNETH R GARRETT III

**Proposed Order Filed**

**Motion for Extension of Time**

Defendants Motion for Extension of Time to File Responses to Plaintiffs Interrogatories and Requests for Production; Ex A;
Proposed Order; Electronic Filing Certificate of Service.
**Filed By:** ELIZABETH ANN MUSHILL
**On Behalf Of:** MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN
MUCCI, STEPHEN BROWNE, RON HOLT
Associated Entries:09/17/2014 - Motion Granted/Sustained

09/12/2014    **Suggestions in Opposition**

Defendant s Opposition to Plaintiffs Motion for Protective Order; Exhibit A; Electronic Filing Certificate of Service.
**Filed By:** ELIZABETH ANN MUSHILL
**On Behalf Of:** MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT

**Proposed Order Filed**

Proposed Order Granting Plaintiffs Motion for Leave to File First Amended Petition; Electronic Filing Certificate of Service.
**Filed By:** ANDREW K SMITH
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**Motion for Leave**

Plaintiffs Motion for Leave to File First Amended Petition and Suggestions in Support; Exhibit 1 - Plaintiffs First Amended
Petition; Electronic Filing Certificate of Service.
**Filed By:** ANDREW K SMITH
Associated Entries:10/07/2014 - Motion Granted/Sustained

09/02/2014    **Response Filed**

Plaintiffs Opposition To Defendants Motion To Compel And Motion For Order Of Protection Under Rule 56 01 C And Rule 57
03 E; Exhibits 1-9 to Plaintiff s Opposition to Motion to Compel and Motion for Protecitve Order; Electronic Filing Certificate of
Service.
**Filed By:** ANDREW K SMITH
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**Note to Clerk eFiling**

**Filed By:** ANDREW K SMITH

**Notice to Take Deposition**

Notice to Take Videotaped Deposition of Stacia G Boden, Esq; Electronic Filing Certificate of Service.
**Filed By:** ANDREW K SMITH
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**Subpoena Requested**

08/19/2014    **Order Granting Ext of Time**

for Plaintiff to file opposition to Defendants' Motion to Compel Deposition Testimony of Plaintiff to September 2, 2014
**Filed By:** KENNETH R GARRETT III

Motion Granted/Sustained
    Associated Entries:08/15/2014 - <u>Motion for Extension of Time</u>

**08/15/2014**    <u>Motion for Extension of Time</u>

Plaintiffs Unopposed Motion for Extension of Time to File Opposition to Defendants Motion to Compel Deposition Testimony of Plaintiff Christi Hampton; Exhibit A; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH
    **On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME
    **Associated Entries:**08/19/2014 - Motion Granted/Sustained

**08/07/2014**    <u>Motion to Compel</u>

Defendants Motion to Compel Deposition Testimony of Plaintiff Christi Hampton; Exh A; Exh B; Exh C; Exh D; Exh E; Exh F; Exh G; Exh H; Exh I; Exh J; Electronic Filing Certificate of Service.
    **Filed By:** ELIZABETH ANN MUSHILL
    **On Behalf Of:** MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT

**07/31/2014**    <u>Cert Serv of Interrog Filed</u>

Certificate of Mailing - Plaintiffs First Interrogatories and Request for Production of Documents to Defendants; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH
    **On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**07/17/2014**    Jury Trial Scheduled

    Scheduled For: 09/08/2015;  9:00 AM ;  KENNETH R GARRETT III;  Jackson - Independence

    Hearing Continued/Rescheduled

    Hearing Continued From: 05/26/2015;  9:00 AM Jury Trial

**07/14/2014**    <u>Answer Filed</u>

Defendants Answer to Plaintiffs Petition for Damages; Electronic Filing Certificate of Service.
    **Filed By:** ELIZABETH ANN MUSHILL
    **On Behalf Of:** MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT

**07/02/2014**    <u>Order - Denied</u>

Defendants' Motion to Dismiss
    **Filed By:** KENNETH R GARRETT III

    Motion Denied

    Associated Entries:04/24/2014 - <u>Motion to Dismiss</u>
    Associated Entries:04/24/2014 - <u>Request for Hearing</u>

**06/24/2014**    Jury Trial Scheduled

    Associated Entries:07/17/2014 - Hearing Continued/Rescheduled
    Scheduled For: 05/26/2015;  9:00 AM ;  KENNETH R GARRETT III;  Jackson - Independence

    Pre-trial Conference Scheduled

    Scheduled For: 05/15/2015;  8:30 AM ;  KENNETH R GARRETT III;  Jackson - Independence

    Hearing Held

    Scheduled For: 06/23/2014;  8:30 AM ;  KENNETH R GARRETT III;  Jackson - Independence

**06/12/2014**    <u>Notice to Take Deposition</u>

Notice of Videotaped Deposition of Defendant John Mucci; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH
    **On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME
    <u>Notice to Take Deposition</u>

Notice of Videotaped Deposition of Defendant Ron Holt; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH

**Notice to Take Deposition**

Notice of Videotaped Deposition of Defendant Stephen Browne; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH

**Subpoena Requested**

06/10/2014    **Cert Serv Answers Interrog Fil**

Certificate of Service - Plaintiff Stefanie Ayala s Answers to Defendants 1st Interrogatories and Request for Production of Documents; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH
    **On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

06/06/2014    **Cert Serv Answers Interrog Fil**

Certificate of Service - Plaintiff Steven Jewsome s Answers to Defendants 1st Interrogatories and Request for Produciton of Documents; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH
    **On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

05/29/2014    **Reply**

Defendants Reply in Support of Their Motion to Dismiss; Electronic Filing Certificate of Service.
    **Filed By:** ELIZABETH ANN MUSHILL
    **On Behalf Of:** MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT

05/27/2014    **Cert Serv Answers Interrog Fil**

Certificate of Service - Plaintiffs Christi Hampton and Jennifer Decker s Answers to Defendants 1st Interrogatories and Request for Production of Documents; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH
    **On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

05/22/2014    Case Mgmt Conf Scheduled

    **Associated Entries:** 06/24/2014 - Hearing Held
    **Scheduled For:** 06/23/2014; 8:30 AM; KENNETH R GARRETT III; Jackson - Independence

Hearing Continued/Rescheduled

    **Hearing Continued From:** 05/19/2014; 8:30 AM Case Management Conference

**Notice of Court Hearing Sent**

cmc 06/23/14 @ 0830
    **Filed By:** KENNETH R GARRETT III

05/21/2014    Judge/Clerk - Note

Reply to opposition to be filed on or before May 29, 2014

05/19/2014    **Suggestions in Opposition**

Plaintiffs Opposition to Defendants Motion to Dismiss or in the Alternative for Leave to File an Amended Petition and Suggestions in Support; Exhibit A; Exhibit B; Exhibit C; Exhibit D; Exhibit E; Exhibit F; Exhibit G; Electronic Filing Certificate of Service.
    **Filed By:** ANDREW K SMITH
    **On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

04/24/2014    **Request for Hearing**

Request for Hearing on Defendants Motion to Dismiss; Electronic Filing Certificate of Service.
    **Filed By:** ELIZABETH ANN MUSHILL

On Behalf Of: MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT
**Associated Entries:07/02/2014 - Motion Denied**

### Suggestions in Support

Defendants Suggestions in Support of their Motion to Dismiss; Exhibit A; Electronic Filing Certificate of Service.
**Filed By: ELIZABETH ANN MUSHILL**
**On Behalf Of: MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT**

### Motion to Dismiss

Defendants Motion to Dismiss; Electronic Filing Certificate of Service.
**Filed By: ELIZABETH ANN MUSHILL**
**On Behalf Of: MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT**
**Associated Entries:07/02/2014 - Motion Denied**

### Entry of Appearance Filed

ENTRY OF APPEARANCE; Electronic Filing Certificate of Service.
**Filed By: STACIA GRESSEL BODEN**

04/11/2014 ### Cert Serv Req Prod Docs Things

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By: ELIZABETH ANN MUSHILL**
**On Behalf Of: MISSION GROUP KANSAS INC, WRIGHT CAREER COLLEGE, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT**

04/01/2014 ### Case Mgmt Conf Scheduled

**Associated Entries:05/22/2014 - Hearing Continued/Rescheduled**
**Scheduled For: 05/19/2014; 8:30 AM ; KENNETH R GARRETT III; Jackson - Independence**

### Hearing Continued/Rescheduled

**Hearing Continued From: 02/21/2014; 8:30 AM Case Management Conference**

### Notice of Court Hearing Sent

CMC 05/19/14 @ 0830
**Filed By: KENNETH R GARRETT III**

03/31/2014 ### Received of:

Remanded back to Jackson County Circuit Court

12/11/2013 ### Notice

Notice of Filing of Notice of Removal; Joint Notice of Removal; Electronic Filing Certificate of Service.
**Filed By: MARTIN MCCORMICK LORING**
**On Behalf Of: MISSION GROUP KANSAS INC, BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC, JOHN MUCCI, STEPHEN BROWNE, RON HOLT**

### Order

11/25/2013 ### Notice of Service

Summons to Defendant John Mucci; Electronic Filing Certificate of Service.
**Filed By: ANDREW K SMITH**

### Notice of Service

Summons to Defendant Board of Directors of Mission Group Kansas, Inc; Electronic Filing Certificate of Service.
**Filed By: ANDREW K SMITH**

### Notice of Service

Summons to Defendant Mission Group Kansas, Inc d b a Wright Career College; Electronic Filing Certificate of Service.
**Filed By: ANDREW K SMITH**

### Notice of Service

Summons to Defendant Ron Holt; Electronic Filing Certificate of Service.
**Filed By:** ANDREW K SMITH
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**Summons Personally Served**

Document ID - 13-SMOS-1267; Served To - MUCCI, JOHN; Server - ; Served Date - 12-NOV-13; Served Time - 15:34:00; Service Type - Special Process Server; Reason Description - Served

**Corporation Served**

Document ID - 13-SMOS-1266; Served To - BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC; Server - ; Served Date - 12-NOV-13; Served Time - 15:39:00; Service Type - Special Process Server; Reason Description - Served; Service Text - served Ann Foster

**Corporation Served**

Document ID - 13-SMOS-1265; Served To - MISSION GROUP KANSAS INC; Server - ; Served Date - 12-NOV-13; Served Time - 15:39:00; Service Type - Special Process Server; Reason Description - Served; Service Text - served Ann Foster

**Summons Personally Served**

Document ID - 13-SMCC-10295; Served To - HOLT, RON; Server - ; Served Date - 12-NOV-13; Served Time - 10:24:00; Service Type - Special Process Server; Reason Description - Served

11/05/2013
**Summons Issued-Circuit**

Document ID: 13-SMCC-10295, for HOLT, RON.

**Summons Issued-Circuit**

Document ID: 13-SMCC-10294, for BROWNE, STEPHEN.

**Summons Issued-Circuit**

Document ID: 13-SMOS-1267, for MUCCI, JOHN.

**Summons Issued-Circuit**

Document ID: 13-SMOS-1266, for BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC.

**Summons Issued-Circuit**

Document ID: 13-SMOS-1265, for MISSION GROUP KANSAS INC.

**Order - Special Process Server**

11/04/2013
**Motion Special Process Server**

Motion for Appointment of Private Process Server.
**Filed By:** ANDREW K SMITH
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**Designation of Lead Attorney**

Designation of Lead Counsel; Electronic Filing Certificate of Service.
**Filed By:** KENNETH BLAIR MCCLAIN II
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**Notice**

of Case management Conference February 21, 2014 at 8:30 am in Division 2

**Case Mgmt Conf Scheduled**

**Associated Entries:** 04/01/2014 - Hearing Continued/Rescheduled
**Scheduled For:** 02/21/2014; 8:30 AM ; KENNETH R GARRETT III; Jackson - Independence

**Judge Assigned**

11/01/2013
**Filing Info Sheet eFiling**

**Filed By:** ANDREW K SMITH

**Note to Clerk eFiling**

**Filed By:** ANDREW K SMITH

**Pet Filed in Circuit Ct**

Petition for Damages; Civil Filing Information Sheet. In future filings please enter ALL parties listed on petition. Joyce Donovan, Case Initiation 816-881-1656
**On Behalf Of:** STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME

**Confid Filing Info Sheet Filed**

**Filed By:** ANDREW K SMITH

Case.net Version 5.13.4.11                    Return to Top of Page                    Released 07/25/2014

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| **STEFANIE AYALA,**<br>629 S. Crysler Ave.<br>Independence, MO 64052 | )<br>)<br>)<br>) |
| **JENNIFER DECKER,**<br>18633 Arrowhead Lane<br>Independence, MO 64056 | )  Case No. _____<br>)<br>)  Division _____ |
| **CHRISTI HAMPTON,**<br>926 NE Swann Rd., Apt. B<br>Lee's Summit, MO 64086 | )<br>)<br>) |
| **STEVEN JEWSOME,**<br>1323 W. Bluff Dr.<br>Kansas City, MO 64180 | )<br>)  **JURY TRIAL DEMANDED**<br>) |
| Plaintiffs,<br>v. | )<br>)<br>) |
| **MISSION GROUP KANSAS, INC., d/b/a<br>WRIGHT CAREER COLLEGE,**<br>Serve at Registered Agent:<br>CAPITOL CORPORATE SERVICES,<br>INC.<br>700 SW Jackson St., Ste. 100<br>TOPEKA, KS 66603 | )<br>)<br>)<br>)<br>)<br>)<br>) |
| **BOARD OF DIRECTORS OF MISSION<br>GROUP KANSAS INC.,**<br>Serve at Registered Agent:<br>CAPITOL CORPORATE SERVICES,<br>INC.<br>700 SW Jackson St., Ste. 100<br>TOPEKA, KS 66603 | )<br>)<br>)<br>)<br>)<br>) |
| **JOHN MUCCI; IN HIS OFFICIAL AND<br>INDIVIDUAL CAPACITY,**<br>Serve at:<br>10720 Metcalf Ave.<br>Overland Park, KS 66210 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

STEPHEN BROWNE; IN HIS OFFICIAL )
AND INDIVIDUAL CAPACITY, )
<u>Serve at:</u> )
800 West 47th Street, Ste. 43 )
Kansas City, MO  64112 )
 )
RON HOLT; IN HIS OFFICIAL AND )
INDIVIDUAL CAPACITY, )
<u>Serve at:</u> )
1100 Walnut St., Ste. 2900 )
Kansas City, MO  64106 )
 )
          Defendants. )

## PETITION FOR DAMAGES

Plaintiffs, through counsel, allege and state the following causes of action against Defendant:

## PLAINTIFFS

1.    Plaintiffs are all individuals over the age of twenty-one (21) residing in Jackson County, Missouri.

## DEFENDANTS

2.    Defendant Mission Group Kansas, Inc., d/b/a Wright Career College ("WCC"), is a Kansas Corporation but doing business in the State of Missouri at all relevant times.

3.    Upon information and belief, Defendant Board of Directors of Mission Group Kansas, Inc., d/b/a Wright Career College, consists of the following members: Mr. James Miller, Jr., Mrs. Gayle L. Miller, Mr. John Mucci, Mr. Ronald L. Hoit, Mrs. Peggy Hodges, Mr. Martin G. Baughman, Dr. Baltazara G. Lotuaco, Ms. Shawn Altman, Mr. Stephen Browne, Mr. Eugene Kivett, and Ms. Kathleen O'Brien.

2

4.      Defendant John Mucci ("Mucci"), upon information and belief, is a resident of Kansas; Mucci was employed by Defendant WCC as President and was acting within the course and scope of his employment at the time of the events alleged herein.

5.      Defendant Stephen Browne ("Browne), upon information and belief, is a resident of Missouri; Browne was employed by Defendant WCC as Treasurer and was acting within the course and scope of his employment at the time of the events alleged herein.

6.      Defendant Ron Holt ("Holt"), upon information and belief, is a resident of Missouri; Holt was employed by Defendant WCC as Secretary and was acting within the course and scope of his employment at the time of the events alleged herein.

## JURISDICTION & VENUE

7.      Jurisdiction is proper in this Court pursuant to R.S.Mo. § 506.500 in that many of the material events that comprise the basis of Plaintiffs' claims occurred in Missouri and Plaintiffs are seeking damages in excess of $15,000.

8.      Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because Plaintiff was first injured in Eastern Jackson County, Missouri and/or because several Defendants reside in – or have registered agents in – Eastern Jackson County, Missouri.

## GENERAL ALLEGATIONS REGARDING DEFENDANTS

9.      Mission Group Kansas, Inc. ("MGK"), is a Kansas non-profit corporation, which operates Wright Career College ("WCC"), a private nonprofit postsecondary vocational institution with campuses in Overland Park, Kansas; Wichita, Kansas; Oklahoma City, Oklahoma; Tulsa, Oklahoma; and Omaha, Nebraska.

10.     WCC participates in federal student loan and grant programs. These programs include, among others, the William D. Ford Federal Direct Loan Program (Direct Loans), the

3

Federal Pell Grant Program, and campus-based aid programs. Grants do not have to be repaid by students, while loans must be repaid whether or not a student completes a degree program.

11.     Having identified the opportunity to tap into guaranteed payment through federal loan programs, while shielding itself from any risk resulting from its students' student loan defaults, WCC purposely entices prospective students to enroll and apply for student loans they cannot pay back through a systematic, deceptive marketing scheme. It conducts this scheme in large part through its publications and enrollment "advisors."

12.     Beginning in or around 2011, and before, and continuing on various dates thereafter, Defendants intentionally engaged in a pattern and practice of deceptive conduct and of making certain fraudulent misrepresentations and omissions to Plaintiffs and other prospective students.

13.     WCC deceives students about federal financial aid, the true cost of attending WCC, the value of WCC's accreditations, the quality and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.

14.     WCC does this by improperly hiding information from visitors to its websites and by misleading students through affirmative misrepresentations and material omissions. WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value, to re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.

15.     Collectively, these tactics drive WCC's enrollment practices and work to the company's great financial benefit, at the expense of its students, the federal government, and the American taxpayers.

4

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

## GENERAL ALLEGATIONS REGARDING THE ENROLLMENT AND EXPERIENCE OF PLAINTIFFS

16.     Plaintiffs are all current WCC students at its Overland Park location.

17.     Defendants' pattern and practice of deceptive conduct and fraudulent misrepresentations and omissions was designed to, and in fact did, induce students to enroll in various programs at its Overland Park location, including specifically each and every one of Plaintiffs.

18.     In or around 2011 WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

> a)  that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;
>
> b)  that any educational credits earned at WCC would transfer and would apply towards a degree program at another school;
>
> c)  that WCC's instructors all had degrees and were experienced in their respective fields;
>
> d)  that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;
>
> e)  that enrolling in its evening classes offered all of the same benefits as the day classes;
>
> f)  that the cost of the program would be less than WCC knew would be the actual cost of the program;

5

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

g) that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

h) that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

i) that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j) that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k) in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

19.     As a result of these representations, Plaintiffs enrolled and were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

20.     After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a) Educational credits earned at WCC were not transferable towards programs at other schools;

6

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

b) The program in which Plaintiffs enrolled lasted longer and was more expensive than Defendants represented;

c) Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

d) There was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances class was held with no instructor at all;

e) Defendants used a class scheduling "protocol" referred to as "pods" wherein new students are placed in courses that are already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier, necessary course work and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f) The evening classes did not offer all of the same benefits as the day classes. There was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed. Moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

7

g) The student loans and grants did not include the total cost of the students program resulting in debt that Plaintiff were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

h) Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants didn't provide Plaintiff with books. Also, "electronic" textbooks that were promised were either not made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i) In other ways demonstrated by the admitted evidence at any trial in this matter.

21. Due to the misrepresentations and other conduct as set forth herein of WCC, Plaintiffs will not be and have not been properly trained in the subject areas in which they enrolled, will not receive the salaries they were promised upon graduation, and will fail to attain accreditation in their fields due to a failure of WCC to properly provide an education which will allow accreditation, and the "education" received from WCC, has no value to Plaintiffs, and instead has resulted in crippling debt.

22. Plaintiffs borrowed thousands, and even tens of thousands of dollars, to attend WCC only to discover later that their degrees and "education" are worthless and their credits won't transfer, even to the point where at least one Plaintiff's current employer refused to accept her WCC credits as evidence of further qualification of employment. Now Plaintiffs are thousands of dollars in debt, for no value in return.

8

23.     Plaintiffs have been damaged not only in terms of inability to earn a living in their field upon graduation but also because they must repay the student loans WCC assisted them in obtaining, which are substantial.

<div align="center">

**COUNT I**
**FRAUDULENT MISREPRESENTATION**
**(Against all Defendants)**

</div>

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

24.     Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility including but not limited to:

    a.   Job placement and job demand;

    b.   Anticipated starting salary;

    c.   Graduation rates;

    d.   Instructors Qualification;

    e.   Quality of education;

    f.   Transferability of credits to other institutions;

    g.   Instructor's qualifications; and

    h.   Cost and duration of program.

25.     At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

26.     At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

27.     Plaintiffs had a right to rely on Defendants' representation and did, in fact, rely on such representation.

<div align="center">9</div>

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

28.     That in reliance on the material misrepresentations of WCC, Plaintiffs enrolled in its facility and were assisted in applying for financial aid in the form of student loans, which loans much be repaid by Plaintiffs after graduation from WCC.

29.     As a direct and proximate result of Defendants' fraudulent representation the Plaintiffs have incurred damages.

30.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

<div align="center">

**COUNT II**
**NEGLIGENT MISREPRESENTATION**
**(Against all Defendants)**

</div>

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

31.     Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility.

32.     In making said representation, Defendants failed to use ordinary care.

33.     At the time of said representation, Defendants intended for Plaintiff to rely on the representation.

34.     In reliance on the material misrepresentations of WCC, Plaintiffs enrolled in its facility and Plaintiffs were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

<div align="center">10</div>

35.     These misrepresentations were material to Plaintiffs' enrollment in its facility.

36.     Plaintiffs relied on the information supplied by Defendants and such reliance was reasonable under the circumstances.

37.     As a direct and proximate result of Defendants' negligent misrepresentation Plaintiffs have been injured and damaged as herein described.

38.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

<div align="center">

**COUNT III**
**NEGLIGENT HIRING/RETENTION**
**(Against all Defendants)**

</div>

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

39.     Defendants had a duty to possess and use the same degree of care ordinarily used by reasonable and/or careful educational institutions to assess an applicant's suitability for a teaching position.

40.     Defendants knew or should have known that their employees ("instructors") were not properly qualified or suitable for the programs in which Plaintiffs are/were enrolled; they wrongfully terminated instructors who were qualified; and by their practice of changing instructors so frequently, that the Plaintiffs were unable to obtain the education promised by the Defendants.

<div align="center">

11

</div>

41.    Defendants knew or should have known that negligently hiring, training, supervising, and monitoring their employees would directly prevent the Plaintiffs' from receiving the education promised to them by the Defendants.

42.    As a direct and proximate result of Defendants negligent hiring/retention, Defendant's employees were not qualified for the work they were hired to perform and were not properly trained or supervised.

43.    As a direct and proximate result of Defendants' negligent hiring/retention, Plaintiffs were unable to receive the education promised and have been injured and damaged as herein described.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

### COUNT IV
### CIVIL CONSPIRACY
### (Against All Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

44.    Defendants had an agreement and/or understanding, that they would use a pattern of advertising, deceptive enrollment and recruitment techniques to entice Plaintiffs, and other students, to enroll at WCC, all with the purposes of charging exaggerated fees, tuition, and costs, and for the benefit of defendants.

45.    In attempting to accomplish their goal Defendants committed one or more overt acts as fully enumerated above, in paragraphs above, specifically including 18, 20, and 24.

12

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

46. As a direct and proximate result of Defendants' acts in furtherance of this conspiracy, Plaintiff has experienced emotional pain and mental anguish, and will continue to suffer emotional pain and mental anguish into the future.

47. Defendants' conduct which caused this damage showed complete indifference to the emotional well-being of Plaintiff and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT V
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

48. Plaintiffs and Defendants are within the definition of "person" under the Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

49. Defendants' statements to induce Plaintiff to enroll at WCC constitute "advertisements" as defined by R.S.Mo. § 407.010(1).

50. The objects of the educational programs and services offered by Defendant WCC constitute merchandise as defines by R.S.Mo. § 407.010(4).

51. Defendants' advertising, offering for sale, and/or sale of merchandise constitutes "trade" or "commerce" as defined by R.S.Mo. § 407.010(7).

52. Plaintiffs purchased merchandise from Defendants primarily for personal, family, or household purposes within the meaning of R.S.Mo. § 407.025.1.

13

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

53.     Defendants engaged in a pattern and practice of using deception, fraud, false pretense, false promise, misrepresentation, and unfair practices in connection with the sale or advertisement of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

54.     Defendants engaged in a pattern and practice of using concealment, suppression and omission of material facts in connection with the advertising and sale of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

55.     As a direct result of these violations of the Missouri Merchandising Practices Acts by Defendants, Plaintiff sustained an ascertainable loss of money, including but not limited to; the amounts paid by Plaintiff in tuition and other fees to attend WCC.

56.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, attorney fees and penalties and for such other relief this Court deems just and proper.

<div align="center">

**COUNT VI**
**ACCOUNTING**
**(Against all Defendants)**

</div>

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

57.     That Defendants should be required to make a full accounting of each Plaintiffs' tuition charges, separating tuition from the costs of books, laboratory fees, or other supplies or fees, for all that is included in each student's file.

<div align="center">

14

</div>

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

58.     The Defendants should be required to make a full accounting of each Plaintiffs' grants or loan funds received by Defendants, the current location of any such grant or loan funds being held on behalf of Plaintiffs; including the source of stipends or budget plan funds being paid to Plaintiffs and all financial institutions in which such funds are held; all amounts currently owing to Plaintiffs which exceed the amount of books, fees, and tuition incurred by Plaintiffs; and requiring payment to Plaintiffs of all funds exceeding amounts due and owing to Defendants.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

### COUNT VII
### PUNITIVE DAMAGES
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

59.     Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually and/or cumulatively justify the submission of punitive damages in this case.

60.     Defendants knew or had information from which they, in the exercise of ordinary care, should have known that their conduct created a high degree of probability of mental distress, bodily harm, and damage to Plaintiffs and other similarly situated patients.

61.     The willful, wanton, and malicious acts of Defendants as more fully set forth above, evidence Defendants' complete indifference and conscious disregard for the rights and safety of Plaintiffs and others similarly situated, justifying the submission of punitive damages in this case.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages to punish and deter Defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL OF ALL ISSUES

Plaintiffs demand a trial by jury of all issues in this case.

Date: October 31, 2013

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

_/s/ Andrew K. Smith_
Kenneth B. McClain        #32430
Andrew K. Smith        #60485
Lauren E. McClain        #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX

ATTORNEYS FOR PLAINTIFFS

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

**STEFANIE AYALA,**

**PLAINTIFF(S),**
**VS.**

**CASE NO. 1316-CV27529**
**DIVISION 2**

**MISSION GROUP KANSAS INC,**

**DEFENDANT(S).**

## NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
## AND ORDER FOR MEDIATION

NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **KENNETH R GARRETT III** on **21-FEB-2014** in **DIVISION 2** at **08:30 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

At the Case Management Conference, counsel should be prepared to address at least the following:

    a.     A trial setting;

    b.     Expert Witness Disclosure Cutoff Date;

    c.     A schedule for the orderly preparation of the case for trial;

    d.     Any issues which require input or action by the Court;

    e.     The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.


### /S/ KENNETH R GARRETT III
KENNETH R GARRETT III, **Circuit Judge**


### Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
ANDREW K SMITH, 221 W LEXINGTON SUITE 400, INDEPENDENCE, MO 64051

Defendant(s):
 MISSION GROUP KANSAS INC
 BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC
JOHN MUCCI
STEPHEN BROWNE
RON HOLT

 Dated: 04-NOV-2013

**Jeffrey A. Eisenbeis**
Court Administrator

Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 26 of 398

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | |
|---|---|
| **STEFANIE AYALA,**<br>629 S. Crysler Ave.<br>Independence, MO 64052<br><br>**JENNIFER DECKER,**<br>18633 Arrowhead Lane<br>Independence, MO 64056<br><br>**CHRISTI HAMPTON,**<br>926 NE Swann Rd., Apt. B<br>Lee's Summit, MO 64086<br><br>**STEVEN JEWSOME,**<br>1323 W. Bluff Dr.<br>Kansas City, MO 64180<br><br>           Plaintiffs,<br>v.<br><br>**MISSION GROUP KANSAS, INC., d/b/a**<br>**WRIGHT CAREER COLLEGE,**<br>    <u>Serve at Registered Agent</u>:<br>    CAPITOL CORPORATE SERVICES,<br>    INC.<br>    700 SW Jackson St., Ste. 100<br>    TOPEKA, KS 66603<br><br>**BOARD OF DIRECTORS OF MISSION**<br>**GROUP KANSAS INC.,**<br>    <u>Serve at Registered Agent</u>:<br>    CAPITOL CORPORATE SERVICES,<br>    INC.<br>    700 SW Jackson St., Ste. 100<br>    TOPEKA, KS 66603<br><br>**JOHN MUCCI; IN HIS OFFICIAL AND**<br>**INDIVIDUAL CAPACITY,**<br>    <u>Serve at</u>:<br>    10720 Metcalf Ave.<br>    Overland Park, KS 66210 | Case No. 1316-CV27529<br><br>Division 2<br><br><br><br>**JURY TRIAL DEMANDED** |

Electronically Filed - Jackson - Independence - November 04, 2013 - 05:15 PM GMT+00:00

**STEPHEN BROWNE; IN HIS OFFICIAL**    )
**AND INDIVIDUAL CAPACITY,**    )
    <u>Serve at</u>:    )
    800 West 47th Street, Ste. 43    )
    Kansas City, MO 64112    )
    )
**RON HOLT; IN HIS OFFICIAL AND**    )
**INDIVIDUAL CAPACITY,**    )
    <u>Serve at</u>:    )
    1100 Walnut St., Ste. 2900    )
    Kansas City, MO 64106    )
    )
        Defendants.    )

## <u>MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER</u>

COMES NOW Plaintiffs, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of HPS Process & Investigations, Inc.:

| Legal Name | Registration # | Legal Name | Registration # |
|---|---|---|---|
| Victor R. Aponte | PPS13-0129 | Jim D. Johnson | PPS13-0037 |
| Robert J. Baska | PPS13-0137 | Teresa S. Johnson | PPS13-0234 |
| Christopher D. Conder | PPS13-0215 | Wyman T. Kroft | PPS13-0236 |
| David N. Conder | PPS13-0216 | Lorri Lane | PPS13-0171 |
| Daniel R. Dick | PPS13-0223 | Mirvin Lottering | PPS13-0174 |
| James J. Donahue | PPS13-0223 | Trinity Olson | PPS13-0241 |
| Dwight L. Elliott | PPS13-0151 | Jeff Pauley | PPS13-0243 |
| Stacy Effinger | PPS13-0149 | Chris Rangnow | PPS13-0187 |
| Michael D. Fahnestock | PPS13-0225 | Christopher Reed | PPS13-0246 |
| Darlo "D.W." Forbes | PPS13-0152 | David M. Roberts | PPS13-0189 |
| Tanya S. Forbes | PPS13-0153 | Christopher A. Sargent | PPS13-0076 |

2

| | | | |
|---|---|---|---|
| Bruce Frette | PPS13-0155 | Nathaniel Scott | PPS13-0249 |
| Alan K. Hancock | PPS13-0226 | Erin Siegel | PPS13-0083 |
| Bruce Hansum | PPS13-0160 | Stephen Siegel | PPS13-0084 |
| Larry G.J. Haynes | PPS13-0162 | Ronald H. Slingerland | PPS13-0086 |
| Grace Hazell | PPS13-0227 | Jeremy S. Small | PPS13-0252 |
| Justin Hefner | PPS13-0228 | Daniel O. Stengel | PPS13-0195 |
| Stacy M. Hefner | PPS13-0229 | Perry Thomas | PPS13-0255 |
| Charles Helms | PPS13-0163 | Anamaria M. Vera | PPS13-0198 |
| James M. Hise | PPS13-0031 | Robert E. Vick, II | PPS13-0199 |
| Martin J. Hueckel | PPS13-0233 | Diana Wilson | PPS13-0206 |
| Betty A. Johnson | PPS13-0036 | Jerry Wooten | PPS13-0261 |
| JoAnn Lane | PPS13-0501 | Joni Lane | PPS13-0502 |

as private process servers in the above-captioned matter. In support of said motion, Plaintiffs state that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Date: November 4, 2013

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

   /s/ Andrew K. Smith
Kenneth B. McClain          #32430
Andrew K. Smith             #60485
Lauren E. McClain           #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
ATTORNEYS FOR PLAINTIFFS

3

Electronically Filed - Jackson - Independence - November 04, 2013 - 05:15 PM GMT+00:00

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Plaintiffs' Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _05-Nov-2013_____

_____
XXXXXX  DCA

4



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| vs. | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: RON HOLT

1100 WALNUT ST STE 2900
KANSAS CITY, MO 64106

*COURT SEAL OF*

*JACKSON COUNTY*

# PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

05-NOV-2013
Date

_____
Clerk

Further Information:

---

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date

_____
Notary Public

| Sheriff's Fees | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

---

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA<br><div align=right>vs.</div> | Plaintiff's/Petitioner's Attorney/Address<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: STEPHEN BROWNE

800 WEST 47TH STREET STE 43
KANSAS CITY, MO 64112

## PRIVATE PROCESS SERVER

COURT SEAL OF

*CIRCUIT COURT OF MISSOURI*

JACKSON COUNTY

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

05-NOV-2013
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                    Date                                    Notary Public

| Sheriff's Fees | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $    10.00    |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 13-SMCC-10294          1 of 1          Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.

Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| vs. | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: JOHN MUCCI

10720 METCALF AVE
OVERLAND PARK, KS 66210

**PRIVATE PROCESS SERVER**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

05-NOV-2013
Date

*JACKSON COUNTY*   Further Information:

_____ Clerk

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   ☐ other (describe) _____

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____   _____
Printed Name of Sheriff or Server    Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)   ☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| **Total** | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 13-SMOS-1267  1 of 2   (1316-CV27529)    Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

Case 4:14-cv-00885-BP    Document 1-1    Filed 10/08/14    Page 35 of 398

**Directions to Clerk**

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* **Document ID# 13-SMOS-1267** 2 of 2      (1316-CV27529)                Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 36 of 398

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400 |
|                        vs. | INDEPENDENCE, MO 64051 |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC

RA: CAPITOL CORPORATE
SERVICES INC
700 SW JACKSON ST STE 100
TOPEKA, KS 66603

**COURT SEAL OF**

*JACKSON COUNTY*

# PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

05-NOV-2013
_____ _____
Date                              Clerk

Further Information:

---

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ , a person of the Defendant's/Respondent's family over the age of 15 years.
☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
☐ other (describe) _____ ,

Served at _____ (address)
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____                              _____
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

**Subscribed and Sworn** To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)    ☐ the clerk of the court of which affiant is an officer.
               ☐ the judge of the court of which affiant is an officer.
               ☐ authorized to administer oaths in the state in which the affiant served the above summons.
*(Seal)*                 (use for out-of-state officer)
               ☐ authorized to administer oaths. (use for court-appointed server)

_____
Signature and Title

| Service Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ ( _____ miles @ $_____ per mile) |
| **Total** | $_____ | |

See the following page for directions to clerk and to officer making return on service of summons.

**Directions to Clerk**

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only.* **Document ID# 13-SMOS-1266** 2 of 2      **(1316-CV27529)**                                                                 Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 39 of 398

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| **vs.** | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: MISSION GROUP KANSAS INC
DBA: WRIGHT CAREER COLLEGE

RA: CAPITOL CORPORATE
SERVICES INC
700 SW JACKSON ST STE 100
TOPEKA, KS 66603

*COURT SEAL OF*

## PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in this action.

*JACKSON COUNTY*

05-NOV-2013
_____ Date

_____
Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   - [ ] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   - [ ] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   - [ ] other (describe) _____.

Served at _____ (address).
in _____ County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                 Signature of Sheriff or Server

Subscribed and Sworn To me before this _____ (day) _____ (month) _____ (year)
I am: (check one)
   - [ ] the clerk of the court of which affiant is an officer.
   - [ ] the judge of the court of which affiant is an officer.
   - [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
   - [ ] authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ ( _____ miles @ $ _____ per mile) |
| **Total** | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

**Directions to Clerk**

Personal service outside the State of Missouri is permitted only upon certain conditions set forth in Rule 54. The clerk should insert in the summons the names of only the Defendant/Respondent or Defendants/Respondents who are to be personally served by the officer to whom the summons is delivered. The summons should be signed by the clerk or deputy clerk under the seal of the court and a copy of the summons and a copy of the petition for each Defendant/Respondent should be mailed along with the original summons to the officer who is to make service. The copy of the summons may be a carbon or other copy and should be signed and sealed in the same manner as the original but it is unnecessary to certify that the copy is a true copy. The copy of the motion may be a carbon or other copy and should be securely attached to the copy of the summons but need not be certified a true copy. If the Plaintiff's/Petitioner has no attorney, the Plaintiff's/Petitioner's address and telephone number should be stated in the appropriate square on the summons. This form is not for use in attachment actions. (See Rule 54.06, 54.07 and 54.14)

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and a copy of the motion must be served on each Defendant/Respondent. If any Defendant/Respondent refuses to receive the copy of the summons and motion when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and motion and the Defendant's/Respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and motion to the individual personally or by leaving a copy of the summons and motion at the individual's dwelling house or usual place of abode with some person of the family over 15 years of age, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and motion to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and motion to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the Defendant/Respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must not be made less than ten days nor more than 30 days from the date the Defendant/Respondent is to appear in court. The return should be made promptly and in any event so that it will reach the Missouri Court within 30 days after service.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# **13-SMOS-1265** 2 of 2 **(1316-CV27529)**     Rules 54.06, 54.07, 54.14, 54.20; 506.500, 506.510 RSMo

Case 4:14-cv-00885-BP    Document 1-1    Filed 10/08/14    Page 42 of 398

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made. Thank you.

Circuit Court of Jackson County



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| vs. | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: JOHN MUCCI

10720 METCALF AVE
OVERLAND PARK, KS 66210

## PRIVATE PROCESS SERVER

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this petition.

*JACKSON COUNTY*

<u>08-NOV-2013</u>
Date

_____ Clerk.

Further Information.

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   - ☒ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   - ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   - ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   - ☐ other (describe) _____

Served at  10720 Metcalf OP (address)
in  Johnson  County  Kansas  (state), on  11-19-13  (date) at  15:54  (time).

Jerry Wooten
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Subscribed and Sworn To me before this  22  (day)  NOV  (month)  13  (year)
I am: (check one)
   - ☐ the clerk of the court of which affiant is an officer.
   - ☐ the judge of the court of which affiant is an officer.
   - ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
   - ☒ authorized to administer oaths. (use for court-appointed server)

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

_____ Notary Public
Signature and Title

### Service Fees, if applicable
| | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ _____ |

See the following page for directions to clerk and to officer making return on service of summons.

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

# AFFIDAVIT OF SERVICE

**State of Missouri**                         **County of Jackson**                         **Circuit Court**

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on **John Mucci, 10720 Metcalf Avenue, Overland Park, KS 66210.**

I, JERRY WOOTEN, being duly sworn, depose and say that on the **12th day of November, 2013 at 3:34 pm, I:**

INDIVIDUALLY SERVED the within named person with a true copy of this **Summons in Civil Case; Petition for Damages; Designation of Lead Counsel; and Motion and Order for Private Process Server** at the address of **10720 Metcalf Avenue, Overland Park, KS 66210.**

I am over the age of eighteen, and have no interest in the above action.

Subscribed and Sworn to before me on the ⟨⟩ day of
⟨Nvember⟩, ⟨13⟩ by the affiant who is personally
known to me.

NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

**JERRY WOOTEN**
Process Server

**HPS Process Service & Investigations, Inc.**
www.hpsprocess.com
**1669 Jefferson**
**Kansas City, MO 64108**
**(800) 796-9559**
Our Job Serial Number: HAT-2013022599
Ref: 23376

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5h



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
| Plaintiff/Petitioner:<br>STEFANIE AYALA<br><div align="right">vs.</div> | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W KANSAS<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC

RA: CAPITOL CORPORATE
SERVICES INC
700 SW JACKSON ST STE 100
TOPEKA, KS 66603

*COURT SEAL OF*

*JACKSON COUNTY*

# PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this petition.

05-NOV-2013
Date

_____
Clerk

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _Private Process Server_ of _Jackson_ County, _Missouri_ (state).
3. I have served the above summons by: (check one)
   - [ ] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   - [x] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Ann Foster_ (name) _Regional Representative_ (title).
   - [ ] other (describe)

Served at _700 SW Jackson St. Ste. 100 Topeka, KS 66603_ (address)
in _Shawnee_ County, _Kansas_ (state), on _11-12-13_ (date) at _3:39 PM_ (time).

_Nathaniel Scott_
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

Subscribed and Sworn To me before this _13_ (day) _November_ (month) _13_ (year)
I am: (check one)
- [ ] the clerk of the court of which affiant is an officer.
- [ ] the judge of the court of which affiant is an officer.
- [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- [x] authorized to administer oaths. (use for court-appointed server)

A. MOON
NOTARY PUBLIC
My Commission Expires
February 24, 2017
Jackson County
NOTARY SEAL (Seal)
STATE OF MISSOURI
Commission #13452192

_A. Moon, Notary Public_
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____ (_____ miles @ $_____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 13-SMOS-1266  1 of 2    (1316-CV27529)

Rules 54 06, 54.07, 54 14, 54.20;
506.500, 506 510 RSMo

# AFFIDAVIT OF SERVICE

State of Missouri            County of Jackson          Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on **Board of Directors of Mission Group Kansas Inc., Registered Agent: Capital Corporate Services Inc, 700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **12th day of November, 2013 at 3:39 pm, I:**

Served the within named with a true copy of the **Summons for Personal Service Outside the State of Missouri (Execpt Attachment Actions); Petition for Damages; and Designation of Lead Councel** by leaving with Regional Representative, Ann Foster, at **700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.**

I am over the age of eighteen, and have no interest in the above action.

Subscribed and Sworn to before me on the 12 day of
NOVEMBER 13 by the affiant who is personally
known to me.

NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

NATHANIEL SCOTT
Process Server

**HPS Process Service & Investigations, Inc.**
www.hpsprocess.com
**1669 Jefferson**
**Kansas City, MO 64108**
**(800) 796-9559**
Our Job Serial Number: HAT-2013022785
Ref: 23376

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6 5h

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
| Plaintiff/Petitioner:<br>STEFANIE AYALA<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: MISSION GROUP KANSAS INC
                   DBA: WRIGHT CAREER COLLEGE

RA: CAPITOL CORPORATE
SERVICES INC
700 SW JACKSON ST STE 100
TOPEKA, KS 66603

*COURT SEAL OF*

*JACKSON COUNTY*

## PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

05-NOV-2013
_____
Date                        Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is *Private Process Server* of *Jackson* County, *Missouri* (state).
3. I have served the above summons by: (check one)

    ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

    ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.

    ☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to *Ann Foster* (name) *Regional Representative* (title).

    ☐ other (describe)

Served at *700 SW Jackson St. Ste 100 Topeka KS 66603* (address)
in *Shawnee* County, *Kansas* (state), on *11-12-13* (date) at *3:39 PM* (time).

*Nathaniel Scott*
Printed Name of Sheriff or Server             Signature of Sheriff or Server

Subscribed and Sworn To me before this *13* (day) *November* (month) *13* (year)

A. MOON am: (check one)
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

    ☐ the clerk of the court of which affiant is an officer.
    ☐ the judge of the court of which affiant is an officer.
    ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
    ☑ authorized to administer oaths. (use for court-appointed server)

*A. Moon, Notary Public*
Signature and Title

**Service Fees, if applicable**

| | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Mileage | $_____ | (_____ miles @ $_____ per mile) |
| Total | $_____ | |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 13-SMOS-1265 1 of 2    (1316-CV27529)          Rules 54.06, 54.07, 54.14, 54.20, 506.500, 506.510 RSMo

# AFFIDAVIT OF SERVICE

State of Missouri          County of Jackson          Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on **Mission Group Kansas Inc., d/b/a Wright Career College, Registered Agent: Capital Corporate Services Inc., 700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **12th day of November, 2013 at 3:39 pm, I:**

Served the within named with a true copy of the **Summons for Personal Service Outside the State of Missouri (Exept Attachment Action); Petition for Damages; and Designation of Lead Councel** by leaving with Regional Representative, Ann Foster, at **700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.**

I am over the age of eighteen, and have no interest in the above action.

Subscribed and Sworn to before me on the 13 day of
_____, _____ by the affiant who is personally
known to me.

_____
NOTARY PUBLIC

A. MOOI,
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

_____
**NATHANIEL SCOTT**
Process Server

**HPS Process Service & Investigations, Inc.**
www.hpsprocess.com
**1669 Jefferson**
**Kansas City, MO 64108**
**(800) 796-9559**
Our Job Serial Number: HAT-2013022784
Ref: 23376

Copyright © 1992-2011 Database Services, Inc - Process Server's Toolbox V6.5h



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| vs. | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: RON HOLT

1100 WALNUT ST STE 2900
KANSAS CITY, MO 64106

COURT SEAL OF

CIRCUIT COURT OF MISSOURI

JACKSON COUNTY

## PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

05-NOV-2013
_____ Date

_____ Clerk

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☑ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other

Served at 1100 Walnut St. Ste. 2900 Kansas City, MO 64106 (address)

in Jackson (County/City of St. Louis), MO, on 11/12/13 (date) at 10:24 A.M (time).

Nathaniel Scott
Printed Name of Sheriff or Server

_____ PPS
Signature of Sheriff or Server

My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on 11-25-13 (date).

My commission expires: 2-24-17
Date

_____
Notary Public

NOTARY PUBLIC (Seal) NOTARY SEAL DENISE

### Sheriff's Fees

| | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ _____ | ( _____ miles @ $. _____ per mile) |
| Total | $ _____ | |

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 13-SMCC-10295    1 of 1    Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:14-cv-00885-BP    Document 1-1    Filed 10/08/14    Page 50 of 398

# AFFIDAVIT OF SERVICE

State of Missouri            County of Jackson            Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on Ron Holt, 1100 Walnut Street, Suite 2900, Kansas City, MO 64106.

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **12th day of November, 2013** at **10:24 am**, I:

INDIVIDUALLY SERVED the within named person with a true copy of this **Summons in Civil Case; Petition for Damages; Designation of Lead Councel; and Motion and Order for Private Process Server** at the address of **1100 Walnut Street, Suite 2900, Kansas City, MO 64106.**

I am over the age of eighteen, and have no interest in the above action.

Subscribed and Sworn to before me on the _13_ day of
_November 13_, by the affiant who is personally
known to me

NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

**NATHANIEL SCOTT**
Process Server

HPS Process Service & Investigations, Inc.
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559
Our Job Serial Number: HAT-2013022598
Ref: 23376

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5h

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| vs. | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: JOHN MUCCI

10720 METCALF AVE
OVERLAND PARK, KS 66210

## PRIVATE PROCESS SERVER

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

*JACKSON COUNTY*

05-NOV-2013
Date

Clerk.

Further Information,

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   - [X] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   - [ ] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   - [ ] other (describe) _____

Served at 10720 Metcalf OP (address)
in Johnson County, Kansas (state), on 11-18-13 (date) at 15:54 (time).

Jerry Wooten
Printed Name of Sheriff or Server       Signature of Sheriff or Server

Subscribed and Sworn To me before this 22 (day) NOV (month) 13 (year)

I am: (check one)
- [ ] the clerk of the court of which affiant is an officer.
- [ ] the judge of the court of which affiant is an officer.
- [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- [X] authorized to administer oaths. (use for court-appointed server)

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

NOTARY PUBLIC SEAL

A. Moon Notary Public
Signature and Title

**Service Fees, if applicable**

| Summons | $ |
|---|---|
| Non Est | $ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ |

See the following page for directions to clerk and to officer making return on service of summons.

# AFFIDAVIT OF SERVICE

State of Missouri                    County of Jackson                    Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on **John Mucci, 10720 Metcalf Avenue, Overland Park, KS 66210.**

I, JERRY WOOTEN, being duly sworn, depose and say that on the **12th day of November, 2013** at **3:34 pm, I:**

INDIVIDUALLY SERVED the within named person with a true copy of this **Summons in Civil Case; Petition for Damages; Designation of Lead Counsel; and Motion and Order for Private Process Server** at the address of **10720 Metcalf Avenue, Overland Park, KS 66210.**

I am over the age of eighteen, and have no interest in the above action.

Subscribed and Sworn to before me on the ____ day of
_____, ____ by the affiant who is personally
known to me.

_____
NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

**JERRY WOOTEN**
Process Server

**HPS Process Service & Investigations, Inc.**
**www.hpsprocess.com**
**1669 Jefferson**
**Kansas City, MO 64108**
**(800) 796-9559**
Our Job Serial Number: HAT-2013022599
Ref: 23376

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5h

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

 **IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI**

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:  MISSION GROUP KANSAS INC
                                    DBA:  WRIGHT CAREER COLLEGE

RA: CAPITOL CORPORATE
SERVICES INC
700 SW JACKSON ST STE 100
TOPEKA, KS 66603

**PRIVATE PROCESS SERVER**

COURT SEAL OF

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

05-NOV-2013
Date                                                                    Clerk

Further Information:

---

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _Private Process Server_ of _Jackson_ County, _Missouri_ (state).
3. I have served the above summons by: (check one)
   - [ ] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   - [x] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Ann Foster_ (name) _Regional Representative_ (title).
   - [ ] other (describe)

Served at _700 SW Jackson St. Ste 100 Topeka KS 66603_ (address)
in _Shawnee_ County, _Kansas_ (state), on _11-12-13_ (date) at _3:39 PM_ (time).

_Nathaniel Scott_
Printed Name of Sheriff or Server                          Signature of Sheriff or Server

Subscribed and Sworn To me before this _13_ (day) _November_ (month) _13_ (year)
   - [ ] the clerk of the court of which affiant is an officer.
   - [ ] the judge of the court of which affiant is an officer.
   - [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
   - [x] authorized to administer oaths. (use for court-appointed server)

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

_A. Moon, Notary Public_
Signature and Title

**Service Fees, if applicable**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Mileage | $_____  (_____ miles @ $_____ per mile) |
| Total | $_____ |

See the following page for directions to clerk and to officer making return on service of summons.

# AFFIDAVIT OF SERVICE

State of Missouri                County of Jackson                Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on **Mission Group Kansas Inc., d/b/a Wright Career College, Registered Agent: Capital Corporate Services Inc., 700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **12th day of November, 2013 at 3:39 pm, I:**

Served the within named with a true copy of the **Summons for Personal Service Outside the State of Missouri (Exept Attachment Action);  Petition for Damages; and Designation of Lead Councel** by leaving with Regional Representative, Ann Foster, at **700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.**

I am over the age of eighteen, and have no interest in the above action.

Subscribed and Sworn to before me on the ___ day of ___ by the affiant who is personally known to me.

_____
NOTARY PUBLIC

A. MOO¹·
My Commission Expir·
February 24, 20¹⁷
Jackson County
Commission #1345219²

_____  P.P.S.
NATHANIEL SCOTT
Process Server

**HPS Process Service & Investigations, Inc.**
www.hpsprocess.com
**1669 Jefferson**
**Kansas City, MO 64108**
**(800) 796-9559**
Our Job Serial Number: HAT-2013022784
Ref: 23376

Copyright © 1992-2011 Database Services, Inc - Process Server's Toolbox V6.5h

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO  64051 |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA:   WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO  64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:** RON HOLT

1100 WALNUT ST STE 2900
KANSAS CITY, MO  64106

*COURT SEAL OF*

CIRCUIT COURT OF MISSOURI

*JACKSON COUNTY*

# PRIVATE PROCESS SERVER

     You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

05-NOV-2013
_____
Date

_____
Clerk

Further Information:

---

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

- ☑ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
- ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
- ☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

- ☐ other _____

Served at  1100 Walnut St. Ste. 2900 Kansas City, Mo 64106 (address)

in  Jackson  (County/City of St. Louis), MO, on  11/12/13  (date) at  10:24 A.M.  (time).

Nathaniel Scott
_____
Printed Name of Sheriff or Server

_____ P.P.S.
Signature of Sheriff or Server

My Commission Expires
February 24, 2017
Jackson County
Commission #13492192

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on  11-25-13  (date).

_____
Date

My commission expires: 2-24-17

_____
Notary Public

*(Seal)*

### Sheriff's Fees

| | | |
|---|---|---|
| Summons | $ | |
| Non Est | $ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ | ( ___ miles @ $. ___ per mile) |
| Total | $ | |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

---

OSCA (7-08) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 13-SMCC-10295      1 of 1

Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20, 506.120 – 506.140, and 506.150 RSMo

# AFFIDAVIT OF SERVICE

State of Missouri            County of Jackson            Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on **Ron Holt, 1100 Walnut Street, Suite 2900, Kansas City, MO 64106.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **12th day of November, 2013 at 10:24 am, I:**

INDIVIDUALLY SERVED the within named person with a true copy of this **Summons in Civil Case; Petition for Damages; Designation of Lead Councel; and Motion and Order for Private Process Server** at the address of **1100 Walnut Street, Suite 2900, Kansas City, MO 64106.**

I am over the age of eighteen, and have no interest in the above action.

Subscribed and Sworn to before me on the ___ day of
_____ by the affiant who is personally
known to me.

_____
NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

_____
**NATHANIEL SCOTT**
Process Server

HPS Process Service & Investigations, Inc.
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
**(800) 796-9559**
Our Job Serial Number: HAT-2013022598
Ref: 23376

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5h

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| | ) | Case No. 1316-CV27529 |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | W.D. Mo. Case No. 4:13-cv-1195 |
| | ) | |
| MISSION GROUP KANSAS, INC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF FILING OF NOTICE OF REMOVAL**

To:   Clerk, Circuit Court of the County of Jackson in Independence
      308 West Kansas
      Independence, MO 64050

      Attorney for Plaintiffs
      Kenneth B. McClain
      Andrew K. Smith
      Lauren E. McClain
      HUMPHREY, FARRINGTON & McCLAIN, P.C.
      221 W. Lexington, Suite 400
      P.O. Box 900
      Independence, MO 64050

PLEASE TAKE NOTICE that Defendants Mission Group Kansas, Inc., d/b/a Wright Career College; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants") on the 10th day of December, 2013, filed their **Joint Notice of Removal**, a copy of which is attached hereto, in the office of the Clerk of the United States District Court for the Western District of Missouri, Western Division. Pursuant to 28 U.S.C. § 1446(d), this Court shall proceed no further with this action, which has been removed to the United States District Court for the Western District of Missouri.

SLC-7105337-1

You are also advised that Defendants have filed a copy of this Notice with a copy of the Joint Notice of Removal attached with the Clerk of the Circuit Court of the County of Jackson, Missouri, in accordance with 28 U.S.C. § 1446(d).

Dated: December 11, 2013.          Respectfully submitted,


By:____/s/ Martin M. Loring_____

Martin M. Loring, Mo. #29712
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, Mo. #38774
Kyle P. Seelbach, Mo. #60382
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
kyle.seelbach@huschblackwell.com

Stacia G. Boden, Mo. #53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

***Attorneys for Mission Group Kansas, Inc.; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt.***

SLC-7105337-1

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 11th day of December, 2013, by first-class mail, postage prepaid to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050


_____/s/ Martin M. Loring_____.

SLC-7105337-1

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

## IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| STEFANIE AYALA, et al. | ) **DEFENDANTS REQUEST TRIAL** |
| | ) **BY JURY** |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:13-cv-1195 |
| | ) |
| MISSION GROUP KANSAS, INC., | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

### JOINT NOTICE OF REMOVAL

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI, WESTERN DIVISION:

Pursuant to 28 U.S.C. § 1441, *et seq.*, Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College"); Board of Directors of Mission Group Kansas, Inc. ("Board of Directors"); John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants"), by and through their counsel of record, hereby remove this action to the United States District Court for the Western District of Missouri, Western Division. As grounds for removal, Defendants state:

1.      On or about November 1, 2013, an action was commenced against Defendants in the Circuit Court of Jackson County, Missouri, entitled *Ayala, et al. v. Mission Group Kansas, Inc., et al.,* Cause No. 1316-CV27529.

2.      Attached hereto as Exhibit A and incorporated herein by this reference is a true and accurate copy of the Court's file from the Circuit Court of Jackson County, Missouri, as obtained by Defendants.

3.      Service of the summons and Petition were made on defendants Wright Career College, Ron Holt, and John Mucci by personal service on November 12, 2013. (See Return of Summons, included within Exhibit A). This removal is timely under 28 U.S.C. § 1446(b) in that it is filed within thirty (30) days after the receipt by Wright Career College, Ron Holt, and John Mucci (the first-served defendants) through service of a copy of the initial pleading setting forth the claims for relief upon which this action is based. See 28 U.S.C. § 1446(b); Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999) (stating that the thirty-day removal period does not begin to run until a defendant is formally served with the complaint).

4.      Defendants are giving written notice of the filing of this Joint Notice of Removal to Plaintiffs and have filed a copy of this Joint Notice of Removal with the Clerk of the Circuit Court of Jackson County, Missouri. A copy of the Notice of Filing of Removal filed in the Circuit Court of Jackson County, Missouri, is attached hereto as Exhibit B and incorporated herein by reference.

5.      Venue is proper in this district in that the Circuit Court of Jackson County is within the Western District of Missouri, Western Division.

6.      This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(a), and the action is removable under 28 U.S.C. § 1441, in that there is complete diversity of citizenship among the parties properly joined and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

**Amount in Controversy**

7.      In determining whether the amount-in-controversy requirement is met, the relevant question is not whether the verdict will definitively exceed $75,000, but rather whether a finder of fact "could legally conclude" that the damages exceed that amount. Kopp v. Kopp, 280

SLC-7098980-2
                                    2
Case 4:13-cv-01195-BP   Document 1   Filed 12/11/13   Page 2 of 12
Case 4:14-cv-00885-BP      Document 1-1      Filed 10/08/14      Page 62 of 398

F.3d 883, 885 (8th Cir. 2002). It is not necessary for all of the Plaintiffs to individually seek damages exceeding the jurisdictional amount as long as one of the Plaintiffs in the case is able to satisfy the amount-in-controversy requirement. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 566 (2005).

8. Plaintiffs Stephanie Ayala, Jennifer Decker, Christi Hampton, and Steven Jewsome claim that they were damaged because of their inability to earn a living and in that "they must repay the student loans WCC assisted them in obtaining, which are substantial." (Pet. at ¶ 23). Plaintiffs further allege that they "borrowed thousands, and even tens of thousands of dollars" to attend WCC, that they received no value, and that they have "crippling debt" as a result of their student loans. (Pet. at ¶¶ 21-22).

9. Plaintiffs also seek punitive damages. (Pet. at "WHEREFORE" clauses and ¶¶ 59-61). Punitive damages are included in determining the amount in controversy. Allison v. Sec. Benefit Life Ins. Co., 980 F.2d 1213, 1215 (8th Cir. 1992). Under Missouri law, Plaintiffs can recover punitive damages in an amount up to five-hundred thousand dollars ($500,000) or five times the net amount of the judgment awarded. See Mo. Rev. Stat. § 510.265.

10. In addition, Plaintiffs are seeking attorneys' fees under the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.020, et seq. (Pet. at Count V "WHEREFORE" clause). The MMPA permits the aware of attorneys' fees to the prevailing party. Mo. Rev. Stat. § 407.025. Attorneys' fees are included in the jurisdictional amount if there is a statute, like the MMPA, that authorizes the award of fees to the prevailing party. See Babcock & Wilcox Co. v. Parsons Corp., 430 F.2d 531, 539 n. 8 (8th Cir. 1970).

11. In a case that included MMPA allegations by four students against their school, the United States District Court for the Eastern District of Missouri held that the amount-in-

SLC-7098980-2
3
Case 4:13-cv-01195-BP   Document 1   Filed 12/11/13   Page 3 of 12
Case 4:14-cv-00885-BP      Document 1-1      Filed 10/08/14      Page 63 of 398

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

controversy requirement was met when considering the cost of the students' education (which ranged from $27,541 to $36,861), attorneys' fees, and punitive damages. <u>Blake v. Career Educ. Corp.</u>, No. 4:08-cv-00821, 2008 WL 4151795, at *3 (E.D. Mo. Sept. 4, 2008).

12.    Just as in <u>Blake</u>, the amount-in-controversy prong is satisfied in this case. Each Plaintiff individually alleges damages of $75,000 or more. For example, as of November 22, 2013, Plaintiff Christi Hampton had been charged a total of $31,791.19 for her course of instruction at Wright Career College. (<u>See</u> Affidavit of John Mucci ("Mucci Affidavit"), attached hereto as Exhibit C, at ¶ 5). Considering just the actual damages, attorneys' fees, and punitive damages sought by Plaintiff Christi Hampton, the amount in controversy easily exceeds $75,000.

**Diversity of Citizenship**

13.    There is complete diversity in citizenship among the parties, in that Plaintiffs are citizens of Missouri; Defendants Wright Career College, Board of Directors, John Mucci, and Stephen Browne are citizens of Kansas; and Defendant Ron Holt has been fraudulently joined.

14.    At the time this action was commenced and at all times since, **Plaintiffs** are individuals domiciled in the State of Missouri. (Pet. at ¶ 1). Therefore, for purposes of 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Plaintiffs Ayala, Decker, Hampton, and Jewsome are citizens of the State of **Missouri**.

15.    At the time this action was commenced and at all times since, **Defendant Wright Career College** is and has been a corporation organized and existing under the laws of the State of Kansas. (Mucci Affidavit at ¶ 2). Wright Career College's principal place of business is located at 10720 Metcalf Avenue, Overland Park, KS. (<u>Id.</u>). Wright Career College's officers and executives maintain their offices at Wright Career College's corporate headquarters at the Overland Park location, and corporate decisions are made from the corporate headquarters. (<u>Id.</u>).

SLC-7098980-2                                    4
Case 4:13-cv-01195-BP   Document 1   Filed 12/11/13   Page 4 of 12
Case 4:14-cv-00885-BP      Document 1-1      Filed 10/08/14      Page 64 of 398

Wright Career College has no offices in Missouri. (Id.). Therefore, for purposes of 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Wright Career College is a citizen of the State of **Kansas**.

16.     The members of the **Board of Directors of Mission Group Kansas, Inc.** ("Board of Directors") are not named in their individual capacity, and no allegation is made in the Petition against the Board of Directors as individuals. When a board of directors is named only as a representative of a corporation, the citizenship of the corporation defines the citizenship of the board of directors. <u>Gas Sec., Co. v. Antero & Lost Park Reservoir Co.</u>, 259 F. 423, 429 (8th Cir. 1919); <u>Thomas v. Bd. of Trustees of the Ohio State Univ.</u>, 195 U.S. 207, 214 (1904) (stating that when a lawsuit names the board of trustees of a corporation as a party, "the legal presumption would be that the trustees were citizens of the state by which the corporation was brought into existence, and no averment or evidence to the contrary would be admissible for the purpose of withdrawing the suit from the jurisdiction of this circuit court."). As stated in Paragraph 15, Wright Career College is a citizen of the State of Kansas. As a result, the Board of Directors is also a citizen of the State of **Kansas**.

17.     At the time this action was commenced and at all times since, **Defendant John Mucci** is an individual domiciled in the State of Kansas. (Pet. at ¶ 4). Therefore, for purposes of 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Defendant John Mucci is a citizen of the State of **Kansas**.

18.     At the time this action was commenced and at all times since, Defendant Stephen Browne is an individual domiciled in the State of Kansas. (<u>See</u> Affidavit of Stephen Browne, attached hereto as Exhibit D, at ¶¶ 2-3). Therefore, for purposes of 28 U.S.C. § 1332 and 28 U.S.C. § 1441, Defendant Stephen Browne is a citizen of the State of **Kansas**.

19.     Defendant Ron Holt is an individual domiciled in the State of Missouri (Pet. at ¶ 6), and, therefore, is a citizen of the State of Missouri.  However, the citizenship of Defendant Holt should be disregarded because he has been fraudulently joined as a defendant in this case.

20.     Under the doctrine of fraudulent joinder, a court may disregard the citizenship of a non-diverse defendant who was erroneously joined in an effort to defeat removal.  Joinder is fraudulent and removal is proper when there is no reasonable basis in fact or law supporting a claim against the resident defendant.  Grobe v. Vantage Credit Union, 679 F. Supp. 2d 1020, 1025 (E.D. Mo. 2010).

21.     Joinder is fraudulent if the allegations against a non-diverse defendant "are shown to be so clearly false as to demonstrate that no factual basis exists for any honest belief on the part of the plaintiff that a cause of action exists." Id. at 1026 (quoting Morris v. E.I. DuPont De Nemours, 68 F.2d 788, 792 (8th Cir. 1934)).  The key consideration is reason: "[A] proper review should give paramount consideration to the reasonableness of the basis underlying the state claim." Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006) (quoting Filla v. Norfolk S. Ry., 336 F.3d 806, 810 (8th Cir. 2003)).

22.     The Petition names Ron Holt as a defendant in both his official and individual capacity. (Pet. at case caption).  The Petition alleges that Defendant Holt was employed as Secretary of Wright Career College; and that he was "acting within the course and scope of his employment at the time of the events alleged herein." (Id. at ¶ 6).  Plaintiffs claim that WCC entices prospective students to enroll and apply for student loans they cannot pay back through a systematic, deceptive marketing scheme that it conducts "in large part through its publications and enrollment advisors." (Id. at ¶ 11).  The Petition further alleges that WCC "trains and

deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly . . . ." (Id. at ¶ 14).

23.     The Petition contains no allegations that specifically allege that Holt committed any unlawful act. Instead, the Petition lumps all defendants together and alleges that all acts were committed by "Defendants." Because the Petition does not allege that Holt committed any act, there is no basis for asserting a claim against him, and the Court should find that he was fraudulently joined to defeat diversity.

24.     Additionally, even if specific acts were alleged against Holt, a finding of fraudulent joinder is nonetheless warranted because there is no factual basis for Plaintiffs to ever allege a colorable claim against him, either in his individual or official capacity.

25.     Claims against an employee in official capacity are duplicative of claims against the employer. Coller v. State of Mo. Dept. of Econ. Dev., 965 F. Supp. 1270, 1275 (W.D. Mo. 1997). Claims against employees in their "official capacity" are not recognized when the employer is also named in the lawsuit, as here. Id.

26.     Nonetheless, under Missouri law, "merely holding a corporate office will not subject one to personal liability for the misdeeds of the corporation." Zipper v. Health Midwest, 978 S.W.2d 398, 414 (Mo. App. W.D. 1998). Rather, corporate officers may be held liable for corporate tortious conduct only if "they have actual or constructive knowledge of, and participated in, an actionable wrong." Id.

27.     Therefore, whether considered in his individual or official capacity, a colorable claim against Defendant Holt could only exist if there is a factual basis to support that he had actual or constructive knowledge of the wrongs or participated in an actionable wrong. The

affidavit of Ron Holt ("Holt Affidavit," attached hereto as Exhibit E) [1] establishes that there is no factual basis for finding that Defendant Holt had knowledge of or participated in the commission of any acts against Plaintiffs.

      28.     Defendant Holt could not have made the misrepresentations alleged by Plaintiffs or been aware of them, and thus there is no basis to hold Defendant Holt liable for fraudulent misrepresentation (Count I), negligent misrepresentation (Count II), or Violation of the Missouri Merchandising Practices Act (Count V).

    a.   Defendant Holt does not have communications with prospective WCC students during the enrollment process, nor is he present during the discussions between WCC employees and prospective or actual WCC students. (Holt Affidavit at ¶ 6).

    b.   Defendant Holt was not present during any meetings or communications the Plaintiffs had with any WCC representative, and he does not know any of the Plaintiffs. (Id. at ¶ 7).

    c.   Defendant Holt does not have discussions with WCC admissions representatives, and he is not involved in the hiring or training of admission representatives. (Id. at ¶ 8).

    d.   Defendant Holt does not know any of the admissions representatives employed at the Overland Park campus during 2011-2013, and he does not know which admissions representative had communications with Plaintiffs. (Id. at ¶ 9).

    e.   Defendant Holt is not aware of any "agreement and/or understanding" by anybody at WCC to use deceptive recruitment techniques at WCC. (Id. at ¶ 10).

---

[1]  The Court may properly consider affidavits submitted by the parties in determining whether joinder of defendants is fraudulent. See Grobe, 679 F. Supp. 2d at 1026; In re Genetically Modified Rice Litig., 618 F. Supp. 2d 1047, 1052-53 (E.D. Mo. 2009); Petersen v. Rusch, Inc., No. 4:05CV01328, 2006 WL 83492, at *2 (E.D. Mo. Jan. 12, 2006).

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

He was never part of any such agreement, and he has no knowledge of any representations that may have been made by any person to Plaintiffs (or any other student) during the enrollment process. (Id.).

    f.   Defendant Holt played no role in the hiring or training of the individuals who served as the supervisors for admissions representatives at the Overland Park campus, and he has no knowledge of the communications between the supervisors and the admissions representatives who enrolled Plaintiffs. (Id. at ¶ 11).

29.    Defendant Holt had no role in the decision to hire or retain instructors. Therefore, there is no basis to hold Defendants Holt liable for negligent hiring/retention (Count III).

    a.   The decisions to hire or retain instructors at WCC are handled by the Academic Department. (Id. at ¶ 12). Defendant Holt has never been involved in the decisions to hire or retain instructors. (Id.). He has never assessed an applicant's suitability for a teaching position. (Id.).

    b.   Defendant Holt does not know any of the instructors who have taught Plaintiffs, and he has no knowledge as to their credentials. (Id. at ¶ 13).

30.    "As a general rule, there can be no conspiracy between an agent and a principal." 8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc., 292 S.W.3d 439, 452 (Mo. App. E.D. 2009). Moreover, "[c]ivil conspiracy is not a cause of action in and of itself . . . ." Id. at 451. Therefore, there is no basis to hold Defendant Holt liable for civil conspiracy (Count IV).

31.    No claim for accounting (Count VI) exists against Defendant Holt because he could not have had a fiduciary or trust relationship with Plaintiffs when he had never met them (Holt Affidavit at ¶ 7), and such a relationship is necessary to state a claim for accounting. Tobias v. Korman, 141 S.W.3d 468, 474 (Mo. App. E.D. 2004).

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

32.     Finally, Missouri does not recognize a cause of action for "punitive damages" (Count VII), so there is no basis to hold Defendant Holt liable under Plaintiffs' final cause of action.  Hyatt v. Trans World Airlines, Inc., 943 S.W.2d 292, 296 (Mo. App. E.D. 1997) (dismissing claim for punitive damages pursuant to a motion to dismiss because "[a] punitive damage claim is not a separate action").

33.     Defendant Holt never had any contact with any Plaintiff, nor does he have actual or constructive knowledge of any of the improper acts alleged by Plaintiffs.  (Holt Affidavit at ¶¶ 6-13).  As a result, there is no reasonable basis for Plaintiffs to allege any cause of action against him.  His joinder as a defendant in this case is fraudulent and for the purpose of defeating diversity.  His citizenship should not be considered in determining whether diversity exists.

34.     In sum, Plaintiffs are citizens of the State of Missouri.  Defendants Wright Career College, Board of Directors, Mucci, and Browne are citizens of the State of Kansas.  The citizenship of Defendant Holt should be disregarded.  Therefore, complete diversity of citizenship exists, and jurisdiction is proper in this Court under 28 U.S.C. § 1332(a).

WHEREFORE Defendants give notice that this action is removed from the Circuit Court of Jackson County, Missouri, to the United States District Court for the Western District of Missouri, for the exercise of jurisdiction over this action as though this action had originally been instituted in this Court.

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Dated: December 11, 2013.     Respectfully submitted,

By:   /s/ Martin M. Loring

Martin M. Loring, W.D. Mo. #29712MO
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, W.D. Mo. #38774MO
Kyle P. Seelbach, W.D. Mo. #60382MO
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
kyle.seelbach@huschblackwell.com

Stacia G. Boden, W.D. Mo. #53601MO
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

***Attorneys for Mission Group Kansas, Inc.; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt.***

SLC-7098980-2
11
Case 4:13-cv-01195-BP   Document 1   Filed 12/11/13   Page 11 of 12
Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 71 of 398

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 11th day of December, 2013, by first-class mail, postage prepaid to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050


/s/ Martin M. Loring

SLC-7098980-2

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA,<br>629 S. Crysler Ave.<br>Independence, MO 64052 | )<br>)<br>) |
| | ) |
| JENNIFER DECKER,<br>18633 Arrowhead Lane<br>Independence, MO 64056 | )  Case No. _____<br>)<br>)  Division _____<br>) |
| CHRISTI HAMPTON,<br>926 NE Swann Rd., Apt. B<br>Lee's Summit, MO 64086 | )<br>)<br>)<br>) |
| STEVEN JEWSOME,<br>1323 W. Bluff Dr.<br>Kansas City, MO 64180 | )<br>)  **JURY TRIAL DEMANDED**<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )<br>) |
| MISSION GROUP KANSAS, INC., d/b/a<br>WRIGHT CAREER COLLEGE,<br> Serve at Registered Agent:<br> CAPITOL CORPORATE SERVICES,<br> INC.<br> 700 SW Jackson St., Ste. 100<br> TOPEKA, KS 66603 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| BOARD OF DIRECTORS OF MISSION<br>GROUP KANSAS INC.,<br> Serve at Registered Agent:<br> CAPITOL CORPORATE SERVICES,<br> INC.<br> 700 SW Jackson St., Ste. 100<br> TOPEKA, KS 66603 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| JOHN MUCCI; IN HIS OFFICIAL AND<br>INDIVIDUAL CAPACITY,<br> Serve at:<br> 10720 Metcalf Ave.<br> Overland Park, KS 66210 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

**EXHIBIT**

tabbies*

A

STEPHEN BROWNE; IN HIS OFFICIAL      )
AND INDIVIDUAL CAPACITY,             )
    Serve at:                     )
    800 West 47th Street, Ste. 43 )
    Kansas City, MO 64112         )
                                  )
RON HOLT; IN HIS OFFICIAL AND        )
INDIVIDUAL CAPACITY,                 )
    Serve at:                     )
    1100 Walnut St., Ste. 2900    )
    Kansas City, MO 64106         )
                                  )
         Defendants.        )

## PETITION FOR DAMAGES

Plaintiffs, through counsel, allege and state the following causes of action against Defendant:

## PLAINTIFFS

1.     Plaintiffs are all individuals over the age of twenty-one (21) residing in Jackson County, Missouri.

## DEFENDANTS

2.     Defendant Mission Group Kansas, Inc., d/b/a Wright Career College ("WCC"), is a Kansas Corporation but doing business in the State of Missouri at all relevant times.

3.     Upon information and belief, Defendant Board of Directors of Mission Group Kansas, Inc., d/b/a Wright Career College, consists of the following members: Mr. James Miller, Jr., Mrs. Gayle L. Miller, Mr. John Mucci, Mr. Ronald L. Hoit, Mrs. Peggy Hodges, Mr. Martin G. Baughman, Dr. Baltazara G. Lotuaco, Ms. Shawn Altman, Mr. Stephen Browne, Mr. Eugene Kivett, and Ms. Kathleen O'Brien.

2

4.      Defendant John Mucci ("Mucci"), upon information and belief, is a resident of Kansas; Mucci was employed by Defendant WCC as President and was acting within the course and scope of his employment at the time of the events alleged herein.

5.      Defendant Stephen Browne ("Browne), upon information and belief, is a resident of Missouri; Browne was employed by Defendant WCC as Treasurer and was acting within the course and scope of his employment at the time of the events alleged herein.

6.      Defendant Ron Holt ("Holt"), upon information and belief, is a resident of Missouri; Holt was employed by Defendant WCC as Secretary and was acting within the course and scope of his employment at the time of the events alleged herein.

## JURISDICTION & VENUE

7.      Jurisdiction is proper in this Court pursuant to R.S.Mo. § 506.500 in that many of the material events that comprise the basis of Plaintiffs' claims occurred in Missouri and Plaintiffs are seeking damages in excess of $15,000.

8.      Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because Plaintiff was first injured in Eastern Jackson County, Missouri and/or because several Defendants reside in – or have registered agents in – Eastern Jackson County, Missouri.

## GENERAL ALLEGATIONS REGARDING DEFENDANTS

9.      Mission Group Kansas, Inc. ("MGK"), is a Kansas non-profit corporation, which operates Wright Career College ("WCC"), a private nonprofit postsecondary vocational institution with campuses in Overland Park, Kansas; Wichita, Kansas; Oklahoma City, Oklahoma; Tulsa, Oklahoma; and Omaha, Nebraska.

10.     WCC participates in federal student loan and grant programs. These programs include, among others, the William D. Ford Federal Direct Loan Program (Direct Loans), the

3

Federal Pell Grant Program, and campus-based aid programs. Grants do not have to be repaid by students, while loans must be repaid whether or not a student completes a degree program.

11.     Having identified the opportunity to tap into guaranteed payment through federal loan programs, while shielding itself from any risk resulting from its students' student loan defaults, WCC purposely entices prospective students to enroll and apply for student loans they cannot pay back through a systematic, deceptive marketing scheme. It conducts this scheme in large part through its publications and enrollment "advisors."

12.     Beginning in or around 2011, and before, and continuing on various dates thereafter, Defendants intentionally engaged in a pattern and practice of deceptive conduct and of making certain fraudulent misrepresentations and omissions to Plaintiffs and other prospective students.

13.     WCC deceives students about federal financial aid, the true cost of attending WCC, the value of WCC's accreditations, the quality and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.

14.     WCC does this by improperly hiding information from visitors to its websites and by misleading students through affirmative misrepresentations and material omissions. WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value, to re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.

15.     Collectively, these tactics drive WCC's enrollment practices and work to the company's great financial benefit, at the expense of its students, the federal government, and the American taxpayers.

4

## GENERAL ALLEGATIONS REGARDING THE ENROLLMENT AND EXPERIENCE OF PLAINTIFFS

16.    Plaintiffs are all current WCC students at its Overland Park location.

17.    Defendants' pattern and practice of deceptive conduct and fraudulent misrepresentations and omissions was designed to, and in fact did, induce students to enroll in various programs at its Overland Park location, including specifically each and every one of Plaintiffs.

18.    In or around 2011 WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

a)    that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;

b)    that any educational credits earned at WCC would transfer and would apply towards a degree program at another school;

c)    that WCC's instructors all had degrees and were experienced in their respective fields;

d)    that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;

e)    that enrolling in its evening classes offered all of the same benefits as the day classes;

f)    that the cost of the program would be less than WCC knew would be the actual cost of the program;

5

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

g) that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

h) that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

i) that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j) that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k) in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

19. As a result of these representations, Plaintiffs enrolled and were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

20. After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a) Educational credits earned at WCC were not transferable towards programs at other schools;

6

b) The program in which Plaintiffs enrolled lasted longer and was more expensive than Defendants represented;

c) Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

d) There was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances class was held with no instructor at all;

e) Defendants used a class scheduling "protocol" referred to as "pods" wherein new students are placed in courses that are already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier, necessary course work and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f) The evening classes did not offer all of the same benefits as the day classes. There was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed. Moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

7

g) The student loans and grants did not include the total cost of the students program resulting in debt that Plaintiff were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

h) Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants didn't provide Plaintiff with books. Also, "electronic" textbooks that were promised were either not made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i) In other ways demonstrated by the admitted evidence at any trial in this matter.

21.    Due to the misrepresentations and other conduct as set forth herein of WCC, Plaintiffs will not be and have not been properly trained in the subject areas in which they enrolled, will not receive the salaries they were promised upon graduation, and will fail to attain accreditation in their fields due to a failure of WCC to properly provide an education which will allow accreditation, and the "education" received from WCC, has no value to Plaintiffs, and instead has resulted in crippling debt.

22.    Plaintiffs borrowed thousands, and even tens of thousands of dollars, to attend WCC only to discover later that their degrees and "education" are worthless and their credits won't transfer, even to the point where at least one Plaintiff's current employer refused to accept her WCC credits as evidence of further qualification of employment. Now Plaintiffs are thousands of dollars in debt, for no value in return.

8

23.    Plaintiffs have been damaged not only in terms of inability to earn a living in their field upon graduation but also because they must repay the student loans WCC assisted them in obtaining, which are substantial.

<div align="center">

**COUNT I**
**FRAUDULENT MISREPRESENTATION**
**(Against all Defendants)**

</div>

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

24.    Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility including but not limited to:

     a.   Job placement and job demand;

     b.   Anticipated starting salary;

     c.   Graduation rates;

     d.   Instructors Qualification;

     e.   Quality of education;

     f.   Transferability of credits to other institutions;

     g.   Instructor's qualifications; and

     h.   Cost and duration of program.

25.    At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

26.    At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

27.    Plaintiffs had a right to rely on Defendants' representation and did, in fact, rely on such representation.

<div align="center">9</div>

28.     That in reliance on the material misrepresentations of WCC, Plaintiffs enrolled in its facility and were assisted in applying for financial aid in the form of student loans, which loans much be repaid by Plaintiffs after graduation from WCC.

29.     As a direct and proximate result of Defendants' fraudulent representation the Plaintiffs have incurred damages.

30.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

<div align="center">

**COUNT II**
**NEGLIGENT MISREPRESENTATION**
**(Against all Defendants)**

</div>

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

31.     Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility.

32.     In making said representation, Defendants failed to use ordinary care.

33.     At the time of said representation, Defendants intended for Plaintiff to rely on the representation.

34.     In reliance on the material misrepresentations of WCC, Plaintiffs enrolled in its facility and Plaintiffs were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

<div align="center">

10

</div>

35.     These misrepresentations were material to Plaintiffs' enrollment in its facility.

36.     Plaintiffs relied on the information supplied by Defendants and such reliance was reasonable under the circumstances.

37.     As a direct and proximate result of Defendants' negligent misrepresentation Plaintiffs have been injured and damaged as herein described.

38.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT III
### NEGLIGENT HIRING/RETENTION
#### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

39.     Defendants had a duty to possess and use the same degree of care ordinarily used by reasonable and/or careful educational institutions to assess an applicant's suitability for a teaching position.

40.     Defendants knew or should have known that their employees ("instructors") were not properly qualified or suitable for the programs in which Plaintiffs are/were enrolled; they wrongfully terminated instructors who were qualified; and by their practice of changing instructors so frequently, that the Plaintiffs were unable to obtain the education promised by the Defendants.

11

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00
Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

41.    Defendants knew or should have known that negligently hiring, training, supervising, and monitoring their employees would directly prevent the Plaintiffs' from receiving the education promised to them by the Defendants.

42.    As a direct and proximate result of Defendants negligent hiring/retention, Defendant's employees were not qualified for the work they were hired to perform and were not properly trained or supervised.

43.    As a direct and proximate result of Defendants' negligent hiring/retention, Plaintiffs were unable to receive the education promised and have been injured and damaged as herein described.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

<div align="center">

**COUNT IV**
**CIVIL CONSPIRACY**
**(Against All Defendants)**

</div>

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

44.    Defendants had an agreement and/or understanding, that they would use a pattern of advertising, deceptive enrollment and recruitment techniques to entice Plaintiffs, and other students, to enroll at WCC, all with the purposes of charging exaggerated fees, tuition, and costs, and for the benefit of defendants.

45.    In attempting to accomplish their goal Defendants committed one or more overt acts as fully enumerated above, in paragraphs above, specifically including 18, 20, and 24.

<div align="center">

12

</div>

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

46.    As a direct and proximate result of Defendants' acts in furtherance of this conspiracy, Plaintiff has experienced emotional pain and mental anguish, and will continue to suffer emotional pain and mental anguish into the future.

47.    Defendants' conduct which caused this damage showed complete indifference to the emotional well-being of Plaintiff and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT V
### VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
#### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

48.    Plaintiffs and Defendants are within the definition of "person" under the Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

49.    Defendants' statements to induce Plaintiff to enroll at WCC constitute "advertisements" as defined by R.S.Mo. § 407.010(1).

50.    The objects of the educational programs and services offered by Defendant WCC constitute merchandise as defines by R.S.Mo. § 407.010(4).

51.    Defendants' advertising, offering for sale, and/or sale of merchandise constitutes "trade" or "commerce" as defined by R.S.Mo. § 407.010(7).

52.    Plaintiffs purchased merchandise from Defendants primarily for personal, family, or household purposes within the meaning of R.S.Mo. § 407.025.1.

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

53. Defendants engaged in a pattern and practice of using deception, fraud, false pretense, false promise, misrepresentation, and unfair practices in connection with the sale or advertisement of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

54. Defendants engaged in a pattern and practice of using concealment, suppression and omission of material facts in connection with the advertising and sale of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

55. As a direct result of these violations of the Missouri Merchandising Practices Acts by Defendants, Plaintiff sustained an ascertainable loss of money, including but not limited to; the amounts paid by Plaintiff in tuition and other fees to attend WCC.

56. Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, attorney fees and penalties and for such other relief this Court deems just and proper.

## COUNT VI
## ACCOUNTING
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

57. That Defendants should be required to make a full accounting of each Plaintiffs' tuition charges, separating tuition from the costs of books, laboratory fees, or other supplies or fees, for all that is included in each student's file.

14

58.    The Defendants should be required to make a full accounting of each Plaintiffs' grants or loan funds received by Defendants, the current location of any such grant or loan funds being held on behalf of Plaintiffs, including the source of stipends or budget plan funds being paid to Plaintiffs and all financial institutions in which such funds are held; all amounts currently owing to Plaintiffs which exceed the amount of books, fees, and tuition incurred by Plaintiffs; and requiring payment to Plaintiffs of all funds exceeding amounts due and owing to Defendants.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

### COUNT VII
### PUNITIVE DAMAGES
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

59.    Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually and/or cumulatively justify the submission of punitive damages in this case.

60.    Defendants knew or had information from which they, in the exercise of ordinary care, should have known that their conduct created a high degree of probability of mental distress, bodily harm, and damage to Plaintiffs and other similarly situated patients.

61.    The willful, wanton, and malicious acts of Defendants as more fully set forth above, evidence Defendants' complete indifference and conscious disregard for the rights and safety of Plaintiffs and others similarly situated, justifying the submission of punitive damages in this case.

15

Electronically Filed - Jackson - Independence - November 01, 2013 - 04:51 PM GMT+00:00

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages to punish and deter Defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL OF ALL ISSUES

Plaintiffs demand a trial by jury of all issues in this case.

Date: October 31, 2013

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

_/s/ Andrew K. Smith_

| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX

ATTORNEYS FOR PLAINTIFFS

CERTIFIED COPY

I certify that the foregoing document is a full, true and complete copy of the original on file in my office and of which I am legal custodian.
Jeffrey A. Eisenbeis
Court Administrator
Circuit Court of Jackson County, Missouri

10-Dec-2013 by
Deputy

16

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

STEFANIE AYALA,

                **PLAINTIFF(S),**                    **CASE NO. 1316-CV27529**
VS.                                         **DIVISION 2**

MISSION GROUP KANSAS INC,

                **DEFENDANT(S).**

**NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE**
**AND ORDER FOR MEDIATION**

      NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **KENNETH R GARRETT III** on **21-FEB-2014** in **DIVISION 2** at **08:30 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

      A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.
      At the Case Management Conference, counsel should be prepared to address at least the following:

    a.      A trial setting;

    b.      Expert Witness Disclosure Cutoff Date;

    c.      A schedule for the orderly preparation of the case for trial;

    d.      Any issues which require input or action by the Court;

    e.      The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

### /S/ KENNETH R GARRETT III
KENNETH R GARRETT III, **Circuit Judge**

### Certificate of Service

This is to certify that a copy of the foregoing was mailed postage pre-paid or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
ANDREW K SMITH, 221 W LEXINGTON SUITE 400, INDEPENDENCE, MO 64051

Defendant(s):
MISSION GROUP KANSAS INC
BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC
JOHN MUCCI
STEPHEN BROWNE
RON HOLT

Dated: 04-NOV-2013

CERTIFIED COPY
I certify that the foregoing document is a full, true and complete copy of the original on file in my office and of which I am legal custodian.
Jeffrey A. Eisenbeis
Court Administrator
Circuit Court of Jackson County, Missouri
11-Dec-2013 By _____
Deputy

**Jeffrey A. Eisenbeis**
Court Administrator

1316-CV27529

Page 2 of 2

DMSNCMCIVI
Rev 5/2012

Case 4:13-cv-01195-BP   Document 1-1   Filed 12/11/13   Page 18 of 33
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 90 of 398

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### AT INDEPENDENCE

| | |
|---|---|
| **STEFANIE AYALA,** ) | |
| 629 S. Crysler Ave. ) | |
| Independence, MO 64052 ) | |
| ) | |
| **JENNIFER DECKER,** ) | Case No. 1316-CV27529 |
| 18633 Arrowhead Lane ) | |
| Independence, MO 64056 ) | Division 2 |
| ) | |
| **CHRISTI HAMPTON,** ) | |
| 926 NE Swann Rd., Apt. B ) | |
| Lee's Summit, MO 64086 ) | |
| ) | |
| **STEVEN JEWSOME,** ) | |
| 1323 W. Bluff Dr. ) | **JURY TRIAL DEMANDED** |
| Kansas City, MO 64180 ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **MISSION GROUP KANSAS, INC., d/b/a** ) | |
| **WRIGHT CAREER COLLEGE,** ) | |
| Serve at Registered Agent: ) | |
| CAPITOL CORPORATE SERVICES, ) | |
| INC. ) | |
| 700 SW Jackson St., Ste. 100 ) | |
| TOPEKA, KS 66603 ) | |
| ) | |
| **BOARD OF DIRECTORS OF MISSION** ) | |
| **GROUP KANSAS INC.,** ) | |
| Serve at Registered Agent: ) | |
| CAPITOL CORPORATE SERVICES, ) | |
| INC. ) | |
| 700 SW Jackson St., Ste. 100 ) | |
| TOPEKA, KS 66603 ) | |
| ) | |
| **JOHN MUCCI; IN HIS OFFICIAL AND** ) | |
| **INDIVIDUAL CAPACITY,** ) | |
| Serve at: ) | |
| 10720 Metcalf Ave. ) | |
| Overland Park, KS 66210 ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

STEPHEN BROWNE; IN HIS OFFICIAL )
AND INDIVIDUAL CAPACITY, )
Serve at: )
800 West 47th Street, Ste. 43 )
Kansas City, MO 64112 )

RON HOLT; IN HIS OFFICIAL AND )
INDIVIDUAL CAPACITY, )
Serve at: )
1100 Walnut St., Ste. 2900 )
Kansas City, MO 64106 )

Defendants. )

## DESIGNATION OF LEAD COUNSEL

COME NOW Plaintiffs and designate Kenneth B. McClain as lead attorney.

Date: November 4, 2013

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

*/s/ Kenneth B. McClain*
Kenneth B. McClain          #32430
Andrew K. Smith             #60485
Lauren E. McClain           #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
ATTORNEYS FOR PLAINTIFFS

2

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 04, 2013 - 05:11 PM GMT+00:00

*Electronically Filed - Jackson - Independence - November 04, 2013 - 05:11 PM GMT+00:00*

*Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM*

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing document was served along with the Summons of Process to all named Defendants below via Private Process Service.

/s/ Kenneth B. McClain
ATTORNEY FOR PLAINTIFFS

**MISSION GROUP KANSAS, INC.,**
**d/b/a WRIGHT CAREER COLLEGE,**
  Serve at Registered Agent:
  CAPITOL CORPORATE SERVICES, INC.
  700 SW Jackson St., Ste. 100
  TOPEKA, KS 66603

**BOARD OF DIRECTORS OF MISSION**
**GROUP KANSAS INC.,**
  Serve at Registered Agent:
  CAPITOL CORPORATE SERVICES, INC.
  700 SW Jackson St., Ste. 100
  TOPEKA, KS 66603

**JOHN MUCCI; IN HIS OFFICIAL AND**
**INDIVIDUAL CAPACITY,**
  Serve at:
  10720 Metcalf Ave.
  Overland Park, KS 66210

**STEPHEN BROWNE; IN HIS OFFICIAL AND**
**INDIVIDUAL CAPACITY,**
  Serve at:
  800 West 47th Street, Ste. 43
  Kansas City, MO 64112

**RON HOLT; IN HIS OFFICIAL AND**
**INDIVIDUAL CAPACITY,**
  Serve at:
  1100 Walnut St., Ste. 2900
  Kansas City, MO 64106

CERTIFIED COPY
I certify that the foregoing document is a full,
true and complete copy of the original on file
in my office and of which I am legal custodian.
Jeffrey A. Eisenbeis
Court Administrator
Circuit Court of Jackson County, Missouri
11-Dec-2013 By _____
Deputy

3

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA,
629 S. Crysler Ave.
Independence, MO 64052

JENNIFER DECKER,
18633 Arrowhead Lane
Independence, MO 64056

CHRISTI HAMPTON,
926 NE Swann Rd., Apt. B
Lee's Summit, MO 64086

STEVEN JEWSOME,
1323 W. Bluff Dr.
Kansas City, MO 64180

           Plaintiffs,
v.

MISSION GROUP KANSAS, INC., d/b/a
WRIGHT CAREER COLLEGE,
    Serve at Registered Agent:
    CAPITOL CORPORATE SERVICES,
    INC.
    700 SW Jackson St., Ste. 100
    TOPEKA, KS 66603

BOARD OF DIRECTORS OF MISSION
GROUP KANSAS INC.,
    Serve at Registered Agent:
    CAPITOL CORPORATE SERVICES,
    INC.
    700 SW Jackson St., Ste. 100
    TOPEKA, KS 66603

JOHN MUCCI; IN HIS OFFICIAL AND
INDIVIDUAL CAPACITY,
    Serve at:
    10720 Metcalf Ave.
    Overland Park, KS 66210

Case No. 1316-CV27529

Division 2

JURY TRIAL DEMANDED

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 04, 2013 - 05:15 PM GMT+00:00

STEPHEN BROWNE; IN HIS OFFICIAL )
AND INDIVIDUAL CAPACITY, )
    Serve at: )
    800 West 47th Street, Ste. 43 )
    Kansas City, MO 64112 )
     )
RON HOLT; IN HIS OFFICIAL AND )
INDIVIDUAL CAPACITY, )
    Serve at: )
    1100 Walnut St., Ste. 2900 )
    Kansas City, MO 64106 )
     )
             Defendants. )

## MOTION FOR APPOINTMENT OF PRIVATE PROCESS SERVER

    COMES NOW Plaintiffs, by and through counsel, and pursuant to Local Rule 4.9 of Jackson County Court Rules, hereby moves for the appointment of HPS Process & Investigations, Inc.:

| Legal Name | Registration # | Legal Name | Registration # |
|---|---|---|---|
| Victor R. Aponte | PPS13-0129 | Jim D. Johnson | PPS13-0037 |
| Robert J. Baska | PPS13-0137 | Teresa S. Johnson | PPS13-0234 |
| Christopher D. Conder | PPS13-0215 | Wyman T. Kroft | PPS13-0236 |
| David N. Conder | PPS13-0216 | Lorri Lane | PPS13-0171 |
| Daniel R. Dick | PPS13-0223 | Mirvin Lottering | PPS13-0174 |
| James J. Donahue | PPS13-0223 | Trinity Olson | PPS13-0241 |
| Dwight L. Elliott | PPS13-0151 | Jeff Pauley | PPS13-0243 |
| Stacy Effinger | PPS13-0149 | Chris Raingnow | PPS13-0187 |
| Michael D. Fahnestock | PPS13-0225 | Christopher Reed | PPS13-0246 |
| Dario "D.W." Forbes | PPS13-0152 | David M. Roberts | PPS13-0189 |
| Tanya S. Forbes | PPS13-0153 | Christopher A. Sargent | PPS13-0076 |

2

| | | | |
|---|---|---|---|
| Bruce Frette | PPS13-0155 | Nathaniel Scott | PPS13-0249 |
| Alan K. Hancock | PPS13-0226 | Erin Siegel | PPS13-0083 |
| Bruce Hansum | PPS13-0160 | Stephen Siegel | PPS13-0084 |
| Larry G.J. Haynes | PPS13-0162 | Ronald H. Slingerland | PPS13-0086 |
| Grace Hazell | PPS13-0227 | Jeremy S. Small | PPS13-0252 |
| Justin Hefner | PPS13-0228 | Daniel O. Stengel | PPS13-0195 |
| Stacy M. Hefner | PPS13-0229 | Perry Thomas | PPS13-0255 |
| Charles Helms | PPS13-0163 | Anamaria M. Vera | PPS13-0198 |
| James M. Hise | PPS13-0031 | Robert E. Vick, II | PPS13-0199 |
| Martin J. Hueckel | PPS13-0233 | Diana Wilson | PPS13-0206 |
| Betty A. Johnson | PPS13-0036 | Jerry Wooten | PPS13-0261 |
| JoAnn Lane | PPS13-0501 | Joni Lane | PPS13-0502 |

as private process servers in the above-captioned matter. In support of said motion, Plaintiffs state that the above-named individuals are on the Court's list of approved process servers and the information contained in their applications and affidavits on file is current and still correct.

Date: November 4, 2013

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

_/s/ Andrew K. Smith_
Kenneth B. McClain #32430
Andrew K. Smith #60485
Lauren E. McClain #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
ATTORNEYS FOR PLAINTIFFS

3

## ORDER FOR APPOINTMENT OF PRIVATE PROCESS SERVER

It is hereby ordered that Plaintiffs' Motion for Appointment of Private Process Server is sustained and the above named individuals are hereby appointed to serve process in the above captioned matter.

DATE: _____05-Nov-2013_____

_____

XXXXXX  DCA

CERTIFIED COPY

I certify that the foregoing document is a full, true and complete copy of the original on file in my office and of which I am legal custodian.

Jeffrey A. Eisenbeis
Court Administrator
Circuit Court of Jackson County, Missouri

11-Dec-2013 By _____
Deputy

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 04, 2013 - 05:15 PM GMT+00:00

4



## IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| vs. | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

### Summons in Civil Case

The State of Missouri to: RON HOLT

1100 WALNUT ST STE 2900
KANSAS CITY, MO 64106

**PRIVATE PROCESS SERVER**

*COURT SEAL OF*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

05-NOV-2013
Date _____ Clerk

*JACKSON COUNTY*

Further Information:

### Sheriff's or Server's Return

Note to serving officer: Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☑ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____ (title).

☐ other _____

Served at 1100 Walnut St. Ste. 2900 Kansas City, Mo 64106 (address)

in Jackson (County/City of St. Louis), MO, on 11/12/13 (date) at 10:24 A.M. (time).

Nathaniel Scott
Printed Name of Sheriff or Server _____ Signature of Sheriff or Server

My Commission Expires
February 24, 2017
Jackson County
Commission #13492192

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on 11-25-13 (date).

My commission expires 2-24-17 _____
Date _____ Notary Public

NOTARY PUBLIC
SEAL (Seal)

**Sheriff's Fees**

| | | |
|---|---|---|
| Summons | $ _____ | |
| Non Est | $ _____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $ 10.00 | |
| Mileage | $ _____ | ( _____ miles @ $ _____ per mile) |
| Total | $ _____ | |

A copy of the summons and a copy of the petition must be served on each Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (7-08) SM30 (JAKSMCC) *For Court Use Only:* Document Id # 13-SMCC-10295    1 of 1    Civil Procedure Form No. 1, Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:13-cv-01195-BP   Document 1-1   Filed 12/11/13   Page 26 of 33

Case 4:14-cv-00885-BP    Document 1-1    Filed 10/08/14    Page 98 of 398

# AFFIDAVIT OF SERVICE

State of Missouri           County of Jackson           Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on Ron Holt, 1100 Walnut Street, Suite 2900, Kansas City, MO 64106.

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the 12th day of November, 2013 at 10:24 am, I:

INDIVIDUALLY SERVED the within named person with a true copy of this Summons in Civil Case; Petition for Damages; Designation of Lead Councel; and Motion and Order for Private Process Server at the address of 1100 Walnut Street, Suite 2900, Kansas City, MO 64106.

I am over the age of eighteen, and have no interest in the above action.

**CERTIFIED COPY**

I certify that the foregoing document is a full, true and complete copy of the original on file in my office and of which I am legal custodian.
Jeffrey A. Eisenbeis
Court Administrator
Circuit Court of Jackson County, Missouri

**11-Dec-2013** By _____
Deputy

Subscribed and Sworn to before me on the 13 day of
November 13 by the affiant who is personally
known to me

_____
NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192
Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5h

_____
**NATHANIEL SCOTT**
Process Server

HPS Process Service & Investigations, Inc.
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559
Our Job Serial Number: HAT-2013022598
Ref: 23376

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:18 AM

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM
Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| vs. | |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: MISSION GROUP KANSAS INC
DBA: WRIGHT CAREER COLLEGE

RA: CAPITOL CORPORATE
SERVICES INC
700 SW JACKSON ST STE 100
TOPEKA, KS 66603

**COURT SEAL OF**

**JACKSON COUNTY**

## PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

05-NOV-2013
Date                                Clerk

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _Private Process Server_ of _Jackson_ County, _Missouri_ (state).
3. I have served the above summons by: (check one)
   ☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   ☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____ a person of the Defendant's/Respondent's family over the age of 15 years.
   ☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to
   _Ann Foster_ (name) _Regional Representative_ (title).
   ☐ other (describe)
   Served at _700 SW Jackson St. Ste.100 Topeka KS 66603_ (address)
   in _Shawnee_ County, _Kansas_ (state), on _11-19-13_ (date) at _3:39 PM_ (time).
   _Nathaniel Scott_                          _____
   Printed Name of Sheriff or Server          Signature of Sheriff or Server

Subscribed and Sworn To me before this _13_ (day) _November_ (month) _13_ (year)
☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons.
☑ authorized to administer oaths. (use for court-appointed server)
(use for out-of-state officer)
_____
Signature and Title

A. MOODY
My Commission Expires
February 24, 2017
Jackson County
Commission #13452102

NOTARY PUBLIC
SEAL

Service Fees, if applicable
Summons        $ _____
Non Est        $ _____
Mileage        $ _____ ( _____ miles @ $ _____ per mile)
Total          $ _____

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 13-SMOS-1265  1 of 2       (1316-CV27529)      Rules 54.06, 54.07, 54.14, 54 20;
506.500, 506.510 RSMo

# AFFIDAVIT OF SERVICE

State of Missouri                  County of Jackson                  Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on Mission Group Kansas Inc., d/b/a Wright Career College, Registered Agent: Capital Corporate Services Inc., 700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the 12th day of November, 2013 at 3:39 pm, I:

Served the within named with a true copy of the **Summons for Personal Service Outside the State of Missouri (Exept Attachment Action); Petition for Damages; and Designation of Lead Councel** by leaving with Regional Representative, Ann Foster, at 700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.

I am over the age of eighteen, and have no interest in the above action.

CERTIFIED COPY
I certify that the foregoing document is a full, true and complete copy of the original on file in my office and of which I am legal custodian.
Jeffrey A. Eisenheis
Court Administrator
Circuit Court of Jackson County, Missouri
11-Dec-2013 by _____
Deputy

Subscribed and Sworn to before me on the ___ day of _____ by the affiant who is personally known to me.

_____
NOTARY PUBLIC

A. MOORE
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

_____
NATHANIEL SCOTT
Process Server

HPS Process Service & Investigations, Inc.
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559
Our Job Serial Number: HAT-2013022784
Ref: 23376

Copyright © 1992-2011 Database Services, Inc - Process Server's Toolbox V6.5h

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM    Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM



### IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division:<br>KENNETH R GARRETT III | Case Number: 1316-CV27529 |
|---|---|
| Plaintiff/Petitioner:<br>STEFANIE AYALA<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>ANDREW K SMITH<br>221 W LEXINGTON SUITE 400<br>INDEPENDENCE, MO 64051 |
| Defendant/Respondent:<br>MISSION GROUP KANSAS INC<br>DBA: WRIGHT CAREER COLLEGE | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

#### Summons for Personal Service Outside the State of Missouri
#### (Except Attachment Action)

The State of Missouri to: BOARD OF DIRECTORS OF MISSION GROUP KANSAS INC

RA: CAPITOL CORPORATE
SERVICES INC
700 SW JACKSON ST STE 100
TOPEKA, KS 66603

COURT SEAL OF

JACKSON COUNTY

## PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this petition.

05-NOV-2013
Date

Further Information:

Clerk

#### Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _Private Process Server_ of _Jackson_ County, _Missouri_ (state).
3. I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
☑ (for service on a corporation) delivering a copy of the summons and a copy of the petition to _Ann Foster_ (name) _Regional Representative_ (title).
☐ other (describe)

Served at _700 SW Jackson St. Ste. 100 Topeka, KS 66603_ (address)
in _Shawnee_ County, _Kansas_ (state), on _11-12-13_ (date) at _3:39 PM_ (time).

_Nathaniel Scott_                                    _[signature]_
Printed Name of Sheriff or Server                    Signature of Sheriff or Server

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

Subscribed and Sworn To me before this _13_ (day) _NOVEMBER_ (month) _13_ (year)

☐ the clerk of the court of which affiant is an officer.
☐ the judge of the court of which affiant is an officer.
☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
☑ authorized to administer oaths. (use for court-appointed server)

_[signature]_ Notary Public
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $ |
| Non Est | $ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 13-SMOS-1266  1 of 2      (1316-CV27529)          Rules 54.06, 54.07, 54.14, 54.20;<br>506.500, 506.510 RSMo

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM

# AFFIDAVIT OF SERVICE

State of Missouri        County of Jackson        Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.

Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on **Board of Directors of Mission Group Kansas Inc., Registered Agent: Capital Corporate Services Inc, 700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.**

I, NATHANIEL SCOTT, being duly sworn, depose and say that on the **12th day of November, 2013 at 3:39 pm,** I:

Served the within named with a true copy of the **Summons for Personal Service Outside the State of Missouri (Execpt Attachment Actions); Petition for Damages; and Designation of Lead Councel** by leaving with Regional Representative, Ann Foster, at 700 Southwest Jackson Street, Suite 100, Topeka, KS 66603.

I am over the age of eighteen, and have no interest in the above action.

**CERTIFIED COPY**
I certify that the foregoing document is a full,
true and complete copy of the original on file
in my office and of which I am legal custodian.
Jeffrey A. Eisenheis
Court Administrator
Circuit Court of Jackson County, Missouri
**11-Dec-2013** by _____
Deputy

Subscribed and Sworn to before me on the 13 day of
November _____ by the affiant who is personally
known to me.

_____
NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13452192

NATHANIEL SCOTT
Process Server

HPS Process Service & Investigations, Inc.
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559
Our Job Serial Number: HAT-2013022785
Ref: 23376

Copyright © 1992-2011 Database Services, Inc. - Process Server's Toolbox V6.5h

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - November 25, 2013 - 11:16 AM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| Judge or Division: | Case Number: 1316-CV27529 |
|---|---|
| KENNETH R GARRETT III | |
| Plaintiff/Petitioner: | Plaintiff's/Petitioner's Attorney/Address: |
| STEFANIE AYALA | ANDREW K SMITH |
| | 221 W LEXINGTON SUITE 400 |
| vs. | INDEPENDENCE, MO 64051 |
| Defendant/Respondent: | Court Address: |
| MISSION GROUP KANSAS INC | 308 W Kansas |
| DBA: WRIGHT CAREER COLLEGE | INDEPENDENCE, MO 64050 |
| Nature of Suit: | |
| CC Breach of Contract | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to: JOHN MUCCI

10720 METCALF AVE
OVERLAND PARK, KS 66210

**COURT SEAL OF**

**JACKSON COUNTY**

## PRIVATE PROCESS SERVER

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the Plaintiff/Petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

05-NOV-2013
Date _____ Clerk

Further Information:

## Officer's or Server's Affidavit of Service

I certify that:
1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above summons by: (check one)
   - [X] delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.
   - [ ] leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with _____, a person of the Defendant's/Respondent's family over the age of 15 years.
   - [ ] (for service on a corporation) delivering a copy of the summons and a copy of the petition to _____ (name) _____ (title).
   - [ ] other (describe) _____

Served at 10720 Metcalf OP _____ (address)
In Johnson County, KANSAS (state), on 11-18-13 (date) at 15:54 (time).

Jerry Wooten
Printed Name of Sheriff or Server _____ Signature of Sheriff or Server

Subscribed and Sworn To me before this 22 (day) NOV (month) 13 (year)

I am: (check one)
- [ ] the clerk of the court of which affiant is an officer.
- [ ] the judge of the court of which affiant is an officer.
- [ ] authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
- [X] authorized to administer oaths. (use for court-appointed server)

A. NOON
My Commission Expires
February 24, 2017
Jackson County
Commission #13462102

_____ Notary Public
Signature and Title

| Service Fees, if applicable | |
|---|---|
| Summons | $ _____ |
| Non Est | $ _____ |
| Mileage | $ _____ ( _____ miles @ $ _____ per mile) |
| Total | $ _____ |

See the following page for directions to clerk and to officer making return on service of summons.

OSCA (7-04) SM60 (JAKSMOS) *For Court Use Only:* Document ID# 13-SMOS-1267  1 of 2    (1316-CV27529)

Rules 54.06, 54.07, 54.14, 54.20;
506.500, 506.510 RSMo

# AFFIDAVIT OF SERVICE

State of Missouri            County of Jackson           Circuit Court

Case Number: 1316CV27529

Plaintiff/Petitioner:
**STEFANIE AYALA**
vs.
Defendant/Respondent:
**MISSION GROUP KANSAS INC, d/b/a WRIGHT CAREER COLLEGE**

Received by HPS Process Service & Investigations, Inc. to be served on John Mucci, 10720 Metcalf Avenue, Overland Park, KS 66210.

I, JERRY WOOTEN, being duly sworn, depose and say that on the 12th day of November, 2013 at 3:34 pm, I:

INDIVIDUALLY SERVED the within named person with a true copy of this Summons in Civil Case; Petition for Damages; Designation of Lead Counsel; and Motion and Order for Private Process Server at the address of 10720 Metcalf Avenue, Overland Park, KS 66210.

I am over the age of eighteen, and have no interest in the above action.

**CERTIFIED COPY**
I certify that the foregoing document is a full,
true and complete copy of the original on file
in my office and of which I am legal custodian.
Jeffrey A. Eisenbeis
Court Administrator
Circuit Court of Jackson County, Missouri
**11-Dec-2013** By _____
Deputy

Subscribed and Sworn to before me on the _____ day of
_____ by the affiant who is personally
known to me

_____
NOTARY PUBLIC

A. MOON
My Commission Expires
February 24, 2017
Jackson County
Commission #18452192

_____
**JERRY WOOTEN**
Process Server

HPS Process Service & Investigations, Inc.
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559
Our Job Serial Number: HAT-2013022599
Ref: 23376

Copyright © 1992-2011 Database Service, Inc. - Process Server's Toolbox V6.5h

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA, et al. | ) |
| | ) |
| | ) Case No. 1316-CV27529 |
| Plaintiffs, | ) |
| | ) |
| vs. | ) W.D. Mo. Case No. 4:13-cv-1195 |
| | ) |
| MISSION GROUP KANSAS, INC., | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

### NOTICE OF FILING OF NOTICE OF REMOVAL

To:   Clerk, Circuit Court of the County of Jackson in Independence
      308 West Kansas
      Independence, MO 64050

      Attorney for Plaintiffs
      Kenneth B. McClain
      Andrew K. Smith
      Lauren E. McClain
      HUMPHREY, FARRINGTON & McCLAIN, P.C.
      221 W. Lexington, Suite 400
      P.O. Box 900
      Independence, MO 64050

PLEASE TAKE NOTICE that Defendants Mission Group Kansas, Inc., d/b/a Wright Career College; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants") on the 10th day of December, 2013, filed their **Joint Notice of Removal**, a copy of which is attached hereto, in the office of the Clerk of the United States District Court for the Western District of Missouri, Western Division. Pursuant to 28 U.S.C. § 1446(d), this Court shall proceed no further with this action, which has been removed to the United States District Court for the Western District of Missouri.

SLC-7105337-1

**EXHIBIT**
B

You are also advised that Defendants have filed a copy of this Notice with a copy of the Joint Notice of Removal attached with the Clerk of the Circuit Court of the County of Jackson, Missouri, in accordance with 28 U.S.C. § 1446(d).

Dated: December 11, 2013.          Respectfully submitted,

By:    /s/ Martin M. Loring
Martin M. Loring, Mo. #29712
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, Mo. #38774
Kyle P. Seelbach, Mo. #60382
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
kyle.seelbach@huschblackwell.com

Stacia G. Boden, Mo. #53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

*Attorneys for Mission Group Kansas, Inc.; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt.*

SLC-7105337-1

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 11th day of December, 2013, by first-class mail, postage prepaid to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050

_/s/ Martin M. Loring_____

SLC-7105337-1

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

STEFANIE AYALA, et al.                )
                                      )
                                      )
        Plaintiffs,                   )
                                      )
    vs.                               )    Case No. 4:13-CV-1195
                                      )
MISSION GROUP KANSAS, INC.,           )
    et al.                            )
                                      )
        Defendants.                   )

### DECLARATION OF JOHN L. MUCCI

I, John L. Mucci, declare as follows:

1.      I am employed by Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College") as the President. I base this declaration on my personal knowledge and upon my review of business records maintained by Wright Career College. I am competent to testify regarding the matters described within this declaration.

2.      Wright Career College is a corporation organized under the laws of Kansas. Presently, and at the time of the filing of the Petition in this case, the principal place of business and corporate headquarters of Wright Career College is located at 10720 Metcalf Avenue, Overland Park, KS. Wright Career College's officers and executives maintain their offices at the Overland Park corporate headquarters, and corporate decisions are made at this location. Wright Career College has no offices in Missouri.

3.      A document created in the normal course of its business by Wright Career College is a student's Ledger Card. This document reflects amounts charged to students for their education. The information included within a student's Ledger Card is inputted in the ordinary

SLC-7096562-1

EXHIBIT C

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

course of business at or near the time payments are made and deductions are taken by persons with knowledge of the payments and deductions. As the President, I have access to the student Ledger Cards for the Overland Park campus of Wright Career College.

4.      Attached hereto as Exhibit 1 is a true and accurate copy of the Ledger Card created and maintained for Plaintiff Christi Hampton. The Ledger Card attached as Exhibit 1 is a type of document that was created and kept in the ordinary course of business at the Overland Park campus of Wright Career College.

5.      The Ledger Card reflects that as of November 22, 2013, Plaintiff Christi Hampton Plaintiff Christi Hampton has been charged a total of $31,791.19 for her course of instruction at Wright Career College.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 9th day of December, 2013.

SLC-7096562-1

| | |
|---|---|
| **Student Name** Hampton, Christi | **Balance** $3,544.46 |
| **Address** 926 NE Swann Rd Apt B | **Student ID** 120849752 |
| Lees Summit, MO 64086 | **Current Status** Active |
| | **Program Version** AAS Medical Insurance Coding |
| | **Start Date** 9/17/2012 |
| | **LDA** 11/21/2013 |
| | **Graduation Date** 2/21/2014 |

| Date | Check/Ref | Enrollment | Term | Campus | Code | Pmt Per/Ay | Description | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| **WCC Overland Park** | | | | | | | | | | |
| **2012/09/17** | | | | | | | | | | |
| 9/24/2012 | Pell13006/FA 8580 | HA12094773 : AAS Medical Insur120917 | | KCI | | | Pell Grant 2012-13 | | 2,775.00 | (2,775.00) |
| 9/17/2012 | AUTO-092412 | HA12094773 : AAS Medical Insur120917 | | KCI | TUIT | | Tuition | 5,495.00 | | 2,720.00 |
| 9/17/2012 | AUTO-092412 | HA12094773 : AAS Medical Insur120917 | | KCI | BOOK | | Books | 896.63 | | 3,616.63 |
| 9/17/2012 | AUTO-092412 | HA12094773 : AAS Medical Insur120917 | | KCI | REG | | Enrollment Fee | 100.00 | | 3,716.63 |
| 9/17/2012 | AUTO-092412 | HA12094773 : AAS Medical Insur120917 | | KCI | LABF | | Lab Fee | 200.00 | | 3,916.63 |
| 9/17/2012 | AUTO-092412 | HA12094773 : AAS Medical Insur120917 | | KCI | ACTF | | Activity Fee | 75.00 | | 3,991.63 |
| 9/17/2012 | AUTO-092412 | HA12094773 : AAS Medical Insur120917 | | KCI | BKTAX | | Book Sales Tax | 77.56 | | 4,069.19 |
| 10/19/2012 | EFT11172/FA 9124 | HA12094773 : AAS Medical Insur120917 | | KCI | | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | 2,584.19 |
| 10/19/2012 | EFT11172/FA 9123 | HA12094773 : AAS Medical Insur120917 | | KCI | | | Direct Subsidized Loan 2012-13 | | 867.00 | 1,717.19 |
| 11/26/2012 | EFT11222/FA 9644 | HA12094773 : AAS Medical Insur120917 | | KCI | | | Direct Subsidized Loan 2012-13 | | 867.00 | 850.19 |
| 11/26/2012 | EFT11222/FA 9645 | HA12094773 : AAS Medical Insur120917 | | KCI | | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | (634.81) |
| 11/29/2012 | 54158 | HA12094773 : AAS Medical Insur120917 | | KCI | | | Stipend – DL-UNSUB 2012-13 | | (634.81) | 0.00 |
| | | | | | | | **2012/09/17 Totals:** | **$6,844.19** | **$6,844.19** | |
| **2012/12/31** | | | | | | | | | | |
| 12/24/2012 | EFT11260/FA 10025 | HA12094773 : AAS Medical Insur121231 | | KCI | | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | (1,485.00) |
| 12/24/2012 | Pell13144/FA 10026 | HA12094773 : AAS Medical Insur121231 | | KCI | | | Pell Grant 2012-13 | | 2,775.00 | (4,260.00) |
| 12/24/2012 | EFT11260/FA 10024 | HA12094773 : AAS Medical Insur121231 | | KCI | | | Direct Subsidized Loan 2012-13 | | 867.00 | (5,127.00) |
| 12/31/2012 | AUTO-010713 | HA12094773 : AAS Medical Insur121231 | | KCI | TUIT | | Tuition | 5,495.00 | | 368.00 |
| 12/31/2012 | AUTO-010713 | HA12094773 : AAS Medical Insur121231 | | KCI | BOOK | | Books | 357.32 | | 725.32 |

Wright     er College

EXHIBIT
1
tabbies

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Student Name  Hampton, Christi

| Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 12/31/2012 | AUTO-010713 | HA12094773 : AAS Medical Insur121231 | KCI | REG | Enrollment Fee | 50.00 | | 775.32 |
| 12/31/2012 | AUTO-010713 | HA12094773 : AAS Medical Insur121231 | KCI | LABF | Lab Fee | 200.00 | | 975.32 |
| 12/31/2012 | AUTO-010713 | HA12094773 : AAS Medical Insur121231 | KCI | ACTF | Activity Fee | 75.00 | | 1,050.32 |
| 12/31/2012 | AUTO-010713 | HA12094773 : AAS Medical Insur121231 | KCI | BKTAX | Book Sales Tax | 30.91 | | 1,081.23 |
| 3/5/2013 | 11329/FA10799 | HA12094773 : AAS Medical Insur121231 | KCI | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | (403.77) |
| 3/5/2013 | EFT11329/FA 10798 | HA12094773 : AAS Medical Insur121231 | KCI | | Direct Subsidized Loan 2012-13 | | 867.00 | (1,270.77) |
| 3/15/2013 | 54393 | HA12094773 : AAS Medical Insur121231 | KCI | | Stipend – DL-UNSUB 2012-13 | | (1,270.77) | 0.00 |
| | | | | | **2012/12/31 Totals:** | **$6,208.23** | **$6,208.23** | |

**2013/04/15**

| Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 4/8/2013 | EFT11364/FA 11250 | HA12094773 : AAS Medical Insur130415 | KCI | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | (1,485.00) |
| 4/8/2013 | EFT11364/FA 11249 | HA12094773 : AAS Medical Insur130415 | KCI | | Direct Subsidized Loan 2012-13 | | 867.00 | (2,352.00) |
| 4/15/2013 | AUTO-042913 | HA12094773 : AAS Medical Insur130415 | KCI | TUIT | Tuition | 5,495.00 | | 3,143.00 |
| 4/15/2013 | AUTO-042913 | HA12094773 : AAS Medical Insur130415 | KCI | BOOK | Books | 535.21 | | 3,678.21 |
| 4/15/2013 | AUTO-042913 | HA12094773 : AAS Medical Insur130415 | KCI | REG | Enrollment Fee | 50.00 | | 3,728.21 |
| 4/15/2013 | AUTO-042913 | HA12094773 : AAS Medical Insur130415 | KCI | LABF | Lab Fee | 200.00 | | 3,928.21 |
| 4/15/2013 | AUTO-042913 | HA12094773 : AAS Medical Insur130415 | KCI | ACTF | Activity Fee | 75.00 | | 4,003.21 |
| 4/15/2013 | AUTO-042913 | HA12094773 : AAS Medical Insur130415 | KCI | BKTAX | Book Sales Tax | 46.30 | | 4,049.51 |
| 5/6/2013 | EFT11404/FA 11613 | HA12094773 : AAS Medical Insur130415 | KCI | | Direct Subsidized Loan 2012-13 | | 867.00 | 3,182.51 |
| 5/6/2013 | EFT11404/FA 11614 | HA12094773 : AAS Medical Insur130415 | KCI | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | 1,697.51 |
| 7/19/2013 | Pell13704/FA 12470 | HA12094773 : AAS Medical Insur130415 | KCI | | Pell Grant 2013-14 | | 2,823.00 | (1,125.49) |
| 7/23/2013 | 54622 | HA12094773 : AAS Medical Insur130415 | KCI | | Stipend – DL-UNSUB 2012-13 | | (1,125.49) | 0.00 |
| | | | | | **2013/04/15 Totals:** | **$6,401.51** | **$6,401.51** | |

**2013/07/29**

| Date | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 7/22/2013 | EFT11556/FA 12572 | HA12094773 : AAS Medical Insur130729 | KCI | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | (1,485.00) |
| 7/23/2013 | Pell13711/FA 12565 | HA12094773 : AAS Medical Insur130729 | KCI | | Pell Grant 2013-14 | | 2,822.00 | (4,307.00) |
| 7/29/2013 | | HA12094773 : AAS Medical Insur130729 | KCI | TUIT | Tuition | 5,495.00 | | 1,188.00 |
| 7/29/2013 | | HA12094773 : AAS Medical Insur130729 | KCI | REG | Enrollment Fee | 50.00 | | 1,238.00 |
| 7/29/2013 | | HA12094773 : AAS Medical Insur130729 | KCI | ACTF | Activity Fee | 75.00 | | 1,313.00 |
| 7/29/2013 | | HA12094773 : AAS Medical Insur130729 | KCI | TECH2 | Tech / Resource Fee | 200.00 | | 1,513.00 |

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Ledger Card                                                                                              11/22/2013
                                                                                                         1:53:19PM

Student Name **Hampton, Christi**

| Date | | | | | | | Amount | | Balance |
|------|---|---|---|---|---|---|---|---|---|
| 7/29/2013 | | HA12094773 : AAS Medical Insur130729 | KCI | BOOK | | Books | 344.04 | | 1,857.04 |
| 7/29/2013 | | HA12094773 : AAS Medical Insur130729 | KCI | BKTAX | | Book Sales Tax | 29.76 | | 1,886.80 |
| 8/9/2013 | DL11591/FA 12743 | HA12094773 : AAS Medical Insur130729 | KCI | | | Direct Subsidized Loan 2013-14 | | 1,114.00 | 772.80 |
| 9/16/2013 | DL11652/FA 13424 | HA12094773 : AAS Medical Insur130729 | KCI | | | Direct Subsidized Loan 2013-14 | | 1,114.00 | (341.20) |
| 9/30/2013 | DL11668/FA 13766 | HA12094773 : AAS Medical Insur130729 | KCI | | | Direct Unsubsidized Loan 2012-13 | | 1,485.00 | (1,826.20) |
| 10/11/2013 | 54811/2013-10-11 | HA12094773 : AAS Medical Insur130729 | KCI | | | Stipend – DL-UNSUB 2012-13 | | (1,826.20) | 0.00 |
| | | | | | | **2013/07/29 Totals:** | **$6,193.80** | **$6,193.80** | |

**2013/11/11**

| Date | | | | | | | Amount | | Balance |
|------|---|---|---|---|---|---|---|---|---|
| 11/4/2013 | DL14352/FA 14352 | HA12094773 : AAS Medical Insur131111 | KCI | | | Direct Subsidized Loan 2013-14 | | 1,114.00 | (1,114.00) |
| 11/4/2013 | DL11710/FA 14353 | HA12094773 : AAS Medical Insur131111 | KCI | | | Direct Unsubsidized Loan 2013-14 | | 1,485.00 | (2,599.00) |
| 11/11/2013 | AUTO-112213 | HA12094773 : AAS Medical Insur131111 | KCI | TUIT | | Tuition | 5,495.00 | | 2,896.00 |
| 11/11/2013 | AUTO-112213 | HA12094773 : AAS Medical Insur131111 | KCI | BOOK | | Books | 298.12 | | 3,194.12 |
| 11/11/2013 | AUTO-112213 | HA12094773 : AAS Medical Insur131111 | KCI | REG | | Enrollment Fee | 50.00 | | 3,244.12 |
| 11/11/2013 | AUTO-112213 | HA12094773 : AAS Medical Insur131111 | KCI | LABF | | Lab Fee | 200.00 | | 3,444.12 |
| 11/11/2013 | AUTO-112213 | HA12094773 : AAS Medical Insur131111 | KCI | ACTF | | Activity Fee | 75.00 | | 3,519.12 |
| 11/11/2013 | AUTO-112213 | HA12094773 : AAS Medical Insur131111 | KCI | BKTAX | | Book Sales Tax | 25.34 | | 3,544.46 |
| | | | | | | **2013/11/11 Totals:** | **$6,143.46** | **$2,599.00** | |
| | | | | | | **WCC Overland Park Totals:** | **$31,791.19** | **$28,246.73** | |

Wright Career College                                                                                    Page 3 of 7

Student Name  Hampton, Christi

| Term: | 120917 | | | | |
|---|---|---|---|---|---|
| Code | Course Description | Section | Credits Hours | Bill Code | Charge |
| HIM1030 | Insurance Coding I | EL12 | 3.00 | ACTF | $18.75 |
| HIM1030 | Insurance Coding I | EL12 | 3.00 | BKTAX | $19.39 |
| HIM1030 | Insurance Coding I | EL12 | 3.00 | REG | $25.00 |
| HIM1030 | Insurance Coding I | EL12 | 3.00 | LABF | $50.00 |
| HIM1030 | Insurance Coding I | EL12 | 3.00 | BOOK | $224.16 |
| HIM1030 | Insurance Coding I | EL12 | 3.00 | TUIT | $1,373.75 |
| MAT1010 | Introduction to Mathematics | E4 | 3.00 | ACTF | $18.75 |
| MAT1010 | Introduction to Mathematics | E4 | 3.00 | BKTAX | $19.39 |
| MAT1010 | Introduction to Mathematics | E4 | 3.00 | REG | $25.00 |
| MAT1010 | Introduction to Mathematics | E4 | -3.00 | LABF | $50.00 |
| MAT1010 | Introduction to Mathematics | E4 | 3.00 | BOOK | $224.16 |
| MAT1010 | Introduction to Mathematics | E4 | 3.00 | TUIT | $1,373.75 |
| MED1012 | Anatomy, Physiology and Terminology I | E5 | 3.00 | ACTF | $18.75 |
| MED1012 | Anatomy, Physiology and Terminology I | E5 | 3.00 | BKTAX | $19.39 |
| MED1012 | Anatomy, Physiology and Terminology I | E5 | 3.00 | REG | $25.00 |
| MED1012 | Anatomy, Physiology and Terminology I | E5 | 3.00 | LABF | $50.00 |
| MED1012 | Anatomy, Physiology and Terminology I | E5 | 3.00 | BOOK | $224.16 |
| MED1012 | Anatomy, Physiology and Terminology I | E5 | 3.00 | TUIT | $1,373.75 |
| SSC1010 | Critical Thinking and Learning Strategies | E3 | 3.00 | ACTF | $18.75 |
| SSC1010 | Critical Thinking and Learning Strategies | E3 | 3.00 | BKTAX | $19.39 |
| SSC1010 | Critical Thinking and Learning Strategies | E3 | 3.00 | REG | $25.00 |
| SSC1010 | Critical Thinking and Learning Strategies | E3 | 3.00 | LABF | $50.00 |
| SSC1010 | Critical Thinking and Learning Strategies | E3 | 3.00 | BOOK | $224.16 |
| SSC1010 | Critical Thinking and Learning Strategies | E3 | 3.00 | TUIT | $1,373.75 |
| Term: | 121231 | | | | |
| Code | Course Description | Section | Credits Hours | Bill Code | Charge |
| CIS1010 | Computer Applications I | E4 | 3.00 | BKTAX | $7.73 |
| CIS1010 | Computer Applications I | E4 | 3.00 | ACTF | $18.75 |
| CIS1010 | Computer Applications I | E4 | 3.00 | REG | $25.00 |
| CIS1010 | Computer Applications I | E4 | 3.00 | LABF | $50.00 |
| CIS1010 | Computer Applications I | E4 | 3.00 | BOOK | $89.33 |
| CIS1010 | Computer Applications I | E4 | 3.00 | TUIT | $1,373.75 |
| HIM2030 | Insurance Coding II | EL12 | 3.00 | BKTAX | $7.73 |
| HIM2030 | Insurance Coding II | EL12 | 3.00 | ACTF | $18.75 |

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Student Name  Hampton, Christi

| Code | Course Description | Section | Credits Hours | Bill Code | Charge |
|------|--------------------|---------|---------------|-----------|--------|
| HIM2030 | Insurance Coding II | EL12 | 3.00 | REG | $25.00 |
| HIM2030 | Insurance Coding II | EL12 | 3.00 | LABF | $50.00 |
| HIM2030 | Insurance Coding II | EL12 | 3.00 | BOOK | $89.33 |
| HIM2030 | Insurance Coding II | EL12 | 3.00 | TUIT | $1,373.75 |
| HIS1010 | US History Pre Reconstruction | E5 | 3.00 | BKTAX | $7.73 |
| HIS1010 | US History Pre Reconstruction | E5 | 3.00 | ACTF | $18.75 |
| HIS1010 | US History Pre Reconstruction | E5 | 3.00 | REG | $25.00 |
| HIS1010 | US History Pre Reconstruction | E5 | 3.00 | LABF | $50.00 |
| HIS1010 | US History Pre Reconstruction | E5 | 3.00 | BOOK | $89.33 |
| HIS1010 | US History Pre Reconstruction | E5 | 3.00 | TUIT | $1,373.75 |
| MED1014 | Anatomy, Physiology and Terminology II | E3 | 3.00 | BKTAX | $7.73 |
| MED1014 | Anatomy, Physiology and Terminology II | E3 | 3.00 | ACTF | $18.75 |
| MED1014 | Anatomy, Physiology and Terminology II | E3 | 3.00 | REG | $25.00 |
| MED1014 | Anatomy, Physiology and Terminology II | E3 | 3.00 | LABF | $50.00 |
| MED1014 | Anatomy, Physiology and Terminology II | E3 | 3.00 | BOOK | $89.33 |
| MED1014 | Anatomy, Physiology and Terminology II | E3 | 3.00 | TUIT | $1,373.75 |

Term:     130415

| Code | Course Description | Section | Credits Hours | Bill Code | Charge |
|------|--------------------|---------|---------------|-----------|--------|
| BIO1010 | Introduction to Biology | EL12 | 3.00 | BKTAX | $7.35 |
| BIO1010 | Introduction to Biology | EL12 | 3.00 | REG | $12.50 |
| BIO1010 | Introduction to Biology | EL12 | 3.00 | ACTF | $18.75 |
| BIO1010 | Introduction to Biology | EL12 | 3.00 | LABF | $50.00 |
| BIO1010 | Introduction to Biology | EL12 | 3.00 | BOOK | $84.93 |
| BIO1010 | Introduction to Biology | EL12 | 3.00 | TUIT | $1,373.75 |
| COM1010 | Professional Communication | E3 | 3.00 | BKTAX | $7.35 |
| COM1010 | Professional Communication | E3 | 3.00 | REG | $12.50 |
| COM1010 | Professional Communication | E3 | 3.00 | ACTF | $18.75 |
| COM1010 | Professional Communication | E3 | 3.00 | LABF | $50.00 |
| COM1010 | Professional Communication | E3 | 3.00 | BOOK | $84.93 |
| COM1010 | Professional Communication | E3 | 3.00 | TUIT | $1,373.75 |
| HIM2010 | Health Care Information and Management and Confid | E5 | 3.00 | BKTAX | $7.35 |
| HIM2010 | Health Care Information and Management and Confid | E5 | 3.00 | REG | $12.50 |
| HIM2010 | Health Care Information and Management and Confid | E5 | 3.00 | ACTF | $18.75 |
| HIM2010 | Health Care Information and Management and Confid | E5 | 3.00 | LABF | $50.00 |
| HIM2010 | Health Care Information and Management and Confid | E5 | 3.00 | BOOK | $84.93 |
| HIM2010 | Health Care Information and Management and Confid | E5 | 3.00 | TUIT | $1,373.75 |

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

**Student Name** Hampton, Christi

| Code | Course Description | Section | Credits Hours | Bill Code | Charge |
|------|--------------------|---------|---------------|-----------|--------|
| PSY1010 | Introduction to Psychology | E4 | 3.00 | BKTAX | $7.35 |
| PSY1010 | Introduction to Psychology | E4 | 3.00 | REG | $12.50 |
| PSY1010 | Introduction to Psychology | E4 | 3.00 | ACTF | $18.75 |
| PSY1010 | Introduction to Psychology | E4 | 3.00 | LABF | $50.00 |
| PSY1010 | Introduction to Psychology | E4 | 3.00 | BOOK | $84.93 |
| PSY1010 | Introduction to Psychology | E4 | 3.00 | TUIT | $1,373.75 |

Term: 131111

| Code | Course Description | Section | Credits Hours | Bill Code | Charge |
|------|--------------------|---------|---------------|-----------|--------|
| HIM1010 | Introduction to Transcription | E5 | 3.00 | BKTAX | $8.77 |
| HIM1010 | Introduction to Transcription | E5 | 3.00 | REG | $12.50 |
| HIM1010 | Introduction to Transcription | E5 | 3.00 | ACTF | $18.75 |
| HIM1010 | Introduction to Transcription | E5 | 3.00 | LABF | $50.00 |
| HIM1010 | Introduction to Transcription | E5 | 3.00 | BOOK | $101.34 |
| HIM1010 | Introduction to Transcription | E5 | 3.00 | TUIT | $1,373.75 |
| HIM1012 | Medical Information Management and Office Practices | E4 | 3.00 | BKTAX | $8.77 |
| HIM1012 | Medical Information Management and Office Practices | E4 | 3.00 | REG | $12.50 |
| HIM1012 | Medical Information Management and Office Practices | E4 | 3.00 | ACTF | $18.75 |
| HIM1012 | Medical Information Management and Office Practices | E4 | 3.00 | LABF | $50.00 |
| HIM1012 | Medical Information Management and Office Practices | E4 | 3.00 | BOOK | $101.34 |
| HIM1012 | Medical Information Management and Office Practices | E4 | 3.00 | TUIT | $1,373.75 |
| HIM2034 | Insurance Coding IV | EL23 | 3.00 | BKTAX | $8.77 |
| HIM2034 | Insurance Coding IV | EL23 | 3.00 | REG | $12.50 |
| HIM2034 | Insurance Coding IV | EL23 | 3.00 | ACTF | $18.75 |
| HIM2034 | Insurance Coding IV | EL23 | 3.00 | LABF | $50.00 |
| HIM2034 | Insurance Coding IV | EL23 | 3.00 | BOOK | $101.34 |
| HIM2034 | Insurance Coding IV | EL23 | 3.00 | TUIT | $1,373.75 |
| PDV2999 | Professional Development | E1 | 3.00 | BKTAX | $8.77 |
| PDV2999 | Professional Development | E1 | 3.00 | REG | $12.50 |
| PDV2999 | Professional Development | E1 | 3.00 | ACTF | $18.75 |
| PDV2999 | Professional Development | E1 | 3.00 | LABF | $50.00 |
| PDV2999 | Professional Development | E1 | 3.00 | BOOK | $101.34 |
| PDV2999 | Professional Development | E1 | 3.00 | TUIT | $1,373.75 |

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Student Name  Hampton, Christi

## Pending Charges and Discounts

| Description | Bill Code | Term | Amount | Type | Date |
|---|---|---|---|---|---|
| Tuition | TUIT | 130729 | $5,495.00 | | 7/22/2013 |
| Books | BOOK | 130729 | $505.20 | | 7/22/2013 |
| Enrollment Fee | REG | 130729 | $50.00 | | 7/22/2013 |
| Lab Fee | LABF | 130729 | $200.00 | | 7/22/2013 |
| Activity Fee | ACTF | 130729 | $75.00 | | 7/22/2013 |
| Book Sales Tax | BKTAX | 130729 | $43.70 | | 7/22/2013 |
| | Pending Charges and Discounts : | | $6,368.90 | | |

| | Student Balance + Pending Charges : | | $9,913.36 | | |

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

STEFANIE AYALA, et al.      )
                         )
                         )
      Plaintiffs,      )
                         )   Case No. __4:13-cv-1195__
      vs.               )
                         )
MISSION GROUP KANSAS, INC.,  )
  et al.                  )
                         )
      Defendants.     )

### DECLARATION OF STEPHEN BROWNE

I, Stephen Browne, declare as follows:

1.     I make this declaration based upon personal knowledge of the facts set forth herein. I am competent to testify regarding the matters described within this declaration.

2.     I have reviewed a copy of the Petition filed by the Plaintiffs in this matter. The Petition erroneously reflects my residential address as 800 West 47th Street in Kansas City, Missouri. My correct residential address is 13947 Meadow Circle, Leawood, Ks 66224. I have lived in the State of Kansas since 2001 and I consider myself to be a resident of the State of Kansas.

3.     I do not have a residence in Missouri nor did I have a residence in Missouri at the time the Petition was filed.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd  day of December, 2013.

_____
Stephen Browne

SLC-7099731-1

EXHIBIT
D

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

STEFANIE AYALA, et al.                )
                                      )
                                      )
            Plaintiffs,               )
                                      )
    vs.                               )    Case No. 4:13-cv-1195
                                      )
MISSION GROUP KANSAS, INC.,           )
    et al.                            )
                                      )
            Defendants.               )

## DECLARATION OF RON HOLT

I, Ron Holt, declare as follows:

1.      I make this declaration based upon personal knowledge of the facts set forth herein. I am competent to testify regarding the matters described within this declaration.

2.      I am a licensed attorney. I have been a member in good standing of the Missouri Bar since May 3, 1980, and I have been practicing law for more than 33 years. I obtained my law degree from Rutgers University School of Law-Camden in 1979. I am a partner with the law firm of Dunn & Davison, LLC, and I have been practicing law with that firm since July 2009.

3.      While my law office is in Jackson County, Missouri, specifically the Town Pavilion building located at 1100 Main Street, Kansas City, Missouri, I have never resided in Jackson County. Since January 1999, my family and I have resided in Platte County, Missouri, at 3119 NW 58th Terrace, Kansas City, Missouri.

4.      I have been a member of the board of directors for Mission Group Kansas, Inc. d/b/a Wright Career College ("WCC"), a Kansas non-profit, tax-exempt corporation, since 1997. On or about February 25, 2012, I was elected Secretary for WCC. I am not an employee of

SLC-7096564-1



EXHIBIT
E

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

WCC and have never been employed by WCC. Along with other outside directors of WCC, I receive an honorarium for my service as a board member, but I do not receive any separate honorarium for my additional role as Secretary.

5.  As a board member, my duties consist of attending and participating in board meetings and participating on several board committees. As Secretary, my duties consist of participating on the board's Executive Committee and, from time to time, attesting to resolutions of the board.

6.  I do not have communications with prospective WCC students during the enrollment process, nor am I present during the discussions between WCC employees and prospective or actual WCC students during the enrollment process.

7.  Specifically, I have not had any conversations with Plaintiffs Stefanie Ayala, Jennifer Decker, Christi Hampton, or Steven Jewsome at any time about anything, including, without limitation, their enrollment at WCC. I was not present during any meetings or communications they may have had with any representative of WCC; and I do not know any of the Plaintiffs.

8.  I do not have discussions with admission representatives employed at WCC, and I have not been involved in the hiring and/or training of admissions representatives. I have toured WCC's Overland Park campus, and it is possible that I might have met and greeted a WCC employee who is an admissions representative, but other than that I have had no personal contact with such employees.

9.  Subsequent to my receipt of service of process in this lawsuit, I reviewed a list of all WCC admissions representatives employed at the WCC Overland Park campus during 2011, 2012, and 2013. I do not know any of these individuals and have not met any of them. I do not

SLC-7096564-1

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

know which of the admissions representatives on the list had communications with the Plaintiffs in this lawsuit. I certainly played no role in their hiring or training, and any contact I may have had with them would be limited to a greeting in the hallway.

10. I am not aware of any "agreement and/or understanding" by anybody at WCC to use deceptive recruitment techniques at WCC. I have not been a part of any such agreement, and I have no knowledge of any representations that may have been made by any person to the Plaintiffs during the enrollment process.

11. I am generally aware that admissions representatives at WCC report to the Assistant Director of Admissions and/or the Director of Admissions at their respective campus. I am also aware that WCC employs a Corporate Director of Admissions. I played no role in the hiring or training of the individuals who served in these positions for WCC, and I have no knowledge of any communications that may have taken place between these individuals and the admission representatives who enrolled Plaintiffs regarding recruitment techniques.

12. I am also generally aware that decisions to hire or retain instructors at WCC are handled by the Academic Department. I have never been involved in such functions, and I have never assessed an applicant's suitability for a teaching position, nor am I qualified to make any such assessment. I have never had any involvement in the development of any of the curriculum at WCC.

13. I have reviewed a list of the instructors who taught Plaintiffs Stefanie Ayala, Jennifer Decker, Christi Hampton, and Steven Jewsome. I do not know any of these individuals, and, to the best of my knowledge, I have never met these individuals. I have no knowledge as to their credentials. I did not have and do not have any authority to hire or retain the instructors who taught courses taken by Plaintiffs Stefanie Ayala, Jennifer Decker, Christi Hampton, or

SLC-7096564-1

Steven Jewsome, and I never participated in any discussions about the qualifications of these instructors.

14.    From time to time, I have been retained by WCC in my role as a private attorney to provide legal advice to WCC on certain issues. In these instances, it is clearly understood and documented that I am acting as an outside lawyer and not as a board member or officer of WCC. The legal services I provided to WCC were solely for the benefit of WCC, and WCC was the only intended beneficiary.

15.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this ____ day of December, 2013.

Ron Holt

SLC-7096564-1

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Stefanie Ayala, Jennifer Decker, Christi Hampton, Steven Jewsome

### DEFENDANTS

Mission Group Kansas;Board of Directors of Mission Groups Kansas;John Mucci;Stephen Browne;Ron Holt

(b) County of Residence of First Listed Plaintiff    Jackson County, MO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Humphrey, Farrington & McClain, P.C.; 221 W. Lexington, Suite 400, Independence, MO 64050; 816-836-5050

Attorneys (If Known)

Husch Blackwell LLP; 4801 Main St., Suite 1000, Kansas City, MO 64112; 816-983-8000

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☒ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☒ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1441 and 1332
Brief description of cause:
Claims alleged for fraud in connection with enrollment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE                       DOCKET NUMBER

DATE
12/11/2013

SIGNATURE OF ATTORNEY OF RECORD
Sean Lussi

### FOR OFFICE USE ONLY

RECEIPT #         AMOUNT             APPLYING IFP           JUDGE           MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I. **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

Electronically Filed - Jackson - Independence - December 11, 2013 - 12:54 PM

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## OFFICE OF THE CLERK

Ann Thompson
Court Executive



Reply To:
400 E. 9th Street
Kansas City, MO 64106

**FILED**
DEPT. OF CIVIL RECORDS
COURT ADMINISTRATOR'S OFFICE

MAR 3 1 2014

CIRCUIT COURT OF JACKSON CO., MO.
BY _____ DCA

March 28, 2014

Jackson County Circuit Court
Case Initiation
415 E. 12th Street
Kansas City, MO 64106

RE:   **Ayala et al v. Mission Group Kansas, Inc. d/b/a Wright Career College et al**
      **Case Number: 4:13-cv-01195-BP**
      **Your Case No.: 1316-cv27529**

Dear Clerk:

The above case has been remanded to your Court pursuant to an Order by the Honorable Beth Phillips.   Pursuant to Federal Rules of Civil Procedure 28 § 1447 we are enclosing a certified copy of the order of remand.

Our court uses electronic case filing.   What this means is that we no longer have paper files and our "official court file" is on our electronic case filing web site.   The attorneys and court users file their documents electronically via the internet in accordance with our "General Order" and "Procedures Manual" which is posted on the same web site.

You may access the federal court's electronic case file at the following web address: http://ecf.mowd.uscourts.gov.   We have assigned a login and password for state courts to use in accessing this information.   The login is "Statecrt1" and the password is "Statecrt1". This login and password should not be shared with anyone other than state court personnel who would have a need to access our electronic case file system.   You will need Adobe Acrobat reader loaded on your computer in order to view the documents.

In order to assist you in accessing our electronic file, we have prepared and attached to this letter a step-by-step guide to get to our web site and how to access the electronic case file that is being remanded.   If you need assistance, please do not hesitate to call our office at 816/512-5000.

Sincerely,

/s/ Shelly McDowell

Shelly McDowell, Deputy Clerk

Enclosures as stated

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

STEFANIE AYALA, *et al.*,　　　　　)
　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　)　　Case No. 13-01195-CV-W-BP
　　　　　　　　　　　　　　　)
MISSION GROUP KANSAS, INC., *et al.*,　)
　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　)

## <u>ORDER</u>

This matter comes before the Court on Plaintiffs' Motion to Remand. (Doc. 9.) For the reasons set forth below, Plaintiffs' Motion will be **GRANTED**.

### I.　　Introduction

Plaintiffs originally field this suit in Missouri state court, and Defendants Mission Group Kansas, Inc. d/b/a Wright Career College ("WCC"), Board of Directors of Mission Group Kansas, Inc. ("Board of Directors"), John Mucci, Stephen Browne, and Ron Holt removed the case to this Court. Plaintiffs bring claims for fraudulent misrepresentation, negligent misrepresentation, negligent hiring and retention, civil conspiracy, violations of the Missouri Merchandising Practice Act ("MMPA"), and accounting. Plaintiffs seek actual, compensatory, and punitive damages, as well as fees and costs. Defendant "WCC" is a Kansas corporation with its principle place of business in Kansas. Defendants Board of Directors, Mucci, and Browne are citizens of Kansas. Defendant Holt and Plaintiffs are citizens of Missouri. Thus, on the face of the pleadings, this Court lacks subject-matter jurisdiction over this case, and Plaintiffs seek

***ECF DOCUMENT***

I hereby attest and certify this is a printed copy of a
document which was electronically filed with the United States
District Court for the Western District of Missouri.

Date Filed: _3-21-14_ ANN THOMPSON, CLERK

By: _S. McDowell_ , Deputy Clerk

remand for that reason.  However, Defendants argue this Court has diversity jurisdiction because Holt is fraudulently joined.[1]

## II.    Analysis

In challenging Plaintiffs' Motion, Defendants argue Holt is fraudulently joined because Plaintiffs fail to state viable claims against Holt.  Defendants further argue that the Court can consider Holt's affidavit, filed contemporaneously with the notice of removal, to determine that there is no factual or legal basis to support Plaintiffs' claims.  Defendants' arguments for fraudulent joinder depend on the Court looking beyond the pleadings and considering Holt's affidavit.  Thus, the Court must first determine whether it may consider Holt's affidavit in analyzing whether joinder is fraudulent.

While the Eighth Circuit has not ruled on this issue, district courts are split on when it is proper to consider affidavits in fraudulent joinder analysis.  Some courts have considered affidavits in determining whether joinder is fraudulent.  *See e.g., Grobe v. Vantage Credit Union,* 679 F. Supp. 2d 1020, 1026 (E.D. Mo. 2010) (citing several cases where the court considered affidavits and/or outside evidence to determine fraudulent joinder.); *Petersen v. Rusch, Inc.,* No. 4:05CV01328ERW, 2006 WL 83492, *2-*3 (E.D. Mo. 2006) (considering the affidavit of a non-diverse defendant to deny remand because affidavit denied involvement and was uncontradicted by plaintiff).  However, other district courts within the Eighth Circuit have determined that looking beyond the pleadings is not proper to assess fraudulent joinder.  For example, courts have held that the use of self-serving affidavits with conclusory denials of the allegations in the complaint was not enough to show fraudulent joinder.  *Mattress Warehousing, Inc. v. Power Mktg. Direct, Inc.,* No. 08-CV-141-LRR, 2009 WL 395162, *6 (N.D. Iowa Feb. 17, 2009).  Moreover, district courts have held that it was only appropriate to look beyond the pleadings for

---

[1] It is undisputed that the amount-in-controversy in this case exceeds $75,000.

Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 127 of 398

a motion to remand when the arguments go to whether the non-diverse defendant is a proper party to the action or "jurisdictional" facts, but not when the arguments go to the merits of a claim against the non-diverse defendant. *Wells' Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 157 F. Supp. 2d 1018, 1040-41 (N.D. Iowa 2001).

Here, it is not appropriate for the Court to look beyond the face of the pleadings to Holt's affidavit because it is both self-serving and goes to the merits of the claims against him. First, Holt's affidavit is submitted only to show he cannot be liable and is therefore fraudulently joined. Such an affidavit at the removal stage is self-serving in that it is proffered only to support Holt's dismissal from the suit. Plaintiffs should be allowed an opportunity to engage in discovery to establish whether Holt is liable, instead of having their claims against him dismissed based on Holt's self-serving affidavit. Additionally, in the event that Holt is dismissed from the case in the future, Defendants will have the opportunity to re-remove this case to federal court. *See* 28 U.S.C. § 1446(b). Second, Holt's affidavit goes only to the merits of the claims against him, specifically whether he had any contact with Plaintiffs, any knowledge of an alleged wrong, or participated in any alleged wrong. It does not go to show that he is an improper for purely jurisdictional reasons. Therefore, the Court concludes it may not consider Holt's affidavit, and it will instead look only to the face of the pleadings to determine whether joinder is fraudulent.

Federal courts are courts of limited jurisdiction, requiring either a federal question or complete diversity of citizenship to have subject-matter jurisdiction. 28 U.S.C. § 1441(b). However, "courts have long recognized fraudulent joinder as an exception to the complete diversity rule." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). Joinder is fraudulent when it is clear under governing state law that the complaint does not state a cause of action against a non-diverse defendant. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir.

Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 128 of 398

2003). However, if there is a reasonable basis for predicting that the state's law might impose liability against the non-diverse defendant, then joinder is not fraudulent. *Id.* at 811. Moreover, a court must resolve all doubts about federal jurisdiction in favor of remand. *In re Bus. Men's Assur. Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993).

Here, Plaintiffs' pleadings provide a reasonable basis for which state law might impose liability for the claims asserted against Holt. Defendants argue Plaintiffs' tort and MMPA claims fail to state a claim against him because he neither knew of nor participated in those alleged wrongs. Corporate officers such as Holt may be subject to individual liability for the torts of the corporation if they: (1) actually or constructively knew of the actionable wrong; and (2) participated in the actionable wrong. *See Grothe v. Helterbrand*, 946 S.W.2d 301, 304 (Mo. Ct. App. 1997). Plaintiffs' claims for fraudulent misrepresentation, negligent misrepresentation, negligent hiring and retention, and violations of the MMPA sufficiently plead that all Defendants knew of and participated in the alleged wrongs. Moreover, Plaintiffs specifically argue that Holt knew of and took part in these alleged wrongs by attending and participating in board meetings, and in doing so acted within the scope of his employment as secretary of WCC. Thus, there is a reasonable basis for predicting that Missouri law might impose liability against Holt for these claims.

Defendants also argue Plaintiffs fail to state claims for civil conspiracy and accounting against Holt. Specifically, they contend Plaintiffs fail to state a civil conspiracy claim because the underlying causes of actions (fraudulent misrepresentation, negligent misrepresentation, negligent hiring and retention) fail against Holt, and because a civil conspiracy cannot exist between a corporation and its agents. Further, Defendants assert that Plaintiffs' accounting claim fails against Holt because he was not in a fiduciary or trust relationship with them. Defendants'

4

Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 129 of 398

arguments primarily rest on the use of Holt's affidavit to draw these conclusions. However, as discussed, the Court will not consider the affidavit in this case, and has already determined that the tort and MMPA claims do not fail on the face of the pleadings. Moreover, "in situations where the sufficiency of the complaint against the non-diverse defendant is questionable, the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state courts to decide." *Filla*, 336 F.3d at 811 (internal quotation omitted). Thus, the Court declines to determine the merits of the civil conspiracy and accounting claims against Holt, and concludes he has not shown he is fraudulently joined. Because the parties are not diverse as a result, this Court does not have jurisdiction and remand is appropriate.[2]

### III. Conclusion

Accordingly, Plaintiffs' Motion to Remand, (Doc. 9), is **GRANTED**. Defendants' Motion to Dismiss, (Doc. 6), is **DENIED as moot**. This case is hereby **REMANDED** to the Circuit Court of Jackson County, Missouri (Independence).

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
UNITED STATES DISTRICT COURT

DATE: March 27, 2014

---

[2] Defendants also argue that Plaintiffs' claim for punitive damages must fail because it is not a cause of action in Missouri. Because the sufficiency of the complaint is questionable on this claim, the Court declines to rule on it and leaves its resolution to the state court. *See Filla*, 336 F.3d at 811.

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, ET AL,                )
                                       )
                    Plaintiff,         )
                                       )          Case No. 1316-CV27529
VS.                                    )
                                       )          Division No. 2
MISSION GROUP KANSAS, ET AL,           )
                                       )
                    Defendant.         )

## NOTICE OF HEARING

COMES NOW the Court and does hereby set the above cause for a **CASE MANAGEMENT CONFERENCE for MAY 19, 2014 at 8:30 a.m.** in Division 2, located on the 2nd floor of the Jackson County Courthouse Annex, 308 West Kansas, Independence, Missouri 64050.

**IT IS SO ORDERED.**

March 31, 2014

_____
Judge Kenneth R. Garrett, III
Division 2

Copies sent this date to all parties of record:

**Kurt McGuff, Law Clerk to the Honorable Kenneth R. Garrett, III, Division 2**

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

**COME NOW** Defendants Mission Group Kansas, Inc., d/b/a Wright Career College; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt, by their undersigned attorneys and hereby state that a copy of the following documents were served this 11th day of April, 2014, on the counsel named below via hand deliery:

1. Defendants' First Requests for Production of Documents to Plaintiff Stefanie Ayala;

2. Defendants' First Set of Interrogatories to Plaintiff Stefanie Ayala;

3. Defendants' First Requests for Production of Documents to Plaintiff Jennifer Decker;

4. Defendants' First Set of Interrogatories to Plaintiff Jennifer Decker;

5. Defendants' First Requests for Production of Documents to Plaintiff Christi Hampton;

6. Defendants' First Set of Interrogatories to Plaintiff Christi Hampton;

7. Defendants' First Requests for Production of Documents to Plaintiff Steven Jewsome;

8. Defendants' First Set of Interrogatories to Plaintiff Steven Jewsome.

SLC-7205138-1

Kenneth B. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050

*Attorney for Plaintiffs*


Date: April 11, 2014                          By: _____
                                              James F. Monafo, MO Bar # 38774
                                              Martin M. Loring, MO Bar # 29712
                                              Elizabeth A. Bozicevic, MO Bar # 59623
                                              HUSCH BLACKWELL LLP
                                              190 Carondelet Plaza, Suite 600
                                              St. Louis, Missouri 63105
                                              (314) 480-1500 (telephone)
                                              (314) 480-1505 (facsimile)
                                              jim.monafo@huschblackwell.com
                                              elizabeth.bozicevic@huschblackwell.com

                                              *Attorneys for Defendants*

SLC-7205138-1

Electronically Filed - Jackson - Independence - April 11, 2014 - 03:33 PM

Electronically Filed - Jackson - Independence - April 24, 2014 - 02:15 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 1316-CV27529 |
| | ) |
| MISSION GROUP KANSAS, INC., | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

### ENTRY OF APPEARANCE

COMES NOW Stacia G. Boden of Mission Group Kansas, Inc., and enters her appearance on behalf of Defendants Mission Group Kansas, Inc., d/b/a Wright Career College; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt, in the above-styled and numbered case.

Dated: April 24, 2014.            Respectfully submitted,


By:_____/s/ Stacia G. Boden_____

Martin M. Loring, MO Bar # 29712
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar # 59623
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Stacia G. Boden, MO Bar #53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

***Attorneys for Mission Group Kansas, Inc.; Board
of Directors of Mission Group Kansas, Inc.; John
Mucci; Stephen Browne; and Ron Holt.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 24th day of April, 2014, first-class mail to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050

_____ /s/ Stacia G. Boden _____

SLC-7215531-1

2

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College" or "WCC"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants"), come now and move this Court to dismiss Plaintiffs' Petition in its entirety.

### INTRODUCTION

Wright Career College is a non-profit education institution that provides education and training to students in several career-focused programs. Plaintiffs Stefanie Ayala, Jennifer Decker, Christi Hampton, and Steven Jewsome are Wright Career College students who allege that unnamed representatives of Wright Career College made unspecified representations to them that induced them to enroll. Plaintiffs allege that, due to that decision, they have incurred significant student loans in exchange for an education that they deem "worthless" because they believe it will not help them find future employment.

Plaintiffs' allegations fail to allege the basic "who, what, when, where, and how" of their fraud claims, which is required by Missouri Supreme Court Rule 55.15. As a result, Defendants are unable to conduct a proper examination into Plaintiffs' claims, not knowing which employee

SLC-7101184-5

1

is alleged to have committed fraud, what the alleged fraud exactly is, and when it was allegedly committed. This failure to plead with the particularity required by Rule 55.15 warrants dismissal of Plaintiffs' claims premised in fraud (Counts I, II, and V).

However, even if Plaintiffs could cure this undeniable deficiency in their pleadings, their claims still require dismissal. Although the allegations are vague, it is clear that Plaintiffs' true complaint is with the quality of their education – they believe that they were promised a better education than they believe they received. Missouri law does not recognize a cause of action – however styled – that requires a factfinder to determine whether or not an education received is of a certain quality. These "education malpractice" claims must be dismissed with prejudice.

Furthermore, Plaintiffs' remaining causes of action must be dismissed for the following additional reasons:

- Plaintiffs' MMPA claim (Count V) must be dismissed, because Plaintiffs' purchase of a career-focused education was not for personal, family, or household use, which is required by the statute;

- Plaintiffs' allege misrepresentations that are no more than opinions must be dismissed as not capable of supporting a fraud claim;

- Plaintiffs' negligent hiring/retention claim (Count III) must be dismissed, because Plaintiffs fail to allege Defendants' awareness of a "dangerous proclivity";

- Plaintiffs' civil conspiracy claim (Count IV) and punitive damages claim (Count VII) must be dismissed as neither is an independent cause of action under Missouri law; and

- Plaintiffs' accounting claim (Count VI) does not allege any elements of the cause of action and must be dismissed accordingly.

For these reasons, as more fully set forth below, Defendants ask that the Court grant Defendants' Motion to Dismiss.

## LEGAL STANDARD

"A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 306 (Mo. 1993). The petition should be reviewed "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action." Id. "The petition must allege facts to support each essential element of the cause to be pleaded." Bohac v. Walsh, 223 S.W.3d 858, 862 (Mo. Ct. App. 2007). Courts do not consider the petition's conclusions, and if the petition "does not contain the ultimate facts or any allegations from which to infer those facts, the petition may be dismissed for failure to state a claim." Id.

## ARGUMENT

**I.**     **Plaintiffs' Counts Premised In Fraud Should Be Dismissed Because They Fail To Plead With The Requisite Particularity.**

Plaintiffs' Petition merely pleads that at some time "in or around 2011," some unnamed employee of WCC made one or more of ten misrepresentations to one or more of the four Plaintiffs, and that Plaintiffs could remember additional misrepresentations at some point prior to trial. The Petition then makes the conclusory allegations that Defendants knew the alleged unidentified misrepresentations were false, and that Plaintiffs relied on the misrepresentations to their detriment.

Plaintiffs' Petition falls well short of meeting the heightened pleading standard required by Missouri Supreme Court Rule 55.15. Rule 55.15 requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus reaching all claims based in fraud, Rule 55.15's heightened pleading standard applies with equal force to Plaintiffs' claims for Fraudulent Misrepresentation (Count I), Negligent Misrepresentation (Count II), and statutory fraud under the Missouri Merchandising Practices

3

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

Act (MMPA) (Count V). See Mattingly v. Medtronic, Inc., 466 F. Supp. 2d 1170, 1173–74 (E.D. Mo. 2006) (dismissing plaintiff's claims for fraudulent misrepresentations and violation of MMPA because neither were plead with particularity); Baryo v. Philip Morris USA, Inc., 435 F. Supp. 2d 961, 968 (W.D. Mo. 2006) ("[F]raudulent conduct of some sort is an element of Plaintiffs' MMPA claims and must be pleaded with particularity."); In re Bisphenol-A Polycarbonate Plastic Prods. Liab. Litig., 687 F. Supp. 2d 897, 903-04 (W.D. Mo. 2009) (dismissing negligent misrepresentation claim for failure to adequately plead with particularity).

To comply with Rule 55.15, a plaintiff "must state the circumstances of *each element of fraud* with particularity." Bohac, 223 S.W.3d at 863 (emphasis added). "The fraud must clearly appear from the facts alleged and be independent of conclusions." Id. "If the petition does not comply with Rule 55.15, no claim is stated. . . . If any essential element of fraud is not properly pleaded, the petition is fatally defective and subject to dismissal." Id. See also Green v. Green, 606 S.W.2d 395, 398 (Mo. Ct. App. 1980) ("If fraud is to be charged, it is necessary that the same be made to appear from allegations of fact actually constituting the fraud independently of [legal] conclusions.").

Ignoring the clear requirements of Rule 55.15, Plaintiffs fail to allege their fraud claims with specific facts. In a case involving similar allegations, the District Court for the Eastern District of Missouri held that such generalized allegations were insufficient to allege a claim for common-law or statutory fraud. Blake v. Career Educ. Corp., 2009 WL 140742, at *3 (E.D. Mo. Jan. 20, 2009) ("Blake I"). Like the present case, the plaintiffs in Blake I were former students who alleged that they were deceived into attending the defendants' school. Id. at *1. Finding that the plaintiffs must identify the "who, what, where, when, and how of the alleged fraud," the court held that the plaintiffs were required to plead the following:

4

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

(1) which particular admissions representative made each of the alleged
fraudulent misrepresentations to each of the named Plaintiffs;

(2) the content of each of the alleged fraudulent misrepresentations;

(3) at which campus each of the alleged fraudulent misrepresentations took place;

(4) the precise date on which each of the alleged fraudulent misrepresentations
was made by an admissions representative; and

(5) through what method each of the alleged fraudulent misrepresentations was
communicated by the admissions representative to the named Plaintiff.

Id. at *3. As the Blake I plaintiffs had not pled with this level of particularity, the court granted
the defendants' motion to dismiss. Id. See also Love v. Career Educ. Corp., 2012 WL 10614, at
*2 (E.D. Mo. Jan. 3, 2012) ("Love I") (finding complaint alleging MMPA and common law
fraud claims to be insufficiently pled when it did not detail (1) *who* made the representations; (2)
*when* any representation was made; (3) *where* the representation was made; and (4) *by whom* the
representations were made).

Likewise, Plaintiffs' Petition in the instant case is deficient in at least the following
respects:

**First**, Plaintiffs do not allege *who* made each alleged misrepresentation. The Petition's
bald reference to "WCC" or "Defendants" does not satisfy Rule 55.15 as the Petition does not
link any employee or agent to any specific representation. Under Rule 55.15, Plaintiffs must
allege who made each alleged misrepresentation to each Plaintiff. See Williams v. Belgrade
State Bank, 953 S.W.2d 187, 189 (Mo. Ct. App. 1997) (dismissing fraud claim for failure to
plead with specificity because the plaintiff's petition failed to state which of the defendant's
employees made representations and whether they had authority to do so); Hanrahan v. Nashua
Corp., 752 S.W.2d 878, 883-84 (Mo. Ct. App. 1988) (dismissing petition where plaintiffs did not
"state with particularity the circumstances under which the alleged misrepresentations were

5

made, nor what individuals made such representations and whether they had authority"). Absent such essential information, Defendants are deprived of the opportunity to prepare an effective defense. In fact, the Petition does not even allege that the individually named Defendants had any role in the enrollment process. To satisfy Rule 55.15, the Petition must allege who each Plaintiff claims defrauded him or her.

**Second**, each Plaintiff fails to allege *what* was said to him or her. The Petition contains ten alleged misrepresentations and eight general categories of alleged misrepresentations. It does not state whether all four Plaintiffs heard and were harmed by all of the misrepresentations. Each Plaintiff must allege which statement(s) form the basis of his or her fraud claims. Additionally, Paragraph 24 alleges categories of misrepresentations allegedly made by Defendants without alleging the specific misrepresentation made. For example, Plaintiffs allege that misrepresentations regarding "starting salary" were made, but do not allege what they claim those misrepresentations were. Rule 55.15 requires such detail. Blake I, 2009 WL 140742, at *3.

Furthermore, Plaintiffs may not be permitted to allege that additional misrepresentations were made that could be disclosed at trial. (Pet. at ¶¶ 18(k), 20(i)). Defendants are required to be on notice of what alleged misrepresentations Plaintiffs are claiming at the *pleading* stage, not the trial stage.

**Third**, each Plaintiff fails to allege *when* each alleged misrepresentation was made to him or her, stating merely that the fraudulent acts occurred "[i]n or around 2011." (Pet. at ¶ 18). An unstated time frame provides none of the particularity required by Rule 55.15. See Miller v. Ford Motor Co., 732 S.W.2d 564, 566 (Mo. Ct. App. 1987) (dismissing plaintiff's petition

6

because there was "nothing in the petition . . . to indicate when or under what circumstances the representations were made"); <u>Green</u>, 606 S.W.2d at 398 (same).

In this case, the time frame is critical, because if the statements were made to Plaintiffs *after* they enrolled in WCC as opposed to *before* they enrolled, then the statements could hardly have been an inducement for Plaintiffs to enroll. Without alleging *when* the alleged fraudulent statements were made, Defendants are unable to adequately investigate the truth or falsity of the allegations.

**Fourth**, each Plaintiff fails to allege *where* the representations were made. The Petition does not adequately state whether each alleged misrepresentation was made in person, in writing, via an advertisement (whether in print or on television), or in some other format. Such facts are necessary to permit Defendants to adequately respond to Plaintiffs' allegations and defend their claims.

**Fifth**, Plaintiffs fail to allege *how* a number of the alleged misrepresentations were false. No facts are pled as to how the alleged misrepresentations in Paragraphs 18(a), (d), (g), and (j), or Paragraphs 24(a), (b), (c), or (e) were false. For example, Plaintiffs plead that they were misled regarding job placement assistance, but there is no allegation that Plaintiffs were denied any such assistance. <u>See</u> <u>Arnold v. Erkmann</u>, 934 S.W.2d 621, 627 (Mo. Ct. App. 1996) (dismissing petition when it "fail[ed] to allege particular facts supporting the allegation that the representation . . . was false"). Dismissal is warranted for failing to plead this basic fact at all, nonetheless with the particularity required by Rule 55.15.

Because Plaintiffs have not alleged the "who, what, where, when, and how," of each alleged misrepresentation and omission, Plaintiffs' Counts I, II, and V should be dismissed.

## II.    The Petition Should Be Dismissed Because Plaintiffs' Claims Assert Non-Actionable Educational Malpractice.

To the extent the Petition does allege the basis of Plaintiffs' claims, it is replete with allegations that Defendants allegedly represented to Plaintiffs that they would receive a "quality" or "adequate" education, and that such representations were false because, in Plaintiffs' opinion, their instructors were substandard. Plaintiffs allege that as a result of their poor instructors, their education has "no value" and is "worthless." In order for a factfinder to determine the merit of Plaintiffs' allegations – whether the quality of their education was high or low – requires a subjective analysis of the quality of Plaintiffs' instructors and the education they have received. Both of these examinations are barred by the educational malpractice doctrine.

The educational malpractice doctrine recognizes that it is not the province of the judicial system to evaluate the quality of an education. Rather, "if the claim requires an analysis of the quality of education received and in making that analysis the fact-finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct, then the claim is one of educational malpractice." Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc., 277 S.W.3d 696, 700 (Mo. Ct. App. 2008), transfer and reh'g denied, No. SC89935 (Mo. Mar. 31, 2009). "Missouri, along with most other jurisdictions that have considered the issue, has found that educational malpractice claims are not cognizable . . . ." Id. at 699. See also Blake v. Career Educ. Corp., 2009 WL 2567011, at *5 (E.D. Mo. Aug. 18, 2009) ("Blake II") (finding allegations of fraud relating to the quality of instructors and sufficiency of training to be barred by the educational malpractice doctrine); Ross v. Creighton Univ., 957 F.2d 410, 414 (7th Cir.

8

1992) ("[T]he overwhelming majority of states that have considered this type of claim have rejected it.").[1]

Causes of action are non-cognizable under the education malpractice doctrine if "the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution." Dallas Airmotive, 277 S.W.3d at 700. "A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice." Id. at 700. Plaintiffs cannot get around the bar of the educational malpractice doctrine by couching their claims in terms of fraud or negligence, as courts nationwide have rejected similar claims when they required an examination of the quality or adequacy of an education. See, e.g., Jamieson v. Vatterott Educ. Ctrs., Inc., 259 F.R.D. 520, 538 (D. Kan. 2009) ("Claims that attack the general quality of educational services provided to students, regardless of the underlying legal theory, have generally been rejected by the courts."); Christensen v. S. Normal Sch., 790 So. 2d 252, 255-56 (Ala. 2001) (stating that a claim could be characterized as one for educational malpractice regardless of whether it is styled as a claim for negligence, breach of contract, or fraud).

---

[1] Missouri has identified a number of policy reasons for barring claims of educational malpractice. The Court of Appeals has specifically noted the following five policy reasons:

(1)    the lack of a satisfactory standard of care by which to evaluate an educator;

(2)    the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment;

(3)    the potential for a flood of litigation against schools;

(4)    the possibility that such claims will embroil the courts into overseeing the day-to-day operations of schools; and

(5)    schools, and their regulating, accrediting, and certifying agencies, not courts, need to make curriculum decisions.

Dallas Airmotive, 277 S.W.3d at 701. Other courts have noted that it is not the role of the judicial system to substitute its judgment on curriculum and instructors for the judgment of professional educators. See Finstad v. Washburn Univ. of Topeka, 845 P.2d 685, 692 (Kan. 1993) ("[I]n education, the ultimate responsibility for success remains always with the student. Both the process and the result are subjective, and proof or disproof extremely difficult.") (internal citations omitted).

9

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

Allegations that require a judgment to be made about the quality of Plaintiffs' education run throughout Plaintiffs' Petition. For example, Plaintiffs' allege that:

- WCC deceives students regarding "the quality and reputation of its academic programs" (Pet. at ¶ 13);

- WCC's courses have "no value" (Id. at ¶ 14), and the degrees and education provided are "worthless" (Id. at ¶ 22);

- Defendants made misrepresentations regarding "instructors' qualifications" and the "quality of education" (Id. at ¶ 24(d, e, g)), and falsely stated that its "programs would provide an adequate educational experience" (Id. at ¶ 18(a)); and

- Plaintiffs were harmed in that they "will not and have not been properly trained in the subject areas in which they enrolled" because of the "failure of WCC to properly provide an education which will allow accreditation, and the 'education' received from WCC, has no value to Plaintiffs" (Id. at ¶ 21).

Additionally, Plaintiffs' Negligent Hiring/Retention claim alleges that Defendants had a duty to act with the degree of care used by "reasonable and/or careful educational institutions" (Id. at ¶ 39), that Defendants violated this duty by negligently hiring and retaining instructors who were "not properly qualified or suitable for the programs in which Plaintiffs are/were enrolled" (Id. at ¶ 40), and, as a result, Plaintiffs were unable to "receiv[e] the education promised to them." (Id. ¶ at 41).

To determine the validity of all of Plaintiffs' claims – whether the alleged misrepresentations were false, whether the instructors were unsuitable, and whether Plaintiffs' incurred damages as a result of their allegedly "worthless" education – would require the trier of fact to "inquire into the nuances of educational processes and theories." Blake II, 2009 WL 2567011, at *5. The allegations ask the factfinder "to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution." Dallas Airmotive, 277 S.W.3d at 700.

Courts reviewing similar allegations have rejected them as non-cognizable under the educational malpractice doctrine. For example, in Love v. Career Education Corp., 2012 WL 1684572, *3 (E.D. Mo. May 15, 2012) ("Love II"), the plaintiff student alleged that her school misled her by representing that she would receive "sufficient training," be taught curriculum that was "adequate," and have instructors who were "adequately experienced and qualified." The court found that these allegations would require the court "to evaluate Plaintiff's teachers, classes, equipment and a variety of other factors on a purely subjective basis." Id. Therefore, the court granted the school's motion to dismiss the plaintiff's MMPA claim, because "Plaintiff's tort claims regarding the 'sufficiency,' 'adequacy,' and 'quality' of her education cannot be evaluated by the Court, even if they are framed as allegations of fraud." Id.

Likewise, in Blake II, the court held that two of the plaintiffs' allegations of fraudulent misrepresentations were barred by the educational malpractice doctrine: (1) defendants' alleged representation that the defendants' instructors "were qualified and had experience"; and (2) defendants' aleleged representation that a degree from the defendants "would provide a sufficient foundation to begin a private investigation business." 2009 WL 2567011 at *5. These dismissed allegations are indistinguishable from those alleged by Plaintiffs relating to their instructors and the adequacy of their education. See also Jamieson , 259 F.R.D. at 536 (dismissing plaintiffs' claims for common law fraud and state consumer fraud, because "[r]esolution of the issue requires an assessment of the effectiveness of Vatterott's materials, methods, and teachers. . . . [P]ublic policy should prevent a court from interfering when the controversy requires the examination of the efficacy of the course of instruction."); Houston v. Mile High Adventist Acad., 846 F. Supp. 1449, 1456 (D. Colo. 1994) (dismissing claims that teachers were not "properly trained" and that "school failed to provide adequate instruction" as educational

11

malpractice); <u>Lawrence v. Lorain Cnty. Cmty. Coll.</u>, 713 N.E.2d 478, 480 (Ohio Ct. App. 1998) (dismissing state consumer fraud claim alleging that educational services were "substandard").

Plaintiffs are alleging that the education they received is not the "quality," "adequate," "sufficient" education they were promised. They are claiming that their instructors were not "suitable" to teach the courses for which they were hired. To determine the merits of Plaintiffs' allegations would require the substitution of the factfinders' subjective judgment for that of professional educators, without a satisfactory standard of care, but with inherent uncertainties as to whether Plaintiffs' perceptions of the quality of their education were due to the education itself or to factors such as their attitudes, motivations, temperaments, and past experiences. These are the very reasons why educational malpractice claims are barred. The Court should dismiss Plaintiffs' claims, as they are nothing more than educational malpractice claims brought under different names.

**III.** **Plaintiffs' MMPA Claim Should Be Dismissed Because Plaintiffs' Purchase Was Not For Personal Use.**

The MMPA allows a private right of action only to those who have purchased merchandise or services "primarily for personal, family or household purposes." Mo. Rev. Stat. § 407.025.1. Conversely, a party who purchased a product for a business use "does not have standing to bring a claim" under the MMPA. <u>Saey v. CompUSA</u>, 174 F.R.D. 448, 450 (E.D. Mo. 1997). Here, it is evident from Plaintiffs' Petition that they attended WCC in order to advance their careers. This is a business purpose.

That Plaintiffs' primary purpose in enrolling in WCC was to further their career prospects is seen most clearly in the harms they allege to have suffered. Plaintiffs claim that they incurred student loans for an education that has no value *because it will not help them find a job.* They claim that because of the poor education they received, they "will not receive the salaries they

12

were promised upon graduation, and will fail to attain accreditation in their fields." (Pet. at ¶ 21). They claim that they were harmed "in terms of inability to earn a living in their field upon graduation." (Id. at ¶ 23). One Plaintiff alleges harm in that her "current employer refused to accept her WCC credits as evidence of further qualification of employment." (Id. at ¶ 22).

Additionally, Plaintiffs claim that they were induced to enroll in WCC based upon misrepresentations relating to their ability to find employment after graduating, and that these misrepresentations were material to their decision to attend WCC. They claim that they were deceived regarding the "employment prospects and career placement services [WCC] graduates can expect" (Id. at ¶ 13); falsely told that WCC's rigorous programs made "WCC graduates more competitive in the job market" and resulted in "area employers hiring more graduates from WCC than other schools" (Id. at ¶ 18(d)); falsely told that "WCC would provide assistance with obtaining interviews, drafting resumes, and job placement" (Id. at ¶ 18(j)); and deceived by unspecified misrepresentations relating to "job placement and job demand" and "anticipated starting salary." (Id. at ¶ 24(a, b)). These alleged misrepresentations and deceptions could not have been considered a material incentive to enroll unless Plaintiffs' primary purpose in enrolling was to enhance their career or business prospects.

In several cases involving similar allegations, courts have found enrollment in a career-focused school to be a business purpose. Anderson v. Hi-Tech Institute, No. 4:11-cv-00506 SOW (W.D. Mo. Aug. 8, 2012) (copy attached as Exhibit A), is directly on point. As here, plaintiffs in Anderson enrolled in a career-focused college and made allegations about the salary they could earn upon graduating, the job placement assistance provided by the school, and the ease in which they would be able to find employment after completing the program. Slip Op. at 4. In granting Hi-Tech's motion for judgment on the pleadings on plaintiffs' fraudulent

13

misrepresentation and MMPA claims, the court found that the plaintiffs had enrolled in Hi-Tech "for business purposes." Id. at 5.

Plaintiffs' Petition does contain a conclusory allegation that they "purchased merchandise from Defendants primarily for personal, family, or household purposes." (Pet. at ¶ 52). But so did the complaint in Anderson, and the court found it to be a "broad conclusory statement unsupported by any factual allegations." Slip Op. at 4.

The same conclusion was reached in MacDonald v. Thomas M. Cooley Law School, 880 F. Supp. 2d 785 (W.D. Mich. 2012), affirmed 724 F.3d 654 (6th Cir. 2013). Like the MMPA, the Michigan consumer protection statute is limited to purchases "primarily for personal, family, or household purposes." Mich. Comp. Laws § 445.902(1)(g). Plaintiffs sued their law school under the Michigan statute, claiming that it had misrepresented the employment rates and starting salaries of its graduates. 880 F. Supp. 2d at 789. The Court granted the law school's motion to dismiss, finding that the plaintiffs did not purchase their legal education "so that they could leisurely read and understand Supreme Court Reports, or to provide legal services for themselves or family members." Id. at 792. Rather, they purchased an education "in order to make money as lawyers so that they could live a lifestyle that they believed (perhaps naively) would be more pleasing to them." Id. The court held that this is a business purpose. Id.

In affirming the MacDonald district court's decision, the Sixth Circuit agreed that the plaintiffs had "admitted in their complaint that they bought their legal education for a business purpose, to make a living," in that plaintiffs alleged that they "intended to use his or her law degree to prospectively better themselves and their personal circumstances *through the attainment of full-time employment . . . .*" 724 F.3d at 661 (emphasis original). Because their purchase of an education was ultimately for the purpose of earning money, the Sixth Circuit

14

agreed that it was a purchase for a business use. Id. In contrast, the Court stated that the purchase might have been found to be a personal or household use if "the graduates had alleged that they attended Cooley to get a legal education with no intention of using it to make money." Id.

By their own allegations, Plaintiffs purchased an education in order further their careers and obtain desirable jobs. Those are business purposes rather than personal purposes, and the MMPA does not apply. Plaintiffs' MMPA claim should be dismissed with prejudice.

## IV. Plaintiffs' Fraud Claims Should Be Dismissed Because Their Alleged Misrepresentations Are Non-Actionable As A Matter of Law.

Plaintiffs' same allegations relating to the quality, adequacy, and sufficiency of their education that are barred by the educational malpractice doctrine should also be dismissed as non-actionable statements of opinion, puffery, or sales talk. Such allegations cannot be objectively proven true or false, and they are unreasonable to rely upon as a matter of law.

Only statements of objective fact can form the basis for a fraud claim. "General expressions of opinion are not actionable," nor are "representations of value, dealers talk, trade talk, puffing a manufacturer's wares and sales propaganda." Wofford v. Kennedy's 2nd St. Co., 649 S.W.2d 912, 915 (Mo. Ct. App. 1983). "Where the representations alleged are only statements of opinion, the petition should be dismissed for failure to state a claim." Arnold v. Erkmann, 934 S.W.2d 621, 627 (Mo. Ct. App. 1996). Opinions are, by their very nature, incapable of being ascertained as true or false, because reasonable persons can differ on their opinions; some might agree with the opinion, and others may not. Wofford, 649 S.W.2d at 915.

Plaintiffs have alleged a number of claimed misrepresentations that are no more than opinions that are incapable of being objectively proven true or false. Specifically, the Court should dismiss the following from Plaintiffs' Petition as non-actionable opinions:

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

- Plaintiffs' allegation that Defendants misrepresented that WCC's "programs would provide an *adequate* educational experience *comparable* to other area degree programs" (Pet. ¶ 18(a));

- Plaintiffs' allegation that Defendants misrepresented its "instructors qualifications" (Id. at ¶ 24(d, g)) and falsely stated that its instructors "were *experienced* in their respective fields" (Id. at ¶ 18(c));

- Plaintiffs' allegation that Defendants misrepresented that "WCC's programs were *more rigorous and thorough* than other area schools" (Id. at ¶ 18(d));

- Plaintiffs' allegation that Defendants misrepresented that "evening classes offered all of the same benefits as the day classes" (Id. at ¶ 18(e));

- Plaintiffs' alleged misrepresentations relating to "[a]nticipated starting salary" (Id. at¶ 24(b)); and

- Plaintiffs' alleged misrepresentations relating to "[q]uality of education" (Id. at ¶ 24(e)).

These statements by their very nature cannot be taken as true or false because reasonable minds can differ as to whether the statements are true or false. For example, Plaintiffs may have believed that their instructors were not adequately experienced, but Defendants may have believed they were qualified. See McAlpine Co. v. Graham, 320 S.W.2d 951, 955 (Mo. Ct. App. 1959) (dismissing as non-actionable opinion plaintiff's allegation of fraud based on statements that defendant's employees were "experts in the field" who performed work "in an expert manner"). Likewise, Defendants and Plaintiffs could have different opinions as to what the "benefits" of the day and evening courses were. See Watkins v. Gross, 772 S.W.2d 22, 24 (Mo. Ct. App. 1989) ("Defendant's statement that plaintiff 'should have no trouble' obtaining a liquor license was clearly an expression of opinion, expectation, and prediction for the future."). And reasonable minds could differ as to the "rigor," "thoroughness," and quality of the educational programs. See Love II, 2012 WL 1684572, at *4 (dismissing as opinion plaintiff's allegations regarding the sufficiency and adequacy of her educational program). Finally, there is no way for

16

Plaintiffs to have believed that predictions about future earning capacity were anything other than opinions. See id. ("Allegations related to Plaintiff's future earnings or future marketability after graduation cannot form a basis for fraud as a matter of law.").

Under Missouri law, the opinions alleged in this action cannot form the basis of a fraud claim because they are entirely subjective and not demonstrably true or false. Accordingly, the Court should dismiss with prejudice Plaintiffs' claims that are based upon representations or omissions that are opinions, sales talk, or "puffing." None of these representations are statements of present fact that can form the basis of a fraud claim, as a matter of law.

**V.** **Plaintiffs' Negligent Hiring/Retention Claim Should Be Dismissed Because They Have Not Alleged A Dangerous Proclivity.**

Count III of Plaintiffs' Petition is for negligent hiring/retention. In addition to alleging a non-cognizable educational malpractice claim, Count III should be dismissed because Plaintiffs have not alleged the necessary elements of the cause of action.

Liability for negligent hiring or retention requires a showing that the employer knew or should have known of the employee's "dangerous proclivities." Gibson v. Brewer, 952 S.W.2d 239, 246 (Mo. 1997). Further, the employee's actions generally must be either intentional or criminal. McHaffie v. Bunch, 891 S.W.2d 822, 825 (Mo. 1995). Plaintiffs' claim mentions no dangerous proclivities or any intentional or criminal conduct by the instructors. This count merely alleges the instructors were not properly qualified to teach, Pet. at ¶ 40, which is neither dangerous nor criminal. Because Plaintiffs have not alleged that their instructors had a proclivity to commit dangerous acts, nonetheless that Defendants should have known of some proclivity, Count III should be dismissed.

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

## VI.    Missouri Does Not Recognize An Independent Cause of Action For Civil Conspiracy, Especially By Persons Within The Same Corporation.

Plaintiffs also fail to state a claim for civil conspiracy. First, civil conspiracy is not a separate cause of action in Missouri. 8000 Maryland, LLC v. Huntleigh Fin. Servs. Inc., 292 S.W.3d 439, 451 (Mo. Ct. App. 2009). It simply holds conspirators jointly and severally liable for an underlying act. Id.

Additionally, a conspiracy requires more than one person or entity, and a conspiracy generally cannot exist between a corporation and its officers, agents, or employees. See id. at 452; see also Mika v. Cent. Bank of Kansas City, 112 S.W.3d 82, 94 (Mo. Ct. App. 2003). There could be no conspiracy among the Defendants, all of whom are officers, agents, or employees of the defendant corporation. Thus, the civil conspiracy claim should be dismissed.

## VII.    Plaintiffs Fail To Allege A Claim For Accounting.

Count VI seeks an accounting, but Plaintiffs fail to allege any of the necessary elements: 1) "the need for discovery;" 2) "the complicated nature of the accounts;" 3) "the existence of a fiduciary or trust relationship;" and 4) "the inadequacy of legal remedies." Tobias v. Korman, 141 S.W.3d 468, 474 (Mo. Ct. App. 2004). Of these elements, the existence of a fiduciary relationship is the most critical. Shaner v. Sys. Integrators, Inc., 63 S.W.3d 674, 677 (Mo. Ct. App. 2001). Whether a fiduciary relationship exists rests on whether "trust is reposed with respect to property or business affairs of the other." Shervin v. Huntleigh Sec. Corp., 85 S.W.3d 737, 741 (Mo. Ct. App. 2002). A fiduciary relationship is not created simply because an individual purchases goods or services from a seller. See Arnold, 934 S.W.2d at 629 ("A buyer who pays the purchase price to a seller for a specific item or contract right is not 'entrusting' the seller with sums of money for 'investment' so as to create a fiduciary relationship.").

As the Petition lacks allegations supporting the existence of a fiduciary relationship and every other element necessary to plead a cause of action for Accounting, Count VI should be dismissed.

**VIII.** **Plaintiffs' Punitive Damages Claim Should Be Dismissed Because It Is Not A Recognized Cause Of Action.**

Missouri law is clear that "Punitive Damages" is not a separate cause of action. Hyatt v. Trans World Airlines, Inc., 943 S.W.2d 292, 296 (Mo. Ct. App. 1997). Count VII should be dismissed because it does not allege an actual cause of action.

## CONCLUSION

WHEREFORE, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss, for their costs and attorneys' fees, and for such other and further relief as the Court deems just and proper.

19

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

Dated: April 24, 2014.    Respectfully submitted,


By:_____/s/ Elizabeth A. Bozicevic_____

Martin M. Loring, MO Bar # 29712
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar # 59623
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

*Attorneys for Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne, and Ron Holt.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 24th day of April, 2014, by first-class mail, and hand-delivered on the 25th day of April, 2014, to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050



/s/ Elizabeth A. Bozicevic

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

# EXHIBIT

# A

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CHAD ANDERSON, et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 11-0506-CV-W-SOW |
| | ) | |
| HIGH-TECH INSTITUTE, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court are High-Tech Institute's Motion for Partial Judgment on the Pleadings on

Claims Based on Allegations of Educational Malpractice (Doc. #83), High-Tech Institute's Motion

for Partial Judgment on the Pleadings on Plaintiffs' Missouri Merchandising Practices Act Claim

(Doc. #85), and High-Tech Institute's Motion for Partial Judgment on the Pleadings on Fraud Claims

Based on Representations of Third-Party Future Action (Doc. #90).

### I. Background

Plaintiffs are individuals who formerly attended a post-secondary school owned and operated

by the Kansas City High Tech Institute/Anthem College.[1] Defendant High Tech is a for-profit,

vocational and technical institution. On February 2, 2012, plaintiffs filed a four-count Second

Amended Complaint ("SAC"), alleging (1) fraudulent misrepresentation, omissions, and

inducement; (2) violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010,

*et seq.* ("MMPA"); (3) negligent training and supervision; and (4) breach of contract.

---

[1] Plaintiffs allege High Tech has changed the name of its Kansas City location to Anthem
College. The Court uses only High Tech throughout this Order.

Plaintiffs allege generally that they were misled by High Tech representatives about the educational programs in which they enrolled. According to plaintiffs, High Tech's actions and misrepresentations, among other things, induced them to enroll in High Tech, pay tuition, apply for student loans, purchase books, supplies, and equipment, and to otherwise attend and continue to attend the different programs offered by High Tech. High Tech offered the following programs: (1) Criminal Justice; (2) Medical Assistant; (3) Dental Assistant; (4) Surgical Technology; (5) Message Therapy; and (6) Medical Billing and Coding. Plaintiffs assert that High Tech's admissions representatives persuaded them to enroll by, among other things, representing that High Tech graduates could expect to find jobs after graduation, that High Tech graduates could expect to earn a certain starting salary following graduation, that High Tech credits would transfer to other colleges and universities, and that High Tech offered state-of-the-art training equipment.

High Tech has filed three different motions for partial judgment on the pleadings. In the first, it seeks partial judgment on claims based on allegations of educational malpractice. Second, High Tech argues partial judgment is appropriate on plaintiffs' MMPA claims because plaintiffs lack standing to bring an MMPA claim as plaintiffs did not (and cannot) sufficiently allege they purchased their education primarily for personal, family, or household purposes. Lastly, High Tech seeks judgment on the pleadings on plaintiffs' fraud claims because the alleged misrepresentations are not statements of past or existing fact, but rather are future predictions about actions to be performed by independent third-party employers or educational institutions.

## II. Standard

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after responsive pleadings have been filed. In analyzing a motion filed pursuant to Federal Rule of

-2-

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

Civil Procedure 12(c), the Court applies the same standard as applied when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. <u>Westcott v. City of Omaha</u>, 901 F.2d 1486, 1488 (8th Cir. 1990)(citing <u>Morgan v. Church's Fried Chicken</u>, 829 F.2d 10, 11 (6th Cir. 1987)). The Court must assume that all factual allegations in the Complaint are true and must construe those allegations in favor of the plaintiff. <u>Klutho v. New Day Fin., LLC</u>, 522 F. Supp. 2d 1174, 1176 (E.D. Mo. 2007). "Judgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." <u>Faibisch v. Univ. of Minn.</u>, 304 F.3d 797, 803 (8th Cir. 2002). The Court may not consider matters outside the pleadings; but if it does, the motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56.[2]

<p style="text-align:center">III. <u>Discussion</u></p>

**A. Plaintiffs' MMPA Claims**

High Tech argues the Court should grant its motion for judgment on the pleadings on plaintiffs' MMPA claims. High Tech contends plaintiffs lack standing to bring an MMPA claim because they did not (and cannot) sufficiently allege they purchased their education primarily for personal, family, or household purposes. <u>See</u> Mo. Rev. Stat. § 407.025.1.

Under the MMPA, only a "person who purchases or leases merchandise *primarily for personal, family or household purposes* and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use of employment by another person of a method, act or

---

[2] For some reason plaintiffs have filed a "Common Statement of Facts Referenced In Suggestions In Opposition to Defendant's Three Motions for Judgment on the Pleadings." High Tech has not asked the Court to consider any materials outside the pleadings when making its decision; ergo, the Court will not treat this motion as one for summary judgment. The Court will not consider plaintiffs' "Statement of Facts" (Doc. #105).

<p style="text-align:center">-3-</p>

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

practice declared unlawful by section 407.020, may bring a private civil action. . . ." Mo. Rev. Stat. § 407.025.1 (emphasis added); see Gibbons v. J. Nuckolls, Inc., 216 S.W.3d 667, 669 (Mo. 2007) (en banc). Here, the parties disagree on whether plaintiffs enrolled in High Tech for personal or business purposes.

In the SAC, plaintiffs' only allegation regarding whether they enrolled in High Tech for a personal purpose can be found in paragraph 31, which states: "Plaintiffs purchased services primarily for personal purposes from defendant High Tech . . . ." This broad conclusory statement unsupported by any factual allegations is not sufficient to state a claim to relief that is plausible. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (entitlement to relief "requires more than labels and conclusions."). Beyond reciting the elements of an MMPA claim, plaintiffs' SAC offers no other allegations that indicate plaintiffs enrolled in High Tech for personal purposes. See Saey v. CompUSA, Inc., 174 F.R.D. 448, 450 (E.D. Mo. 1997) (dismissing for lack of standing the claims of an individual who purchased the product for his business).

Plaintiffs' SAC is rife with allegations suggesting that their purposes for enrolling in High Tech were business related. Indeed, plaintiffs allege they relied on High Tech's misrepresentations concerning graduate employability and graduate starting salaries. Specifically, plaintiffs allege they relied on some of the following representations: (1) employment would be located by High Tech for graduates of the High Tech criminal justice program; (2) graduates would be provided job placement assistance by High Tech such that there was guaranteed job placement in a job located by High Tech in the program field; and (3) graduates of the High Tech surgical technology program could reasonably anticipate starting hourly wages of at least $16 per hour and full-time employment. After reviewing the allegations in plaintiffs' SAC, the Court finds that plaintiffs lack standing to bring

-4-

MMPA claims because they enrolled in High Tech for business purposes.

To be clear, however, the Court is not definitively stating that enrolling in an educational institution can only be considered business related. There exists the possibility that a student may attend an educational institution for personal purposes. For example, a student could enroll in an educational institution to study Shakespeare or History, and the motivation for enrolling may be entirely personal. However, the allegations found in plaintiffs' SAC do not establish that any of the reasons plaintiffs' enrolled in High Tech were for personal purposes, thus their MMPA claims must fail as a matter of law.

## B. Fraud Claims by Third-Party Future Actions

Next, High Tech argues plaintiffs' alleged statements of third-party future action cannot constitute fraud as a matter of law. Specifically, High Tech argues plaintiffs' allegations contained in paragraphs 13(a), 13(d), 13(e), 13(g), 16(c), 16(d), 18(b), and 18(k) concerning future employment salaries and credit transferability must be dismissed.

To establish fraud in Missouri, plaintiffs must show High Tech made a misrepresentation concerning a past or existing fact. Sindecuse v. Katsaros, 541 F.3d 801, 803 (8th Cir. 2008) (applying Missouri law) (citing Trotter's Corp. v. Ringleader Rest., 929 S.W.2d 935, 940 (Mo. Ct. App. 1996)). A plaintiff alleging fraud may not predicate his/her claim upon a statement "regarding what independent third parties will do in the future." Id. (citing Eureka Pipe, Inc. v. Cretcher-Lynch & Co., 754 S.W.2d 897, 899 (Mo. Ct. App. 1988)); see also Ryann Spencer Grp. Inc. v. Assurance Co. of Am., 275 S.W.3d 284, 290 (Mo. Ct. App. 2008) (finding that statements from insurance broker about third party insurance company paying on a policy did not constitute fraudulent misrepresentation because the statements "involve the future actions of . . . an independent third party."). "Because a

-5-

statement about future actions is really a prediction rather than a promise, this rule is just the corollary of another Missouri rule that predictions for the future are not actionable as fraudulent misrepresentation. Id. (citing Trotter's Corp., 929 S.W.2d at 940). However, an exception exists for statements made by a speaker with or who professes to have superior knowledge of the matter involved. See Dawes v. Elliston, 369 S.W.2d 285, 287-88 (Mo. Ct. App. 1963); Nichols v. Hendrix, 312 S.W.2d 163, 166 (Mo. Ct. App. 1958). In this case, plaintiffs have alleged sufficient facts, which if true, could possibly fall within the exception to the general rule. The Court believes plaintiffs should conduct discovery on these claims. High Tech's motion for judgment on the pleadings on plaintiffs' fraud claims is denied.

## C. Educational Malpractice

Lastly, High Tech moves for partial judgment on plaintiffs' claims in paragraphs 18(c)-(f); 21(c)-(f); and 54 because they are based on allegations of educational malpractice. "In educational malpractice cases, a plaintiff sues his or her academic institution for tortiously failing to provide adequate educational services." Dallas Airmotive, Inc. v. Flightsafety Int'l, Inc., 277 S.W.3d 696, 700 (Mo. Ct. App. 2008). Like many other jurisdictions, Missouri does not recognize educational malpractice claims because there "is no duty." Id. at 699. At least four public policy grounds exist for not recognizing educational malpractice claims:

> (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will 'embroil the courts into overseeing the day-to-day operations of the schools.'

Id. at 701 (citation omitted).

-6-

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

The Honorable Richard Weber has explained:

> An educational malpractice claim generally requires a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies that enter into the consideration of whether the method of instruction and choice of [teaching aids] was appropriate, or preferable. At the same time, courts have recognized claims by students for breach of contract, fraud, or other intentional wrongdoing that allege a private or public educational institution has failed to provide specifically promised educational services. Defendants are correct that a claim cannot be couched as a fraud claim merely to avoid the doctrine that precludes an educational-malpractice claim. However, a student may bring an action against an educational institution for breach of contract, fraud, or misrepresentation, if it is alleged that the institution failed to perform on specific promises it made to the student and the claim would not involve an inquiry into the nuances of educational processes and theories.

Blake v. Career Educ. Corp., No. 4:08-CV-00821-ERW, 2009 WL 2567011 (E.D. Mo. Aug. 17, 2009) (internal quotation marks and citations omitted).

High Tech highlights the following allegations in the SAC as being barred by the educational malpractice doctrine. Plaintiffs allege High Tech made certain misrepresentations, including

- Students would receive education sufficient to qualify for employment in their field of study. [SAC, ¶ 18(c)].

- Students would be provided adequate modern training aids and equipment upon which to learn. [SAC, ¶ 18(d)].

- The instructors were experienced, well-qualified experts and top-trained professionals in their field of instruction. [SAC, ¶ 18(e)].

- Classes would be restricted to a small size adequate for personalized instruction. [SAC, ¶ 18(f)].

High Tech also fraudulently omitted or concealed the following:

- Some High Tech instructors were hired without adequate experience. [SAC, ¶ 21(c)].

- Some classes would commence without an instructor. [SAC, ¶ 21(d)].

- Class instructors could, and would, change repeatedly during the semester. [SAC, ¶ 21(e)].

-7-

- That High Tech's connections/relations/associations with area health providers were or are inadequate to place students in appropriate "externship" programs necessary for students to gain the experience required to graduate and to be properly trained in their desired field of study. [SAC, ¶ 21(f)].

Lastly, plaintiffs allege,

- Defendant High Tech breached its duty and created an unreasonable risk of harm to plaintiffs by failing to adequately train, supervise, control or otherwise monitor the actions of its agents, admissions representatives, faculty, administrators, financial aid personnel and other employees and was thereby negligent. [SAC, ¶ 54].

The Court concludes, as a matter of law, that these allegations invoke the educational malpractice doctrine. These allegations are similar in nature to the allegations that were dismissed in Love v. Career Education Corporation as barred by the educational malpractice doctrine. No.4:11-CV-1585-JAR, 2012 WL 1684572 (E.D. Mo. May 15, 2012). Indeed, the allegations in plaintiffs' SAC would "involve an inquiry into the nuances of educational processes and theories." Blake, 2009 WL 2567011, *2. Specifically, plaintiffs' fraud allegations regarding the "sufficiency," "adequacy," and "quality" of their educations cannot be evaluated by the Court, even if framed as claims for fraud. Id. at *5 (allegation that institution's instructors were not qualified and lacked experience were barred by educational malpractice doctrine); Love, 2012 1684572, at *3. Therefore, the Court must dismiss plaintiffs' allegations in subparagraphs 18(c), (d), (e), and (f); 21 (c), (d), (e), and (f), and paragraph 54 as barred by the educational malpractice doctrine.

## IV. Conclusion

Accordingly, it is hereby

ORDERED that High-Tech Institute's Motion for Partial Judgment on the Pleadings on Claims Based on Allegations of Educational Malpractice (Doc. #83) is granted. It is further

-8-

Case 4:11-cv-00506-SOW   Document 143   Filed 01/25/13   Page 8 of 9
Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 165 of 398

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

ORDERED that High-Tech Institute's Motion for Partial Judgment on the Pleadings on Plaintiffs' Missouri Merchandising Practices Act Claim (Doc. #85) is granted. It is further

ORDERED that High-Tech Institute's Motion for Partial Judgment on the Pleadings on Fraud Claims Based on Representations of Third-Party Future Action (Doc. #90) is denied.


/s/Scott O. Wright
SCOTT O. WRIGHT
Senior United States District Judge

Dated: January 25, 2013

-9-

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:   martin.loring@huschblackwell.com


SERVICE PARTY:   KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:   kbm@hfmlegal.com


SERVICE PARTY:   ANDREW K SMITH, Attorney for Plaintiff
SERVICE EMAIL:   aks@hfmlegal.com

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:32 PM

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:39 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA, et al. | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 1316-CV27529 |
| | ) |
| MISSION GROUP KANSAS, INC., | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

**REQUEST FOR HEARING ON DEFENDANTS' MOTION TO DISMISS**

Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants"), come now, and pursuant to Jackson County, Missouri Court Rule 33.5(1), request that a hearing or oral argument be conducted on its contemporaneously filed Motion to Dismiss.


Dated: April 24, 2014.                    Respectfully submitted,


                                          By:      /s/ Elizabeth A. Bozicevic
                                          Martin M. Loring, MO Bar # 29712
                                          HUSCH BLACKWELL LLP
                                          4801 Main Street, Suite 1000
                                          Kansas City, MO 64112
                                          (816) 983-8000
                                          (816) 983-8080 Fax
                                          martin.loring@huschblackwell.com


SLC-7217050-1

James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar # 59623
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

***Attorneys for Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne, and Ron Holt.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 24th day of April, 2014, by first-class mail, and hand-delivered on the 25th day of April, 2014, to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050


_____/s/ Elizabeth A. Bozicevic_____

SLC-7217050-1

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY:     MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:     martin.loring@huschblackwell.com


SERVICE PARTY:     KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:     kbm@hfmlegal.com


SERVICE PARTY:     ANDREW K SMITH, Attorney for Plaintiff
SERVICE EMAIL:     aks@hfmlegal.com

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:37 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE**
**ALTERNATIVE FOR LEAVE TO FILE AN AMENDED PETITION**

Plaintiffs, by and through their counsel of record, respectfully ask this Court to deny Defendants' Motion to Dismiss. In support of this opposition, Plaintiffs state that the Defendants' motion is entirely based on the wrongful mischaracterization of Plaintiffs' Petition. The Petition speaks for itself, and clearly and unambiguously asserts claims arising out of fraudulent acts and representations. It does not, expressly *or impliedly* assert even a single "educational malpractice" claim. Additionally, while Plaintiffs have adequately plead each and every claim asserted, Missouri law and Rules of Procedure mandate a liberal granting of motions to amend. To the extent this Court deems it appropriate, Plaintiffs move in the alternative for leave to amend their Petition, and setting forth additional supporting facts. In additional support of their opposition, Plaintiffs offer the Court the Suggestions in Support of Plaintiffs' Opposition below.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
_____

| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:    (816) 836-5050
Facsimile:    (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFF**

2

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' OPPOSITION

### I.  INTRODUCTION

> *"[W]hat a tangled web we weave when first we practice to deceive."*[1]

For years, these defendants have engaged in a systematic, ongoing fraud the very purpose and design of which is to induce individuals such as Plaintiffs to pay them large sums of money, in exchange for specifically promised materials and services. These defendants directed and aided Plaintiffs in securing federally secured student loans, as well as grants and cash payments, that were in turn paid to defendants, on the basis of purposefully false representations.

Thus, while disturbing, it is perhaps not surprising that these same defendants attempt to deceive this Court within the instant motion. As demonstrated below, the defendants' motion fails under the facts of this case and the law of the State of Missouri. Additionally, these same arguments have been made by these same attorneys repeatedly, and have been repeatedly rejected by Missouri courts. This Court should deny their motion in its entirety, and allow the power of discovery to bring light to these defendants' long-hidden deceit.

### II.  SUMMARY OF RELEVANT WELL-PLEADED FACTS

#### A.  Defendants' Motion Wrongfully Re-Writes Plaintiffs' Petition

Whenever a defendant is forced to tell the court what a plaintiff "really means" in a motion to dismiss, the weakness of the motion is assured. The instant motion is no different. The underlying facts supporting each claim are well-pleaded and before the Court. The defendants need nothing more to file a responsive pleading.

---

[1] "Oh! what a tangled web we weave when first we practice to deceive." Sir Walter Scott, *Marmion*, Canto VI, Stanza 17

A summary of the Petitions detailed allegations shows that all the detail necessary to file an answer is presented, as well as unequivocally showing the inapplicability of the "educational malpractice" defense.

Here, plaintiffs' petition describes defendants' general pattern and practice of fraud. [Pet. at ¶¶ 13-14; 18; 20; 24]:

>    13. WCC deceives students about federal financial aid, the true cost of attending WCC, the value of WCC's accreditations, the quality and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.

>    14. WCC does this by improperly hiding information from visitors to its websites and by misleading students through affirmative misrepresentations and material omissions. WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value, to re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.

>    18. In or around 2011 WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

>    a)    that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;

>    b)    that any educational credits earned at WCC would transfer and would apply towards a degree program at another school;

>    c)    that WCC's instructors all had degrees and were experienced in their respective fields;

>    d)    that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;

>    e)    that enrolling in its evening classes offered all of the same benefits as the day classes;

4

f)    that the cost of the program would be less than WCC knew would be the actual cost of the program;

g)    that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

h)    that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

i)    that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j)    that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k)    in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

20.    After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a)    Educational credits earned at WCC were not transferable towards programs at other schools;

b)   The program in which Plaintiffs enrolled lasted longer and was more expensive than Defendants represented;

c)    Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

d)    There was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances class was held with no instructor at all;

e)    Defendants used a class scheduling "protocol" referred to as "pods" wherein new students are placed in courses that are already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier,

5

necessary coursework and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f) The evening classes did not offer all of the same benefits as the day classes. There was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed. Moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

g) The student loans and grants did not include the total cost of the students program resulting in debt that Plaintiff were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

h) Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants didn't provide Plaintiff with books. Also, "electronic" textbooks that were promised were either not made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i) In other ways demonstrated by the admitted evidence at any trial in this matter.

24. Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility including but not limited to:

  a. Job placement and job demand;
  b. Anticipated starting salary;
  c. Graduation rates;
  d. Instructors Qualification;
  e. Quality of education;
  f. Transferability of credits to other institutions;
  g. Instructor's qualifications; and
  h. Cost and duration of program.

25. At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

6

In addition, Plaintiffs have alleged that these defendants created a scheme and mechanism to defraud and deceive the citizens of this community. (Plaintiffs' Petition ¶¶ 11-15). Defendants, states the Petition, affirmatively and repeatedly made absolute and unequivocal statements and representations that they knew were false at the time they were made. (*Id.* at ¶ 18). They engaged in this fraud to further their own financial gain individually and as a conspiratorial group.

The "set-up" in this particular fraud is a "school" or "college" that these defendants created as the bait or trap for their targets -- individuals such as these Plaintiffs' who wanted to better their lives through education. These Plaintiffs have suffered financial and other damages as a direct result of being so defrauded. (*Id.* at ¶¶ 21-23). Their claims here do not seek remedy for an inferior education provided by an inferior school. Rather, they seek recovery of losses sustained at the hands of defrauders, masquerading as a college as means to secure federal funding intended to help students qualifying for such aid. The specific, repeated and detailed representations and promises made to these Plaintiffs enticed and induced them to act to their personal and financial detriment. In exchange for these large sums of money, Plaintiffs received lies and misrepresentations, not education. As another Missouri court has already found when denying almost identical arguments: "This is not a claim that the institution failed to perform adequately a promised educational service, **but rather that it failed to perform that service at all.**" *Blake v. Career Educ. Corp., No.* 4:08CV00821 ERW, 2009 WL 256701, at *4 (E.D. Mo. Aug. 18, 2009).

These are the wrongs alleged in this case, and these Plaintiffs seek redress for the damages they suffered therefrom.

7

## II.    ARGUMENT

### A.    <u>Legal Standard</u>

"A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *State ex rel. Henley v. Bickel*, 285 S.W.3d 327, 329-30 (Mo. 2009) (quoting *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001); *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993)). "In order to withstand the motion, the petition must invoke 'substantive principles of law entitling plaintiff to relief and ... ultimate facts informing the defendant of that which plaintiff will attempt to establish at trial.'" Id. (quoting *State ex rel. Union Elec. Co. v. Dolan*, 256 S.W.3d 77, 82 (Mo. banc 2008)).

### B.    <u>Plaintiffs Have Alleged Fraud, Not "Educational Malpractice"</u>

Defendants' motion reveals its own fatal flaw from the outset. Without support, defendants begin by boldly re-writing Plaintiffs' Petition: ". . . it is clear that Plaintiffs' true complaint is with the quality of their education . . ." (Def. Suggestions in Support, at p. 2). With this single, unsupported statement, defendants employ the age-old, improper tactic of hoisting a "false premise" upon the Court. This approach is fatal to defendants' position, and a disturbingly deceptive attempt at avoiding the merits of the case; particularly in case wherein these moving parties' very *deception* and *fraud* are the foundation of the claims against them.

8

### i.   Educational Malpractice Jurisprudence is Inapplicable Here

Defendants' Motion contends that Plaintiffs' claims are barred by the educational malpractice doctrine. Indeed, Defendants' Motion in its entirety is largely based on Defendants' erroneous conclusion that Plaintiffs' lawsuit is for educational malpractice. However, Plaintiffs' Petition clearly states that Plaintiffs' causes of action are for Fraudulent Misrepresentation (Count I); Negligent Misrepresentation (Count II); Negligent Hiring/Retention (Count III); Civil Conspiracy (Count IV); Violation of the MMPA (Count V); and for an Accounting (Count VI).

In fact, Plaintiffs' Petition does not contain any count or theory of liability based on educational malpractice. Nevertheless, Defendants' Motion undertakes to recast the Petition as a claim for educational malpractice so as to rely on inapposite cases addressing claims for educational malpractice. Defendants' Motion ignores directly on-point case law authorizing precisely the type of action that these Plaintiffs have asserted for deception, omission, and fraud. Moreover, Defendant ignores that Plaintiffs' claims are expressly premised upon false representations, omissions, and associated deceptive acts that Defendants engaged in *during the recruiting and enrollment process*. It is apparent from the Petition that Plaintiffs have not made *any* complaint about the "quality of education" - or lack thereof - received from the Defendants *after each was enrolled* (aside from its use as evidence of the deceptive recruiting and enrollment process). It follows inexorably that Plaintiffs have not asserted any claim for education malpractice.

Nor do the claims asserted by Plaintiffs satisfy the legal standard for "educational malpractice:

> In educational malpractice cases, a plaintiff sues his or her academic institution for *tortiously* failing to provide adequate educational services. If a negligence claim raises questions concerning the reasonableness of the educator's conduct in providing educational services, then the claim is one of educational

9

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

malpractice. Similarly, if the claim requires "an analysis of the quality of education received and in making that analysis the fact-finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct," then the claim is one of educational malpractice. If the duty alleged to have been breached is the duty to educate effectively, the claim is one of educational malpractice. A claim that educational services provided were inadequate, substandard, or ineffective constitutes a claim of educational malpractice. Where the court is asked to evaluate the course of instruction or the soundness of the method of teaching that has been adopted by an educational institution, the claim is one of educational malpractice.

*Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo. Ct. App. 2008)(internal citations and quotations omitted).

Clearly, Plaintiffs' claims that Defendants deceived students about federal financial aid, the true cost of attending WCC, and the employment prospects and career placement services its graduates can expect do not require the court to evaluate the course of instruction or the soundness of the method of teaching. Rather, Plaintiffs' claims require the simple determination of whether Defendants told Plaintiffs' the truth when convincing each to enroll in Defendants' school or whether, instead, Defendants resorted to misrepresentation and deception to induce Plaintiffs to enroll.

Even the cases on which defendants rely ultimately defeat their very argument. While under Missouri law, the educational malpractice doctrine bars claims seeking to recover from an educator for the failure to provide adequate educational services, *Blake v. Career Educ. Corp., No.* 4:08CV00821 ERW, 2009 WL 256701, at *2-*5 (E.D. Mo. Aug. 18, 2009), students *may* recover for breach of contract, fraud, or other intentional wrongdoing against an educator for failing to provide specifically promised educational services. *Id. See also Roe v. Saint Louis Univ.*, 4:08CV1474 HEA, 2012 WL 6757558 (E.D. Mo. Dec. 31, 2012) *aff'd sub nom. Roe v. St. Louis Univ.*, 746 F.3d 874 (8th Cir. 2014)("courts have recognized claims by students for breach of

10

contract, fraud, or other intentional wrongdoing that allege a private or public educational institution

has failed to provide *specifically promised educational services.*").

Indeed, as the Court in *Blake* held:

> **[A] student may bring an action against an educational institution for breach of contract, fraud, or misrepresentation, if it is alleged that the institution failed to perform on specific promises it made to the student and the claim <u>would</u> <u>not</u> involve an inquiry into the nuances of educational processes and theories."**

*Blake*, 2009 WL 2567011 at 3 (internal quotations omitted)(emphasis added).

In ***Blake***, the plaintiffs alleged that the Defendant-college failed to perform on specific

promises made to them as potential students, including: promises of the percent of its graduates

that had historically found jobs using their degrees, that a degree would provide a sufficient

foundation for law school, that its credits would transfer to most universities in Missouri, that

tuition would be fixed, and that their education would involve hands-on training. *Id.* at * 3-4.

Applying well-established precedent, the Court found that none of those claims involved

educational malpractice. *Id.* The court noted:

> This is not a claim that the institution failed to perform adequately a promised educational service, **but rather that it failed to perform that service at all.** The relevant inquiry would be whether hands-on training was provided at all, not whether it was adequate or appropriate.

*Id.* at * 4. (quotations omitted)(emphasis added).

### ii. Other Missouri Courts have Repeatedly Rejected Defendants' Argument

In other similar cases involving school fraud and deception, the same arguments as those

asserted by Defendants in this case have been rejected and motions to dismiss and/or for

summary judgment have been denied. *See, e.g., Moy v. Adelphi Institute, Inc.*, 866 F.Supp. 696

(E.D.N.Y. 1994)(misrepresentations and omissions regarding job placement, equipment,

qualifications of instructors, and tuition being covered by loans and grants); *Malone v. Academy*

11

*of Court Reporting*, 582 N.E.2d 54 (Ohio App. 1990)(misrepresentations regarding job placement, starting salary, and transferability of credits); *Ryan v. University of N.C. Hosps.*, 128 N.C.App. 300, 494 S.E.2d 789, 791, *cert. granted*, 348 N.C. 501, 510 S.E.2d 655, *and appeal dismissed*, 349 N.C. 349, 507 S.E.2d 39 (1998)(residency program failed to offer month-long rotation in gynecology as stated in its catalog); *CenCor, Inc. v. Tolman*, 868 P.2d 396, 400 (Colo. 1994)(students alleged that a school failed "to provide modern equipment in good working condition, qualified instructors, and computer training for all students."); *see generally Cullen v. Whitman Medical Corp.*, 188 F.R.D. 226 (E.D. Pa. 1999) and *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000).

Significantly, Defendants' Memorandum cites *Ross v. Creighton University*, 957 F.2d 410, 417 (7th Cir. 1992), in support of its assertion that in evaluating Plaintiffs' claims, the fact-finder would have to inquire into the nuances of education processes and theories. *See Def. Mem.* at p. 8. In fact, the Seventh Circuit reversed a crucial part of that decision which had dismissed the plaintiff's breach of contract claims, instructing the trial court that a school's failure to actually perform its promises is not the same thing as educational malpractice or the "negligent" failure to turn out good students:

> In these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all. Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise.

*Ross*, 957 F.2d at 417(emphasis added). Here, too, Plaintiffs allegations do not require an inquiry into the nuances of the educational processes or theories. Thus, Defendants' Motion to Dismiss should be denied.

12

Finally, it follows that if a student may bring a claim that an institution failed to perform on specific promises it made without alleging educational malpractice, a student must also be able to bring a claim that an institution made material misrepresentations fact and utilized deceptive and unfair practices in order to induce them to enroll also without alleging educational malpractice. In both circumstances, the relevant inquiry is not whether the institution provided a quality education; but rather, whether the institution lied to prospective students. Point II should be overruled.

The fallacy of their motion should be best known to defense counsel here. They have repeatedly made the same argument in other Missouri cases, without success.

> a. *Rogers v. Career Education Corp., et al*

In *Rogers v. Career Education Corp., et al*, Case No. 09-1090-CV-W-ODS, these same attorneys moved for dismissal in the United States District Court for the Western District of Missouri, before the Honorable Ortrie D. Smith. In his detailed Order, denying the defendants' motions to dismiss, Judge Smith made the following pertinent findings:

> **On Fraud Claims Against "Educator" (including MMPA claims):**
>
> *Blake* recognized that a plaintiff may recover for *fraud* against an educator for failing to provide *specifically promised* educational services. . . . Plaintiff is entitled to discovery on this claim, and [Defendants'] motion to strike or dismiss this allegation is denied.
>
> **On Claims of Promised Future Earnings and Credit Transferability:**
>
> Missouri law holds that fraud cannot be predicated upon a statement regarding what independent third parties will do in the future . . . However, there is an exception for statements made by a speaker with or who professes to have peculiar or superior knowledge of the matter involved. Here Plaintiff has alleged sufficient facts, which, if true, could satisfy the exception to the general rule, and Plaintiff is entitled to discovery on these claims. . . [Defendants'] motion to dismiss or strike these allegations is denied.

(Exhibit "A", April 14, 2010 Order of Judge Smith; at pp. 4-5.).

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

*b. Bradley v. Sanford Brown College, Inc., et al*

Another Court went so far as denying ***summary judgment*** motions brought by defendant "educator" entities (many represented by the same firm defending this matter). In *Bradley v. Sanford Brown College, Inc., et al* No. 05-0930-CV-W-SOW, the Honorable Scott O. Wright authored a detailed Order, denying multiple summary judgment arguments which the instant motion almost mimics. In sum, the *Bradley* court found that these claims should be submitted to jury. For example, in regard to claims that the defendant "school" made fraudulent representations:

> If a jury believes the testimony and evidence of the plaintiffs in this case, **the jury will be able to find that [defendant's] admissions representatives made representations of fact, not opinion, to prospective students that were false at the time the statements were made to the prospective students**. Obviously, the types of representations that were made to the prospective students were material to their decision as to whether or not to enroll in [Defendant].

(Exhibit "B", Judge Wright's February 22, 2007 Order, p. 13; See also Exhibit "C", a second order by Judge Wright in the same case, as to other parties' motions, at pp. 5-6)(Emphasis added.)

Even after discovery, the *Bradley* Court was not persuaded by these same arguments, and found them to be questions of fact, squarely within the province of the jury, and necessarily claims which, under Missouri law, could be advanced against such defendants. Plaintiffs here ask for nothing more; an opportunity to conduct relevant and necessary discovery, and ultimately a chance to ask a jury for justice.

### C. Plaintiffs' Allegations are Covered by the MMPA

The Defendants' argument that Plaintiffs' Missouri Merchandising Practices Act ("MMPA") claim should be dismissed is without merit, and should be denied.[2]

Missouri Courts have repeatedly found, the MMPA prohibits the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce ... in or from the state of Missouri...." Mo.Rev.Stat. § 407.020.1. "Merchandise" includes services. *Id.* § 407.010(4). A private right of action is bestowed upon any consumer who "suffers an ascertainable loss of money or property ... as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020...." *Id.* § 407.025.1.

The purpose of the MMPA was discussed in the case of *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 S.W.2d 362, 368 (Mo.App.1973) wherein the court stated:

> The purpose of these statutes is to supplement the definitions of common law fraud in an attempt to preserve fundamental honesty, fair play and right dealings in public transactions. In order to give broad scope to the statutory protection and to prevent ease of evasion because of overly meticulous definitions, many of these laws such as the Missouri statute do not attempt to define deceptive practices or fraud, but merely declare unfair or deceptive acts or practices unlawful leaving it to the court in each particular instance to declare whether fair dealing has been violated.

(internal quotation omitted). *See also Breeden v. Hueser*, 273 S.W.3d 1 (Mo. App. W.D. 2008) ("Merchandising Practices Act is designed to preserve fundamental honesty, fair play and right dealings in public transactions."); *Zmuda v. Chesterfield Valley Power Sports, Inc.*, 267 S.W.3d 712 (App. E.D. 2008) ("The provision of the Merchandising Practices Act setting forth what

---

[2] The orders cited above, and provided with these Suggestions, also defeat this more general argument of defendants: that as a matter of law Plaintiffs' MMPA claims must be dismissed. Clearly, at a minimum discovery is required before any ultimate test of the underlying facts is required of this Court.

constitutes an unlawful practice is intentionally broad to prevent evasion by overly meticulous definitions."). The ultimate objective of the MPA is consumer protection. *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. banc 2007). Thus, to effectuate its objective, Missouri courts have emphasized that the MMPA should be **liberally** construed to protect consumers. *See e.g., State ex rel. Webster v. Myers*, 779 S.W.2d 286, 290 (Mo. App. 1989).

In fact, as recently as June, 2013, Division 17 of the Circuit Court of Jackson County, twice denied motions made by these same attorneys while defending another purported college against almost identical MMPA claims. (See Exhibits "D" and "E", whereby the Honorable Judge Grate denied motions for directed verdict in *Kerr v. Vatterott Educational Centers, Inc.*, et al, Case No. 1216-cv-12385. Judge Grate's rulings are by handwritten order on the bottom of the first page of each filed motion.) Ultimately, that case was submitted to a jury on the very MMPA claim that the same defense counsel here now tells the Court is unsupported by Missouri law. (See Exhibit "F", Jury Instructions signed by Judge Grate, and given to Jury. Specifically, Instruction No. 6, directs the jury under the plaintiff's MMPA claim.)

On June 17, 2013, a Judgment was entered against Vatterott, represented by the same defense counsel as filed this motion, stating in pertinent part: "On the claim of Plaintiff Kerr for violations of the Missouri Merchandising Practices Act against Defendant Vatterott, the jury found for Plaintiff . . ." (See Exhibit "G", Judgment.)

Clearly, purchases of educational services for direct use are within the purview of the MMPA. Mo. Rev.Stat. § 407.010.(4), and may be presented to a jury. That Plaintiffs may have desired to utilize the services provided to them for personal use in their future endeavors, including in their attempts to advance their careers, does not render the provision of such services outside the scope of the "intentionally broad" MMPA. *See Zmuda v. Chesterfield Valley Power Sports, Inc.*, 267 S.W.3d 712, 716 (Mo. Ct. App. 2008).

16

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Thus, Defendant's Motion to Dismiss Count V must be denied.

**D.    Plaintiffs' Complaint is Pled with Sufficient Particularity**

Defendant's Point I asserts that plaintiffs' fraud (Count I), misrepresentation (Count II) and Missouri Merchandising Practices Act ("MMPA") (Count V) claims are not pleaded with sufficient specificity to satisfy *Supreme Court Rule 55.15*, and thus should be dismissed. Defendants are mistaken.

In *Ullrich v. CADCO, Inc.,* 244 S.W.3d 772, 777 (Mo. App. E.D. 2008), the court of appeals reversed a trial court's order dismissing an MMPA claim for noncompliance with *Rule 55.15*. In so doing, the *Ullrich* court noted that the MMPA and its implementing regulations "paint with broad strokes to prevent evasion thereof due to overly meticulous definitions," and thus decided it was unnecessary to plead MMPA claims with the same specificity as required for common law fraud. *Id.* at 778, *quoting, Schuchmann v. Air Services Heating & Air Conditioning, Inc.*, 199 S.W. 3d 228, 233 (Mo. App. S.D. 2006). Consistent with the remedial purposes of the statute, a pleading alleging a violation of the MMPA does not have to satisfy the meticulous pleading requirements of *Rule 55.15* under *Ullrich*.

Assuming *arguendo* that the rule has some application to MMPA claims, it is self-evident that plaintiffs have satisfied its particularity requirements by comparison of their petition to the pleading at issue in *Ullrich*. There, plaintiffs "failed to describe any particular statement made by CADCO misrepresenting its qualifications" and only generally averred that defendant had misrepresented its qualifications to plaintiff. Nevertheless, the *Ullrich* court determined that the petition stated an MMPA claim. Here, plaintiffs' petition describes defendants' general pattern and practice of fraud. [Pet. at ¶¶ 13-14; 18; 20; 24]:

> 13. WCC deceives students about federal financial aid, the true
> cost of attending WCC, the value of WCC's accreditations, the quality

17

and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.

14. WCC does this by improperly hiding information from visitors to its websites and by misleading students through affirmative misrepresentations and material omissions. WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value, to re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.

18. In or around 2011 WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

a) that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;

b) that any educational credits earned at WCC would transfer and would apply towards a degree program at another school;

c) that WCC's instructors all had degrees and were experienced in their respective fields;

d) that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;

e) that enrolling in its evening classes offered all of the same benefits as the day classes;

f) that the cost of the program would be less than WCC knew would be the actual cost of the program;

g) that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

h) that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

18

i) that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j) that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k) in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

20. After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a) Educational credits earned at WCC were not transferable towards programs at other schools;

b) The program in which Plaintiffs enrolled lasted longer and was more expensive than Defendants represented;

c) Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

d) There was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances class was held with no instructor at all;

e) Defendants used a class scheduling "protocol" referred to as "pods" wherein new students are placed in courses that are already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier, necessary coursework and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f) The evening classes did not offer all of the same benefits as the day classes. There was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed. Moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

19

g) The student loans and grants did not include the total cost of the students program resulting in debt that Plaintiff were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

h) Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants didn't provide Plaintiff with books. Also, "electronic" textbooks that were promised were either not made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i) In other ways demonstrated by the admitted evidence at any trial in this matter.

24. Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility including but not limited to:

a. Job placement and job demand;
b. Anticipated starting salary;
c. Graduation rates;
d. Instructors Qualification;
e. Quality of education;
f. Transferability of credits to other institutions;
g. Instructor's qualifications; and
h. Cost and duration of program.

25. At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

Under *Ullrich,* petition pleads plaintiffs' MPA claims with the necessary specificity.

As to the fraud and negligent misrepresentation claims, it is not necessary to plead every circumstance of the fraud with particularity to satisfy the rule, only its essential elements. *Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 953 (Mo. Ct. App. 1991). On its face, the petition pleads all of the essential elements of plaintiffs' fraud claims, including the facts upon which they are based, [Pet. at ¶¶13-14; 18; 20; 24-30], as well as the causal connection between

20

plaintiffs' expenditure of their time and money to attend defendants' school in reasonable reliance on misrepresentations and fraudulent non-disclosures. [Pet. at ¶¶ 26-29]. Simply put, plaintiffs' pleading satisfies the rule.

> 25. At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

> 26. At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

> 27. Plaintiffs had a right to rely on Defendants' representation and did, in fact, rely on such representation.

> 28. That in reliance on the material misrepresentations of WCC, Plaintiffs enrolled in its facility and were assisted in applying for financial aid in the form of student loans, which loans much be repaid by Plaintiffs after graduation from WCC.

> 29. As a direct and proximate result of Defendants' fraudulent representation the Plaintiffs have incurred damages.

As shown above, Plaintiffs' fraud, negligent misrepresentation and MMPA claims are properly pleaded; they satisfy Supreme Court Rule 55.15; and, as so pleaded, they do not present any impediment to defendants answering the petition and participating in discovery. Point I of defendants' motion should be overruled.

### E.   The Petition does not address mere Puffery but rather Affirmative Fraud

In addition to incorrectly contending that the Plaintiffs' misrepresentation claims constitute "educational malpractice" claims, Defendants also contend that certain claims are "sales puffery" and/or "opinions," and are therefore not actionable (Defendants' Motion to Dismiss, Section IV).

"The general rule is that the expression of an opinion cannot constitute fraud; but the rule is not hard and fast. Whether a given representation is an expression of opinion or a statement of fact depends on the circumstances of the particular case.' 37 C.J.S. *Fraud* § 13 (1997). Such

21

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

determination is often for the jury. *See, e.g., White v. ABC Home Inspection, Inc.*, 2000 Westlaw 1473144 (Mass. Super. June 27, 2000) at *5 ("I cannot conclude as a matter of law that the statement qualifies as exaggerated seller's talk or opinion. Rather, the issue presents a dispute of fact for a jury or other factfinder to decide").

With regard to the specific misrepresentations at issue in Defendants' Motion, each involves matters that are ascertainable as a matter of fact. The misrepresentations are not general or opinion in nature – such as that the school was "good". Instead, the misrepresentations alleged are specific and factual, as set forth in detail above.

Even if the factual misrepresentations at issue could be considered opinions, "[t]he general rule does not apply if in addition to expressing an opinion, material facts have been fraudulently concealed. *Id.*" *Reis v. Peabody Coal Co.*, 997 S.W.2d 49, 65 (Mo. App. E.D. 1999) (emphasis added). In addition, a representation of opinion may amount to fraud if the representing party has, or holds himself out to have, special knowledge and, knowing the other party is ignorant, makes a false representation intending it to be relied on. *See Arnold*, 934 S.W.2d at 626-627, *see also, Constance v. B.B.C. Development Co.*, 25 S.W.3d 571 (Mo. App. W.D. 2000). All of these exceptions are implicated under the facts of this case – facts were fraudulently concealed, the school and its Admissions staff have special knowledge, and the school and its Admissions staff intended for students to rely on the information provided.

Section 539 of the Restatement of Torts applies to "Representation of Opinion Implying Justifying Facts," as follows:

> (1)     A statement of opinion as to facts not disclosed and not otherwise known to the recipient may, if it is reasonable to do so, be interpreted by him as an implied statement
>
> > (a)     that the facts known to the maker are not incompatible with this opinion; or

22

(b)    that he knows facts sufficient to justify him in forming it.

(2)    In determining whether a statement of opinion may reasonably be so interpreted, the recipient's belief as to whether the maker has an adverse interest is important.

*Id.; See also, Zaniboni v. Seminatore*, 2005 Westlaw 3721102 (Mass. Super. Dec. 15, 2005) at

*3-5; *Rodi v. Southern New England School of Law,* 389 F.3d 5, 14 (1ª Cir. 2004); *White v. ABC*

*Home Inspection, Inc.*, 2000 Westlaw 1473144 (Mass. Super. June 27, 2000 at *4-5); *Vision*

*Graphics, Inc. v. E.I. Du Pont De Nemours & Co.*, 41 F.Supp.2d 93, 100-101 (D. Mass. 1999);

*VNA Plus, Inc. v. Apria Healthcare Group, Inc.*, 29 F.Supp.2d 1253, 1265-66 (D. Kan. 1998);

*Goldman v. Barnett*, 793 F.Supp. 28, 30-31 (D. Mass. 1992).

Even in situations in which the parties are adverse, Section 542 of the Restatement of Torts shows that an opinion can be justifiably relied upon if the maker of the statement:

(a)    purports to have special knowledge of the matter that the recipient does not have, or

(b)    stands in a fiduciary or other similar relation of trust and confidence to the recipient, or

(c)    has successfully endeavored to secure the confidence of the recipient, or

(d)    has some other special reason to expect that the recipient will rely on his opinion

*Id.; see also, Westby v. Gorsuch*, 50 P.3d 284, 292-93 (Wash. App. 2002).

Each of these numerous points of law, recognized by the Restatement of Torts and Missouri law, apply to the facts of this case. Plaintiffs' pleadings allege that Defendants promised specific services and goods would be provided, and that they intended prospective students to rely on the information provided. If this Court is inclined to require additional factual pleadings in regard to any opinions made from a fiduciary and superior knowledge position, Plaintiff will gladly so amend, as is specifically requested in the alternative below.

23

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Plaintiffs have also alleged that many material facts have been concealed by Defendants. (Pet. ¶¶ 18(a-k); 20(a-i); 24(a-h); and 31).

Defendants' cited cases are not controlling and are distinguishable from the facts of this case for a multitude of different reasons. For example, the Defendants' citation to *Wofford v. Kennedy's 2nd Street Co.*, 649 S.W.2d 912, 915 (Mo. App. E.D. 1983). *Wofford* involved claims of negligence and fraudulent misrepresentation brought by a patron against a restaurant/tavern and the developer of the area, after the plaintiff had been assaulted leaving the business at night. Plaintiff's claim for fraud was based on the defendants' representation that the area was a "low-crime area." The case was dismissed on summary judgment because the statement was one of opinion and "what is low and what is high would necessarily differ from person to person and from area to area." *Wofford*, 649 S.W.2d at 915.

Defendants have thus cited to no authority that is remotely on point with the facts in this case or that in any way supports a summary judgment finding by this Court that Defendants' specific misrepresentations of fact regarding salary, job placement, job demand, accelerated nature of the programs, and other matters should be dismissed as mere sales talk, puffery, or opinion. The case law instead is squarely in opposition to the arguments made in Defendants' Motion. Further, the issues raised by Defendants, at most, involve factual issues for the jury to decide. Accordingly, Defendants' Motion should be denied.

F.  **Negligent Hiring/Retention -- "Dangerous Proclivity"**

In yet another attempt to turn Plaintiffs' petition into something that it is not, Defendants next argue that Count III of Plaintiffs' Petition should be dismissed because Plaintiffs have failed to allege any intentional or criminal conduct. Plaintiffs' maintain that this is an action rooted in *fraud*. While this is not the usual case of an employee taking criminal action against another, here, it was represented to Plaintiffs that the teachers and instructors at WCC would actually

24

teach them *something*. Count III of Plaintiffs' petition is based upon the very basic premise that the individuals receiving payment for instructing Plaintiffs were in fact *teachers*. If discovery in this case reveals that, as alleged, the "instructors" at Wright Career College, were not simply poorly qualified, but in fact not qualified at all, then defendants' must answer for willfully hiring them, and placing them in a position where the performance of Wright Career College's obligations to its students was impossible from the outset.

Furthermore, Missouri Courts have found that whether or not a claim for negligent hiring alleges a sufficient "dangerous proclivity" is a fact issue that **cannot** be resolved on a motion to dismiss for failure to state a claim. *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77 (Mo. Ct. App. 2012). In *Dibrill* the Court explained that "whether the nature of [employee's] criminal history was such that Defendants knew or should have known that [employee] had the particular dangerous proclivity of beating. . . a resident is a fact issue that cannot be resolved on a motion to dismiss for failure to state a claim." *Id.* at 89. "Matters of foreseeability and proximate cause must be left for the court and jury after presentation of evidence." *Id.*, citing *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 572 (Mo. Ct. App. 1983) (similarly holding: "we are unwilling to say, **at the pleading stage**, that as a matter of law plaintiffs cannot prove that defendant's negligent hiring or retention was the proximate cause of their injury.") (emphasis added).

Defendants cite no case standing for the proposition that a negligent hiring or retention claim must be dismissed when the underlying allegations of harm arise out of fraud. This Court should deny the motion on this Count as well, and permit discovery thereon.

### G. Plaintiffs Have Properly Pled Their Civil Conspiracy Claim

Defendants argue that Plaintiffs fail to state a claim for civil conspiracy because it is not a separate cause of action, but simply holds conspirators jointly and severally liable for the underlying act. Plaintiffs agree that in Missouri, a conspiracy does not give rise to a civil cause

25

of action *unless* something is done pursuant to which, absent the conspiracy, would create a right of action against one of the conspirators. *Gettings v. Farr*, 41 S.W.3d 539, 541–542 (Mo. App. E.D.2001). This means that since the primary purpose of a civil conspiracy is to cause injury to another, the gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff. *Contour Chair Lounge Co. v. Aljean Furniture Mfg. Co.*, 403 S.W.2d 922 (Mo. Ct. App. 1966); *Rosen v. Alside, Inc.*, 248 S.W.2d 638, 643 (Mo. 1952).

It is certainly true that if the underlying wrongful act alleged as a part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well. *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996). A case will be dismissed if the plaintiff failed to plead a cause of action for the underlying tort. *See Williams v. Mercantile Bank of St. Louis NA*, 845 S.W.2d 78, 85 (Mo.App. E.D.1993).

Here, however, Plaintiffs have pled a cause of action for the underlying torts of making fraudulent and negligent misrepresentations to Plaintiffs in order to induce them to enroll as students at Wright Career College—also giving rise to a cause of action under the MMPA. While it is true that *if* Plaintiffs' negligence and fraud claims fail against Defendants, the civil conspiracy claim could not survive on its own, Plaintiffs here have adequately pled their claims against Defendants. As such, their claim for civil conspiracy should not be dismissed for the mere reason that it is set out in a separate count.

As the Court in *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586-87 (Mo. Ct. App. 2008) stated:

> To properly plead his case, a plaintiff seeking joint and several liability for an act committed in furtherance of an unlawful conspiracy must plead two things. He must plead the underlying unlawful act which damaged him. He must also plead

the civil conspiracy, which allows him to hold the defendants jointly and severally liable for damages caused by actions taken in furtherance of the conspiracy.

This is precisely what Plaintiffs here have done: they have pled the underlying unlawful acts of Defendants which damaged them. They have also pled the civil conspiracy, which allows them to hold Defendants jointly and severally liable for their negligent and fraudulent acts done in furtherance of the conspiracy. As such, Defendants' Motion to Dismiss Plaintiffs' civil conspiracy claim should be denied.

Defendants' additional argument that there can be no conspiracy among Defendants since they are all officers, agents, or employees of the defendant corporation must also fail. The general rule is that a corporation cannot conspire with its own employees. *Metts v. Clark Oil & Refining Corp.*, 618 S.W.2d 698, 702 (Mo.App. E.D. 1981). However, there is an exception to this general rule, which exists where an employee has an independent personal stake in achieving the object of the conspiracy. Id.; see also *Creative Walking, Inc. v. Am. States Ins. Co.*, 25 S.W.3d 682, 688 n. 3 (Mo.App. E.D.2000).

Here, the fraud and collusion amongst even the named defendants as *alleged* was for the personal financial gain of the individual board members and employees. This is precisely the exception envisioned above. At a minimum, it is inappropriate for the claim to be dismissed without discovery proceeding thereon. Should, upon the close of discovery, defendants find it appropriate to file a motion for summary judgment, the Court can then be fully advised on the premises therefor.

### H. <u>A Full Accounting is Both Necessary and Proper in this Case</u>

Count VI of Plaintiffs' Petition states a claim for Accounting. The present case deals with complicated questions of fact as to each Plaintiffs' charges of tuition, costs of books, laboratory fees, and other supplies or fees (Pet. ¶ 57) and to each Plaintiffs' grants or loan funds received by

27

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Defendants, including the location of such grant or loan, the source of stipends or budget plan funds being paid to Plaintiffs, including all financial institutions in which such funds are held; all amounts currently owing to Plaintiffs which exceed their costs of schooling; and the tuition incurred by Plaintiffs (Pet. ¶ 58).

Under Missouri law, a party is entitled to an order for an accounting of the party's debt to another (here, the student-Plaintiffs' debt to WCC) when there is a *bona fide* dispute concerning a substantial amount of the indebtedness. *White v. Mid-Continent Investments, Inc.*, 789 S.W.2d 34 (Mo. Ct. App. W.D. 1990). In addition to the existence of a dispute involving a proportionately substantial amount and a complicated accounting, there is another reason which compels an accounting: where the evidence establishes that at least some of the consideration for the sale of the services provided to Plaintiffs did in fact reach WCC or its officers. In this respect WCC occupied a fiduciary relationship to the Plaintiffs and is under a duty to account to Plaintiffs for the application of such funds and property. *Big Valley, Inc. v. First Nat. Bank of Pulaski Cnty.*, 578 S.W.2d 616, 620 (Mo. Ct. App. 1979) *citing* 1 C.J.S. Accounting s 19, p. 655.

Here, the determination of the balance of Plaintiffs' indebtedness will involve complicated calculations, and the amount of the disputed indebtedness is proportionally substantial. As such, there is some reasonable factual basis from which the Plaintiffs can dispute the balance, and due to the payment of Plaintiffs' funds to WCC and third parties, an accounting should be had to determine the respective balances due from each Plaintiff. *Big Valley, Inc.*, 578 S.W.2d at 620.

This is a prime example of a complicated case involving a dispute of indebtedness. This Court should not dismiss Plaintiffs' Count VI requesting an accounting without first granting leave to amend. Plaintiffs, upon amendment, will then plead facts showing the explanation as to why present-

28

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

day discovery methods would be inadequate to afford them complete redress in an action at law for breach of contract, and facts sufficient to show a fiduciary relationship between Plaintiffs and WCC.

## I. Merely Setting Forth Punitive Damages in a Separate Count Does Not Warrant Dismissal

Defendants lastly make the bald assertion that "Missouri law is clear that 'Punitive Damages' is not a separate cause of action" and thus Plaintiffs' Count VII should be dismissed because it does not allege an actual cause of action. This argument is clearly flawed. Merely setting Plaintiffs' Punitive Damages claim forth in a separate claim in their petition does not warrant dismissal of their request for punitive damages. In fact, in Missouri it is customary, but not necessary, that the claim for punitive damages be in a separate count. 15 Mo. Prac., Civil Rules Practice § 55.19:2 (2013 ed.), *citing Brown v. Payne,* 264 S.W.2d 341 (Mo. 1954).

While it is true that an action seeking both actual and punitive damages resulting from the same tort constitutes a single claim, the fact that a petition seeks punitive damages in addition to other relief does not transform it into an action seeking more than one claim for relief. *Jensen v. Howard,* 926 S.W.2d 77, 78 (Mo. Ct. App. 1996)

The only case cited by Defendants in support of this flawed argument, *Hyatt v. Trans World Airlines, Inc.,* 943 S.W.2d 292, 295 (Mo. Ct. App. 1997), involved a case where the Plaintiff's underlying fraud claims were dismissed, thus the Court held that the related punitive damages claim could not survive on its own, "but rather it must be brought in conjunction with a claim for actual damages."

Here, Plaintiffs have properly sought a claim for punitive damages in conjunction with their other counts and claims for actual damages. The mere fact that Plaintiffs have structured their petition to include a separate count for punitive damages does not warrant dismissal, as this is the customary way that Missouri plaintiffs seek such damages.

29

### III.    IF THE COURT SO REQUIRES, PLAINTIFFS SEEK LEAVE TO AMEND

In the event this Court finds additional factual allegations would be appropriate, the proper remedy is to grant Plaintiffs leave to amend their Petition.  Leave to amend a petition is governed by Rule 55.33(a). Rule 55.33(a) mandates that leave to amend "shall be freely given when justice so requires." It is within the trial court's broad discretion to allow amendment of the pleadings at any stage in the proceedings. *Walton v. City of Berkeley,* 158 S.W.3d 260, 263 (Mo.App. E.D.2005). When considering whether to allow a party to amend a pleading, there are a number of factors which the trial court should consider, including: 1) hardship to the moving party if leave to amend is not granted; 2) reasons for failure to include any new matter in previous pleadings; 3) timeliness of the application; 4) whether an amendment could cure any defects of the moving party's pleading; and 5) injustice to the party opposing the motion. *Eltiste v. Ford Motor Co.,* 167 S.W.3d 742, 751 (Mo.App. E.D.2005); *Moynihan v. City Of Manchester,* 203 S.W.3d 774, 776 (Mo. Ct. App. 2006).

Additionally, Rule 67.06 states that the court, on sustaining a motion to dismiss, shall freely grant leave to amend:

> On sustaining a motion to dismiss a claim, counterclaim or cross-claim the court shall freely grant leave to amend and shall specify the time within which the amendment shall be made or amended pleading filed. If the amended pleading is not filed within the time allowed, final judgment of dismissal with prejudice shall be entered on motion except in cases of excusable neglect; in which cases amendment shall be made promptly by the party in default.

Mo. R. Civ. Pro. 67.06

Therefore, in the alternative and pursuant to Mo. R. Civ. Pro. 55.33 and 67.06, Plaintiffs request leave to amend their Petition.

## IV. CONCLUSION

Defendants have moved to dismiss a fictional petition that is not before this Court. At every turn, defendants mischaracterize and create out of whole cloth the claims they then ask this Court to dismiss. Plaintiffs Petition, despite the fiction of the instant motion, in fact does plead all necessary elements of fraud with particularity, it does set forth a valid MMPA claim, and it does properly assert that these defendants engaged in actionable conduct, subject to punitive damages. The petition however, **does not expressly or impliedly, assert a claim for educational malpractice.** As such, the instant motion is merely a legal theory in search of factual application. The allegations contained in this case simply to not support that application here.

Defendants' motion to dismiss is without merit. It should be overruled in its entirety.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:     (816) 836-5050
Facsimile:      (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

31

## CERTIFICATE OF SERVICE

I hereby certify on this 19th day of May, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
**JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

*/s/ Andrew K. Smith*
**ATTORNEY FOR PLAINTIFFS**

# EXHIBIT "A"

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MANDIE ROGERS,                          )
                                        )
                  Plaintiff,            )
                                        )
vs.                                     )     Case No. 09-1090-CV-W-ODS
                                        )
CAREER EDUCATION CORPORATION,           )
SANFORD BROWN COLLEGE, INC.,            )
COLORADO TECHNICAL UNIVERSITY,          )
INC., and DALE MARBELL,                 )
                                        )
                  Defendants.           )

<u>ORDER AND OPINION (1) GRANTING PLAINTIFF'S MOTION TO AMEND, AND
(2) DENYING DEFENDANTS' MOTION TO DISMISS</u>

Pending is Defendants' motion to dismiss (Doc. 8) and Plaintiff's motion for leave
to file her first amended complaint (Doc. 15). Plaintiff's motion for leave is granted, and
Defendants' motion to dismiss is denied.

I. BACKGROUND

On November 24, 2009, Plaintiff filed a three-count petition in state court against
Defendants, asserting a claim under the Missouri Merchandising Practices Act, Mo.
Ann. Stat. § 407.010, *et seq.* (MMPA), a claim for fraudulent misrepresentation, and a
claim for fraudulent omission or concealment. Plaintiff alleged Defendant Career
Education Corporation (CEC) owned and operated Sanford Brown College, Inc. (SBC),
which offered a medical assistant program at its North Kansas City campus. Plaintiff
enrolled in SBC's medical assistant program in February 2004. Plaintiff asserted that
Defendant Dale Marbell, an admissions representative for SBC, persuaded her to enroll
in the program by telling her that she reasonably could expect to earn $18-$20 per hour
upon graduation, that the medical assistant program was the highest job demand field,



that SBC would provide placement services to Plaintiff, that graduates of SBC had no trouble finding jobs in their respective fields, and that SBC would provide her state of the art training aids and equipment upon which to learn.

After Plaintiff filed her petition in state court, CEC and SBC (which had changed its name to Colorado Technical University, Inc. (CTU)) removed the action to federal court and filed a motion to dismiss, arguing Plaintiff's claims were barred by the 5-year statute of limitations found at Mo. Ann. Stat. § 516.120. In addition, CEC and SBC/CTU contended certain allegations in Plaintiff's petition should be dismissed or struck because they were either attempts to recover damages for educational malpractice (a cause of action not cognizable in Missouri) or for representations of what independent parties would do in the future (which generally are not actionable).

In response to CEC and SBC/CTU's limitations argument, Plaintiff filed a motion for leave to file her first amended complaint, attached to which was a proposed First Amended Complaint alleging additional facts regarding Plaintiff's discovery of the claimed fraud. Plaintiff claimed she graduated from SBC/CTU in March 2005, and thereafter discovered that the job demand, job placement, starting salary, and state of the art representations made to her were false. Plaintiff further maintained that after graduation Defendants failed to provide placement assistance as promised, that she was unable to find a job for more than 1 year, and that when she finally was hired her pay rate was only $10 per hour and she learned that she had not been trained on state of the art equipment. In response to CEC and SBC/CTU's other arguments, Plaintiff maintained that she was accusing Defendants of failing to perform specific promises made to her, not educational malpractice, and that the representations she was relying upon were actionable notwithstanding that they related to future events.

## II. DISCUSSION

To survive a motion to dismiss, a claim must have "'facial plausibility when the plaintiff pleads a factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Dubinsky v. Mermart*, LLC

2

595 F.3d 812, 815 (8th Cir. 2010) (citations omitted). In determining whether a claim is facially plausible, the Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citation omitted).

The Court first considers whether Plaintiff should be permitted to amend her pleadings. Leave to amend pleadings should be freely granted when justice so requires. *In re Hutchinson Technology, Inc. Securities Litigation*, 536 F.3d 952, 962 (8th Cir. 2008). However, the Court is not obligated to grant leave when the proposed amendment to the complaint would be futile. *See id.* Defendants contend Plaintiff should not be allowed to amend her petition and her suit should be dismissed because she has failed to plead facts showing due diligence in discovering Defendants' alleged fraud. The Court disagrees.

Claims for fraudulent misrepresentation, fraudulent concealment, and for violations of the MMPA must be commenced within 5 years after they accrue. *See* Mo. Ann. Stat. § 516.100; Mo. Ann. Stat. § 516.120(2) (prescribing limitations period for statutory actions); Mo. Ann. Stat. § 516.120(5) (prescribing limitations period for fraud actions); *Owen v. General Motors Corp.*, 533 F.3d 913, 921 n.6 (8th Cir. 2008) (stating that MMPA claim was subject to § 516.120(2)). An action for fraud accrues when the plaintiff discovers, or in the exercise of due diligence should have discovered, the facts constituting the fraud. Mo. Ann. Stat. § 516.120(5); *Aetna Cas. & Sur. Co. v. Fernandez*, 830 F.2d 952, 954 (8th Cir. 1987). If the plaintiff's suit is commenced more than 5 years after the fraudulent representations are made, the plaintiff must plead facts "'toll[ing]'" the limitations period, which could include facts showing plaintiff's due diligence in attempting to discover the fraud or facts showing that plaintiff was powerless to discover the fraud sooner. *Id.* In general, the issue of when the plaintiff discovered or by reasonable diligence could have discovered fraud is a question of fact. *See Klehr v. A.O. Smith Corp.*, 87 F.3d 231, 235 (8th Cir. 1996). Here, Plaintiff's state

3

court petition failed to allege when she discovered the alleged fraud, but her proposed First Amended Complaint alleges that she did not discover–and could not have discovered–the falsity of Defendants' representations until after she graduated in 2005, which is less than 5 years before she filed suit. Accepting Plaintiff's allegations in her proposed complaint as true and drawing all reasonable inferences in her favor, Plaintiff has alleged sufficient facts showing that she brought suit within 5 years after her claims accrued. Defendants' arguments are rejected, and the Court grants Plaintiff's motion for leave to file her first amended complaint.

Next, CEC and SBC/CTU contend the Court should strike or dismiss Plaintiff's allegation that Defendants misrepresented to her they would provide state of the art equipment upon which to learn.[1] According to CEC and SBC/CTU, this allegation–ostensibly a claim for fraud–is actually a claim for educational malpractice. In *Blake v. Career Educ. Corp.*, No. 4:08CV00821 ERW, 2009 WL 2567011, at *2-*5 (E.D. Mo. August 18, 2009), the court cited Missouri law in describing educational malpractice as a nonviable cause of action in which the plaintiff seeks to recover from an educator for the alleged failure to provide adequate educational services. *Id.* at *2. However, *Blake* recognized that a plaintiff may recover for *fraud* against an educator for failing to provide *specifically promised* educational services. *Id.* Here, more factual development is necessary before the Court can determine whether Plaintiff's state of the art equipment allegation is merely a veiled attempt to recover for educational malpractice or a legitimate claim for fraud. Plaintiff is entitled to discovery on this claim, and CEC and SBC/CTU's motion to strike or dismiss this allegation is denied.

Lastly, CEC and SBC/CTU argue that Plaintiff cannot recover for representations regarding expected salaries or whether credits would transfer to other schools because those representations relate to predictions of independent third parties' future actions which are not actionable. Missouri law holds that fraud cannot be predicated upon a statement regarding what independent third parties will do in the future. *Sindecuse v.*

---

[1] CEC and SBC/CTU actually challenged three allegations as being for educational malpractice, but two of those allegations were omitted from Plaintiff's proposed amended complaint, leaving only the equipment allegation at issue.

4

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

*Katsaros*, 541 F.3d 801, 803 (8th Cir. 2008) (citing *Eureka Pipe, Inc. v. Cretcher-Lynch & Co.*, 754 S.W.2d 897, 899 (Mo. Ct. App.1988)). However, there is an exception for statements made by a speaker with or who professes to have peculiar or superior knowledge of the matter involved. *See State ex rel. St. Louis & San Francisco Ry. Co. v. Daues*, 290 S.W. 425, 428 (Mo. 1927) (cited in *Nichols v. Hendrix*, 312 S.W.2d 163, 166 (Mo. Ct. App. 1958)); *Dawes v. Elliston*, 369 S.W.2d 285, 287-88 (Mo. Ct. App. 1963). Here, Plaintiff has alleged sufficient facts which, if true, could satisfy the exception to the general rule, and Plaintiff is entitled to discovery on these claims before the Court can determine whether Plaintiff is precluded from recovering for the starting salary and credit transferability representations. CEC and SBC/CTU's motion to dismiss or strike these allegations is denied.

### III. CONCLUSION

CEC and SBC/CTU's motion to strike and/or dismiss is denied. Plaintiff's motion to amend her complaint is granted. Plaintiff shall electronically file her amended complaint on or before April 28, 2010.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: April 14, 2010                UNITED STATES DISTRICT COURT

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

# EXHIBIT "B"

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GISELLE BRADLEY, et al.,            )
                                    )
            Plaintiffs,             )
                                    )
    v.                              )    No. 05-0930-CV-W-SOW
                                    )
SANFORD BROWN COLLEGE, INC.,        )
et al.,                             )
                                    )
            Defendants.             )

ORDER

Before the Court are defendant Sanford Brown College, Inc.'s ("SBC") Motion for
Summary Judgment on Claims of Plaintiff Darla Roberts (Doc. #215), plaintiffs' Suggestions in
Opposition, and defendant SBC's Reply. For the reasons stated below, defendant SBC's motion
is denied.

I. Background

Defendant SBC moves for summary judgment on the claims of plaintiff Darla Roberts.
Plaintiff Roberts has asserted claims of common law fraud (Count I), violation of the Missouri
Merchandising Practices Act (Count II), and breach of contract (Count III) against SBC. The
material facts relevant to the pending motion are as follows.

In 2001-2002, SBC was a system of five campuses offering programs in business,
information technology, nursing, and allied healthcare. One of SBC's campuses was located in
North Kansas City, Missouri. This campus offered a program in radiography. Plaintiff Darla
Roberts became interested in this program after seeing a television advertisement about SBC's
radiography program. Roberts called the North Kansas City campus of SBC and spoke with

PLAINTIFF'S EXHIBIT B

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 1 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 1 of 23
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 210 of 398

Maddy Koehler.

A.    Admissions Representatives at SBC

      Koehler was employed by SBC as an admissions representative at SBC's North Kansas City campus.  Roberts met with Koehler at the North Kansas City campus of SBC on two occasions prior to enrolling in the radiography program at SBC.

      Plaintiff Roberts asserts that the admissions representatives are more like sales representatives as SBC "sets sales targets, or quotas, . . . based on the percentage of leads converted to in-office interviews ('shows') and to enrollments ('starts')."  Defendant SBC claims this assertion is controverted and not supported by the deposition testimony cited by plaintiffs' counsel.

      A review of Ms. Koehler's deposition transcript reveals that Ms. Koehler did not testify to SBC setting "targets" or "quotas;" however, Ms. Koehler testified in her deposition that SBC set goals for the number of leads each admissions representative should convert to in-person meetings, or "shows."  Ms. Koehler also testified that SBC set goals for the number of enrollments, or "starts," that each admissions representatives should attempt to attain.  At one point in her deposition Ms. Koehler stated that SBC set these goals on a monthly basis, later she testified that she was given annual goals.  It is not clear from the deposition testimony if she had both monthly and annual goals.

      Ms. Koehler testified during her deposition that SBC set annual goals for the admissions representatives for the number of leads that were converted to appointments and for the number of leads that led to a start, or enrollment, by a student.  Ms. Koehler testified in her deposition that during the time SBC ran the school, admissions representatives were ranked based upon the

<div align="center">2</div>

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 2 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 2 of 23

Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 211 of 398

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

number of "starts" they achieved. These rankings were announced at quarterly meetings of the admissions representatives and "little tiny awards" or "troph[ies]" were given out to top-ranking admissions representatives in certain categories.

Specifically, Ms. Koehler explained that recognition was given for the admissions representative with the most "shows," or interviews, as well as the admissions representative who converted the most leads to enrollments. Ms. Koehler testified that she received some of these trophies during the time she was employed by SBC and displayed them in her office. To attend the "high achiever conference" an admissions representative had to achieve 150 starts per year. Ms. Koehler testified that she has averaged 95 to 125 starts per year since 2001.

Plaintiffs assert that the number of leads, shows, and starts, as well as the percentage of leads converted to starts, were tracked and openly monitored for each admissions representative at the North Kansas City campus of SBC during the time of plaintiff Roberts' enrollment and attendance. Ms. Koehler's testimony is that there is a big, white dry erase board in the admissions director's office that lists the number of "starts" for the next class for each admissions representative. It is not clear from any of the deposition testimony identified by plaintiffs whether this board was in place during the time period at issue in this case.

It is undisputed that during the relevant time period, the director of admissions kept track of the number of times each admissions representative dialed an outside number.

Whether or not an admissions representative achieved the goals set for that representative by SBC was one factor in the admissions representatives performance evaluation according to Ms. Koehler. One reason for placing an admissions representative on probationary status was a failure to meet the goals set for said admissions representative by SBC. Katrina Ruthenberg, a

3

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 3 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 3 of 23
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 212 of 398

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

former admissions representative, was terminated by SBC for failing to meet "the expectations of her job." Ms. Ruthenberg identified these expectations as "goals that were set as far as . . . your performance, whether you were doing your job, . . . how many leads, did you get appointments?" If an admissions representative was not "converting at a certain percentage rate," according to Ms. Ruthenberg, then they were not meeting the expectations of the admissions representative position.

Ms. Koehler testified that there is a lot of turnover in the admissions representative position at the North Kansas City campus and stated, "It's like any sales job, either you can sell it or you can't." The number of students enrolled by an admissions representative was a factor in the salary increases awarded to said representative. In 2002, the year plaintiff Darla Roberts enrolled at SBC, Ms. Koehler was ranked second out of all forty to fifty SBC admissions representatives in terms of start numbers. In April of 2003, Ms. Koehler received a 4% salary increase, or approximately $1,600. In April of 2004, Ms. Koehler received a 4.5% salary increase over her 2003 salary.

The admissions representatives attended weekly meetings where they discussed, among other things, how to present information about the radiology program at SBC and how to overcome objections to enrollment by prospective students.

B.    Representations Made to Prospective Students by Admissions Representatives

_____After a telephone conversation with Ms. Koehler, plaintiff Roberts visited SBC and met with Ms. Koehler in Ms. Koehler's office. According to plaintiff Roberts, Ms. Koehler told plaintiff that the radiography program "was a good program," that the cost of the program was approximately $16,000, and that "the instructors were great." Plaintiff Roberts was taking

Case 4:05-cv-00930-SOW    Document 279    Filed 02/22/07    Page 4 of 15
Case 4:09-cv-01090-ODS    Document 16-2    Filed 02/15/10    Page 4 of 23

Case 4:14-cv-00885-BP      Document 1-1      Filed 10/08/14      Page 213 of 398

courses at Penn Valley at the time of this visit to SBC in 2000.

In 2001, Ms. Koehler initiated a telephone call to plaintiff Roberts and asked if Roberts was still interested in the SBC radiography program. Ms. Koehler told Roberts "that classes were filling up."

Koehler called plaintiff again in 2001 and asked if plaintiff Roberts was still interested in the radiography program. Roberts scheduled a meeting with Koehler after being told that "classes were filling."

Plaintiff Roberts and her cousin, Channell Townsend, met with Ms. Koehler together. At this visit, Ms. Koehler discussed the radiography program with plaintiff and Ms. Townsend, the limited number of students allowed to enroll in the program, and the tuition. According to plaintiff Roberts, Ms. Koehler represented to plaintiff and Ms. Townsend that the radiography program was limited to the first thirty students. Ms. Koehler admits to making representations about limits on class size. Defendant SBC does not challenge this assertion. Plaintiff Roberts later discovered that the actual number of students allowed to enroll was fifty. Koehler told plaintiff and Ms. Townsend that the tuition was $16,000 or $18,000. Ms. Koehler gave plaintiff and Ms. Townsend a tour of the SBC campus.

During this visit, plaintiff asked Ms. Koehler about the pass rate for SBC students on the registry exam and Ms. Koehler stated that SBC students had a 90% pass rate. Roberts alleges that she was told by Ms. Koehler that SBC had "state of the art radiographic equipment available." During tours of the campus, Ms. Koehler admits that she represented to students that the x-ray equipment at SBC was the type that they would be using in the industry. Ms. Koehler denies telling any prospective students that the equipment was state of the art.

5

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Plaintiff Roberts claims that she did not receive "any materials about SBC or the SBC radiography program during this visit." Plaintiff Roberts states that Ms. Koehler did show them some pages from the course catalog about the courses in the radiography program. Ms. Koehler also told them how many credits were required to graduate.

Defendant SBC has produced documents showing that on March 29, 2001, Roberts signed a SBC form which stated that she had received a copy of the SBC 2001 Course Catalog. The form contained acknowledgment language that Roberts had read or would read the policies contained in said catalog. Plaintiff Roberts denies that she actually received a copy of the course catalog at that time.

Plaintiff Roberts also signed an SBC Disclosure Form on March 29, 2001 entitled, "Accreditation of the Sanford-Brown College Radiography Program and the Transferability of Radiography Programs Credits." This form contained the following language: "It is normally at the discretion of an institution targeted to receive credits whether to accept any credits in transfer from another institution such as Sanford-Brown College. Therefore, Sanford-Brown College cannot and does not provide assurance as to the transferability of credits earned." Plaintiff denies reading or understanding this document.

Plaintiff Roberts claims that Ms. Koehler had assured plaintiff that her credits from SBC would be transferable if plaintiff wanted to continue her education elsewhere. Ms. Koehler denies making such a representation. Similarly, Laura Walsh and Channell Townsend have testified that they were told by Ms. Koehler that the credits earned at SBC would be transferable to other colleges. In fact, both discovered that the credits earned at SBC did not transfer to other schools. Ms. Koehler denies making representations about transferability of credits.

6

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 6 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 6 of 23
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 215 of 398

Also on March 29, 2001, plaintiff Roberts signed a form entitled "Sanford-Brown College Health Career Programs - Acknowledgment of Practice Experiences." This form includes the statement that "Students may have practice experiences that are out of town." Plaintiff also signed a form entitled "Sanford Brown College Health Career Programs - Grades and Continuation In A Program" on March 29, 2001.

It is unclear from the briefs of the parties what, if anything, happened after these documents were signed on March 29, 2001. It is undisputed that on February 12, 2002, almost a year later, plaintiff Roberts took some type of examination that she was told was necessary to get into the radiography program. On February 12, 2002, Roberts signed a SBC Enrollment Application. This form purports to certify that Roberts had received a copy of the SBC school catalog and a sample enrollment contract and states that Roberts understood that it was her responsibility to thoroughly review the documents prior to her next appointment. Plaintiff denies being provided with a copy of the college catalog or a sample enrollment contract on this date.

Then, on May 7, 2002, Roberts signed a SBC Enrollment Agreement agreeing to enroll in the SBC Radiography program at the North Kansas City campus starting on August 5, 2002. The Enrollment Agreement states that Roberts will be awarded an Associate Degree upon successful completion of the radiography program. The Enrollment Agreement identified the amount of tuition for the program as $23,695, but that "tuition and fees are subject to change."

The SBC Enrollment Agreement signed by Roberts on May 7, 2002 contains a section entitled "NOTICE TO BUYER." This section includes acknowledgment language that "no oral representations regarding the percentage of graduates employed or starting salaries have been made to me by any representative or employee of the School." The reverse side of the

7

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 7 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 7 of 23

Case 4:14-cv-00885-BP      Document 1-1      Filed 10/08/14      Page 216 of 398

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Enrollment Agreement includes a section entitled "GENERAL TERMS AND CONDITIONS" which provides that the student is acknowledging receipt of the Enrollment Agreement and the current SBC Catalog and purports to incorporate said catalog by reference.

According to defendant SBC, on May 7, 2002, Roberts also signed a "Sanford-Brown College Student Enrollment Questionnaire." Plaintiff Roberts states that she did not admit during her deposition that this date was in her handwriting. This document also contained statements that "employment, likelihood of employment, or starting wages if employed cannot be guaranteed . . . ." and that plaintiff had "not been promised or led to believe [she could] expect any specific starting salary for an entry level job in [her] field of study."

Subsequently, on May 28, 2002, Roberts signed a form entitled "Sanford-Brown College Education Financing Plan (Estimated)," which identified the total charges for the radiography program as $26,085, consisting of a $25 registration fee, $23,695 for tuition, and $2,365 for books/uniforms/supplies.

Defendant SBC claims that on August 1, 2002, Roberts signed yet another form entitled "Accreditation of Sanford-Brown College and the Transferability of Program Credits" and providing that it is at the discretion of an institution whether or not to accept credit transfers from another institution and stating that SBC was not providing assurances as to transferability of credits earned at SBC. On August 20, 2002, Roberts signed a "Sanford-Brown College Certification/Licensure Disclosure."

Plaintiff denies reading and understanding all of these documents. Plaintiff Roberts states that she was presented with a "pile of paperwork" after she signed the enrollment agreement.

8

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 8 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 8 of 23
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 217 of 398

C.    Plaintiff Roberts' Experience at SBC

      Plaintiff Roberts attended SBC from August of 2002 through December of 2003. According to plaintiff Roberts, after she enrolled at SBC, she discovered that SBC's radiographic equipment was "outdated and old fashioned." Plaintiff Roberts has testified that when she went to "clinicals," the "people at the clinical sites" did not like SBC students because SBC was not teaching the students what they were supposed to know. Ray Finlan, a former Clinical Coordinator at SBC, has testified that it was difficult for him to find new clinical sites by 2002 and 2003 because SBC had a bad reputation for its radiography students. According to Finlan, Shawnee Mission Medical Center, Saint Luke's South, and Baptist Medical Center had stopped allowing SBC students to complete clinicals at their facilities by the time Finlan became the Clinical Coordinator. Part of the SBC education in radiography required a clinical component.

      In an evaluation completed by plaintiff Roberts, Ms. Roberts told SBC that the equipment at SBC needed to be updated.

      Plaintiff Roberts also faults SBC for its instructors. Plaintiff has testified that Dr. Jay was assigned to teach her class on human anatomy. Plaintiff claims that Dr. Jay "didn't teach anything." It is undisputed that Vicky Cooper was hired to teach IP&E. According to plaintiff Roberts, Ms. Cooper simply gave out the answers prior to a test and then changed the order of the questions on the exam. Brandee Jones was assigned to teach pathology. Plaintiff Roberts has testified that Ms. Jones said that she did not know anything about pathology. Plaintiff Roberts has testified that Dr. Mack lacked knowledge of radiation physics and was unable to teach this subject. Plaintiff Roberts testified that instructor Jesse Pennington told plaintiff and two other students that they were not ready to graduate.

<div align="center">9</div>

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Plaintiff Roberts complained about the quality of the program to Judy Willhite, Jesse Pennington, Scott Sutherland, and Ray Finlan.

After enrolling, students were required to purchase expensive books for their coursework through the SBC bookstore. Many of these books were not used by the instructors during the course for which they were purchased. Students were also required to purchase scrubs from SBC rather than being allowed to purchase them through less expensive sources.

On December 27, 2003, Roberts received an Associate of Applied Science Degree in Radiography from SBC. Plaintiff was working at Kansas University Hospital as a student tech when she completed her schooling at SBC. The hospital offered plaintiff a full-time position at the end of December of 2003. Plaintiff Roberts accepted the position at the hospital at an hourly wage of $15.96.

Plaintiff took the registry exam in March of 2004. Roberts passed the certification examination for radiography students on March 29, 2004.

Plaintiff's supervisor at the hospital was Helen Lash. According to plaintiff, Ms. Lash told plaintiff that she did not know what she was doing and that Lash had to retrain plaintiff. Roberts received a favorable performance evaluation from her supervisors at KU Medical Center for the 6-month review period covering January 4, 2004 through July 4, 2004.

In August of 2006, plaintiff received a wage increase to $18.93 per hour.

D.     Other Students' Experience

The Court is aware that this case involves several plaintiffs, former students of SBC, who allege similar misrepresentations by admissions representatives of SBC. Since the pending Motion for Summary Judgment on the Claims of Plaintiff Darla Roberts was filed, defendants

10

have filed motions for summary judgment with respect to each plaintiff. The Court is not going to go through the alleged misrepresentations made to each plaintiff here. For purposes of the record, the Court simply notes that these plaintiffs have alleged and testified to misrepresentations similar to or identical to those alleged by plaintiff Darla Roberts.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

11

III. Discussion

A.   Fraudulent Misrepresentation (Count I) and Violation of the Missouri Merchandising

Practices Act ("MMPA")(Count II)

To establish a claim for fraudulent misrepresentation under Missouri law, plaintiff

Roberts must prove the following elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the
> speaker's knowledge of its falsity, or his ignorance of whether or
> not it is truthful, (5) the speaker's intention that it should be acted
> on by the person and in the manner reasonably contemplated, (6)
> the hearer's ignorance of the falsity of the representation, (7) the
> hearer's reliance on the representation being true, (8) [her] right to
> rely thereon, and (9) the hearer's consequence and proximately
> caused injury.

Emerick v. Mutual Benefit Life Ins. Co., 756 S.W.2d 513, 519 (Mo. banc 1988)(quoting

Herberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. banc 1988)); D'Arcy and Associates, Inc.

v. K.P.M.G. Peat Marwick, L.L.P., 129 S.W.3d 25, 31 (Mo. Ct. App. 2004).

To prove a violation of the Missouri Merchandising Practices Act ("MMPA"), Section

407.025(1), Mo. Rev. Stat., plaintiff must prove a false statement of material fact which

proximately caused her to enroll at SBC.

SBC challenges whether plaintiff Roberts can show that SBC made a representation of a

present and existing fact, and not a statement of opinion, expectation or prediction for the future.

Defendant SBC ignores the alleged representations that were made to plaintiff Roberts about: (1)

class size/number of students allowed to enroll in the radiography program; (2) the quality of

SBC's program; (3) the quality of SBC's instructors; (4) the pass rate of SBC students on the

12

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 12 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 12 of 23
Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 221 of 398

registry examination; (5) the quality of the radiography equipment available to students at the SBC campus; and (6) the transferability of SBC credits. Plaintiff Roberts has testified to such misrepresentations while Ms. Koehler, the admissions representative, denies making such misrepresentations. Therefore, there are disputed material facts to be resolved by a jury.

Next, SBC claims that even if such representations exist, there "is no evidence that any misrepresentation made by SBC was false at the time." Defendant SBC fails to discuss this conclusory assertion. Contrary to defendant's argument, plaintiff Roberts has identified evidence that SBC's claim that class size was limited to thirty students was false at the time it was made. Defendant does not even contest this fact. Plaintiff has identified evidence that SBC's instructors changed on a frequent basis and that instructors were assigned to teach courses they were not qualified to teach. Plaintiff has discovered evidence indicating that the pass rate for SBC students on the registry examination was not as high as represented to her. Two former clinical coordinators have testified that SBC's radiographic equipment was outdated and that this created problems for students attempting to complete their clinicals. In addition to plaintiff Roberts, several other students have testified that while it was specifically represented to them by an admissions representative that their SBC credits were easily transferred to other institutions, they were unable to transfer their SBC credits.

If a jury believes the testimony and evidence of the plaintiffs in this case, the jury will be able to find that SBC's admissions representatives made representations of fact, not opinion, to prospective students that were false at the time the statements were made to the prospective students. Obviously, the types of representations that were made to the prospective students were material to their decision as to whether or not to enroll in SBC.

13

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Finally, SBC contends that plaintiff Roberts has no evidence "of a loss proximately caused by the alleged fraud" or proof of damages. Plaintiff Roberts' damages incurred as a result of fraud are "measured at the time of the transaction." Davis v. Cleary Building Corporation, 143 S.W.3d 659, 668 (Mo. Ct. App. 2004). Arguably, if plaintiff Roberts proves her claims at trial, she is entitled to the return of her tuition and fees and a refund for the books she was required to purchase and never used. Plaintiff Roberts suggests that she may also be entitled to damages for the difference between the salary SBC represented that its graduates would receive and the actual amount of her salary upon graduation.

B.     Breach of Contract (Count III)

To establish a claim for breach of contract against SBC, Roberts must show: (1) that she had a valid and enforceable contract with SBC; (2) that the contract set forth specific rights of plaintiff and obligations of SBC; (3) that SBC breached one or more of those terms; and (4) damages to plaintiff resulting from the breach. Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935, 941 (Mo. Ct. App. 1996). Defendant SBC argues that plaintiff Roberts has failed to identify any specific terms of the Enrollment Agreement that were breached or any resulting damages.

Plaintiff Roberts responds that "courts have recognized claims by students for breach of contract, fraud, or other intentional wrongdoing that allege a private or public educational institution has failed to provide specifically promised educational services, such as the failure to offer classes in a particular subject or to provide a promised number of hours of instruction." Alsides v. Brown Institute, Ltd., 592 N.W.2d 468, 472 (Minn. App. 1999). Plaintiff Roberts claims that she is "entitled to recover for classes that were taught by instructors who plainly

14

Case 4:05-cv-00930-SOW   Document 279   Filed 02/22/07   Page 14 of 15
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 14 of 23
Case 4:14-cv-00885-BP     Document 1-1     Filed 10/08/14     Page 223 of 398

admit in the depositions and affidavits attached to this response that they were unqualified and inexperienced in the subjects . . . they were expected to teach."

Plaintiff Roberts has identified evidence that instructors were assigned to teach courses they were not qualified to teach. Defendant SBC responds that plaintiff's claim must be dismissed because SBC offered the courses it represented would be offered. The question remains, however, whether offering a course with an admittedly unqualified instructor satisfies the contractual requirement of offering the course.

The Court will allow this claim to remain for trial. Defendant SBC's motion for summary judgment on this claim is denied.

<div align="center">IV.  <u>Conclusion</u></div>

For the reasons stated above, it is hereby

ORDERED that defendant Sanford Brown College, Inc.'s ("SBC") Motion for Summary Judgment on Claims of Plaintiff Darla Roberts (Doc. #215) is denied.


<div style="margin-left:40%">/s/Scott O. Wright_____<br>SCOTT O. WRIGHT<br>Senior United States District Judge</div>

Dated:  <u>February 22, 2007</u>

<div align="center">15</div>

# EXHIBIT "C"

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GISELLE BRADLEY, et al.,                    )
                                            )
            Plaintiffs,                     )
                                            )
      v.                                    )       No. 05-0930-CV-W-SOW
                                            )
SANFORD BROWN COLLEGE, INC., et al.,        )
                                            )
            Defendants.                     )

<u>ORDER</u>

Before the Court are defendant Sanford Brown College, Inc.'s ("SBC") Motion for

Summary Judgment on Claims of Plaintiff Giselle Bradley (Doc. #241), SBC's Motion for

Summary Judgment on Claims of Plaintiff Catherine Clutter (Doc. #243), SBC's Motion for

Summary Judgment on Claims of Plaintiff Kimela Murphy (Doc. #245), SBC's Motion for

Summary Judgment on Claims of Plaintiff Christopher Howell (Doc. #247), SBC's Motion for

Summary Judgment on Claims of Plaintiff Chanell Townsend (Doc. #249), SBC's Motion for

Summary Judgment on Claims of Plaintiff Denise Robertson (Doc. #251), plaintiffs' Suggestions

in Opposition to each motion, and defendant SBC's Consolidated Reply.  For the reasons stated

below, defendant SBC's motions are denied.

I. <u>Background</u>

Defendant SBC moves for summary judgment on the claims of plaintiffs Giselle Bradley,

Catherine Clutter, Kimela Murphy, Christopher Howell, Chanell Townsend, and Denise

Robertson.  Each plaintiff has asserted claims of common law fraud (Count I), violation of the

Missouri Merchandising Practices Act (Count II), and breach of contract (Count III) against

1

PLAINTIFF'S
EXHIBIT
C

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

SBC. The material facts relevant to the pending motion are as follows:

In 2001-2002, SBC was a system of five campuses offering programs in business, information technology, nursing, and allied healthcare. One of SBC's campuses was located in North Kansas City, Missouri. This campus offered a program in radiography.

Each plaintiff alleges a similar history of contacting SBC about one of its programs. Each plaintiff alleges certain meetings and conversations with one or more admissions representatives employed by SBC. Plaintiffs characterize these admissions representatives as sales representatives who were trained to get prospective students to submit an application fee of $50 and to then present the prospective students with a stack of enrollment paperwork. The plaintiffs allege that they did not read much, if any, of this paperwork and did not understand all of the paperwork that they were being asked to sign.

The plaintiffs allege that the admissions representatives that each plaintiff met with made statements to about the quality of the radiography program and equipment at SBC, the job market and compensation for graduates in the radiography field, the cost of the program, the apprentice program, and the hours for classes and clinicals. The plaintiffs allege that after they enrolled at SBC and began attending classes, they learned that many of their instructors were unqualified, they were required to purchase books that were never used in their classes, they were required to purchase scrubs through SBC at higher prices than they would have paid for the scrubs at various retail outlets in the area, and that the equipment available for them to learn on at the SBC campus was outdated. Some of the students allege that the clinical opportunities available to them were different than what had been represented to them during the enrollment process in terms of the clinical locations and/or the clinical hours. Upon graduating from SBC,

2

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

some of the students had difficulty passing their certification examination while others still have not passed the examination. Finally, the plaintiffs allege that the starting salaries in their field were significantly different from what they had been led to expect by the admissions representatives at SBC.

In SBC's reply brief, SBC asks the Court to go through the entire Second Amended Complaint and identify each alleged misrepresentation "that cannot support plaintiffs' claims, so that trial in this action can be appropriately focused." The Court declines SBC's invitation to undertake such an examination of the Second Amended Complaint. Each plaintiff will be permitted to testify as to the specific alleged misrepresentations made to said plaintiff. Each plaintiff will then be permitted to testify to said plaintiff's personal experience at the SBC campus. To the extent that SBC believes that there are allegations in the Second Amended Complaint that are not admissible at trial, SBC should file an appropriate motion in limine prior to the pretrial conference in this case.

## II. Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A party opposing a properly supported motion for summary judgment may not rest upon the

3

Case 4:05-cv-00930-SOW   Document 331   Filed 04/06/07   Page 3 of 8
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 18 of 23
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 228 of 398

allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970).

### III. Discussion

**A.** Fraudulent Misrepresentation (Count I) and Violation of the Missouri Merchandising Practices Act ("MMPA")(Count II)

To establish a claim for fraudulent misrepresentation under Missouri law, each plaintiff must prove the following elements:

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity, or his ignorance of whether or not it is truthful, (5) the speaker's intention that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) [her] right to rely thereon, and (9) the hearer's consequence and proximately caused injury.

Emerick v. Mutual Benefit Life Ins. Co., 756 S.W.2d 513, 519 (Mo. banc 1988)(quoting Herberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo. banc 1988)); D'Arcy and Associates, Inc. v. K.P.M.G. Peat Marwick, L.L.P., 129 S.W.3d 25, 31 (Mo. Ct. App. 2004).

To prove a violation of the Missouri Merchandising Practices Act ("MMPA"), Section 407.025(1), Mo. Rev. Stat., each plaintiff must prove a false statement of material fact which proximately caused him or her to enroll at SBC. SBC challenges whether each plaintiff can show that SBC made a representation of a present and existing fact, and not a statement of

4

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

opinion, expectation or prediction for the future. Defendant SBC ignores the alleged representations that were made to plaintiffs about: (1) class size/number of students allowed to enroll in the radiography program; (2) the quality of SBC's program; (3) the quality of SBC's instructors; (4) the pass rate of SBC students on the registry examination; (5) the quality of the radiography equipment available to students at the SBC campus; and (6) the transferability of SBC credits. There are disputed facts as between the testimony of the various plaintiff and the various admissions representatives as to what was said to the plaintiffs to entice them to enroll at SBC. These facts must be resolved by a jury.

Next, SBC claims that even if such representations exist, there "is no evidence that any misrepresentation made by SBC was false at the time." Defendant SBC fails to discuss this conclusory assertion. Contrary to defendant's argument, plaintiff Roberts and others have identified evidence that SBC's claim that class size was limited to thirty students was false at the time it was made. Defendant does not even contest this fact. Plaintiffs have identified evidence that SBC's instructors changed on a frequent basis and that instructors were assigned to teach courses they were not qualified to teach. Plaintiffs have discovered evidence indicating that the pass rate for SBC students on the registry examination was not as high as represented to them during the enrollment process. Two former clinical coordinators have testified that SBC's radiographic equipment was outdated and that this created problems for students attempting to complete their clinicals. In addition, several plaintiffs have testified that while it was specifically represented to them by an admissions representative that their SBC credits were easily transferred to other institutions, they were unable to transfer their SBC credits.

If a jury believes the testimony and evidence of the plaintiffs in this case, the jury will be

5

able to find that SBC's admissions representatives made representations of fact, not opinion, to prospective students that were false at the time the statements were made to the prospective students. Obviously, the types of representations that were made to the prospective students were material to their decision as to whether or not to enroll in SBC.

Finally, SBC contends that plaintiffs have no evidence "of a loss proximately caused by the alleged fraud" or proof of damages. Plaintiffs damages incurred as a result of fraud are "measured at the time of the transaction." Davis v. Cleary Building Corporation, 143 S.W.3d 659, 668 (Mo. Ct. App. 2004). At a minimum, plaintiffs are entitled to a refund for the books they were required to purchase and never used. Plaintiffs have an argument that they are entitled to a refund of at least some of their tuition costs because the value of what they received from SBC was less than it was represented to be at the time plaintiffs agreed to pay SBC's tuition. Plaintiffs suggest that those who were unable to pass the registry examination are entitled to damages for lost income. Other plaintiffs claim that they are entitled to damages for the difference between the salary SBC represented that its graduates would receive and the actual amount of said plaintiffs' salaries upon graduation. The difficulty of quantifying and/or calculating each plaintiff's damages is not a basis for dismissing these claims.

B.    Breach of Contract (Count III)

To establish a claim for breach of contract against SBC, each plaintiff must show: (1) that he or she had a valid and enforceable contract with SBC; (2) that the contract set forth specific rights of plaintiff and obligations of SBC; (3) that SBC breached one or more of those terms; and (4) damages to plaintiff resulting from the breach. Trotter's Corp. v. Ringleader Restaurants, Inc., 929 S.W.2d 935, 941 (Mo. Ct. App. 1996). Defendant SBC argues that plaintiffs have

6

failed to identify any specific terms of the Enrollment Agreement that were breached or any resulting damages.

Plaintiffs respond that "courts have recognized claims by students for breach of contract, fraud, or other intentional wrongdoing that allege a private or public educational institution has failed to provide specifically promised educational services, such as the failure to offer classes in a particular subject or to provide a promised number of hours of instruction." Alsides v. Brown Instiute, Ltd., 592 N.W.2d 468, 472 (Minn. App. 1999). Plaintiffs claim that they are "entitled to recover for classes that were taught by instructors who plainly admit in the depositions and affidavits attached to this response that they were unqualified and inexperienced in the subjects . . . they were expected to teach."

Plaintiffs have identified evidence that instructors were assigned to teach courses they were not qualified to teach. Defendant SBC responds that plaintiffs' claims must be dismissed because SBC offered the courses it represented would be offered. The question remains, however, whether offering a course with an admittedly unqualified instructor satisfies the contractual requirement of offering the course.

The Court will allow this claim to remain for trial. Defendant SBC's motion for summary judgment on this claim is denied.

### IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that defendant Sanford Brown College, Inc.'s ("SBC") Motion for Summary Judgment on Claims of Plaintiff Giselle Bradley (Doc. #241) is denied. It is further

ORDERED that SBC's Motion for Summary Judgment on Claims of Plaintiff Catherine

7

Case 4:05-cv-00930-SOW   Document 331   Filed 04/06/07   Page 7 of 8
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 22 of 23
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 232 of 398

Clutter (Doc. #243) is denied.  It is further

ORDERED that SBC's Motion for Summary Judgment on Claims of Plaintiff Kimela Murphy (Doc. #245) is denied.  It is further

ORDERED that SBC's Motion for Summary Judgment on Claims of Plaintiff Christopher Howell (Doc. #247) is denied.  It is further

ORDERED that SBC's Motion for Summary Judgment on Claims of Plaintiff Chanell Townsend (Doc. #249) is denied.  It is further

ORDERED that SBC's Motion for Summary Judgment on Claims of Plaintiff Denise Robertson (Doc. #251) is denied.


                                          /s/ Scott O. Wright
                                          SCOTT O. WRIGHT
                                          Senior United States District Judge

Date:    4/6/2007

8

Case 4:05-cv-00930-SOW   Document 331   Filed 04/06/07   Page 8 of 8
Case 4:09-cv-01090-ODS   Document 16-2   Filed 02/15/10   Page 23 of 23
Case 4:14-cv-00885-BP   Document 1-1   Filed 10/08/14   Page 233 of 398

# EXHIBIT "D"

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

JENNIFER KERR,          )
                                     )

                 Plaintiff,      )

v.                                 )

                                     )

VATTEROTT EDUCATIONAL    )      Case No.: 1216-CV12385
CENTERS, INC. d/b/a Vatterott     )
College                         )

                                     )

        and                   )

                                     )

LEAH LEHMAN,              )
                 Defendants.    )
                                     )

## DEFENDANT VATTEROTT EDUCATIONAL CENTERS, INC.'S
## MOTION FOR A DIRECTED VERDICT

Defendant Vatterott Educational Centers, Inc. ("Vatterott") respectfully submits this

motion for a directed verdict, at the close of ~~all~~ *Plaintiff's* evidence, on Plaintiff Jennifer Kerr's ("Plaintiff")

claims, pursuant to Rule 72.01 of the Missouri Rules of Civil Procedure.  As grounds for its

motion, Vatterott states as follows:

      1.    Vatterott moves for a directed verdict, pursuant to Missouri Rule of Civil

Procedure 72.01, because there is not substantial evidence to support a submissible case on

Plaintiff's claims.

      2.    "If [a party] fails to adduce substantial evidence supporting his theory of

recovery, then a directed verdict should be granted and the case should not be submitted to the

jury." *Delisi v. St. Luke's Episcopal-Presbyterian Hosp., Inc.*, 701 S.W.2d 170, 173 (Mo. App.

E.D. 1985).

      3.    "A case should not be submitted to the jury unless each and every fact essential to

liability is predicated upon legal and substantial evidence . . . .  The evidence and inferences

SLC-6941124-1

$\boxed{\text{OVERRULED } 4:27 \text{ P.M } 6/12/13}$



**PLAINTIFF'S
EXHIBIT**

D

must establish every element and not leave any issue to speculation." *Mprove v. KLT Telecom, Inc.*, 135 S.W.3d 481, 489 (Mo. App. W.D. 2004); *see also Ozark Employment Specialists, Inc. v. Beeman*, 80 S.W.3d 882, 892 (Mo. App. W.D. 2002) ("In order to make a submissible case, there must be substantial evidence for every fact essential to liability.").

4.     "Evidence is substantial if it has probative force on the issues, and a juror could reasonably rely on it to decide a case." *Beeman*, 80 S.W.3d at 893. "A mere scintilla of evidence is insufficient." *Beelman River Terminals, Inc. v. Mercantile Bank, N.A.*, 880 S.W.2d 903, 908 (Mo. App. E.D. 1994). "Whether evidence is substantial and whether the inferences drawn from it are reasonable are questions of law." *Beeman*, 80 S.W.3d at 893.

5.     For the reasons set forth below, Vatterott is entitled to a directed verdict on Plaintiff's claims because she has failed to present substantial evidence sufficient to support her sole claim under the Missouri Merchandising Practices Act ("MMPA").

**A.     Plaintiff Did Not Purchase Merchandise for Personal, Family, or Household Purposes as Required Under the MMPA**

6.     Under the MMPA, only a "person who purchases or leases merchandise primarily for personal family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action . . . ." Mo. Rev. Stat. § 407.025.

7.     A person who purchases merchandise for business or commercial purposes, as here, cannot pursue a claim under the MMPA. *See, e.g., Mo. Hosp. v. C.R. Bard, Inc.*, 2008 WL 199567, at *9 (E.D. Mo. Jan. 22, 2008) (dismissing MMPA claim for purchases of catheters by hospital because purchases were not "primarily for personal, family or household purposes");

*Saey v. CompUSA, Inc.*, 174 F.R.D. 448, 450 (E.D. Mo. 1997) (holding that party who purchased computer for his business lacked standing to bring a claim under the MMPA).

8.     An instructive case on this point in the present context is *MacDonald v. Thomas M. Cooley Law School*, 880 F. Supp. 2d 785 (W.D. Mich. 2012), in which the court dismissed claims against the defendant law school by graduates who alleged the law school misrepresented employment prospects to students, in violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 *et seq.* (The MCPA also requires that merchandise be purchased "primarily for personal, family, or household purposes." M.C.L. 445.902(1)(g).) The *MacDonald* court concluded: "Plaintiffs purchased a legal education in order to make money .... This is a business purpose. . . . Plaintiffs 'intended' their legal employment to subsequently better their personal circumstances, these better 'personal circumstances' would be attained through their work as lawyers, i.e. a business." *MacDonald*, 880 F. Supp. 2d at 793.

9.     Likewise, Judge Wright in the federal Western District Court of Appeals recently ruled that plaintiffs enrolling in a career college who alleged misrepresentation relating to the salaries they could earn in their future career field and the placement assistance provided had purchased their education for business as opposed to personal purposes. *Anderson v. High-Tech Institute,* Case No. 11-0506-CV-W-SOW, Dkt. 143 (W.D. Mo. Jan. 25, 2013). Judge Wright distinguished students enrolling in a career-focused program -- which is for a business purpose – to students who "enroll in an educational institution to study Shakespeare or History." *Id.* at 5.

10.     In other words, pursuit of a trade, as here, is a business pursuit, rather than a personal, family, or household purpose, as made clear by the evidence elicited in this case. Plaintiff's goal when she purchased a seat in Vatterott's Medical Office Assistant program was to become a medical assistant and find work as a medical assistant. She claims that she was

deceived as to the salary she could earn in the career field and the placement assistance available. The salary and career placement would have been of no concern to Plaintiff if she had enrolled for personal and not business purposes.

11.     Plaintiff enrolled in Vatterott in order to increase her future earning potential and to better her career prospects. As in *McDonald* and *Anderson*, this is a business purpose and not a personal purpose. As such, Plaintiff has failed to establish a submissible claim under the MMPA, and a verdict should be directed in favor of Vatterott.

**B.     Plaintiff Has Presented No Submissible Evidence of Damages**

12.     Plaintiff has not made a submissible case against Vatterott under the MMPA in that she has not proven by substantial evidence that she suffered an ascertainable loss of money or property as a result of the use or employment by Vatterott of any method, act, or practice declared unlawful by Mo. Rev. Stat. § 407.020.

13.     The only evidence of damages presented by Plaintiff is the total amount of loans Plaintiff incurred at Vatterott. Plaintiff is asking the jury for a full and complete refund of all of the tuition she paid to Vatterott. In other words, Plaintiff would, in essence, like a free education even though she admits that she received value in return.

14.     In seeking a complete refund, Plaintiff is asking for recessionary damages. However, due to the nature of services purchased by Plaintiff and her admission that she received some value for what she paid for, rescission damages are not a proper measure of damages in this case.

15.     Rescission is an equitable remedy, so such damages are only available when *both* parties can be returned to the status quo by the rescission. *See Davis v. Cleary Bldg. Corp.*, 143 S.W.3d 659, 667 (Mo. App. W.D. 2004) (reversing rescission damages award that would have placed defendant at a loss). Here, Plaintiff cannot restore Vatterott to the status quo because the

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

service she purchased is not "returnable" – Plaintiff cannot "unlearn" what she was taught (and she admits that she received valuable knowledge), nor can she return the product back to Vatterott. *See Goldiluxe, LLC v. Abbott*, 306 S.W.3d 613, 615-16 (Mo. App. S.D. 2010) (rescission damages were inappropriate where plaintiff "could not substantially restore status quo as rescission normally requires; *i.e.,* return each party to its pre-contractual condition without material enrichment or impoverishment."). Vatterott is out of pocket for all expenses it incurred in educating Plaintiff, and Plaintiff received a free education. This is not an equitable result, and the status quo is not returned.

16.     Because rescission damages are unavailable in this case, the only damages theory available to Plaintiff is the "benefit of the bargain" theory, *i.e.,* the difference between the value of the merchandise as represented and its actual value, measured at the time of the transaction. *See Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994) (extending remedies for common law fraud to action brought under MMPA); M.A.I. 4.03 ("If you find in favor of the plaintiff, then you must award plaintiff such sum as you believe was the difference between the actual value of the [property] on the date it was sold to plaintiff and what its value would have been on that date had [the property] been as represented by defendant.").

17.     However, Plaintiff has presented no evidence of benefit of the bargain damages. She has neither presented evidence about the represented value of a seat in Vatterott's program, nor evidence of the actual value. Without such evidence, the jury is left to impermissibly speculate to Plaintiff's damages.

18.     The only evidence of damages entered by Plaintiff relates to an impermissible damage theory. As no other evidence of damages has been admitted, Plaintiff has failed to

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

establish an essential element of her MMPA claim. Verdict should be directed in Vatterott's favor.

**C.     Plaintiff Has Provided No Evidence that She Was Deceived**

19.     Plaintiff's claims hinge upon oral representations made to her. These oral representations are directly countered by the written materials that Plaintiff signed and acknowledged that she received and read.

20.     Plaintiff cannot claim to have been deceived when she had undisputed access to materials that provided complete and accurate information regarding the asserted deception. *See, e.g., Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 258 (Mo. App. E.D. 2006) (fraudulent misrepresentation claim failed where plaintiffs opted not to read literature provided to them by defendant which disclosed risk of investment); *Macdonald*, 880 F. Supp. 2d at 794 ("Plaintiff cannot show a misrepresentation by ignoring a part of information supplied him, and then later claim he was defrauded because he was not told of the facts which he chose to ignore.") (quoting *Schuler v. Am. Motors Sales Corp.*, 39 Mich. App. 276, 279, 197 N.W.2d 493, 495 (1972)).

21.     The rule under Missouri law, where a plaintiff complains of deceit and yet could plainly have cured any misapprehension, is simple: "One who can read and does not read is foreclosed by his own negligence .... [W]hile law affords everyone a reasonable protection against fraud in dealing, it is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and accessible means of information." *Gooch v. Motors Ins. Co.*, 312 S.W.2d 605, 609 (Mo. App. S.D. 1958).

22.    In the instant case, no reasonable juror could find that Vatterott deceived or misrepresented facts when the written materials clearly provided full and complete disclosure. Plaintiff's failure to read the materials cannot mean that Vatterott deceived her.

**D.    Plaintiff Has Otherwise Failed to Make a Submissible Claim**

23.    Plaintiff has not made a submissible case against Vatterott under the MMPA in that Plaintiff has not proven by substantial evidence that Vatterott used or employed any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise to Plaintiff.

24.    Plaintiff has not made a submissible case against Vatterott with respect to her claims regarding the transferability of credits or future salaries because those alleged misrepresentations are alleges statements of future acts to be committed by a third party, and therefore cannot constitute actionable fraud as a matter of law.

25.    Plaintiff has failed to make a submissible case that the representations Leah Lehman allegedly made to her were, in fact, false, deceptive, or misleading, or otherwise unlawful under Mo. Rev. Stat. § 407.020.

26.    Plaintiff has not made a submissible case against Vatterott under the MMPA because she has not established by substantial evidence that she enrolled in Vatterott as a result of any oral representations made, in that the evidence shows that Plaintiff signed written disclosures that disclaimed any reliance upon oral representations.

27.    Plaintiff failed to make a submissible case for punitive damages against Vatterott because she did not present clear and convincing evidence from which the jury could reasonably conclude that Vatterott's actions were outrageous because of Vatterott's evil motives or reckless indifference to the rights of others, as is required by Missouri law.

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

28.    Vatterott is entitled to a directed verdict on their defense that Plaintiff waived her claims, because the evidence shows that Plaintiff signed written disclosures, and by enrolling in and attending Vatterott with acknowledged knowledge of those disclosures, Plaintiff thereby intentionally relinquished her claim or oral misrepresentation.

29.    Vatterott is entitled to a directed verdict against Plaintiff on the grounds that she has failed to present substantial evidence to make a submissible case on each and every element of her cause of action under the MMPA.

30. Vatterott further reserves the right to supplement this motion orally based upon any testimony given on the final day of Plaintiff's case before she rests her case.

**WHEREFORE**, Vatterott respectfully requests that the Court enter a directed verdict in favor of Vatterott and against Plaintiff on Plaintiff's claims, and for such other and further relief as the Court deems just and proper.

Date: June 12, 2013

Respectfully submitted,

**HUSCH BLACKWELL LLP**

James F. Monafo, Mo. Bar. #38774
Elizabeth A. (Mushill) Bozicevic, Mo. Bar. #59623
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozievic@huschblackwell.com

Sean D. Tassi, Mo. Bar. #59718
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000 (telephone)
(816) 983-8080 (facsimile)
sean.tassi@huschblackwell.com

Mark R. Falkowski, Mo. Bar. #62879
Vatterott Educational Centers, Inc.
P.O. Box 28269
St. Louis, MO 63132
(314) 264-1740 (telephone)
(314) 264-1741 (facsimile)
mark.falkowski@vatterott.edu

*Attorneys for Defendant Vatterott Educational Centers, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was hand-delivered this 12th day of June, 2013, to:

Martin M. Meyers
Kevin A. Jones
THE MEYERS LAW FIRM
503 One Main Plaza
4435 Main Street
Kansas City, MO 64111
Phone: (816) 444-8500

*Attorney for Plaintiff*

SLC-6941124-1

10

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

# EXHIBIT "E"

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | | |
|---|---|---|
| JENNIFER KERR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| VATTEROTT EDUCATIONAL | ) | Case No.: 1216-CV12385 |
| CENTERS, INC. d/b/a Vatterott | ) | |
| College | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LEAH LEHMAN, | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT VATTEROTT EDUCATIONAL CENTERS, INC.'S**
**MOTION FOR A DIRECTED VERDICT AT CLOSE OF ALL EVIDENCE**

Defendant Vatterott Educational Centers, Inc. ("Vatterott") respectfully submits this motion for a directed verdict, at the close of all evidence, on Plaintiff Jennifer Kerr's ("Plaintiff") claims, pursuant to Rule 72.01 of the Missouri Rules of Civil Procedure. As grounds for its motion, Vatterott states as follows:

1.    Vatterott moves for a directed verdict, pursuant to Missouri Rule of Civil Procedure 72.01, because there is not substantial evidence to support a submissible case on Plaintiff's claims.

2.    "If [a party] fails to adduce substantial evidence supporting his theory of recovery, then a directed verdict should be granted and the case should not be submitted to the jury." *Delisi v. St. Luke's Episcopal-Presbyterian Hosp., Inc.*, 701 S.W.2d 170, 173 (Mo. App. E.D. 1985).

3.    "A case should not be submitted to the jury unless each and every fact essential to liability is predicated upon legal and substantial evidence . . . . The evidence and inferences

SLC-6944548-1

*MOTION IS OVERRULED 11:49 an kp 6/14/13*

PLAINTIFF'S EXHIBIT

must establish every element and not leave any issue to speculation." *Mprove v. KLT Telecom, Inc.*, 135 S.W.3d 481, 489 (Mo. App. W.D. 2004); *see also Ozark Employment Specialists, Inc. v. Beeman*, 80 S.W.3d 882, 892 (Mo. App. W.D. 2002) ("In order to make a submissible case, there must be substantial evidence for every fact essential to liability.").

4.   "Evidence is substantial if it has probative force on the issues, and a juror could reasonably rely on it to decide a case." *Beeman*, 80 S.W.3d at 893. "A mere scintilla of evidence is insufficient." *Beelman River Terminals, Inc. v. Mercantile Bank, N.A.*, 880 S.W.2d 903, 908 (Mo. App. E.D. 1994). "Whether evidence is substantial and whether the inferences drawn from it are reasonable are questions of law." *Beeman*, 80 S.W.3d at 893.

5.   For the reasons set forth below, Vatterott is entitled to a directed verdict on Plaintiff's claims because she has failed to present substantial evidence sufficient to support her sole claim under the Missouri Merchandising Practices Act ("MMPA").

## A.   Plaintiff Did Not Purchase Merchandise for Personal, Family, or Household Purposes as Required Under the MMPA

6.   Under the MMPA, only a "person who purchases or leases merchandise primarily for personal family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020, may bring a private civil action . . . ." Mo. Rev. Stat. § 407.025.

7.   A person who purchases merchandise for business or commercial purposes, as here, cannot pursue a claim under the MMPA. *See, e.g., Mo. Hosp. v. C.R. Bard, Inc.*, 2008 WL 199567, at *9 (E.D. Mo. Jan. 22, 2008) (dismissing MMPA claim for purchases of catheters by hospital because purchases were not "primarily for personal, family or household purposes");

SLC-6944548-1

2

*Saey v. CompUSA, Inc.*, 174 F.R.D. 448, 450 (E.D. Mo. 1997) (holding that party who purchased computer for his business lacked standing to bring a claim under the MMPA).

8. An instructive case on this point in the present context is *MacDonald v. Thomas M. Cooley Law School*, 880 F. Supp. 2d 785 (W.D. Mich. 2012), in which the court dismissed claims against the defendant law school by graduates who alleged the law school misrepresented employment prospects to students, in violation of the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 *et seq.* (The MCPA also requires that merchandise be purchased "primarily for personal, family, or household purposes." M.C.L. 445.902(1)(g).) The *MacDonald* court concluded: "Plaintiffs purchased a legal education in order to make money .... This is a business purpose. . . . Plaintiffs 'intended' their legal employment to subsequently better their personal circumstances, these better 'personal circumstances' would be attained through their work as lawyers, i.e. a business." *MacDonald*, 880 F. Supp. 2d at 793.

9. Likewise, Judge Wright in the federal Western District Court of Appeals recently ruled that plaintiffs enrolling in a career college who alleged misrepresentation relating to the salaries they could earn in their future career field and the placement assistance provided had purchased their education for business as opposed to personal purposes. *Anderson v. High-Tech Institute*, Case No. 11-0506-CV-W-SOW, Dkt. 143 (W.D. Mo. Jan. 25, 2013). Judge Wright distinguished students enrolling in a career-focused program – which is for a business purpose – to students who "enroll in an educational institution to study Shakespeare or History." *Id.* at 5.

10. In other words, pursuit of a trade, as here, is a business pursuit, rather than a personal, family, or household purpose, as made clear by the evidence elicited in this case. Plaintiff's goal when she purchased a seat in Vatterott's Medical Office Assistant program was to become a medical assistant and find work as a medical assistant. She claims that she was

deceived as to the salary she could earn in the career field and the placement assistance available. The salary and career placement would have been of no concern to Plaintiff if she had enrolled for personal and not business purposes.

11.     Plaintiff enrolled in Vatterott in order to increase her future earning potential and to better her career prospects. As in *McDonald* and *Anderson*, this is a business purpose and not a personal purpose. As such, Plaintiff has failed to establish a submissible claim under the MMPA, and a verdict should be directed in favor of Vatterott.

**B.     Plaintiff Has Presented No Submissible Evidence of Damages**

12.     Plaintiff has not made a submissible case against Vatterott under the MMPA in that she has not proven by substantial evidence that she suffered an ascertainable loss of money or property as a result of the use or employment by Vatterott of any method, act, or practice declared unlawful by Mo. Rev. Stat. § 407.020.

13.     The only evidence of damages presented by Plaintiff is the total amount of loans Plaintiff incurred at Vatterott. Plaintiff is asking the jury for a full and complete refund of all of the tuition she paid to Vatterott. In other words, Plaintiff would, in essence, like a free education even though she admits that she received value in return.

14.     In seeking a complete refund, Plaintiff is asking for recessionary damages. However, due to the nature of services purchased by Plaintiff and her admission that she received some value for what she paid for, rescission damages are not a proper measure of damages in this case.

15.     Rescission is an equitable remedy, so such damages are only available when *both* parties can be returned to the status quo by the rescission. *See Davis v. Cleary Bldg. Corp.*, 143 S.W.3d 659, 667 (Mo. App. W.D. 2004) (reversing rescission damages award that would have placed defendant at a loss). Here, Plaintiff cannot restore Vatterott to the status quo because the

service she purchased is not "returnable" – Plaintiff cannot "unlearn" what she was taught (and she admits that she received valuable knowledge), nor can she return the product back to Vatterott. *See Goldiluxe, LLC v. Abbott*, 306 S.W.3d 613, 615-16 (Mo. App. S.D. 2010) (rescission damages were inappropriate where plaintiff "could not substantially restore status quo as rescission normally requires; *i.e.*, return each party to its pre-contractual condition without material enrichment or impoverishment."). Vatterott is out of pocket for all expenses it incurred in educating Plaintiff, and Plaintiff received a free education. This is not an equitable result, and the status quo is not returned.

16. Because rescission damages are unavailable in this case, the only damages theory available to Plaintiff is the "benefit of the bargain" theory, *i.e.*, the difference between the value of the merchandise as represented and its actual value, measured at the time of the transaction. *See Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994) (extending remedies for common law fraud to action brought under MMPA); M.A.I. 4.03 ("If you find in favor of the plaintiff, then you must award plaintiff such sum as you believe was the difference between the actual value of the [property] on the date it was sold to plaintiff and what its value would have been on that date had [the property] been as represented by defendant.").

17. However, Plaintiff has presented no evidence of benefit of the bargain damages. She has neither presented evidence about the represented value of a seat in Vatterott's program, nor evidence of the actual value. Without such evidence, the jury is left to impermissibly speculate to Plaintiff's damages.

18. The only evidence of damages entered by Plaintiff relates to an impermissible damage theory. As no other evidence of damages has been admitted, Plaintiff has failed to

establish an essential element of her MMPA claim. Verdict should be directed in Vatterott's favor.

**C.     Plaintiff Has Provided No Evidence that She Was Deceived**

19.     Plaintiff's claims hinge upon oral representations made to her. These oral representations are directly countered by the written materials that Plaintiff signed and acknowledged that she received and read.

20.     Plaintiff cannot claim to have been deceived when she had undisputed access to materials that provided complete and accurate information regarding the asserted deception. *See, e.g., Roth v. Equitable Life Assur. Soc. of U.S.*, 210 S.W.3d 253, 258 (Mo. App. E.D. 2006) (fraudulent misrepresentation claim failed where plaintiffs opted not to read literature provided to them by defendant which disclosed risk of investment); *Macdonald*, 880 F. Supp. 2d at 794 ("Plaintiff cannot show a misrepresentation by ignoring a part of information supplied him, and then later claim he was defrauded because he was not told of the facts which he chose to ignore.") (quoting *Schuler v. Am. Motors Sales Corp.*, 39 Mich. App. 276, 279, 197 N.W.2d 493, 495 (1972)).

21.     The rule under Missouri law, where a plaintiff complains of deceit and yet could plainly have cured any misapprehension, is simple: "One who can read and does not read is foreclosed by his own negligence .... [W]hile law affords everyone a reasonable protection against fraud in dealing, it is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and accessible means of information." *Gooch v. Motors Ins. Co.*, 312 S.W.2d 605, 609 (Mo. App. S.D. 1958).

22.     In the instant case, no reasonable juror could find that Vatterott deceived or misrepresented facts when the written materials clearly provided full and complete disclosure. Plaintiff's failure to read the materials cannot mean that Vatterott deceived her.

**D.     Plaintiff Has Otherwise Failed to Make a Submissible Claim**

23.     Plaintiff has not made a submissible case against Vatterott under the MMPA in that Plaintiff has not proven by substantial evidence that Vatterott used or employed any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise to Plaintiff.

24.     Plaintiff has not made a submissible case against Vatterott with respect to her claims regarding the transferability of credits or future salaries because those alleged misrepresentations are alleges statements of future acts to be committed by a third party, and therefore cannot constitute actionable fraud as a matter of law.

25.     Plaintiff has failed to make a submissible case that the representations Leah Lehman allegedly made to her were, in fact, false, deceptive, or misleading, or otherwise unlawful under Mo. Rev. Stat. § 407.020.

26.     Plaintiff has not made a submissible case against Vatterott under the MMPA because she has not established by substantial evidence that she enrolled in Vatterott as a result of any oral representations made, in that the evidence shows that Plaintiff signed written disclosures that disclaimed any reliance upon oral representations.

27.     Plaintiff failed to make a submissible case for punitive damages against Vatterott because she did not present clear and convincing evidence from which the jury could reasonably conclude that Vatterott's actions were outrageous because of Vatterott's evil motives or reckless indifference to the rights of others, as is required by Missouri law.

SLC-6944548-1

7

28.     Vatterott is entitled to a directed verdict on their defense that Plaintiff waived her claims, because the evidence shows that Plaintiff signed written disclosures, and by enrolling in and attending Vatterot with acknowledged knowledge of those disclosures, Plaintiff thereby intentionally relinquished her claim or oral misrepresentation.

29.     Vatterott is entitled to a directed verdict against Plaintiff on the grounds that she has failed to present substantial evidence to make a submissible case on each and every element of her cause of action under the MMPA.

30. Vatterott further reserves the right to supplement this motion orally based upon any testimony given on the final day of Plaintiff's case before she rests her case.

**WHEREFORE**, Vatterott respectfully requests that the Court enter a directed verdict in favor of Vatterott and against Plaintiff on Plaintiff's claims, and for such other and further relief as the Court deems just and proper.

Date: June **14**, 2013

Respectfully submitted,

**HUSCH BLACKWELL LLP**

James F. Monafo, Mo. Bar. #38774
Elizabeth A. (Mushill) Bozicevic, Mo. Bar. #59623
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozievic@huschblackwell.com

Sean D. Tassi, Mo. Bar. #59718
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000 (telephone)
(816) 983-8080 (facsimile)
sean.tassi@huschblackwell.com

Mark R. Falkowski, Mo. Bar. #62879
Vatterott Educational Centers, Inc.
P.O. Box 28269
St. Louis, MO 63132
(314) 264-1740 (telephone)
(314) 264-1741 (facsimile)
mark.falkowski@vatterott.edu

*Attorneys for Defendant Vatterott*
*Educational Centers, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was hand-delivered this 14 day of June, 2013, to:

Martin M. Meyers
Kevin A. Jones
THE MEYERS LAW FIRM
503 One Main Plaza
4435 Main Street
Kansas City, MO 64111
Phone: (816) 444-8500

*Attorney for Plaintiff*

SLC-6944548-1

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

# EXHIBIT "F"

INSTRUCTION NO. ___1___

(1) GENERAL—JURY INSTRUCTIONS

This instruction and other instructions that I will read to you near the end of the trial are in writing. All of the written instructions will be handed to you for guidance in your deliberation when you retire to the jury room. They will direct you concerning the legal rights and duties of the parties and how the law applies to the facts that you will be called upon to decide.

(2) OPENING STATEMENTS

The trial may begin with opening statements by the lawyers as to what they expect the evidence to be. What is said in opening statements is not to be considered as proof of a fact. However, if a lawyer admits some fact on behalf of a client, the other party is relieved of the responsibility of proving that fact.

(3) EVIDENCE

After the opening statements, the plaintiff(s) will introduce evidence.[1] The defendant(s) may then introduce evidence. There may be rebuttal evidence after that. The evidence may include the testimony of witnesses who may appear personally in court, the testimony of witnesses who may not appear personally but whose testimony may be read or shown to you and exhibits, such as pictures, documents and other objects.

(4) OBJECTIONS

There may be some questions asked or evidence offered by the parties to which objections may be made. If I overrule an objection, you may consider that evidence when you deliberate on the case. If I sustain an objection, then that matter and any matter I order to be stricken is excluded as evidence and must not be considered by you in your deliberations.

(5) RULINGS OF LAW AND BENCH CONFERENCES

While the trial is in progress, I may be called upon to determine questions of law and to decide whether certain matters may be considered by you under the law. No ruling or remark that I make at any time during the trial will be intended or should be considered by you to indicate my opinion as to the facts. There may be times when the lawyers come up to talk to me out of your hearing. This will be done in order to permit me to decide questions of law. These conversations will be out of your hearing to prevent issues of law, which I must decide, from becoming mixed with issues of fact, which you must decide. We will not be trying to keep secrets from you.

(6) OPEN MINDS AND NO PRELIMINARY DISCUSSIONS

Justice requires that you keep an open mind about the case until the parties have had the opportunity to present their cases to you. You must not make up your mind about the case until all evidence, and the closing arguments of the parties, have been presented to you. You must not comment on or discuss with

PLAINTIFF'S EXHIBIT

F

anyone, not even among yourselves, what you hear or learn in trial until the case is concluded and then only when all of you are present in the jury room for deliberation of the case under the final instructions I give to you.

## (7) OUTSIDE INFLUENCES

During the trial you should not remain in the presence of anyone who is discussing the case when the court is not in session. Otherwise, some outside influence or comment might influence a juror to make up his or her mind prematurely and be the cause of a possible injustice. For this reason, the lawyers and their clients are not permitted to talk with you until the trial is completed.

## (8) PROHIBITION OF JUROR RESEARCH OR COMMUNICATION ABOUT THIS CASE

Your deliberations and verdict must be based only on the evidence and information presented to you in the proceedings in this courtroom. Rules of evidence and procedure have developed over many years to make sure that all parties in all cases are treated fairly and in the same way and to make sure that all jurors make a decision in this case based only on evidence allowed under those rules and which you hear or see in this courtroom. It would be unfair to the parties to have any juror influenced by information that has not been allowed into evidence in accordance with those rules of evidence and procedure, or to have a juror influenced through the opinion of someone who has not been sworn as a juror in this case and heard evidence properly presented here.

Therefore, you must not conduct your own research or investigation into any issues in this case. You must not visit the scene of any of the incidents described in this case. You must not conduct any independent research or obtain any information of any type by reference to any person, textbooks, dictionaries, magazines, the use of the Internet, or any other means about any issues in this case, or any witnesses, parties, lawyers, medical or scientific terminology, or evidence that is in any way involved in this trial. You are not permitted to communicate, use a cell phone, record, photograph, video, e-mail, blog, tweet, text, or post anything about this trial or your thoughts or opinions about any issue in this case to any other person or to the Internet, "facebook", "myspace", "twitter", or any other personal or public web site during the course of this trial or at any time before the formal acceptance of your verdict by me at the end of the case.

If any of you break these rules, it may result in a miscarriage of justice and a new trial may be required.

## (9) FINAL INSTRUCTIONS

After all of the evidence has been presented, you will receive my final instructions. They will guide your deliberations on the issues of fact you are to decide in arriving at your verdict.

## (10) CLOSING ARGUMENTS

After you have received my final instructions, the lawyers may make closing arguments. In closing arguments, the lawyers have the opportunity to direct your attention to the significance of evidence and to suggest the conclusions that may be drawn from the evidence.

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

(11) DELIBERATIONS

You will then retire to the jury room for your deliberations. It will be your duty to select a foreperson, to decide the facts and to arrive at a verdict. When you enter into your deliberations, you will be considering the testimony of witnesses as well as other evidence. In considering the weight and value of the testimony of any witness, you may take into consideration the appearance, attitude and behavior of the witness, the interest of the witness in the outcome of the case, the relation of the witness to any of the parties, the inclination of the witness to speak truthfully or untruthfully and the probability or improbability of the witness' statements. You may give any evidence or the testimony of any witness such weight and value as you believe that evidence or testimony is entitled to receive.

(12) NOTETAKING

Each of you may take notes in this case, but you are not required to do so. I will give you notebooks. Any notes you take must be in those notebooks only. You may not take any notes out of the courtroom before the case is submitted to you for your deliberations. No one will read your notes while you are out of the courtroom. If you choose to take notes, do not allow your notetaking to interfere with your ability to observe the evidence and witnesses as they are presented.

Do not discuss or share your notes with anyone until you begin your deliberations. During the deliberations, if you choose to do so, you may use your notes and discuss them with other jurors. Notes taken during trial are not evidence. You should not assume that your notes, or those of other jurors, are more accurate than your own recollection or the recollection of other jurors.

After you reach your verdict your notes will be collected and destroyed. No one will be allowed to read them.

(13) JUROR QUESTIONS

After all parties have completed questioning each witness, any juror may anonymously submit written questions to me for my review. You may not ask questions orally or out loud. I may limit the number of questions or revise the form of any question. You must not draw any adverse inference against any party if I decide not to allow one or more of your questions for legal reasons. If I decide to allow any of your questions, I will read them to the witness and allow the witness to answer. I may then allow follow-up questions of that witness by the attorneys.

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

INSTRUCTION NO. 2

As you remember, the court gave you a general instruction before the presentation of any evidence in this case. The court will not repeat that instruction at this time. However, that instruction and the additional instructions, to be given to you now, constitute the law of this case and each such instruction is equally binding upon you. You should consider each instruction in light of and in harmony with the other instructions, and you should apply the instructions as a whole to the evidence. Words or phrases which are not otherwise defined for you as part of these instructions should be given their ordinary meaning. The order in which the instructions are given is no indication of their relative importance. All of the instructions are in writing and will be available to you in the jury room.

INSTRUCTION NO. __3__

In returning your verdicts you will form beliefs as to the facts. The court does not mean to assume as true any fact referred to in these instructions but leaves it to you to determine what the facts are.

INSTRUCTION NO. _4_

The verdict form included in these instructions contains directions for completion and will allow you to return the permissible verdict in this case. Nine or more of you must agree in order to return any verdict. A verdict must be signed by each juror who agrees to it.

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

INSTRUCTION NO. 5

     In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden is upon plaintiff to cause you to believe that the evidence has clearly and convincingly established the propositions of fact required for the recovery of punitive damages as submitted in Instruction Number 9. However, on all other propositions of fact, the burden is upon the party who relies upon any such proposition to cause you to believe that such proposition is more likely to be true than not true. In determining whether or not you believe any proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

INSTRUCTION NO. __6__

Your verdict must be for plaintiff Jennifer Kerr and against defendant Vatterott Educational Centers, Inc. ("Vatterott") if you believe:

*First*, Vatterott sold a seat in its medical office assistant program to plaintiff, and

*Second*, plaintiff purchased such seat primarily for personal use, and

*Third,* in connection with such sale, Vatterott made misrepresentations to plaintiff regarding the costs and benefits associated with the purchase of its medical office assistant program; and

*Fourth*, in the course of making such misrepresentations, Vatterott employed deception or unfair practices; and

*Fifth*, as a direct result of such deception or unfair practices, plaintiff sustained damage.

INSTRUCTION NO. __7__

If you find in favor of plaintiff Jennifer Kerr then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages that the conduct of defendants as submitted in Instruction Number __6__ directly caused or directly contributed to cause. If you find that plaintiff failed to mitigate damages as submitted in Instruction Number __8__ , in determining plaintiff's total damages you must not include those damages that would not have occurred without such failure.

INSTRUCTION NO. 8

If you find in favor of plaintiff Jennifer Kerr, you must find that plaintiff failed to mitigate damages if you believe:

*First*, plaintiff

(a) continued to attend Vatterott College and incur tuition costs with knowledge of the alleged deception, and/or

(b) failed to use reasonable efforts to obtain jobs available to her in the medical office assistant field, and

*Second*, plaintiff, in one or more of the respects submitted in Paragraph First, thereby failed to use ordinary care, and

*Third*, plaintiff thereby sustained damage that would not have occurred otherwise.

The phrase "ordinary care" as used in this instruction means that degree of care than an ordinarily careful person would use under the same or similar circumstances.

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

INSTRUCTION NO. __9__

If you find the issues in favor of plaintiff, and if you believe the conduct of

defendant Vatterott Educational Centers, Inc. as submitted in Instruction Number __6__

was outrageous because of defendant Vatterott's evil motive or reckless indifference to

the rights of others, then in addition to any damages to which you find plaintiff entitled

under Instruction Number __7__, you award plaintiff an additional amount as punitive

damages in such sum as you believe will serve to punish defendant Vatterott and to deter

defendant Vatterott and others from like conduct.

You may consider harm to others in determining whether defendant Vatterott's

conduct was outrageous. However, in determining the amount of any punitive damages

award, you must not include damages for others who are not parties to this case.

If you find that defendant Vatterott is liable for punitive damages in this stage of

the trial, you will be given further instructions for assessing the amount of punitive

damages in the second stage of the trial.

— given + sent to the jury

~~S~~ INSTRUCTION WAS
_____ GIVEN _____ REFUSED
DATE: _____ 6/14/13
Jack Grate, Circuit Judge

VERDICT _____

**Note:  Complete this form by writing in the name required by your verdict.**

On the claim of plaintiff Jennifer Kerr against defendant Vatterott Educational Centers, Inc., we, the undersigned jurors, find in favor of:

..............................................................................................................................................................

(Plaintiff Jennifer Kerr)                   or              (Defendant Vatterott Educational Centers, Inc.)

**Note: Complete the following paragraph only if the above finding is in favor of Plaintiff Jennifer Kerr.**

We, the undersigned jurors, assess the damages of Plaintiff as follows:

For actual damages $_____ (stating the amount).

Note: If you found in favor of Plaintiff Jennifer Kerr and against Defendant Vatterott Educational Centers, Inc, complete the following paragraph by writing in the word(s) required by your verdict.

We, the undersigned jurors, find that Defendant Vatterott Educational Centers, Inc _____ liable for punitive damages.
("is" or "is not")

**Note: All jurors who agree to the above findings must sign below.**

_____                    _____

_____                    _____

_____                    _____

_____                    _____

_____                    _____

INSTRUCTION NO. 10

Instruction 10 through 11 and general instructions 1 through 5 apply to the determination of the amount of punitive damages to be assessed against defendant Vatterott. Use Verdict B to return your verdict on this claim.

THIS INSTRUCTION WAS
✓ GIVEN _____ REFUSED
DATE: _____ 6/14/13 _____
Jack Grate, Circuit Judge

INSTRUCTION NO. $11$

In addition to any actual damages you assessed in Verdict ___A___, you may assess an additional amount as punitive damages in such sum as you believe will serve to punish Defendant Vatterott Educational Centers, Inc for the conduct for which you found that Defendant is liable for punitive damages and will serve to deter Defendant and others from like conduct.

You may consider harm to others in determining whether defendant's conduct showed complete indifference to or conscious disregard for the safety of others. However, in determining the amount of any punitive damage award, you must not include damages for harm to others who are not parties to this case.

THIS INSTRUCTION WAS
____✓____ GIVEN _____ REFUSED
DATE: ____6/14/13____
Jack Grate, Circuit Judge

VERDICT _B_

**Note:   Complete this form as required by your verdict.**

We, the undersigned jurors, assess punitive damages against Defendant Vatterott

Educational Centers, Inc at $_____ *(stating the amount, or,*

*if none, write the word "none" ).*

**Note: All jurors who agree to the above findings must sign below.**

| | |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

Not in MAI
MAI 35.19, p. 686

# EXHIBIT "G"

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

JENNIFER KERR,          )
            Plaintiff(s),   )
vs.                       )     CASE NO.    1216-CV12385
                       )
                       )
VATTEROTT EDUCATIONAL   )     DIVISION 17
CENTERS, INC.            )
           Defendant(s). )

### JUDGMENT

This cause came to a bifurcated jury trial on June 10, 2013. Plaintiff Jennifer Kerr appeared by her attorneys Martin Meyers, Kevin Jones and Gene Graham, Jr., Defendant Vatterott Education Centers appeared by their attorneys James Monafo and Elizabeth Bozicevic.

A jury was seated on June 10, 2013, and evidence was presented through June 14, 2013. Following the close of evidence and closing arguments by each party (which occurred on June 14, 2013), the jury recessed for deliberations.

On June 14, 2013, the jury returned its verdict as follows:

On the claim of Plaintiff Kerr for violations of the Missouri Merchandising Practices Act against Defendant Vatterott, the jury found for Plaintiff and assessed actual damages in the amount of twenty-seven thousand, six hundred seventy six dollars and ninety six cents ($27, 676.96). The jury further found that Defendant was liable for punitive damages.

On the issue of punitive damages, the jury assessed damages in the amount of thirteen million dollars. ($13,000,000.00).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

Per the verdict reference above, on the claim of violations of the Missouri Merchandising Practices Act against Defendant Vatterott, judgment is entered in favor of Plaintiff in the amount of $27,

PLAINTIFF'S
EXHIBIT
G

676.96 in actual damages and $13,000,000.00 in punitive damages. Costs are assessed against the

Defendant.

<table>
<tr><td>6-17-13</td><td></td></tr>
<tr><td>DATE</td><td>JACK GRATE, Circuit Judge</td></tr>
</table>

**Certificate of Service**

This is to certify that a copy of the foregoing was hand delivered/faxed/emailed/mailed and/or sent through the eFiling system to the following: James Monafo and Martin Meyers on 6/18/2013.

Judicial Administrative Assistant/Law Clerk

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:     MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:     martin.loring@huschblackwell.com


SERVICE PARTY:     KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:     kbm@hfmlegal.com


SERVICE PARTY:     ELIZABETH ANN MUSHILL, Attorney for Defendant
SERVICE EMAIL:     elizabeth.mushill@huschblackwell.com


SERVICE PARTY:     STACIA GRESSEL BODEN, Attorney for Defendant
SERVICE EMAIL:     sboden@wrightcc.edu

Electronically Filed - Jackson - Independence - May 19, 2014 - 04:14 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:   martin.loring@huschblackwell.com


SERVICE PARTY:   KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:   kbm@hfmlegal.com


SERVICE PARTY:   ELIZABETH ANN MUSHILL, Attorney for Defendant
SERVICE EMAIL:   elizabeth.mushill@huschblackwell.com


SERVICE PARTY:   STACIA GRESSEL BODEN, Attorney for Defendant
SERVICE EMAIL:   sboden@wrightcc.edu

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:32 PM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al. )
)
)
    Plaintiffs, )
)
vs. )   Case No. 1316-CV27529
)
MISSION GROUP KANSAS, INC., )
   et al. )
)
    Defendants. )

## DEFENDANTS' MOTION TO DISMISS

Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants"), come now, and for their Motion to Dismiss under Missouri Supreme Court Rule 55.27, state as follows:

1. Plaintiffs are students who attended the Wright Career College campus located in Overland Park, Kansas. Plaintiffs have asserted claims of fraudulent misrepresentation, negligent misrepresentation, negligent hiring/retention, civil conspiracy, violation of the Missouri Merchandising Practices Act, accounting, and punitive damages relating to Plaintiffs' enrollment and attendance at Wright Career College.

2. Plaintiffs' Petition falls well short of meeting the heightened pleading standard required by Missouri Supreme Court Rule 55.15. Therefore, Plaintiffs' counts premised in fraud (Counts I, II, and V) should be dismissed because they fail to plead with the requisite particularity.

3. To the extent the Petition does allege the basis of Plaintiffs' causes of action, it is clear that each requires a subjective analysis of the quality of Plaintiffs' instructors and the

SLC-7213732-1

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:32 PM

education they have received. Both of these examinations are barred by the educational malpractice doctrine. Therefore, the Petition should be dismissed in its entirety with prejudice because *each* of Plaintiffs' claims assert non-actionable educational malpractice.

4.     Plaintiffs' MMPA claim (Count V) should be dismissed because Plaintiffs' purchase was not for personal use. The MMPA only grants standing to those who purchased a product for personal, family, or household purposes, and Plaintiffs' purchase of a career-focused education was a business purpose.

5.     Plaintiffs' fraud claims (Counts I, II, and V) should be dismissed to the extent they are based upon alleged misrepresentations that are no more than non-actionable statements of opinion, puffery, or sales talk. Such allegations cannot be objectively proven true or false, and they are unreasonable to rely upon as a matter of law and must be dismissed.

6.     Plaintiffs' negligent hiring/retention claim (Count III) should be dismissed because Plaintiffs have not alleged a dangerous proclivity, a necessary element of the claim.

7.     Missouri does not recognize an independent cause of action for civil conspiracy (Count IV), especially by persons within the same corporation, and the claim should be dismissed accordingly.

8.     Plaintiffs fail to allege any of the elements of a claim for Accounting (Count VI), so the claim should be dismissed.

9.     Plaintiffs' punitive damages claim (Count VII) should be dismissed because it is not a recognized cause of action.

10.     Defendants incorporate their Suggestions in Support of Their Motion to Dismiss Plaintiffs' Petition, as if fully set forth herein.

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:32 PM

11.     Pursuant to Jackson County, Missouri Local Rule 33.5(6), a proposed order is attached hereto.

WHEREFORE, Defendants respectfully request that the Court dismiss the claims in Plaintiffs' Petition as set forth herein and pursuant to Missouri Supreme Court Rule 55.27, and for such other and further relief as the Court deems just and proper.

Dated: April 24, 2014.                           Respectfully submitted,

                                        By:___/s/ Elizabeth A. Bozicevic_____
                                        Martin M. Loring, MO Bar # 29712
                                        HUSCH BLACKWELL LLP
                                        4801 Main Street, Suite 1000
                                        Kansas City, MO 64112
                                        (816) 983-8000
                                        (816) 983-8080 Fax
                                        martin.loring@huschblackwell.com

                                        James F. Monafo, MO Bar # 38774
                                        Elizabeth A. Bozicevic, MO Bar # 59623
                                        HUSCH BLACKWELL LLP
                                        190 Carondelet Plaza, Suite 600
                                        St. Louis, Missouri 63105
                                        (314) 480-1500 (telephone)
                                        (314) 480-1505 (facsimile)
                                        jim.monafo@huschblackwell.com
                                        elizabeth.bozicevic@huschblackwell.com

                                        Stacia G. Boden, MO Bar # 53601
                                        Mission Group Kansas, Inc.
                                        Wright Career College
                                        10720 Metcalf Avenue
                                        Overland Park, Kansas 66210
                                        (913) 396-5453
                                        (913) 904-3410 (fax)
                                        sboden@wrightcc.edu

                                        *Attorneys for Mission Group Kansas, Inc., Board*
                                        *of Directors of Mission Group Kansas, Inc., John*
                                        *Mucci, Stephen Browne, and Ron Holt.*

SLC-7213732-1

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 24th day of April, 2014, by first-class mail, and hand-delivered on the 25th day of April, 2014, to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050


_____/s/ Elizabeth A. Bozicevic_____

SLC-7213732-1

Electronically Filed - Jackson - Independence - April 24, 2014 - 03:32 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

STEFANIE AYALA, et al.      )
                                   )
                                   )
        Plaintiffs,       )
                                   )
      vs.                  )   Case No. 4:13-cv-1195
                                   )
MISSION GROUP KANSAS, INC.,  )
     et al.                  )
                                   )
        Defendants.    )

**ORDER**

Upon consideration of *Defendants' Motion to Dismiss*, and for the reasons set forth therein, the Court finds that the Motion should be GRANTED.

IT IS THEREFORE ORDERED that Plaintiffs' case and all counts therein are dismissed with/without prejudice.

IT IS SO ORDERED this ____ day of _____, 2014.

_____

SLC-7213732-1

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:  MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:  martin.loring@huschblackwell.com


SERVICE PARTY:  KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:  kbm@hfmlegal.com


SERVICE PARTY:  ELIZABETH ANN MUSHILL, Attorney for Defendant
SERVICE EMAIL:  elizabeth.mushill@huschblackwell.com


SERVICE PARTY:  ANDREW K SMITH, Attorney for Plaintiff
SERVICE EMAIL:  aks@hfmlegal.com

Electronically Filed - Jackson - Independence - April 24, 2014 - 02:15 PM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, ET AL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1316-CV27529 |
| VS. | ) | |
| | ) | Division No. 2 |
| MISSION GROUP KANSAS, ET AL, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING

COMES NOW the Court and does hereby set the above cause for a **CASE MANAGEMENT CONFERENCE for JUNE 23, 2014, at 8:30 a.m.** in Division 2, located on the 2nd floor of the Jackson County Courthouse Annex, 308 West Kansas, Independence, Missouri 64050.

**IT IS SO ORDERED.**

May 20, 2014

Judge Kenneth R. Garrett, III
Division 2

Copies sent this date to all parties of record:

**Kurt McGuff, Law Clerk to the Honorable Kenneth R. Garrett, III, Division 2**

Electronically Filed - Jackson - Independence - May 27, 2014 - 05:04 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

STEFANIE AYALA, et al.                )
                                       )
            Plaintiffs,                )
                                       )
    vs.                                )     Case No. 1316-CV27529
                                       )
MISSION GROUP KANSAS, INC., et al.     )
                                       )
            Defendants.                )

### CERTIFICATE OF SERVICE

COMES NOW Plaintiff and certifies that on May 27, 2014 the following documents were

served via email and regular U.S. Postal Mail on all counsel of record:

1. Plaintiff Christi Hampton's Answers to Defendants' First Set of Interrogatories;

2. Plaintiff Christi Hampton's Responses to Defendants' First Request for Production of Document;

3. Plaintiff Jennifer Decker's Answers to Defendants' First Set of Interrogatories; and

4. Plaintiff Jennifer Decker's Response to Defendants' First Requests for Production of Documents.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.


/s/ Andrew K. Smith
_____
Kenneth B. McClain              #32430
Andrew K. Smith                 #60485
Lauren E. McClain               #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:    (816) 836-5050
Facsimile:    (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify on this 27th day of May, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:      (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:      (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:      (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,
BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,
JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

/s/ Andrew K. Smith_____
**ATTORNEY FOR PLAINTIFFS**

2

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al.            )
                                     )
                                     )
        Plaintiffs,           )
                                     )
     vs.                      )    Case No. 1316-CV27529
                                     )
MISSION GROUP KANSAS, INC.,   )
     et al.                     )
                                     )
        Defendants.      )

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College" or "WCC"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants"), come now and submit their reply to their Motion to Dismiss Plaintiffs' Petition ("Defendants' Motion").

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss or in the Alternative for Leave to File an Amended Petition ("Plaintiffs' Opposition") merely confirms Defendants' prior characterization of Plaintiffs' claims: that this case is about nothing more than Plaintiffs' beliefs that they received a poor education. Plaintiffs' Opposition states that WCC "masquerade[es] as a college," and Plaintiffs refer to WCC as a "college" or "school" in quotations, indicating their belief that WCC is, in their opinion, lesser than other educational institutions.

No matter how Plaintiffs characterize their claims – as statutory fraud, common law fraud, or negligence – if those claims require the factfinder to make findings as to whether the education received was of a certain quality, those claims are educational malpractice claims. Thus, because Plaintiffs' claims – by their own admission in their Opposition – is that WCC is

SLC-7239682-1

1

Electronically Filed - Jackson - Independence - May 29, 2014 - 04:36 PM

somehow not a "real" school that does not provide a sufficient education, their claims sound in educational malpractice, and Missouri law requires that they be dismissed with prejudice.

Each of Plaintiffs' claims must be dismissed for the additional reasons set forth in Defendants' Motion, and Plaintiffs' Opposition fails to explain to the Court why they should not be. In many instances, Plaintiffs argue that exceptions exist to the legal principles that Defendants argue warrant dismissal, but there are no facts alleged in the Petition that support the application of those exceptions to this case. In other instances, Plaintiffs merely spew vitriol against Defendants or their attorneys but never actually cite to any relevant legal principles. Their arguments are nothing more than smoke and mirrors, designed to distract the Court from the insufficient allegations actually pled.

Plaintiffs have not pled sufficient facts to establish a cause of action against WCC, and they may not simply file their petition in the hopes that they will obtain such facts later. The Missouri Supreme Court has made clear that, because Missouri requires fact-pleading as opposed to notice-pleading, Missouri plaintiffs are not entitled to plead vague allegations and then obtain discovery in order to figure out if a cause of action exists: "Where the federal courts now use *discovery* to identify the triable issues, such has always been the role of the *pleadings* in Missouri. Where the federal courts now use *discovery* to identify the facts upon which the plaintiff's claim rests, such has always been the role of *pleadings* in Missouri." ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 380 (Mo. 1993) (citations omitted; emphasis in original). Plaintiffs' Petition fails to establish the existence of triable issues, and Defendants' Motion to Dismiss should be granted as a result.

2

Electronically Filed - Jackson - Independence - May 29, 2014 - 04:36 PM

## ARGUMENT

I.   **The Petition Should Be Dismissed Because Plaintiffs' Claims Assert Non-Actionable Educational Malpractice.**

Plaintiffs' Opposition argues that Plaintiffs' claims are not barred by the educational malpractice doctrine because (1) they have not titled their claims "educational malpractice," and (2) claims against schools are not barred if they are premised on specifically promised educational services. For the reasons set forth below, both arguments fail, and Defendants' Motion should be granted.

### A.   It is irrelevant what Plaintiffs choose to title their causes of action.

Missouri courts dismiss any claims – regardless of what those claims are called – if the claim "requires an analysis of the quality of education received and in making that analysis the fact-finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct. . . A claim that educational services were inadequate, substandard, or ineffective constitutes a claim of educational malpractice." Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc., 277 S.W.3d 696, 700 (Mo. App. W.D. 2008), *transfer and reh'g denied*, No. SC89935 (Mo. Mar. 31, 2009). See also Roe v. Saint Louis Univ., 2012 WL 6757558, at *10 (E.D. Mo. Dec. 31, 2012) (stating that for the plaintiff's *fraud* claims "to avoid being barred under the doctrine of educational malpractice, the Court's examination of the truthfulness of the individual representations must not involve 'inquiry into the nuances of educational processes and theories'") (emphasis added).

As stated in Defendants' Motion, if analysis of Plaintiffs' allegations requires a subjective determination of the substance or quality of education provided, those claims are for educational malpractice, even if the claims are called "fraud" or "negligence." Courts routinely reject similar claims when they required an examination of the quality or adequacy of an

3

Electronically Filed - Jackson - Independence - May 29, 2014 - 04:36 PM

education.  Lucero v. Curators of Univ. of Mo., 400 S.W.3d 1, 8 (Mo. App. W.D. 2013) ("The claim, whether identified as one for breach of contract as Appellant argues, or perhaps more accurately as one sounding in tort, 'raises questions concerning the reasonableness of the educator's conduct in providing educational services' and, as such, 'is one for educational malpractice,' which Missouri courts have recognized is a non-cognizable claim.").  See also Jamieson v. Vatterott Educ. Ctrs., Inc., 259 F.R.D. 520, 538 (D. Kan. 2009) ("Claims that attack the general quality of educational services provided to students, regardless of the underlying legal theory, have generally been rejected by the courts.").

Missouri courts have dismissed claims as premised in educational malpractice when the claims themselves were styled, for example, as ones for negligence (Dallas Airmotive, 277 S.W.3d at 698); breach of contract (Lucero, 400 S.W.3d at 9); intentional and negligent misrepresentation (Roe, 2012 WL 6757558, at *10-11); and violation of the Missouri Merchandising Practices Act (MMPA) (Love v. Career Educ. Corp., 2012 WL 1684572, at *2-3 (E.D. Mo. May 15, 2012)).

The plaintiffs in Dallas Airmotive made the same argument that Plaintiffs do here: that their claim was called "negligence," not "educational malpractice."  277 S.W.3d at 700.  The Western District Court of Appeals rejected that argument, noting that the plaintiffs' claim was not one in which school equipment malfunctioned and hurt the student, nor was it about a negligent failure to maintain safe premises.  Id. at 701.  Rather, the plaintiffs alleged that the school's "method of instruction" was "unrealistic and inadequate," which the court held "attack[ed] the quality of education" and was thus barred as an educational malpractice claim. Id.

4

Electronically Filed - Jackson - Independence - May 29, 2014 - 04:36 PM

Defendants do not deny that students can recover against schools for breach of contract, fraud, negligence, or any other cause of action. However, when those claims are premised – as Plaintiffs' are – on the "adequacy" of the educational experience (Pet. ¶ 18(a)), the "quality" of instruction (Id. ¶ 20(c)), or the sufficiency of training (Id. ¶ 21), they must be dismissed as asserting non-cognizable educational malpractice claims. Whatever Plaintiffs call their claims makes no difference if those claims require the fact-finder to analyze the quality of the education provided.

**B.   Plaintiffs' allegations do not relate to specifically promised educational services.**

Plaintiffs' Opposition spends significant time discussing cases that permit students to assert fraud claims against schools when the alleged fraud relates to a "specifically promised educational services." (Opp. at 10-14). Defendants agree with Plaintiffs and the authority cited that student fraud claims can be premised on representations made about *specific* promises, when those *specific* promises are capable of being objectively proven true or false; no subjective inquiry into the quality or adequacy of education is required. Plaintiffs would have an argument if their claims were based on specific, objective promises. They aren't.

Blake v. Career Education Corp., 2009 WL 2567011 (E.D. Mo. Aug. 18, 2009), is instructive. Like Plaintiffs, the plaintiffs in Blake were students who sued their former school for common law fraud and violation of the MMPA, alleging that a number of false statements induced them to enroll. Id. at *1. The court examined the representations, and it found that some were capable of being objectively determined as true or false by reviewing the historical record. Id. at *4. For example, the plaintiffs alleged that they were told that "graduates can expect to earn between $40,000 and $47,000," and that "most graduates secure a job within one month." Id. Because historical records could show the truth of these statements, they did not

5

implicate the educational malpractice doctrine. Id. However, as Plaintiffs' Opposition fails to note, the court found other alleged representations to be barred: that "instructors were qualified and had experience," and that the educational program "would provide a sufficient foundation" to enter a specific career field. Id. at *5. These alleged representations, unlike the others, required "inquire into the nuances of educational processes and theories." Id. Moreover, the court noted that if the plaintiffs' claims relating to salary and job placement turned on the question of "*why* a particular student was not hired, it is likely that the educational malpractice doctrine would come into play." Id. at *4.

Each of the other cases cited by Plaintiffs perform similar analyses. In each case, representations requiring review of the adequacy of the education were dismissed, and any representations based on *specific* promises that could be objectively proven true or false were permitted to proceed. See Roe, 2012 WL 6757558, at *10-11 (dismissing claims based on representations about "state of the art equipment" and training with a "high emphasis on holistic well-being," as each required inquire into the school's definitions of the terms); CenCor, Inc. v. Tolman, 868 P.2d 396, 399 (Colo. 1994) (permitting breach of contract claim to proceed when the alleged breach involved the "failure to offer any classes or a failure to deliver a promised number of hours of instruction"); Ross v. Creighton Univ., 957 F.2d 410, 416-17 (7th Cir. 1992) ("[T]he plaintiff must do more than simply allege that the education was not good enough. Instead, he must point to an identifiable contractual promise that the defendant failed to honor."); Rogers v. Career Educ. Corp., No. 09-1090-CV-W-ODS, slip op. 4 (W.D. Mo. Apr. 14, 2010) (stating that factual development was necessary to determine whether the plaintiff's alleged misrepresentation regarding "state of the art equipment" was "merely a veiled attempt to recover

6

Electronically Filed - Jackson - Independence - May 29, 2014 - 04:36 PM

for educational malpractice or a legitimate claim for fraud," as it was possible the claim related to a specific service).[1]

The difference between all of the cases cited by Plaintiffs and this case is that Plaintiffs do not allege that they were misled by *specific* promises of educational services but instead allege vague representations about the adequacy of the services that were provided. This *is* a claim "that the institution failed to perform adequately a promised educational services"; it is *not* a claim that the school "failed to provide the service at all." (Opp. at 11, citing <u>Blake</u>, 2009 WL 2567011 at *4). Plaintiffs do not allege that Defendants promised them an education and that they received *no* instruction at all. They do not claim that they received a lesser number of course hours than was promised, or that they were promised specific courses that they did not receive. Rather, they allege that the educational services that *were provided* were substandard in their opinion. For example, Plaintiffs allege that:

- They did not receive "an ***adequate educational experience***" (Pet. ¶ 18(a));

- WCC deceives students regarding "the ***quality*** . . . of its academic programs" (<u>Id.</u> ¶ 13);

- They were harmed in that they "will not and have not been ***properly*** trained in the subject areas in which they enrolled" because of the "failure of WCC to ***properly*** provide an education" (<u>Id.</u> ¶ 21); and

- Defendants acted negligently in hiring instructors who were "not ***properly qualified*** or ***suitable*** for the programs in which Plaintiffs are/were enrolled" (<u>Id.</u> ¶ 40).

None of these allegations involves a specific promise, the truth of which could be determined by objective review of facts. Rather, each requires a subjective analysis into the "nuances of educational processes and theories." Therefore each of these allegations, and the claims based upon them, run afoul of the clear prohibition of claims for educational malpractice.

---

[1] The summary judgment opinion attached by Plaintiffs from <u>Bradley v. Sanford Brown College</u> does not address educational malpractice at all and is thus of no relevance to this discussion.

Defendants provided Plaintiffs with an education, and Plaintiffs' dispute is with the quality of that education, not with specifically identifiable and objective aspects of that education. As a result, Plaintiffs' claims are for educational malpractice and should be dismissed.

## II. Plaintiffs' MMPA Claim Should Be Dismissed Because Plaintiffs' Allegations Establish That Their Purchase Was For Business Purposes.

Plaintiffs' Opposition does not address Defendants' slew of citations to the Petition in which Plaintiffs allege that the purpose of their enrollment in WCC was to increase their career prospects. (Defs.' Mot. at 12-13). Indeed, Plaintiffs' Opposition tacitly admits that their purchase was for business purposes, not for "personal, family or household use" as the MMPA requires. Instead, Plaintiffs point to the important purpose of the MMPA and argue that it should be broadly construed. (Opp. at 15-16). Regardless of its purposes, the court may not use liberal construction as an excuse to rewrite an unambiguous statute. "While we recognize that in our review a liberal construction of the Act in favor of claimants is required, this principle may not be extended so far as to negate what we believe to be the intent of the legislature." Simpson v. Dale E. Saunchegrow Constr., 965 S.W.2d 899, 905 (Mo. App. S.D. 1998) (citation omitted), *overruled on other grounds*, Hampton v. Big Boy Steel Erection, 121 S.W.3d 220 (Mo. 2003). Even using liberal construction, the court "cannot undertake a legislative role and write into the MPA language that simply does not exist." State ex rel. Koster v. Portfolio Recovery Assocs., LLC, 351 S.W.3d 661, 668 (Mo. App. E.D. 2011). Plaintiffs cannot avoid the MMPA's unambiguous limitation to purchases made for "personal, family, or household" uses.

Plaintiffs also direct the Court to one case in which a judge denied a directed verdict on this point and ultimately granted judgment for the plaintiff. Initially, Defendants note that this very issue is under appeal in the case cited. See Kerr v. Vatterott Educ. Ctrs., Inc., WD76903

Electronically Filed - Jackson - Independence - May 29, 2014 - 04:36 PM

(Mo. App. W.D.).  But regardless of the decision in <u>Kerr</u>, Plaintiffs fail to establish that the facts in that case were similar.  For example, Plaintiffs do not contend that the plaintiff in <u>Kerr</u> alleged fraud related to the competitiveness of WCC graduates in the job market, as Plaintiffs do (Pet. ¶ 18(d)), or that the <u>Kerr</u> plaintiff claimed, like Plaintiffs, that she was harmed in that she would "not receive the salaries [she was] promised upon graduation (<u>Id.</u> at ¶ 21).  The purpose of a purchase is a person-by-person question, and the allegations in the Petition establish that Plaintiffs' purchase was solely for purposes of finding a job and increasing their earning potential.  As a result, Plaintiffs' MMPA claim should be dismissed.

**III.  Plaintiffs' Counts Premised In Fraud Should Be Dismissed Because They Fail To Plead With The Requisite Particularity.**

Missouri Civil Procedure Rule 55.15 requires "all averments of fraud or mistake" to be plead with particularity.  To comply with Rule 55.15, plaintiffs "must state the circumstances of *each element of fraud* with particularity," and "[t]he fraud must clearly appear from the facts alleged and be independent of conclusions."  <u>Bohac v. Walsh</u>, 223 S.W.3d 858, 863 (Mo. App. E.D. 2007) (emphasis added).  Plaintiffs claim that they have satisfied this pleading standard, but as support, they do nothing more than cut-and-paste their allegations into their Opposition.

At no point do Plaintiffs explain to the Court how these allegations establish the "who, what, where, and how" of the alleged fraud.  Plaintiffs never allege *who* each Plaintiffs alleges made false statements to him or her, *what* was said to each Plaintiff, *when* and *where* such statements were allegedly made, or *how* a number of the representations were false.  As outlined in Defendants' Motion, such facts are required to satisfy Rule 55.15, and their absence requires dismissal of all of Plaintiffs' claims based in fraud.

Aside from a litany of bulk pleadings alleging that vague statements were made by "Defendants" to "Plaintiffs," the Petition alleges little more than boilerplate conclusory

statements (without supporting facts) that all Defendants knew the statements to be false, that all Defendants intended Plaintiffs to rely upon the representations, and that it was reasonable for Plaintiffs to rely. (Pet. ¶¶ 25-27). Merely reciting the elements of a fraud claim does not satisfy Rule 55.15.

Plaintiffs contend that they are not required to plead their MMPA claim with particularity, even though Rule 55.15 clearly applies to "all averments of fraud or misstate." Plaintiffs rely upon Ullrich v. CADCO, Inc., 244 S.W.3d 772 (Mo. App. E.D. 2008), but Ullrich merely holds that a plaintiff need not plead all of the elements of a common law fraud claim in order to assert a claim under the MMPA. Id. at 778 ("It was not necessary for Ullrich to allege the elements of common law fraud or that CADCO intended to defraud him . . . or that Ullrich relied on CADCO's misrepresentations . . . in order to adequately plead his cause of action under the MMPA."). [2] Although the court in Ullrich stated in dicta that an MMPA claim need not be plead with the same particularity as a common law fraud claim, the court went on to examine the facts alleged and nonetheless found "detailed descriptions of the circumstances" underlying the alleged fraud. Id. Because the instant Petition does not include any such "detailed descriptions," Plaintiffs' MMPA claims do not satisfy even the undefined standard employed in Ullrich. Thus, Plaintiffs' MMPA claim should be dismissed for failing to plead with particularity.

## IV. **Plaintiffs' Alleged Misrepresentations That Are Opinions And/Or Puffery Should Be Dismissed.**

Plaintiffs agree that statements of opinion or sales puffery cannot support a fraud claim as a matter of law. (Opp. at 21-22). However, Plaintiffs nonetheless contend that their alleged

---

[2] See also Khaliki v. Helzberg Diamond Shops, Inc., 2011 WL 1326660, at *2 (W.D. Mo. Apr. 6, 2011) (reviewing Ullrich and determining that it had "no relevance to the question of whether Rule 9(b) of the Federal Rules of Civil Procedure applies [no MMPA claims], or what level of particularity Rule 9(b) demands, but only to the issue of what substantive elements Rule 9(b) would apply to.").

misrepresentations are not opinions and that, even if they were, exceptions to the general rule about opinions apply. Neither argument is availing.

First, many of Plaintiffs' alleged misrepresentations are undeniably opinions in that they are incapable of being objectively proven true or false. For example, there is simply no objective way of determining whether "WCC's programs were more rigorous and through than other area schools," or whether WCC's program provided an "adequate educational experience." Such representations, as identified in Defendants' Motion (at 16), are no different from a representation that "the school was 'good.'" (Opp. at 22).

Second, Plaintiffs attempt to rely on several exceptions to the general rule that statements of opinion are not actionable as misrepresentations. But the Petition alleges no facts that establish the application of any of those exceptions to this case. Despite Plaintiffs' contention, there are no allegations in the Petition that Defendants *concealed* information as opposed to *affirmatively misrepresented* information. In fact, each of the paragraphs identified by Plaintiffs as containing allegations about concealment of facts actually allege that Defendants "made misrepresentations," not that Defendants hid information. (Opp. at 24; Pet. ¶¶ 18, 20, 24, 31). Likewise, there is no allegation that Defendants possessed special knowledge that Plaintiffs did not have, or that Defendants were somehow acting in a fiduciary capacity. Even if those exceptions could apply under these circumstances – which Defendants deny – there are simply no facts supporting the exceptions' existence, and the general rule must apply. Consequently, Plaintiffs' alleged misrepresentations that in truth are nothing more than statements of opinion or sales puffery should be dismissed.

11

**V.     Plaintiffs Have Failed To Allege A Claim for Negligent Hiring/Retention.**

Missouri case law is clear: "To establish a claim for negligent hiring or retention, a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." Gibson v. Brewer, 952 S.W.2d 239, 246 (Mo. banc 1997).[3]  Defendants' Motion argued that Plaintiffs' claim for negligent hiring/retention must be dismissed because Plaintiffs failed to allege any dangerous proclivity but instead merely alleged that Defendants' instructors were bad teachers. Plaintiffs' Opposition fails to rebut this argument.

Instead, Plaintiffs' Opposition claims that whether a "dangerous proclivity" is alleged cannot be resolved on a motion to dismiss. (Opp. at 25). However, the case they cite for this assertion – in fact, the very sentence cited in their Opposition – focuses on the employer's *knowledge* of the dangerous proclivity, not whether any dangerous proclivity in fact exists. See Dibrill v. Normandy Assocs., Inc., 383 S.W.3d 77, 89 (Mo. App. E.D. 2012) (stating that whether "Defendants knew or should have known" of the dangerous proclivity "is a fact issue that cannot be resolved on a motion to dismiss for failure to state a claim."). There never was any doubt in Dibrill that "violent felonious assault against persons" had been alleged and demonstrated a dangerous proclivity. Id. at 88.

In addition, Plaintiffs argue that their negligent hiring/retention claim should survive because "the underlying allegations of harm arise out of fraud." (Opp. at 25). This is the very reason Plaintiffs' negligent hiring/retention claim should be dismissed. Plaintiffs' fraud and negligent hiring/retention claims are separate claims: Plaintiffs claim to have been induced to

---

[3] In addition, Plaintiffs must also allege that the employee who allegedly harmed them due to Defendants' negligence was acting "outside the scope of his employment." Reed v. Kelly, 37 S.W.3d 274, 278 (Mo. App. E.D. 2000). Here, Plaintiffs alleged that Defendants negligently hired and retained instructors, who were obviously acting within the scope of their employment in teaching Plaintiffs. Plaintiffs' failure to satisfy this element also warrants dismissal.

12

enroll by alleged fraudulent statements, and they allege that Defendants hired instructors who were unqualified. Based upon Plaintiffs' own admission, they purport to be harmed from the alleged fraud, not from any unstated "dangerous proclivity" of their instructors.

Regardless, Plaintiffs have not shown, nor can they show, any of the required elements for this claim if they cannot first identify a dangerous proclivity. The Court should dismiss this count accordingly.

**VI.     Plaintiffs Have Not Alleged A Cognizable Conspiracy Claim.**

Plaintiffs' Opposition concedes that conspiracy is not an independent cause of action but is rather a claim that requires the assertion of an underlying tort that the defendants allegedly conspired to commit. (Opp. at 25-27). As set forth in Defendants' Motion and in this Reply, Plaintiffs have failed to adequately plead any of their tort claims. Thus, absent an underlying tort, Plaintiffs conspiracy claim must be dismissed. Rice v. Hodapp, 919 S.W.2d 240, 245 (Mo. 1996) ("In Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well."); Williams v. Mercantile Bank of St. Louis, NA, 845 S.W.2d 78, 85 (Mo. App. E.D. 1993) (stating that where the alleged underlying unlawful conduct does not constitute a cause of action, the allegation that the unlawful acts were the result of a conspiracy cannot "breathe life into a cause of action which was otherwise nonexistent").

Even if one of Plaintiffs' tort claims survives Defendants' Motion, Plaintiffs' conspiracy claim must be dismissed because there can be no conspiracy between the various defendants, all of whom are officers or employees of the defendant corporation. Mika v. Cent. Bank of Kansas City, 112 S.W.3d 82, 94 (Mo. App. W.D. 2003). Although Plaintiffs are correct that an exception to this general rules exists when "an employee has an independent personal stake in

13

achieving the object of the conspiracy," id., Plaintiffs have alleged no facts establishing that any of the individual defendants had a personal stake. Absent any allegations supporting the existence of the exception to the general rule, Plaintiffs' conspiracy claim must be dismissed.

## VII. **Plaintiffs Have Not Alleged A Cognizable Accounting Claim.**

Plaintiffs' call for an accounting fails to address the issues Defendants raised in Defendants' Motion. Plaintiffs must plead four elements to seek an accounting: 1) "the need for discovery;" 2) "the complicated nature of the accounts;" 3) "the existence of a fiduciary or trust relationship;" and 4) "the inadequacy of legal remedies." Tobias v. Korman, 141 S.W.3d 468, 474 (Mo. App. E.D. 2004). None of these elements are pled in the Petition, and Plaintiffs' Opposition otherwise fails to establish any *facts* supporting relief.

Plaintiffs argue in their Opposition that discovery is needed, but at no point in the Petition do Plaintiffs ever allege any misconduct on behalf of Defendants relating to Plaintiffs' student accounts, nor do they claim that the school denied them access to their financial information. Plaintiffs allege that Defendants received grants or loans on behalf of Plaintiffs, but they fail to claim why discovery is needed to sort out any issues related to the loans. Similarly, Plaintiffs state in their Opposition that their student accounts are complicated, but no facts are alleged to support that contention. Instead, Plaintiffs allege nothing more than a standard student-school relationship, and they cite to no cases supporting the ordering of an accounting any time a student is merely curious about the charges to his or her account.

The Petition also contains no allegation regarding the existence of a fiduciary relationship. Plaintiffs' Opposition tries to get around this deficiency, stating that a fiduciary relationship was created because "some of the consideration for the sale of the services provided to Plaintiffs did in fact reach WCC or its officers," (Opp. at 28), but a fiduciary relationship is

14

Electronically Filed - Jackson - Independence - May 29, 2014 - 04:36 PM

not created through the mere purchase of goods or services. <u>Arnold v. Erkmann</u>, 934 S.W.2d 621, 629-30 (Mo. App. E.D. 1996). Finally, Plaintiffs completely fail to explain to the Court – either in the Petition or in their Opposition – why standard legal remedies are inadequate.

Because no element of the claim is alleged, Plaintiffs' accounting claim should be dismissed.

**VIII.** **Plaintiffs Stand-Alone Count of Punitive Damages Must Be Dismissed.**

Plaintiffs have requested punitive damages as a form of relief under every cause of action. (<u>See</u> WHEREFORE clauses). To the extent any of Plaintiffs' causes of action survive this Motion to Dismiss, Defendants do not presently move to dismiss that request for relief under any individual cause of action. Defendants do, however, ask that the Court dismiss Plaintiffs' separate cause of action for punitive damages (Count VII), as an independent claim for punitive damages does not exist under Missouri law. <u>Hyatt v. Trans World Airlines, Inc.</u>, 943 S.W.2d 292, 296 (Mo. App. E.D. 1997).

<center><u>CONCLUSION</u></center>

WHEREFORE, Defendants respectfully request that the Court grant Defendants' Motion to Dismiss, for their costs and attorneys' fees, and for such other and further relief as the Court deems just and proper.

Dated: May 29, 2014.                    Respectfully submitted,


By:    /s/Elizabeth A. Bozicevic
Martin M. Loring, MO Bar # 29712
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar # 59623
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

*Attorneys for Mission Group Kansas, Inc., Board*
*of Directors of Mission Group Kansas, Inc., John*
*Mucci, Stephen Browne, and Ron Holt.*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 29th day of May, 2014, by first-class mail, to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050


_____/s/Elizabeth A. Bozicevic _____

17

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

COMES NOW Plaintiff and certifies that on June 6, 2014 the following documents were served via email and regular U.S. Postal Mail on all counsel of record:

1.  Plaintiff Steven Jewsome's Answers to Defendants' First Set of Interrogatories; and

2.  Plaintiff Steven Jewsome's Responses to Defendants' First Requests for Production of Documents.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.


/s/ Andrew K. Smith

| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:     (816) 836-5050
Facsimile:     (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify on this 6th day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
**JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

/s/ Andrew K. Smith
**ATTORNEY FOR PLAINTIFFS**

2

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA, et al.            )
                                   )
        Plaintiffs,        )
                                   )
      vs.                  )     Case No. 1316-CV27529
                                   )
MISSION GROUP KANSAS, INC., et al.   )
                                   )
        Defendants.      )

## CERTIFICATE OF SERVICE

COMES NOW Plaintiff and certifies that on June 6, 2014 the following documents were served via email and on June 10, 2014 served via regular U.S. Postal Mail on all counsel of record:

1. Plaintiff Stefanie Ayala's Answers to Defendants' First Set of Interrogatories; and

2. Plaintiff Stefanie Ayala's Responses to Defendants' First Requests for Production of Documents.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
Kenneth B. McClain         #32430
Andrew K. Smith          #60485
Lauren E. McClain        #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:   (816) 836-5050
Facsimile:   (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

      I hereby certify on this 10th day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:    (816) 983-8000
Facsimile:    (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:    (314) 480-1500
Facsimile:    (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:    (913) 396-5453
Facsimile:    (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
**JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

                            */s/ Andrew K. Smith*
                            **ATTORNEY FOR PLAINTIFFS**

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF VIDEOTAPED DEPOSITION OF DEFENDANT JOHN MUCCI

TO ALL PARTIES OF RECORD:

Please take notice that the deposition of Defendant John Mucci will be taken for use in the above-titled cause on Wednesday, July 23, 2014 to be held at the offices of HUSCH BLACKWELL, LP, 4801 Main Street, Ste. 1000, Kansas City, MO 64112. The deposition, which will be stenographically and video recorded, will begin at 9:00 a.m. and will continue from day to day until completed at the same time and place. Court reporting and video recording will be provided by Midwest Litigation Services, (800) 280-3376.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:     (816) 836-5050
Facsimile:     (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - June 12, 2014 - 02:58 PM

## CERTIFICATE OF SERVICE

I hereby certify on this 12th day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:       (816) 983-8000
Facsimile:       (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:       (314) 480-1500
Facsimile:       (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:    (913) 396-5453
Facsimile:    (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
**JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

/s/ Andrew K. Smith
**ATTORNEY FOR PLAINTIFFS**

2

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF VIDEOTAPED DEPOSITION OF DEFENDANT RON HOLT**

TO ALL PARTIES OF RECORD:

      Please take notice that the deposition of Defendant Ron Holt will be taken for use in the above-titled cause on Tuesday, July 22, 2014 to be held at the offices of HUSCH BLACKWELL, LP, 4801 Main Street, Ste. 1000, Kansas City, MO 64112. The deposition, which will be stenographically and video recorded, will begin at 9:00 a.m. and will continue from day to day until completed at the same time and place. Court reporting and video recording will be provided by Midwest Litigation Services, (800) 280-3376.

      Respectfully submitted,

      HUMPHREY, FARRINGTON & McCLAIN, P.C.


      */s/ Andrew K. Smith*

| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

      221 W. Lexington, Suite 400
      P.O. Box 900
      Independence, Missouri 64050
      Telephone:   (816) 836-5050
      Facsimile:   (816) 836-8966
      kbm@hfmlegal.com
      aks@hfmlegal.com
      lem@hfmlegal.com
      **ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - June 12, 2014 - 02:58 PM

## CERTIFICATE OF SERVICE

I hereby certify on this 12th day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,
BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,
JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

/s/ Andrew K. Smith
**ATTORNEY FOR PLAINTIFFS**

2

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF VIDEOTAPED DEPOSITION OF DEFENDANT STEPHEN BROWNE

TO ALL PARTIES OF RECORD:

Please take notice that the deposition of Defendant Stephen Browne will be taken for use in the above-titled cause on Thursday, July 10, 2014 to be held at the offices of HUSCH BLACKWELL, LP, 4801 Main Street, Ste. 1000, Kansas City, MO 64112. The deposition, which will be stenographically and video recorded, will begin at 9:00 a.m. and will continue from day to day until completed at the same time and place. Court reporting and video recording will be provided by Midwest Litigation Services, (800) 280-3376.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:     (816) 836-5050
Facsimile:      (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify on this 12th day of June, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:    (816) 983-8000
Facsimile:    (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:    (314) 480-1500
Facsimile:    (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:    (913) 396-5453
Facsimile:    (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
**JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**


               /s/ Andrew K. Smith
               **ATTORNEY FOR PLAINTIFFS**

2

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
☐ AT KANSAS CITY      ☐ INDEPENDENCE

_____

VS

_____

No. _____
☐ Circuit Judge Case
☐ Associate Circuit Judge Case

## SUBPOENA FOR ATTENDANCE AT A DEPOSITION
☐ SUBPOENA      ☐ SUBPOENA DUCES TECUM

STATE OF MISSOURI TO:


YOU are commanded to appear at the following location _____, Missouri, on _____, at _____ .m., to testify at the taking of a deposition in the above case concerning

_____
_____ has requested your attendance in this case. You may contact this party, or his/her attorney, at the telephone number stated below for further information concerning your attendance. You are further commanded to bring with you

_____
_____
_____

Any public or private corporation, partnership, association, or governmental agency not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Missouri Supreme Court Rule 57.09 (b) (4)

COURT ADMINISTRATOR'S OFFICE
**DEPARTMENT OF CIVIL RECORDS**
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

5-1-14
_____
Date

BY _Carrie Williams_____
_____
Deputy

_SUPREME COURT RULE 57.09 © PROVIDES_: "Proof of service of a notice to take a deposition as provided in Rules 57.03 and 57.04 is sufficient to authorize the issuance of a subpoena for taking a deposition." Subpoena will not be issued until proof is provided and attached by Deputy.

NAMES, ADDRESSES, TELEPHONE NUMBERS OF ATTORNEYS FOR RESPECTIVE PARTIES MUST BE PROVIDED


Phone:_____
Address:_____
_____
_____
Attorney for: _____

Phone:_____
Address:_____
_____
_____
Attorney for:_____

(if Multiple parties are involved, provide attachment(s) with required information)

CIRCT 2000A 09/00

# RETURN

I CERTIFY THAT I HAVE EXECUTED THIS WRIT IN _____ COUNTY,

MISSOURI, ON _____.

☐   BY DELIVERING A COPY OF THE WRIT PERSONALLY TO THE WITHIN NAMED

      _____

      PLACE OF SERVICE:_____

      TIME OF SERVICE:_____

☐   BY MAKING A DILIGENT SEARCH FOR AND FAILING TO FIND THE WITHIN-NAMED

      PERSON IN _____COUNTY, MISSOURI.

FEE PAID $_____       _____

                                                          SIGNATURE

## MUST BE SWORN BEFORE A NOTARY PUBLIC IF SUBPOENA IS NOT SERVED BY AN AUTHORIZED OFFICER

STATE OF MISSOURI)
COUNTY OF JACKSON)

SUBSCRIBED AND SWORN TO BEFORE ME ON _____

(SEAL)                          _____

                                                NOTARY PUBLIC

MY COMMISSION EXPIRES:_____

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA, ET AL, | ) |
| | ) |
| Plaintiffs, | ) Case No. 1316-CV27529 |
| | ) |
| v. | ) |
| | ) |
| MISSION GROUP KANSAS INC, ET AL, | ) Division 2 |
| | ) |
| Defendants. | ) |

## ORDER

Comes now the Court on Defendants' Motion to Dismiss filed April 24, 2014. "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Nazeri v. Mo. Valley College*, 860 S.W.2d 303, 306 (Mo. banc. 1993). In making a determination on a motion to dismiss, a court should accept as true all well-pleaded facts with all reasonable inferences arising therefrom. *Young v. Stensrude*, 664 S.W.2d 263 (Mo. App. E.D. 1984).

After reviewing the motion, considering the suggestions and responses, and being fully advised in the laws and premises of the Motion the Court finds that Defendants' Motion to Dismiss should be **DENIED**.

IT IS THEREFORE **ORDERED** that Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED**.

JUL 0 2 2014
_____
Date

_____
Judge Kenneth R. Garrett, III

I certify a copy of the above was sent via the E-filing system this day to all counsel of record:

By: Kurt McGuff, Law Clerk to the Honorable Kenneth R. Garrett, III, Division 2

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al.        )
                                      )
                                      )
        Plaintiffs,          )
                                      )
        vs.                  )     Case No. 1316-CV27529
                                        )
MISSION GROUP KANSAS, INC.,    )
      et al.                   )
                                        )
        Defendants.        )

## ANSWER

Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants"), come now and hereby respond to Plaintiffs' Allegations set forth in their Petition for Damages, stating as follows:

## PLAINTIFFS

1.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1, and therefore deny the allegations.

## DEFENDANTS

2.      Defendants admit the allegations in Paragraph 2 of the Petition.

3.      Defendants admit that the following persons are members of the Board of Directors of Mission Group Kansas, Inc ("Board of Directors"): Mr. James Miller, Jr.; Mrs. Gayle Miller; Mr. John Mucci; Mr. Roland Holt; Mrs. Peggy Hodges; Mr. Martin Baughman; Mr. Stephen Browne; Mr. Eugene Kivett; and Ms. Kathleen O'Brien. Defendants deny that Dr. Baltazara G. Lutuaco and Ms. Shawn Altman are currently members of the Board of Directors, and they deny all remaining allegations in Paragraph 3 except as specifically admitted herein.

4.      Defendants admit that John Mucci is a resident of Kansas and that he serves as the President of Mission Group Kansas, Inc., d/b/a Wright Career College. Defendants deny that the events alleged in the Petition occurred, and therefore deny all remaining allegations in Paragraph 4 except as specifically admitted herein.

5.      Defendants deny that Stephen Browne is a resident of Missouri. Defendants admit that Mr. Browne is presently the treasurer of Mission Group Kansas, Inc., d/b/a Wright Career College. Defendants deny that the events alleged in the Petition occurred, and therefore deny all remaining allegations in Paragraph 5 except as specifically admitted herein.

6.      Defendants admit that Defendant Ron Holt is a resident of Missouri and that he is presently the secretary of Mission Group Kansas, Inc., d/b/a Wright Career College. Defendants deny that the events alleged in the Petition occurred, and therefore deny all remaining allegations in Paragraph 6 except as specifically admitted herein.

## JURISDICTION & VENUE

7.      Defendants deny that the events that comprise the basis of Plaintiffs' claims occurred in Missouri. Defendants are without knowledge or information sufficient to form a belief as to the truth of the amount of damages Plaintiffs are seeking, and therefore deny the allegation. The remainder of the allegations in Paragraph 7 are legal conclusions to which no response is required, but to the extent a response is required, Defendants deny the allegations.

8.      Defendants deny that several Defendants reside in Missouri. The remainder of the allegations in Paragraph 8 are legal conclusions to which no response is required, but to the extent a response is required, Defendants deny the allegations.

**GENERAL ALLEGATIONS**

9.　　Defendants admit that Mission Group Kansas, Inc. is a Kansas non-profit corporation.  Defendants also admit that Wright Career College is a private, non-profit post-secondary school with campuses in Overland Park, Kansas; Wichita, Kansas; Oklahoma City, Oklahoma; Tulsa, Oklahoma; and Omaha, Nebraska.  Defendants deny that Mission Group Kansas, Inc. "operates" Wright Career College, and they deny all remaining allegations in Paragraph 9 except as specifically admitted herein.

10.　　Defendants admit that Wright Career College participates in the William D. Ford Federal Direct Loan Program and the Federal Pell Grant Program.  Defendants further admit that grants do not have to be repaid by students, and that Direct Loans do require repayment. Defendants deny the remaining allegations in Paragraph 10 except as specifically admitted herein.

11.　　Defendants deny the allegations in Paragraph 11 of the Petition.

12.　　Defendants deny the allegations in Paragraph 12 of the Petition.

13.　　Defendants deny the allegations in Paragraph 13 of the Petition.

14.　　Defendants deny the allegations in Paragraph 14 of the Petition.

15.　　Defendants deny the allegations in Paragraph 15 of the Petition.

**GENERAL ALLEGATIONS REGARDING THE ENROLLMENT AND EXPERIENCE OF PLAINTIFFS**

16.　　Defendants deny the allegations in Paragraph 16 of the Petition.

17.　　Defendants deny the allegations in Paragraph 17 of the Petition.

18.　　Defendants deny the allegations in Paragraph 18 of the Petition, including all subparagraphs thereof.

19.　　Defendants deny the allegations in Paragraph 19 of the Petition.

20.    Defendants deny the allegations in Paragraph 20 of the Petition, including all subparagraphs thereof.

21.    Defendants deny the allegations in Paragraph 21 of the Petition.

22.    Defendants deny the allegations in Paragraph 22 of the Petition.

23.    Defendants deny the allegations in Paragraph 23 of the Petition.

<div align="center">

**COUNT I**
**FRAUDULENT MISREPRESENTATION**
**(Against all Defendants)**

</div>

Defendants incorporate by reference all of their answers to Paragraphs 1 through 23 and Paragraphs 31 through 61, as if fully set forth herein.

24.    Defendants deny the allegations in Paragraph 24 of the Petition.

25.    Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 25 of the Petition.

26.    Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 26 of the Petition.

27.    Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 27 of the Petition.

28.    Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 28 of the Petition.

29.    Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 29 of the Petition.

30.    Defendants deny the allegations in Paragraph 30 of the Petition.

SLC-7278159-1

4

WHEREFORE Defendants respectfully request that the Court dismiss Count I of Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

<div align="center">

**COUNT II**
**NEGLIGENT MISREPRESENTATION**
**(Against all Defendants)**

</div>

Defendants incorporate by reference all of their answers to Paragraphs 1 through 30 and Paragraphs 39 through 61, as if fully set forth herein.

31. Defendants deny the allegations in Paragraph 31 of the Petition.

32. Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 32 of the Petition.

33. Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 33 of the Petition.

34. Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 34 of the Petition.

35. Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 35 of the Petition.

36. Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 36 of the Petition.

37. Defendants deny that they made any misrepresentations and therefore deny the allegations in Paragraph 37 of the Petition.

38. Defendants deny the allegations in Paragraph 38 of the Petition.

WHEREFORE Defendants respectfully request that the Court dismiss Count II of Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

## COUNT III
### NEGLIGENT HIRING/RETENTION
### (Against all Defendants)

Defendants incorporate by reference all of their answers to Paragraphs 1 through 38 and Paragraphs 44 through 61, as if fully set forth herein.

39.     Defendants deny the allegations in Paragraph 39 of the Petition.

40.     Defendants deny the allegations in Paragraph 40 of the Petition.

41.     Defendants deny the allegations in Paragraph 41 of the Petition.

42.     Defendants deny the allegations in Paragraph 42 of the Petition.

43.     Defendants deny the allegations in Paragraph 43 of the Petition.

WHEREFORE Defendants respectfully request that the Court dismiss Count III of Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

## COUNT IV
### CIVIL CONSPIRACY
### (Against all Defendants)

Defendants incorporate by reference all of their answers to Paragraphs 1 through 43 and Paragraphs 48 through 61, as if fully set forth herein.

44.     Defendants deny the allegations in Paragraph 44 of the Petition.

45.     Defendants deny the allegations in Paragraph 45 of the Petition.

46.     Defendants deny the allegations in Paragraph 46 of the Petition.

47.     Defendants deny the allegations in Paragraph 47 of the Petition.

WHEREFORE Defendants respectfully request that the Court dismiss Count IV of Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

<div align="center">

**COUNT V**
**VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT**
**(Against all Defendants)**
</div>

Defendants incorporate by reference all of their answers to Paragraphs 1 through 47 and Paragraphs 57 through 61, as if fully set forth herein.

48.     The allegations in Paragraph 48 of the Petition are legal conclusions to which no response is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 48 of the Petition.

49.     Defendants denied that they made statements to induce Plaintiffs to enroll at WCC.  The remaining allegations in Paragraph 49 of the Petition are legal conclusions to which no response is required, and to the extent an answer is required, Defendants deny the allegations in Paragraph 49 of the Petition.

50.     The allegations in Paragraph 50 of the Petition are legal conclusions to which no response is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 50 of the Petition.

51.     The allegations in Paragraph 51 of the Petition are legal conclusions to which no response is required.  To the extent an answer is required, Defendants deny the allegations in Paragraph 51 of the Petition.

52.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 52, and therefore deny the allegations.

53.     Defendants deny the allegations in Paragraph 53 of the Petition.

54.     Defendants deny the allegations in Paragraph 54 of the Petition.

55.     Defendants deny the allegations in Paragraph 55 of the Petition.

56.     Defendants deny the allegations in Paragraph 56 of the Petition.

WHEREFORE Defendants respectfully request that the Court dismiss Count V of Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

<div align="center">

**COUNT VI**
**ACCOUNTING**
**(Against all Defendants)**

</div>

Defendants incorporate by reference all of their answers to Paragraphs 1 through 56 and Paragraphs 59 through 61, as if fully set forth herein.

57.     Defendants deny the allegations in Paragraph 57 of the Petition.

58.     Defendants deny the allegations in Paragraph 58 of the Petition.

WHEREFORE Defendants respectfully request that the Court dismiss Count VI of Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

<div align="center">

**COUNT VII**
**PUNITIVE DAMAGES**
**(Against all Defendants)**

</div>

Defendants incorporate by reference all of their answers to Paragraphs 1 through 58, as if fully set forth herein.

59.     Defendants deny the allegations in Paragraph 59 of the Petition.

60.     Defendants deny the allegations in Paragraph 60 of the Petition.

61.     Defendants deny the allegations in Paragraph 61 of the Petition.

Electronically Filed - Jackson - Independence - July 14, 2014 - 05:05 PM

WHEREFORE Defendants respectfully request that the Court dismiss Count VII of Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

## GENERAL DENIAL

Defendants deny each and every allegation contained in Plaintiffs' Petition that is not specifically admitted to be true in the preceding paragraphs of this Answer.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The Petition and each Count therein fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims regarding the quality of their education and the quality of their instructors are barred by the doctrine of educational malpractice.

### Third Affirmative Defense

The claims of some or all of the Plaintiffs are barred by their failure to mitigate their damages, if any, in that some or all of the Plaintiffs continued to attend Wright Career College and incur tuition costs; failed their classes; failed to return or sell their books or unused supplies; failed to take steps to consolidate their student loans or pay off their student loans; and/or failed to use their best efforts to obtain jobs available to them.

### Fourth Affirmative Defense

The claims of some or all of the Plaintiffs are barred by the Statute of Frauds, the doctrines of integration and merger, and the parol evidence rule. Any alleged oral representations do not alter the terms of documents signed by Plaintiffs.

SLC-7278159-1

9

Electronically Filed - Jackson - Independence - July 14, 2014 - 05:05 PM

### Fifth Affirmative Defense

The claims of some or all of the Plaintiffs are barred by the doctrines of estoppel and waiver in that Plaintiffs signed documents that expressly disclaimed reliance on any alleged representations contrary to the terms set forth therein, and in that some or all Plaintiffs continued to attend Wright Career College with knowledge of the alleged facts.

### Sixth Affirmative Defense

The claims of some or all Plaintiffs are barred by the doctrine of laches, in that Plaintiffs unreasonably delayed in bringing the instant lawsuit after learning of the facts constituting the alleged fraud, to the prejudice of Defendants.

### Seventh Affirmative Defense

Some or all Plaintiffs, by their actions and omissions, ratified and/or authorized any and all actions of Defendants, by continuing to enroll at Wright Career College, paying tuition, and receiving diplomas from Wright Career College.

### Eighth Affirmative Defense

The claims of some or all Plaintiffs are barred by the voluntary payment doctrine in that Plaintiffs continued to pay their tuition and loans with knowledge of the facts.

### Ninth Affirmative Defense

The claims of some or all of the Plaintiffs are barred because they did not rely upon the alleged representations and/or omissions, including but not limited to the extent that the alleged representations and/or omissions were contrary to the terms of the written documents provided to and signed by Plaintiffs.

### Tenth Affirmative Defense

Plaintiffs' alleged reliance on alleged misrepresentations and omissions was not reasonable or justifiable to the extent the alleged misrepresentations and/or omissions were contrary to the terms of the written documents provided to and signed by Plaintiffs; were puffery and/or sales talk upon which Plaintiffs could not reasonably have relied; were predictions or statements of future actions to be taken by Defendants and/or third parties; or were matters of public record. Such allegations cannot form the basis of a fraud claim as a matter of law.

### Eleventh Affirmative Defense

Plaintiffs' Missouri Merchandising Practices claim is barred because they did not purchase a product primarily for personal, family, or household purposes, as is required for Mo. Rev. Stat. § 407.025.1.

### Twelfth Affirmative Defense

Any award of punitive damages would violate Defendants' rights under the United States and Missouri constitutions, as well as relevant United States Supreme Court and other federal and state court precedents.

### Thirteenth Affirmative Defense

The claims of some or all of the Plaintiffs are barred for failure to plead fraud with particularity, as required by Missouri Civil Procedure Rule 55.15.

### Fourteenth Affirmative Defense

Plaintiffs' Negligent Hiring/Retention claim is barred because Plaintiffs do not claim that Defendants' instructors had any dangerous proclivities.

### Fifteenth Affirmative Defense

Plaintiffs' Civil Conspiracy claim is barred because there can be no conspiracy between officer, agents, or employees of the same entity.

### Sixteenth Affirmative Defense

Plaintiffs' Accounting claim is barred because there is no fiduciary or trust relationship between Plaintiffs and Defendants.

### Seventeenth Affirmative Defense

Defendants Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne, and Ron Holt are not proper defendants and have been fraudulently joined, because they have no relationship with Plaintiffs or connection to any of the events alleged in the Petition.

Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available or apparent during pre-trial proceedings and discovery in this case, and hereby reserve their rights to amend their answer and assert any such defenses.

WHEREFORE Defendants respectfully request that the Court dismiss Plaintiffs' Petition, award costs and attorneys' fees to Defendants, and for such other and further relief as the Court deems just and proper.

SLC-7278159-1

12

Dated: July 14, 2014.                    Respectfully submitted,


By:___/s/ Elizabeth A. Bozicevic_____

Martin M. Loring, MO Bar # 29712
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar # 59623
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

*Attorneys for Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne, and Ron Holt.*

Electronically Filed - Jackson - Independence - July 14, 2014 - 05:05 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 14th day of July 2014, by first-class mail to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050



_____ /s/ Elizabeth A. Bozicevic_____

Electronically Filed - Jackson - Independence - July 31, 2014 - 03:43 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### CERTIFICATE OF MAILING

I hereby certify that a copy of the following was served via email and regular US Mail on

July 31, 2014 to the attached list of attorneys of record:

- Plaintiffs' First Interrogatories to Defendants Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne and Ron Holt; and

- Plaintiffs' First Request for Production of Documents to Defendants Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne and Ron Holt.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith

| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:     (816) 836-5050
Facsimile:     (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify on this 31st day of July, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,
BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,
JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

*/s/ Andrew K. Smith*
**ATTORNEY FOR PLAINTIFFS**

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

STEFANIE AYALA, *et al.*,    )
                      )
      Plaintiffs,      )
                      )
      vs.                )   Case No. 1316-CV27529
                      )
MISSION GROUP KANSAS, INC., )
  *et al.*,              )
                      )
      Defendants.    )

**DEFENDANTS' MOTION TO COMPEL DEPOSITION TESTIMONY
OF PLAINTIFF CHRISTI HAMPTON**

At the recent deposition of Plaintiff Christi Hampton, Plaintiffs' counsel improperly instructed Hampton not to answer multiple questions relating to certain non-privileged documents. The documents were completed by Hampton in the normal course of the operations of Defendant Wright Career College ("WCC"), and are collectively referred to as Hampton's "student exit documents."[1] Hampton completed the standard student exit documents during a meeting she requested with a non-lawyer administrator of the college. One of the student exit documents Hampton completed was a student survey seeking her feedback on WCC's performance. Hampton gave WCC high marks in the areas of "Admissions, Academics, Administration and Career Services" to name just a few. This is the same Christi Hampton who, as a Plaintiff in this lawsuit, claims that WCC's admissions representative made false and misleading statements and fraudulently induced her to enroll in the college. In sum, the statements made by Hampton on her student survey form completely contradict the claims

---

[1] These documents include, but are not limited to, "ACICS Placement Verification Program Student Placement Attestation Form", attached hereto as Exhibit A; "Wright Career College Student Exit Satisfaction Survey", attached hereto as Exhibit B; "Wright Career College Overland Park, Kansas Career Development Exit Agreement", attached hereto as Exhibit C; "Authorization to Release of Information", attached hereto as Exhibit D; "Release of Information and Permission", attached hereto as Exhibit E.

SLC-7298277-1          1

Hampton is making in this lawsuit. The document is devastating to her case, and is highly relevant to her credibility and trustworthiness.

But when Defense counsel sought to inquire about the stark inconsistencies between what Hampton said in her exit survey compared to what she is claiming in this lawsuit, Plaintiffs' counsel improperly obstructed the examination and the discovery process. Taking her counsel's advice, Hampton refused to answer multiple questions in her deposition about the survey, as well as other student exit documents Hampton completed shortly before her graduation ceremony. This was improper and completely unjustified. Accordingly, Defendants respectfully move under Supreme Court Rule 61.01 to re-open Hampton's deposition and to compel Hampton to answer questions regarding her student exit documents, for their costs and fees associated with the bringing of this motion and the re-opening of the deposition, and for such other relief the Court deems appropriate.

In support of this motion, Defendants rely upon the following memorandum.

## MEMORANDUM

## I.    INSTRUCTING HAMPTON NOT TO ANSWER QUESTIONS REGARDING A HIGHLY RELEVANT, NON-PRIVILEGED TOPIC WAS IMPROPER AND THE DEPOSITION SHOULD THEREFORE BE RE-OPENED.

Supreme Court Rule 61.01(g) provides in pertinent part that:

> **(g) Failure to Answer Questions on Deposition -** If a witness fails or refuses to testify in response to questions propounded on deposition, the proponent of the question may move for an order compelling an answer…
>
> If the motion is granted, the Court, after opportunity for hearing, shall require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

Hampton was recently deposed on Wednesday, July 30, 2014. At the deposition, Plaintiffs' counsel instructed Hampton not to answer multiple questions about the various student exit documents she completed on April 1, 2014 and April 10, 2014. These documents were completed several months after this lawsuit was filed. On March 27, 2014, just a few days before she completed the exit forms, Hampton sent an email to Nicholas ("Nick") Foley, the former Director of Career Services at WCC. In her email communication, Hampton stated that "I need to find a time in the evening that I can come in and sign my documents to be completed with my degree . . .." She also wanted to return her laptop. She affirmatively requested that Mr. Foley contact her and she provided her cell phone number for him to call. She concluded by stating that she would "**look forward to chatting with you and completing my paperwork soon. Thanks again for your time** . . .." *See* Email from Christi Hampton to Nick Foley dated March 27, 2014, attached as Exhibit F. (emphasis added).

Before limiting her deposition testimony, Hampton testified at her deposition that she "reached out to Foley" by sending the email because she was upset that she had not heard from anyone at the school about completing her paperwork before the graduation ceremony. *See* Hampton Dep., July 30, 2014, 217:4-20 and 239-242; attached as Exhibit G. Hampton and Foley then communicated by email and arranged for a meeting to take place between the two of them. *See* Exhibit F, Email from Christi Hampton to Nick Foley. Hampton completed the student exit documents during two meetings with Foley in April.

There is no evidence in the record that lawyers from either side were aware of the communications or the meetings between Hampton and Foley. Indeed, the student exit documents are standard forms that every student completes upon graduation from WCC.

Hampton was treated like every other graduate of WCC, and there is no evidence of any impropriety in the way Hampton's student exit documents were completed. Plaintiffs' counsel's instruction to Hampton not to answer multiple deposition questions pertaining to the survey and the other student exit documents was therefore improper.

According to Rule 57.03(e), an attorney may only terminate or limit a deposition "upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party . . .." Instructing Hampton not to answer questions—about documents she voluntarily filled out in her own hand, during a meeting she initiated, as part of the normal course of WCC's interaction with students attending or graduating from the school—was improper because the questions were not asked in bad faith nor were they asked for the purpose of annoying, embarrassing, or oppressing Hampton. They were asked solely to impeach Hampton's credibility and to expose her for being untruthful in this lawsuit. Questions focusing on a party's credibility and trustworthiness are always appropriate in a deposition. *See Thomas v. State*, 512 S.W.2d 116, 123 (Mo. banc 1974) ("It is always proper to cross-examine a witness about any relevant matter in order to test [her] credibility.")

On the Wright Career College Student Exit Satisfaction Survey, Exhibit A, Hampton gave the Admissions department a score of "Above Average Agreement" to the statement "My admissions representative accurately represented the opportunities at WCC." This statement directly contradicts Hampton's claim that the admissions representative she met with materially misrepresented the opportunities available to her at Wright Career College. Hampton should be compelled to explain these inconsistencies. Curiously, questions regarding the same exact documents have been asked of another Plaintiff, Jennifer Decker, without a single objection from Plaintiffs' counsel. *See Decker Dep.*, June 13, 2014, 186:15; attached as Exhibit H. Moreover,

Hampton herself was permitted to testify about the "Student Placement Attestation Form" which she also signed on April 10, 2014 during her meeting with Foley. In this document, Hampton certified that her education from WCC was beneficial in securing her current position as a data technician at GEHA making more than $30,000 a year with full benefits. This student exit document completely contradicts what Hampton is claiming in the lawsuit, and was provided by Hampton to Foley on April 10, but yet there was no objection to this deposition testimony. *See* Exhibit G, Hampton Dep. at 222:1-223:5.

The student exit documents Plaintiff Christi Hampton completed near the time of her graduation from WCC are devastating to her case, and prove that she is not a credible witness. Defense counsel should be afforded a full opportunity to examine Hampton on *all* of these important documents, and the many inconsistencies between what she said in these documents versus what she is now representing to the Court in this lawsuit. Plaintiffs' counsel's instruction to not answer the deposition questions on this topic was highly improper. The Court should therefore order that Hampton's deposition be re-opened; that she answer all questions about the documents fully and truthfully, including any follow-up questions, and that all costs and fees associated with this motion be assessed against Plaintiffs.

## II. THE ALLEGED BASIS FOR PLAINTIFFS' COUNSEL'S INSTRUCTION NOT TO ANSWER THE DEPOSITION QUESTIONS IS WITHOUT MERIT.

Plaintiffs' counsel stated on the record that he was limiting Hampton's deposition testimony about the survey and the other student exit documents because the communications between Hampton and Foley were somehow improper. Plaintiffs' counsel is simply wrong. It is well known that Rule of Professional Conduct 4-4.2 prohibits a lawyer from communicating about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter. But that is not what happened here. This was simply a

communication between a student who filed a lawsuit against her college and a non-lawyer college administrator. Comment 5 to 4-4.2 clearly states: "<u>Parties</u> to a matter may communicate directly with each other . . .." This has long been the rule, and is precisely what happened in this case. Indeed, Hampton <u>initiated</u> the communication with Foley that led to her completing the survey and other student exit documents.

Nick Foley is not an attorney for Wright Career College. He worked as the Director of Career Services. There is no evidence to suggest that Foley's interaction with Hampton by virtue of his role as Director of Career Services was an improper communication with a person represented by counsel in violation of Rule 4-4.2. Hampton elected to file this lawsuit while she was still an active student at Wright Career College. As such, it would be impossible to prohibit all communication between Hampton and the school's administration. Communications between Hampton, as well as the other Plaintiffs, and employees of Wright Career College have continued in the normal course since this lawsuit was filed. There is nothing inappropriate about these communications.

To support his position that the Hampton-Foley interaction was somehow improper, Plaintiffs' counsel points to an e-mail exchange with Defense counsel regarding certain telephone calls allegedly made to at least some Plaintiffs by employees of WCC. *See* E-mail exchange between Andy Smith and Martin Loring dated March 6, 2014, attached hereto as Exhibit I. This email exchange has nothing to do with the meetings between Foley and Hampton. The email exchange related to routine telephone calls the school typically makes to its former students to learn more about their experiences and obtain feedback. Plaintiffs' counsel requested that these calls not be made to the Plaintiffs, and as the email exchange reflects, Defense counsel took steps to accommodate the request. Indeed, as the last email from WCC's

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

counsel reflects, other communications between the Plaintiffs and the school would naturally persist, especially where one of the Plaintiffs (Steven Jewsome in that case) needed certain information from the school's administration. That is precisely what happened here with Foley and Hampton—Hampton was reaching out to Foley because she wanted to "come in and sign my documents" and return her laptop.

Communications occurring in the normal course of school operations between WCC non-lawyer administrators and the Plaintiffs are not improper or unethical in any way—irrespective of Plaintiffs' counsel's request that they not happen. There is nothing improper about two parties in a lawsuit communicating outside the presence of their counsel, irrespective of the wishes of counsel. It happens routinely and, in fact, should be encouraged. If Plaintiffs' counsel would like to prohibit, or limit, future communications between Plaintiffs and the administration of WCC, *then they should advise their clients to stop talking to WCC.* That is the solution. The solution is not to make unfounded claims that WCC and/or its lawyers did something improper and then obstruct Defense counsel's ability to uncover the truth in a deposition.

## III. THE INTERESTS OF JUSTICE REQUIRE THAT HAMPTON'S DEPOSITION BE RE-OPENED AND SHE BE COMPELLED TO EXPLAIN THE INCONSISTENCIES IN HER STORY.

Even if this Court were to conclude that Foley and Hampton should not have met in April 2014, the appropriate remedy is not to limit Hampton's deposition testimony. The appropriate remedy would be for the Court to exclude from the evidence at trial any documents or testimony the Court believes was improperly procured. The admissibility determination is properly made on the eve of trial, not during discovery. *Lutes v. Schaefer*, 431 S.W.3d 550, 558 (Mo. Ct. App. E.D. 2014). Hampton is basically asking this Court to prematurely make an evidentiary decision based on an incomplete record. The Court should decline to do that, and instead should grant

this motion, and then deal with this issue later at the trial of this matter—with the benefit of a full record, including the full deposition testimony of Hampton.

Defense counsel suggested this precise solution at the deposition. Defense counsel suggested that Hampton be permitted to testify in her deposition about the exit documents, noting that Hampton could always move to exclude the testimony or the documents from the evidence at trial if Plaintiffs' counsel still believed the evidence was obtained improperly. *See* Exhibit G, Hampton Dep. at 237:22-238:3; *See also*, Affidavit of James F. Monafo, attached hereto as Exhibit J. Plaintiffs' counsel refused this overture, and nevertheless continued to instruct Hampton not to answer relevant questions in her deposition about her student exit documents; even though Plaintiffs' counsel fully admits they have no evidence to suggest that Defense counsel participated in any way in the communications between Foley and Hampton. *See* Exhibit G, Hampton Dep. at 225:12-239:12. This was an improper obstruction of the deposition process, and the Court should therefore award the costs and fees associated with this motion against Hampton, because all of could have easily been avoided.

## CONCLUSION

A simple comparison of the student exit documents and the Petition shows beyond any question that Hampton is not being truthful. Moreover, there is no competent evidence to suggest that Defense counsel secretly instructed Foley to meet with Hampton in an effort to get her to make admissions that show she is not telling the truth. But even if there were, the appropriate remedy would not be to relieve Hampton of her obligation to testify in her deposition about the many inconsistencies in her story. The primary purpose of a trial is to reveal the truth. Plaintiffs should not be permitted to suppress the truth, and Hampton should therefore be compelled to explain in her deposition why her exit documents so blatantly contradict what she

is alleging in the lawsuit. In addition, WCC should be awarded its costs and fees associated with the bringing of this motion and the re-opening of the deposition.

Dated: August 7, 2014.           Respectfully submitted,

By:    /s/ Elizabeth A. Bozicevic

Martin M. Loring, MO Bar # 29712
James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar #59623
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

***Attorneys for Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne, and Ron Holt.***

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 7th day of August 2014, by first-class mail to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050


   /s/  Elizabeth A. Bozicevic

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

## ACICS PLACEMENT VERIFICATION PROGRAM
## STUDENT PLACEMENT ATTESTATION FORM

By completing and signing this form or authorizing the school official to complete it on your behalf, you agree with the information provided. Please note that you may be contacted by the Accrediting Council for Independent Colleges and Schools (ACICS) in order to verify the information provided.

I, _CHRISTI HAMPTON_____, attest that the training I have received
　　　　FULL NAME

in the _Medical Billing_____ program at _Wright / Overland park___
　　　　　PROGRAM　　　　　　　　　　　　　　　　　INSTITUTION/CAMPUS

located in _Overland Park_____ _KS__ was beneficial in obtaining or maintaining
　　　　　　　CITY　　　　　　　　　STATE

the position of _data technician_____ at _GEHA_____
　　　　　　　POSITION TITLE　　　　　　　　　　EMPLOYER NAME

1. **TYPE OF BENEFIT** -- I was able to benefit from the skills and knowledge learned in my program by [INITIAL ONE]:

　　1a. _____ Obtaining a <u>new</u> position that: [CHECK ONE]
　　　　　　☐ Utilizes such skills and knowledge
　　　　　　☐ Requires the credential provided through my program

　　1b. _X_ Maintaining a <u>current</u> position that utilizes the skills and knowledge learned in my program that: [CHECK ONE]
　　　　　　☑ Fulfills requirements for professional development
　　　　　　☐ Fulfills requirements for a possible future promotion
　　　　　　☐ Fulfills my goal of improving job-related skills

2. **TYPE OF POSITION** -- My new or current position is a paid job that <u>meets my employment goal</u> through: [INITIAL ONE]

　　_✓_ Full-time, permanent work for a single employer (defined here as greater than or equal to 20 hours per week)

　　____ Part-time permanent work for a single employer (defined here as 7.5 to less than 20 hours per week)

　　____ Self-employment with multiple possible customers (e.g., as a small business owner)

　　____ Independent contract work with multiple possible customers (e.g., as a "free-lance" contractor)

　　____ Temporary agency work (on jobs related to the field of study)

　　____ Temporary work (on jobs lasting 1 month or more that could lead to repeated, sustained employment)

　　____ Practical training (as allowed by your student visa)

　　____ Other paid work (please describe): _____

_Christi Hampton_____　　　_[signature]_____
GRADUATE/COMPLETER SIGNATURE　　　CAREER SERVICES/MANAGEMENT SIGNATURE

_4-10-14_____　　　　　　　　　_4/10/14_____
DATE　　　　　　　　　　　　　　　DATE

Exh. A

CONFIDENTIAL

WCC0000552

*C Hampton*

## Wright Career College
## Student Exit Satisfaction Survey

Below is a series of questions designed to assess your thoughts with regard to the staff and administration of Wright Career College. Please read the questions below, marking the response that best corresponds to your individual situation. Mark all responses, using the following scale:

4=Strong Agreement        3=Above Average Agreement        2=Average Agreement        1= Do Not Agree

*Receptionist:*

1. __3__ The Receptionists are courteous and helpful.

2. __4__ When I call or enter the school, I am treated with respect and professionalism.

3. __3__ The Receptionist is available to assist with questions.

*ADMISSIONS:*

1. __2__ My admissions representative understood my unique, individual situation.

2. __3__ My admissions representative exhibited a high degree of professionalism.

3. __3__ My admissions representative accurately represented the opportunities at WCC.

4. __3__ My admissions representative answered my questions about enrollment.

*ACADEMICS:*

1. __2__ My educational experience at WCC has met my expectations.

2. __4__ My instructors cared about my academic success, and motivated me towards my visions and goals.

3. __2__ The quality of instruction I received in my courses helped prepare me for my career field.

4. __3__ My instructors were always available for assistance, and they represented a *"College That Cares"*.

5. __4__ The Academic Team was approachable, and willing to assist.

6. __4__ The Academic Team exhibits a high degree of professionalism

*FINANCIAL AID:*

1. __3__ I understood the information that was explained to me during my financial planning meeting.

2. __2__ The financial aid officer exhibited a high degree of professionalism.

3. __1__ The financial aid officer answered my questions and concerns in a timely manner.

4. __2__ The financial aid officer is knowledgeable about financial aid opportunities.

5. __2__ The financial aid officer had my best interests in mind.

6. __1__ The financial aid officer worked with me to find a financial plan to pay for school expenses.

7. __1__ My financial aid officer has clearly explained my loan repayment responsibilities.

8. __3__ The financial aid office was open during hours that are convenient.

**Exh. B**

CONFIDENTIAL

WCC0000553

*ADMINISTRATION:*

1. __4__ The Campus Director was approachable, and willing to assist..
2. __4__ The Faculty Director was approachable, and willing to assist.
3. __4__ The Campus Director exhibits a high degree of professionalism.
4. __4__ The Faculty Director exhibits a high degree of professionalism.

*CAREER SERVICES:*

1. __4__ The Career Placement Director would provide part-time job opportunities assistance if needed.
2. __3__ The Career Placement Director assisted me with career planning.
3. __3__ The Career Placement Director keeps me updated on current employment opportunities.
4. __3__ The Career Placement Director works hard to help me find employment in my career field.
5. __3__ The Career Placement Director exhibited a high degree of professionalism.

*FACILITY:*

1. __1__ The computer equipment provided by the college was in good working condition.
2. __3__ The Campus Library, Online Resources, and access to public libraries provided adequate resource materials to support my program.
3. __4__ The Library was open during hours that are convenient?
4. __4__ The classrooms, clinic space, and library provided adequate space for learning?
5. __4__ Parking lots are well lighted and I feel safe while on campus grounds.

*MISCELLANEOUS:*

1. __1__ I would recommend WCC to my family and friends.
2. __1__ I am satisfied that WCC demonstrated a commitment to my career goals and success.

*RATE THE FOLLOWING: (4= Outstanding, 3= Good, 2=Poor, 1=Do Not Know)*

1. __4__ Overall rating of my experience with Admissions.
2. __2__ Overall rating of my experience with Financial Aid
3. __3__ Overall rating of my experience with Academics
4. __3__ Overall rating of my experience with Career Services.
5. __4__ Overall rating of my experience with Administration
6. __3__ Overall rating of the WCC building.

CONFIDENTIAL

WCC0000554

Wright Career College
Overland Park, Kansas
Career Development Exit Agreement

Name: CHRISTI HAMPTON

Address: 926 NE Swann Rd Apt B

City: Lees Summit     State: MO     Zip: 64086

Telephone: 816-912-8551     Major: Assoc     Day/Night: night
                                    Medical Billing
Social Security Number: 495 90 4856

List three alternate telephone numbers where you can receive a message.

| Name | Telephone # | Relationship |
|------|-------------|--------------|
| 1) Lisa Hardman | 913 475 4114 | Friend |
| 2) Melissa Vanswearigen | 660 492 4238 | Friend |
| 3) Krishana Kihn | 816 286 3484 | Friend |

Are you prepared to begin your job search? (circle one)     No     (Yes)

If No, please explain briefly. _____

Do you plan on participating in the next graduation ceremony? (circle one) (Yes) No

If Yes, please complete the following for cap and gown ordering purposes:

Height: 5     Weight: 4     Gender: F

The cost for cap and gown is $30.00 in cash. By participating in graduation, I understand that my cap and gown will not be ordered unless paid for in advance. If your club will be paying for this cost, please request a Cap/Gown voucher from this office.

Christi Hampton _____     4-1-14
Signature                            Date

Exh. C

CONFIDENTIAL

WCC0000555

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

Upon Graduation, you are eligible to receive placement assistance from the Career Development Department at Wright Career College. It is the school's goal to help you achieve a job utilizing the skills you acquired at Wright; therefore, the Career Development Department will primarily submit your resume to jobs that will allow you to utilize your newly acquired skills. It should be understood that Wright Career College does not guarantee employment, only assistance.

The following guidelines will aid you with better understanding your responsibilities while exercising placement assistance from Wright Career College.

1) The Career Development Department faxes, mails, and e-mails your resumes to various companies, individuals, and organizations. Therefore, it is your responsibility to make sure that the Career Development Department has an accurate and updated copy of your resume and references on file.

2) You must also supply a valid phone number, address, and an alternative phone number that you can be reached at, in order to receive and retain placement assistance. This is also necessary for contact concerning graduation ceremony information.

3) If at any time you would like to either terminate or initiate placement assistance, you must call the Director of Career Development and complete any necessary steps/instructions requested at that time.

4) You are required to contact the Director of Career Development once a week. This assures that both you and the Career Development Department are "on track" with your job search. You are also required to report any phone calls, interviews, or job offers that you receive. Remember that your chances of finding gainful employment increase with every lead, phone call, and interview that you follow up on. This involves continued and consistent contact with the Career Development Staff.

5) You are expected to follow up on all leads, phone calls, and interviews that you receive. If for any reason you are unable to keep a set appointment with a "future" employer or with the Career Development department, you must contact the person you are scheduled to meet with as well as the Career Development Department.

6) No special limitations (i.e. locations, hours or transportation issues) with the exception of medical concerns will be taken into account by the Career Development Department during the submission of your resume to any "future" employers. You should understand that the more limitations, you place on your job search, the longer you will stay unemployed or unhappy with your current employment.

7) The Career Development Department will terminate placement assistance, until privileges are asked to be reinstated by the graduate, when the following situations occur:
- Graduate is offered a long-term paying position.
- Telephone number on graduate's resume is no longer accurate.
- Graduate does not follow the rules outlined in number 1-6 of this document.
- Graduate deliberately disrespects any "future" employer or member of the Career Development Department.
- Graduate deliberately slanders Wright Career College or any of its employees.

8) The following is any explanation of how the Career Development Department assists you—the graduate—in finding employment:
- Every effort is made to represent you in the best possible way to any "future" employer.
- The Career Development Department will counsel you in every step of your job search.
- The Career Development Department will fax or e-mail your resume to any job lead submitted by you.
- Your resume is submitted to all job leads for which you meet the employment criteria. The Career Development Department acquires job leads from local newspapers, various job search websites, and employer networking.

I have read, understand, and agree with the *Acknowledgement of Responsibilities Concerning Placement Assistance from Wright Career College.*

Clarinda Hampton                                    4-1-14
_____                          _____
Signature                                              Date

CONFIDENTIAL

WCC0000556

I, CHRISTI HAMPTON , hereby authorize a representative of
Wright Career College to use my personal information to complete on-line
applications for possible employment positions.

Signature: Christi Hampton

Print Name: CHRISTI HAMPTON

Date: 4-1-14

CONFIDENTIAL

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

*CAREER COLLEGE*

(405) 681-2300
FAX (405) 681-7016

## Authorization to Release of Information

I authorize Wright Career College, its accrediting body, ACICS (Accrediting Council for Independent Colleges and Schools), and appropriate Federal and State agencies access to information pertaining to my employment, including but not limited to, Place of employment, Position held, Supervisor name and Employer contact phone number. This information is to be used to confirm employment. In addition, I authorize Wright Career College access to information from my employer regarding my skill level, achievements, job performance and other relevant information such as rate of pay, to comply with Federal, State and other appropriate reporting requirements through the use of periodic written or verbal surveys conducted by Wright or its designated agent.

A photocopy of this authorization should be accepted with the same authority as the original and this release will remain in effect for up to five years.

Christi Hampton
_____         4-1-14
Signature                                            Date

HAMPTON              CHRISTI                    L
_____  _____  _____
Print: Last Name                First Name          Middle Initial

Exh. D

CONFIDENTIAL                                                    WCC0000558

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

## Release of Information and Permission

I, CHRISTI L HAMPTON, 4959 0485c hereby give
Name (first, middle, last) ___ SSN

Wright Career College et al, permission to use my name, photograph (actual or likeness), school affiliation, employment information, and/or credentials for the use of advertisement in newspapers, website (s), professional publications, or any other forms of media. I understand that I will not be compensated in any way for the use of my name, photograph, or credentials. I further understand that the advertisement will become the property solely of Wright Career College et al, for the use of promoting the school as an institution of higher learning.

I further give my employer permission to release my employment status, job title, and description to Wright Career College et al, for the purposes of advertisement and promotion of the school. I release my liability of my current or former employer for sharing of this privileged information with Wright Career College et al. I understand that my employer will not receive any compensation from Wright Career College for the use of this information

CHRISTI L HAMPTON
Name (first, middle, last)

4-1-14
Date

### Employer Release:

I, CHRISTI HAMPTON, as a representative of GEHA, hereby give Wright Career College et al, permission to use my company's name in association with the above said employee's name for the use of advertisement in the newspapers, website (s), professional publications and any other forms of media. I understand that the company or I will not be compensated in any way for the use of the company name. I further understand that the advertisement will become the sole property of Wright Career College et al, for the use of promoting the school as an institution of higher learning.

CHRISTI L HAMPTON
Employer Representative's Name (first, middle, last)

4-1-14
Date

Exh. E

CONFIDENTIAL

WCC0000559



3/27/14

Hi Nick,
I was a former student at wright and finished on February 20,14. I need to find a time in the
evening that I can come in and sign my documents to be completed with my degree. I am under
the understanding that I owe a balance which is fine but unsure on who or where I need to pay
that at so maybe we can find out about that as well. I am emailing since I work crazy hours and
unable to make personal calls during the day. If you can send me a email back or if need be feel
free to leave me a message on my cell phone that is fine to. 816-912-8551. Look forward to
chatting with you and completing my paperwork soon. thanks again for your time
Christi Hampton
P.s. I do still have my laptop from the school year. I was unable to leave it with anyone at the
time of completion so I do still have that in my possession.

--
*Christi Hampton*

Exh. F

CONFIDENTIAL                                                            WCC0000351

1    IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
              AT INDEPENDENCE
2

3

4    STEFANIE AYALA, et al.,        )
                                    )
5              Plaintiffs,          )
                                    )
6    v.                             )  No. 1316-CV27529
                                    )
7    MISSION GROUP KANSAS,          )
     INC., et al.,                  )
8                                   )
               Defendants.          )
9

10

11

12

13

14

15

16

17

18        VIDEOTAPED DEPOSITION OF CHRISTI

19   HAMPTON, a Plaintiff, taken on behalf of the

20   Defendants before Joan S. Nunnink, CCR No. 543,

21   CSR, pursuant to Notice on July 30, 2014 at the

22   offices of Humphrey, Farrington & McClain, P.C.

23   221 West Lexington Avenue, Suite 400,

24   Independence, Missouri 64050.

                                          Exh. G
25

              Hampton, Christi - 7/30/2014

1   refresh your memory here.

2                (Hampton Deposition Exhibit 95 was

3   marked for identification.)

4       Q.   (By Mr. Monafo)  We're closing in on

5   100.  This is Exhibit 95.  I will hand you that.

6   Miss Hampton, I have placed before you what I

7   have marked as Exhibit 95, and this appears to be

8   an e-mail or some sort of electronic

9   communication between you and Nick Foley; is that

10  fair to say?

11      A.   Yes.

12      Q.   Was there -- is there some reason you

13  remembered this or you just remembered it or --

14      A.   I remember it because I sent it to him

15  after I graduated, or was graduating I should

16  say, because nobody had contacted me when

17  graduation was, nothing.  I had heard nothing

18  since my last day of school.  So I reached out to

19  Nick to find out details.

20      Q.   Okay.  And is this an e-mail that you

21  wrote that is reflected on Exhibit 95?

22      A.   Yes.

23      Q.   And did you write this from your, your

24  07 e-mail account?

25      A.   Yes.

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    Q.   Do you remember her name?

2    A.   I do not.

3    Q.   And did you discuss with the financial

4  aid representative from Wright Career College how

5  it came about that you had this debt, which I

6  believe was right around, it was $900 and

7  something dollars; right?

8    A.   Something like that, yes.

9    Q.   Did she explain to you how that

10 happened?

11   A.   She showed me copies of where my loan

12 was disbursed, but that was about it.

13   Q.   Okay.  Did you tell her that you were

14 accepting her explanation for what she was

15 providing?

16   A.   I had tried to dispute it three times

17 prior to that day, so no, I did not bring it up.

18   Q.   You didn't bring it up at all?

19   A.   No.

20   Q.   Okay.  All right, let me -- did you

21 agree to a payment schedule?

22   A.   I did sign a payment schedule, yes.

23   Q.   Okay.  Second here.

24         (Hampton Deposition Exhibit 96 was

25 marked for identification.)

Hampton, Christi -- 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    Q.   (By Mr. Monafo)  Let's go to Exhibit 96.

2    Provide your counsel with a courtesy copy, and

3    this is 96; correct?

4    A.   Yes.

5    Q.   All right.  Is this your signature on

6    the front page of Exhibit 96?

7    A.   Yes.

8    Q.   Is this -- is your handwriting appear

9    anywhere else on the document?

10   A.   It is all over the document except for

11   Career Service/Management signature.

12   Q.   Okay.  So you filled out the front page

13   of Exhibit 96?

14   A.   Yes.

15   Q.   Let's just go through this document.  It

16   says -- did you recall where you were when you

17   filled this document out?

18   A.   Nick Foley's office.

19   Q.   And was it April 10th, 2014 when you

20   filled this document out?

21   A.   Yes.

22   Q.   And the document says at the top, "By

23   completing and signing this form or authorizing

24   school official to complete it on your behalf,

25   you agree with the information provided.  Please

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1   note that you may be contacted by the Accrediting

2   Council for Independent Colleges and Schools

3   (ACICS) in order to verify the information

4   provided."  Did I read that correctly?

5       A.   Yes.

6       Q.   Did you read that before you filled out

7   this document?

8       A.   No.

9       Q.   Okay.  Have you ever been contacted by

10  the ACICS?

11      A.   No.

12      Q.   And then it says, "I, Christi Hampton,"

13  and you wrote in Christi Hampton where it says

14  that; right?

15      A.   Yes.

16      Q.   So you read that, the letter I just

17  before it; right?  Because you would have had to

18  know to put your name in there; right?

19      A.   Yes.

20      Q.   "Attest that the training I have

21  received in the Medical Billing program at

22  Wright/Overland Park, located in Overland Park,

23  Kansas was beneficial in obtaining or maintaining

24  the position of data technician at GEHA."  Did I

25  read that correctly?

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    Q.    Okay.

2    A.    That's all I read.

3    Q.    And then it says, program; right?

4    A.    Yes.

5    Q.    You put in medical billing; so how did

6 you know to put Wright/Overland Park it says

7 underneath there?

8    A.    Because that's the school I attended.

9    Q.    Okay.  And then there's a -- there's a

10 box, or there's a line, underneath the line it

11 says, position title.

12        MR. SMITH:  Can I -- we can do this

13 off the record or on the record, I don't care.

14        MR. MONAFO:  Do what?

15        MR. SMITH:  What I'm going to say

16 to you.

17        MR. MONAFO:  Oh, okay.

18        MR. SMITH:  This is entirely

19 inappropriate, I think sanctionable.  It's a

20 deposition of a client your client knew was a

21 plaintiff against them in a lawsuit.  I was not

22 present.  I was not told about it.  I was not

23 notified.  I have warned you in an e-mail before

24 that your client was doing this, and Mr. -- you

25 or Mr. Loring, one of you, told me you would stop

1   this, that you got ahold of them immediately and

2   it was stopped.  So if you're going use this in a

3   deposition, I am going to ask for all available

4   remedy, including sanctions against your client

5   and your firm if I knew, if you -- if I learn

6   that you knew about it.  It's entirely

7   inappropriate.  I have never seen such an

8   egregious attempt to depose somebody outside of

9   counsel's presence on the very topic that you

10  know are in the lawsuit.

11            MR. MONAFO:  Okay.  Finished?

12            MR. SMITH:  If you don't care about

13  that, go ahead.

14            MR. MONAFO:  I don't, I don't,

15  because I had nothing to do with it, so but --

16            MR. SMITH:  You did know about it,

17  though.  You did know about it.  Your firm knew

18  that this was happening because I have it in an

19  e-mail and it was before this --

20            MS. BODEN:  No, Andy, that e-mail

21  that --

22            MR. SMITH:  You can't talk.  You

23  can't talk.

24            MS. BODEN:  I actually can, I'm an

25  attorney of record and I'm at this deposition and

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    I can talk.

2              MR. SMITH:  Only one attorney can

3    talk on behalf of the parties.  If you don't know

4    that, then you need to learn it.  You have to sit

5    there.

6              MR. MONAFO:  Oh, Andy.

7              MS. BODEN:  State your objection to

8    my statement, Andy, because --

9              MR. SMITH:  No, I will end the

10   deposition.

11             MS. BODEN:  That e-mail --

12             MR. SMITH:  I will end the

13   deposition.

14             MS. BODEN:  That e-mail had

15   absolutely nothing to do with --

16             MR. SMITH:  So you in fact knew

17   this was happening as counsel of record?

18             MS. BODEN:  No, I did not know that

19   was happening.

20             MR. SMITH:  You as general counsel

21   for this school did not know that this form was a

22   practice that went on?  Put that on the record.

23             MS. BODEN:  That's not your

24   question.

25             MR. SMITH:  I'm asking you that

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    question.

2         MS. BODEN:  I'm not being deposed.

3         MR. MONAFO:  Right.  We're not here

4    to answer questions.

5         MR. SMITH:  Okay.

6         MR. MONAFO:  If you -- as you just

7    pointed out, you have remedies.  I suggest you

8    exercise the remedies you believe you have

9    available to you.

10        MR. SMITH:  Here's what we're going

11   to do.

12        MR. MONAFO:  Sure.

13        MR. SMITH:  We're not going to talk

14   about this document anymore today.

15        MR. MONAFO:  Why not?

16        MR. SMITH:  If you want to ask her

17   more questions today in her deposition not about

18   this document, that's fine.  I'm not going to

19   have her answer anymore about it.  And if you

20   want to go to Judge Garrett and explain that to

21   him and see if he wants us to come back, we can,

22   but it ain't happening today.

23        MR. MONAFO:  Oh, yeah, if it's not

24   happening today --

25        MR. SMITH:  So we can end the whole

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1  thing and come back.

2         MR. MONAFO:  Adjourn?

3         MR. SMITH:  Actually, no, I'm

4  offering to continue the deposition on all items

5  except for this document or any other document

6  that occurred during that time.

7         MR. MONAFO:  Well, I'm not

8  agreeable today because you're dictating to me,

9  then, the order, my order of proof and the order

10 in which I want to deal with things.  I mean, you

11 have known about this document, we produced it a

12 long time ago.

13        MR. SMITH:  No, no, you didn't.

14        MR. MONAFO:  It's got a Bates label

15 WCC --

16        MR. SMITH:  Yeah, right, I haven't

17 asked for documents yet.

18        MR. MONAFO:  Oh, that's right.

19 Okay, so you haven't because you didn't ask for

20 it, but this document was prepared in --

21        MR. SMITH:  You just said you

22 didn't know anything about it.

23        MR. MONAFO:  I know that Miss

24 Hampton just told me that she prepared this

25 document in Nick Foley's office.

Hampton, Christi - 7/30/2014

1    MR. SMITH:  I know, that's what

2    we're talking about.

3            MR. MONAFO:  Let me, let me -- let

4    me get a little more background on it.

5            MR. SMITH:  No.

6            MR. MONAFO:  I just want to ask

7    about the background.

8            MR. SMITH:  Ask Foley for the

9    background.

10           MR. MONAFO:  Okay.  All right.

11   Thank you, I will do that.  But here's the,

12   here's the problem as I see it.

13           MR. SMITH:  I'm going to move to

14   strike the pleadings is what I'm going to do.

15           MR. MONAFO:  Okay, that's fine.  Do

16   whatever you think you have to do, whatever

17   remedy you think is available to you.  That's

18   what you should do, but you should do that in the

19   normal course of, of the case.

20           MR. SMITH:  Not in this regard.

21           MR. MONAFO:  Okay.  So you can, you

22   have -- another remedy would be to instruct her

23   not to answer any of my questions about this

24   document.

25           MR. SMITH:  And I am.

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    MR. MONAFO:  Okay.  So let's just

2 make a record on that so we know what we're

3 dealing with.

4    Q.   (By Mr. Monafo)  Miss Hampton, was there

5 anyone else in the room with you and Mr. Foley?

6    MR. SMITH:  No, she's not answering

7 that question.

8    MR. MONAFO:  We're just making a

9 record.  Just let me make a record.

10    MR. SMITH:  All right, all right.

11 Don't answer it.

12    Q.   (By Mr. Monafo)  Okay.  And you're

13 taking your counsel's advice; correct?

14    A.   Yes.

15    Q.   All right.

16    MR. MONAFO:  And I'm not going to

17 do this for hours, don't -- I just want to make

18 just a sample so the judge can understand what

19 the dispute is.

20    Q.   (By Mr. Monafo)  Ma'am, did you, did you

21 think Nick Foley was a lawyer --

22    MR. SMITH:  Don't answer it.

23    Q.   (By Mr. Monafo)  -- for the company?

24    MR. SMITH:  Don't answer it.

25    MR. MONAFO:  Okay.  So you, just so

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1   I'm clear, you're not going to let her answer any

2   even background questions so we can possibly get

3   the foundation to make a determination whether

4   something was done wrong or not.

5           MR. SMITH:  I think we got that.

6           MR. MONAFO:  Okay.

7       Q.   (By Mr. Monafo)  Ma'am, do you see the

8   second page of Exhibit 96 is a Wright Career

9   College Student Exit Satisfaction Survey?

10          MR. SMITH:  Don't answer it.  I

11  thought it was a different document, but --

12          THE REPORTER:  I didn't hear you.

13          MR. SMITH:  I thought it was a

14  different document, but it's part of the same

15  Exhibit, so --

16          MR. MONAFO:  Well, I did make it

17  part of the same Exhibit, but I don't know if

18  it's the same document.  Well, that's a good

19  point.  It's actually a different date.

20          MR. SMITH:  What Bates stamp are

21  you talking about?

22          MR. MONAFO:  Okay.  Right now I'm

23  looking at the second page of Exhibit 96, it's

24  got a Bates stamp of WCC 553.

25      A.   Excuse me.

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1      Q.    (By Mr. Monafo)   Do you see that, Miss

2    Hampton?

3             MR. SMITH:   You said it has a

4    different date, I don't see --

5             MR. MONAFO:   Flip to, well --

6             MR. SMITH:   I see what you're

7    saying.

8             MR. MONAFO:   Flip to the --

9             MR. SMITH:   I don't see a date on

10   either of the two.

11            MR. MONAFO:   Okay, good point.

12     Q.    (By Mr. Monafo)   Do you remember, well,

13   I guess the first question I'd have to ask her

14   is, is that your handwriting where there are

15   numbers there on the second page of Exhibit 96?

16            MR. SMITH:   You can answer that

17   question only.

18     A.    Yes, it's my handwriting.

19     Q.    (By Mr. Monafo)   Do you recall, and just

20   so you're -- just to be fair here, if you look at

21   page 4 of this document, there is, that's another

22   document that looks like you signed maybe on

23   April 1st, 2014, and you testified earlier that

24   you had to go back twice, so I'm assuming you

25   were there on April 10th, 2014 and April 1st,

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    2014?

2           MR. SMITH:  You can answer that.

3    A.   Yes.

4    Q.  (By Mr. Monafo)  Do you know which one

5    of those two days or some other day that you

6    filled out this Student Exit Satisfaction Survey?

7           MR. SMITH:  You can answer that.

8    In other words, you have to separate these two

9    out.  Now I need an objection to this entire

10    Exhibit just because I don't think it's -- it's

11    one document, so --

12           MR. MONAFO:  Yeah, maybe, maybe we

13    can break it out, too, that's what I'm trying to

14    figure out.

15    Q.  (By Mr. Monafo)  So here's the question

16    on the table right now just so it's clear.  Do

17    you know when you filled out, when you put these

18    numbers that we see next to the statements on the

19    Student Exit Satisfaction Survey?

20           MR. SMITH:  Yeah.

21    A.   I don't know the exact date, but I

22    believe it was the second time.

23    Q.  (By Mr. Monafo)  So it might have been

24    on -- so you don't know the exact date, but it

25    could have been April 10th, 2014?

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    A.    Possibly, yes.

2    Q.    Is it possible that you filled it out

3    some other time, an earlier time?

4    A.    No.

5    Q.    And this was just in your file?

6    A.    No.

7    Q.    Do you remember filling out this form?

8    A.    Yes.

9    Q.    Were you interested in receiving

10   placement services from Wright Career College

11   around this time?

12          MR. SMITH:  You can answer that.

13   A.    When I had talked to Nick Foley, he

14   asked if I was looking for a position somewhere

15   else.  I said that I was open to options as far

16   as if he found positions that would be available

17   to me, but I was content where I was at at the

18   time.

19   Q.    (By Mr. Monafo)  Did you discuss the

20   lawsuit at all with Nick Foley?

21          MR. SMITH:  Don't answer that.

22   Actually you can answer that.  Go ahead.

23   A.    No.

24   Q.    (By Mr. Monafo)  We're five minutes to a

25   tape, so probably good time for a break.  Before

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1   we go, I guess we can keep all this on the tape.

2   Andy, my next thing I wanted to do was go through

3   the Exit Satisfaction Survey with her.  Are you

4   going to allow that or --

5           MR. SMITH:  No.  No, I'm not.

6           MR. MONAFO:  Okay.  And then what

7   I'll do is over the break is I'll think about

8   what, what my next move will be since if you're

9   not going to allow that, because that was, that

10  would take up, take a little time to do that.

11  And again, just for the record, you're -- and

12  we're not going to need the video for this.

13          MR. SMITH:  You might as well let

14  it run until it ends.

15          MR. MONAFO:  Yeah, let it run.

16          MR. SMITH:  We'll be done.  He

17  always fudges a couple of minutes.

18          MR. MONAFO:  The basis for you is

19  you think there was some impropriety that

20  occurred in the completion of this Exit

21  Satisfaction Survey, that's what I understand.

22          MR. SMITH:  Well, I believe the

23  impropriety occurred in bringing my client in a

24  lawsuit known to Wright Career College and its

25  administrators to be ongoing and have her answer

1    questions in writing directly related to the

2    issues in the case and not to put me on notice of

3    it or anyone else in my firm, and from what you

4    said, not to put you on notice of it either.

5              MR. MONAFO:  Okay.  Very good.  Why

6    don't we take a break.

7              MR. SMITH:  Before we go off, I

8    just want to, just to get, I don't know what your

9    decision is going to ultimately be, I want the

10   record to be clear on this section, that I am

11   still offering Miss Hampton today to answer

12   questions on other topics and other documents

13   other than related to that objection and that

14   instruction, since we're all here today, and in

15   light of the fact that the Court, if they rule in

16   my favor, we might not have to come back.  So you

17   can choose what to do.

18             MR. MONAFO:  Right.

19             MR. SMITH:  I just want to make

20   that clear, I'm not shutting it down on all

21   topics.

22             MR. MONAFO:  Okay, but wouldn't the

23   appropriate thing to do would be to allow -- the

24   most efficient thing to do would be to allow me

25   to inquire about the Exit Satisfaction Survey and

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    then you file your motion to strike it or

2    whatever, and then if you win the motion, then

3    all that goes away.

4          MR. SMITH: No, because part of the

5    harm that could be precluded in the relief I'll

6    seek is that it doesn't -- that it goes away, it

7    doesn't exist for all intents and purposes

8    because it was improperly gained, and so

9    therefore no questions or answers about it will

10    become part of the case.

11          MR. MONAFO: Okay.

12          MR. SMITH: And since we're not on

13    the eve of trial, we've got time, there's no harm

14    to that.

15          MR. MONAFO: And the only reason I

16    say that is because as I came in to take the

17    deposition, this was something that I was going

18    to spend some time on because it is --

19          MR. SMITH: Sure.

20          MR. MONAFO: -- it's got a lot of

21    statements about her experience with the school,

22    so --

23          MR. SMITH: Yeah, directly related

24    to the case.

25          MR. MONAFO: Sure. So by being

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    prohibited from getting into that, it kind of

2    throws a big wrench right into the middle of the

3    deposition, so I will take a look at the notes

4    and see what else we might be able to accomplish

5    today.

6            MR. SMITH:  Okay.

7            MR. MONAFO:  But clearly we're

8    going to have to fight this out and figure out

9    where we're going after that.

10           MR. SMITH:  For sure, okay.

11           MR. MONAFO:  Let's go off the

12   record.

13           THE VIDEOGRAPHER:  Off the record

14   at 3:15 p.m.

15               (Off the record.)

16           THE VIDEOGRAPHER:  Back on the

17   record at 3:26 p.m.

18     Q.    (By Mr. Monafo)  Miss Hampton, just

19   going back to Exhibit 95 for a moment, which was

20   your e-mail to Nick Foley, I just want to, in

21   light of the situation that arose before our last

22   break, I want to just make sure I understand

23   this.  You, you reached out to Nick Foley at the

24   campus because you were wanting some things, you

25   were wanting to find out about graduation and

1    other things, right?  You told us that?

2         A.    Yes.

3         Q.    And in fact, you, if I was reading your

4    body language correctly or if I was reading your

5    -- you seemed a little perturbed that no one had

6    contacted you?

7         A.    I was a little upset, yes.

8         Q.    And so you were reaching out to Nick

9    Foley, and by the way, at the back of Exhibit 96

10   is the full e-mail exchange between you and Mr.

11   Foley, so if at any time you want to look at

12   that, feel free to look at that.

13              MR. SMITH:  You say 95 was not the

14   full?

15              MR. MONAFO:  No, 95 is just the

16   initial e-mail that came from Miss Hampton and

17   then 96, the back pages, contain the full e-mail

18   exchange with Mr. Foley.

19        Q.    (By Mr. Monafo)  Would you agree with

20   that, Miss Hampton?

21        A.    Yes.

22        Q.    And before sending your e-mail to Mr.

23   Foley, did you check with your lawyers to see if

24   you should be communicating with the school?

25              MR. SMITH:  Don't answer that.  You

1  know that's improper.

2     Q.   (By Mr. Monafo)  Did you think it was

3  improper, Miss Hampton, in any way for you to be

4  talking to Nick Foley about things you wanted to

5  talk about about your experience at Wright Career

6  College?

7             MR. SMITH:  Form, foundation,

8  that's not an accurate summary of what she said

9  she wanted to talk to him about.

10    Q.   (By Mr. Monafo)  You can answer.

11    A.   I reached out to Nick Foley for one

12 reason, exiting papers and graduation.

13    Q.   And he responded and said what time can

14 you come in; right?

15    A.   Yes.

16    Q.   And you told him you would come in on

17 the evenings and you guys, looks like you

18 arranged for a date, right, pretty innocuous?

19    A.   Yes.

20    Q.   And it looks, it looks like on April 2nd

21 he e-mailed you and said he had one more for you

22 to come back and sign.  Do you see that?

23    A.   Yes.

24    Q.   And you went back up there and signed

25 it?

1    A.   Yes.

2    Q.   All right.  Okay.  And if we keep

3    working from the back of Exhibit 96, there's a --

4    it looks like there's a document called Release

5    of Information and Permission.  Do you know why

6    you were, why you signed the Release of

7    Information and Permission marked as WCC 559.

8            MR. SMITH:  I'm going to instruct

9    her not to answer that one for the same reasons

10   as earlier.

11   Q.   (By Mr. Monafo)  All right.  Ma'am, I

12   want to ask you a series of questions and I want

13   you to respond and tell me whether you agree or

14   disagree with my statement, okay?

15           The receptionists at Wright Career

16   College were courteous and helpful.

17           MR. SMITH:  No, no, you're --

18   you're trying to get around the same thing, okay?

19   You are now for the record reading word-for-word

20   from the improper document that we're fighting

21   about, all right?  So the well is pretty poisoned

22   at this point.  It's academically and

23   elementarily clear what you're doing and she's

24   not going to do that today.

25           MR. MONAFO:  Okay, so you're

Hampton, Christi - 7/30/2014

1          MR. SMITH:  Form.

2     A.    Yes.

3          MR. MONAFO:  Okay.  Subject to our

4     dispute over the survey document, which I think

5     goes into many areas, I have no further questions

6     at this point.

7          MR. SMITH:  I think we'll just be

8     done.

9          THE VIDEOGRAPHER:  Off the record

10    at 4:52 p.m.

11         (Deposition ended at 4:52 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1    IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
                    AT INDEPENDENCE
2

3

4    STEFANIE AYALA, et al.,          )
                                      )
5              Plaintiffs,            )
                                      )
6    v.                               ) No. 1316-CV27529
                                      )
7    MISSION GROUP KANSAS,            )
     INC., et al.,                    )
8                                     )
               Defendants.            )
9

10

11

12

13

14

15

16

17

18         VIDEOTAPED DEPOSITION OF JENNIFER

19    MICHELLE DECKER, a Plaintiff, taken on behalf of

20    the Defendants before Joan S. Nunnink, CCR No.

21    543, CSR, pursuant to Notice on June 13, 2014 at

22    the offices of Humphrey, Farrington & McClain,

23    P.C. 221 West Lexington Avenue, Suite 400,

24    Independence, Missouri 64050.

25                                          Exh. H

Decker, Jennifer Michelle - 6/13/2014

1     A.    Yes.

2     Q.    And is this the resume that you would

3  expect to submit to a potential employer if and

4  when you looked for a job in or apply for a job

5  in healthcare administration?

6     A.    Probably it's the only one.  I would

7  update a couple of things, my job.

8     Q.    Okay.  They are in here, yeah, that's

9  right.  Never mind.  You can keep that.

10          (Decker Deposition Exhibit 26 was

11  marked for identification.)

12     Q.    (By Mr. Loring)  Now I'm going to hand

13  you Decker Exhibit 26 and ask you to look at

14  that, please.  This is labeled Wright Career

15  College Student Exit Satisfaction Survey and

16  there's a series of questions or statements here

17  with numbers written in the column next to them.

18  And if you look through this on page one and page

19  two, are the numbers that are written in there

20  all in your handwriting?

21     A.    Yes.

22     Q.    And do you remember filling out this

23  document?

24     A.    Yes, May 16th.

25     Q.    All right.  So you did this on May 16th

Decker, Jennifer Michelle - 6/13/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

## Andy Smith

| | |
|---|---|
| **From:** | Andy Smith |
| **Sent:** | Thursday, March 06, 2014 12:04 PM |
| **To:** | martin.loring@huschblackwell.com |
| **Cc:** | Lauren E. McClain; Heather M. Tucker |
| **Subject:** | Wright Career College |

Dear Mr. Loring,

In the last 24 hours our clients in the matter in which your firm represents various defendants (and about which we have communicated) have been directly contacted and asked specifically about their claims and suits, and other entirely improper client contact.

I am going to assume that this was all without your knowledge and approval, but it must cease immediately. Please advise that you have communicated this to all persons in your employ and control, as well as your clients in this case.

Andy

Humphrey, Farrington & McClain, P.C.
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816)836-5050 telephone
(816)836-8966 fax



## HUMPHREY FARRINGTON McCLAIN
*Personal Injury* ||| *Trial Attorneys*

Think Green! Before printing this e-mail ask the question, is it necessary?



Exh. I



1

**Andy Smith**

| | |
|---|---|
| **From:** | Loring, Martin <Martin.Loring@huschblackwell.com> |
| **Sent:** | Thursday, March 06, 2014 1:37 PM |
| **To:** | Andy Smith |
| **Cc:** | Lauren E. McClain; Heather M. Tucker; Loring, Martin |
| **Subject:** | RE: Wright Career College |

Thank you for the further details.

I now understand that the College has a standard routine where they call former students, both graduates and non-graduates, to ask them questions about their experiences at WCC. It is basically a customer survey process. It was part of this process that caused your clients to be called. Their names were on a list of former students.

They should have been removed from that list and should not have been called. It was a mistake. The people who make these calls to former students have now been specifically instructed not to contact your four clients in this case.

One additional issue, which coincidentally also arose today. Mr. Jewsome has been trying to get some NASM Enrollment Key information that he would use to take some kind of certification exam. He contacted the school in January to get that. They were unable to identify it on the spot, and sent it to him by email soon thereafter, on January 28. For some reason he did not receive it. Today he left a voicemail for a school employee. They are going to call him back and give him the information, email it to him again, and send him a letter with a copy of the original email sent to him on January 28.

Let me know if you have any further questions.

Marty Loring


**Martin M. Loring**
**Partner**

**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Direct: 816.983.8142
Fax: 816.983.8080
Martin.Loring@huschblackwell.com
huschblackwell.com
View Bio | View VCard


**From:** Andy Smith [mailto:AKS@hfmlegal.com]
**Sent:** Thursday, March 06, 2014 12:16 PM
**To:** Loring, Martin
**Cc:** Lauren E. McClain; Heather M. Tucker
**Subject:** RE: Wright Career College

They said they were calling on behalf of WWC, and asking why our clients were unhappy, what occurred in their education, etc.



1

I understand this to mean it wasn't at your direction, which is of course what I presumed. I would think a reasonable start thereafter is determining if your clients have taken it upon themselves to serve as some inappropriate investigative arm in the defense, and advise them to stop, if so.

At this point, I am simply bringing it to your attention, and asking you to take reasonable steps to end it. That way no more will come of this.

Sincerely,

Andy

**From:** Loring, Martin [mailto:Martin.Loring@huschblackwell.com]
**Sent:** Thursday, March 06, 2014 12:08 PM
**To:** Andy Smith
**Cc:** Lauren E. McClain; Heather M. Tucker; Loring, Martin
**Subject:** RE: Wright Career College

Andy,

Contacted by whom???

I have no idea what you're referring to, and can hardly look into it without you telling me who has purportedly contacted your clients.

So please let me know who contacted who, when, and in what manner.

Martin M. Loring
Partner

HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Direct: 816.983.8142
Fax: 816.983.8080
Martin.Loring@huschblackwell.com
huschblackwell.com
View Bio | View VCard

*********************** Begin Notice from Husch Blackwell LLP ***********************
*This e-mail message and all attachments, if any, may contain confidential and privileged material and are intended only for the intended recipient. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail or by calling (816) 983-8000 and destroy the original and any copies of this e-mail.*

*********************** End Notice from Husch Blackwell LLP ***********************

**From:** Andy Smith [mailto:AKS@hfmlegal.com]
**Sent:** Thursday, March 06, 2014 12:04 PM
**To:** Loring, Martin
**Cc:** Lauren E. McClain; Heather M. Tucker
**Subject:** Wright Career College

Dear Mr. Loring,

In the last 24 hours our clients in the matter in which your firm represents various defendants (and about which we have communicated) have been directly contacted and asked specifically about their claims and suits, and other entirely improper client contact.

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

I am going to assume that this was all without your knowledge and approval, but it must cease immediately. Please advise that you have communicated this to all persons in your employ and control, as well as your clients in this case.

Andy

Humphrey, Farrington & McClain, P.C.
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816)836-5050 telephone
(816)836-8966 fax

**HUMPHREY FARRINGTON McCLAIN**
*Personal Injury* ||| *Trial Attorneys*

Think Green! Before printing this e-mail ask the question, is it necessary?

Any tax advice contained in or attached to this message or email string is not intended or written to be used, and cannot be used to (i) avoid penalties that may be imposed on any taxpayer under the Internal Revenue Code or (ii) promote, market, or recommend to another any transaction addressed herein.

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al.,     )
          )
     Plaintiffs,     )
          )
vs.          )     No. 1316-CV-27529
          )
MISSION GROUP KANSAS, INC., et al.     )
          )
          )
     Defendants.     )

### AFFIDAVIT OF JAMES F. MONAFO

I, James F. Monafo, now upon my oath, and under penalty of perjury, do declare as follows:

1. During the course of the deposition of Christi Hampton on Wednesday, July 30, Plaintiffs' counsel, Mr. Andy Smith, prohibited questioning regarding Exhibit 96, attached hereto.

2. I proposed that we continue the deposition, including questions regarding Exhibit 96, and Mr. Smith could subsequently file a motion to strike the exhibit and all related testimony. *See* Excerpt from Hampton Dep. 237:22-238:3, July 30, 2014, attached hereto.

3. Mr. Smith was not willing to accept that course of action, and instead continued to limit my questions regarding Exhibit 96. *See* Excerpt from Hampton Dep. July 30, 2014, 238:4-10.

4. Accordingly, Mr. Smith and I, after sincere discussions, were unable to come to a resolution regarding questioning based on Exhibit 96.

5. The deposition of Christi Hampton was adjourned shortly thereafter subject to the resolution of this dispute. *See* Excerpt from Hampton Dep. July 30, 2014, 307:3-8.

SLC-7297061-1

Exh. J



James F. Monafo

STATE OF MISSOURI      )

COUNTY OF _St. Louis_  )

     On this _6th_ day of August 2014, before me personally appeared James F. Monafo to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

     IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal in the County and State aforesaid, the day and year first above written

Notary Public

My Commission Expires:

SANDRA Y. BECKNER
Notary Public - Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires: May 20, 2015
Commission # 11050636

SLC-7297061-1

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM



**ACICS PLACEMENT VERIFICATION PROGRAM**
**STUDENT PLACEMENT ATTESTATION FORM**

By completing and signing this form or authorizing the school official to complete it on your behalf, you agree with the information provided. Please note that you may be contacted by the Accrediting Council for Independent Colleges and Schools (ACICS) in order to verify the information provided.

I, _CHRISTI HAMPTON_____, attest that the training I have received
      FULL NAME

in the _Medical Billing_____ program at _Wright / overland park_,
     PROGRAM                         INSTITUTION/CAMPUS

located in _Overland Park_____, _KS___ was beneficial in obtaining or maintaining
      CITY            STATE

the position of _data technician_____ at _BEHA_____
      POSITION TITLE             EMPLOYER NAME

1. **TYPE OF BENEFIT** – I was able to benefit from the skills and knowledge learned in my program by [INITIAL ONE]:

   1a. _____ Obtaining a <u>new</u> position that: [CHECK ONE]
      ☐ Utilizes such skills and knowledge
      ☐ Requires the credential provided through my program

   1b. _X_ Maintaining a <u>current</u> position that utilizes the skills and knowledge learned in my program that: [CHECK ONE]
      ☑ Fulfills requirements for professional development
      ☐ Fulfills requirements for a possible future promotion
      ☐ Fulfills my goal of improving job-related skills

2. **TYPE OF POSITION** – My new or current position is a paid job that <u>meets my employment goal</u> through: [INITIAL ONE]

   _✓_ Full-time, permanent work for a single employer (defined here as greater than or equal to 20 hours per week)

   _____ Part-time permanent work for a single employer (defined here as 7.5 to less than 20 hours per week)

   _____ Self-employment with multiple possible customers (e.g., as a small business owner)

   _____ Independent contract work with multiple possible customers (e.g., as a "free-lance" contractor)

   _____ Temporary agency work (on jobs related to the field of study)

   _____ Temporary work (on jobs lasting 1 month or more that could lead to repeated, sustained employment)

   _____ Practical training (as allowed by your student visa)

   _____ Other paid work (please describe): _____

_Christi Hampton_____     _____
GRADUATE/COMPLETER SIGNATURE      CAREER SERVICES/MANAGEMENT SIGNATURE

_4-10-14_____                _4-10-14_____
DATE                         DATE

CONFIDENTIAL                                  WCC0000552

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

C Harrison

**Wright Career College**
**Student Exit Satisfaction Survey**

Below is a series of questions designed to assess your thoughts with regard to the staff and administration of Wright Career College. Please read the questions below, marking the response that best corresponds to your individual situation. Mark all responses, using the following scale:

4=Strong Agreement      3=Above Average Agreement      2=Average Agreement      1= Do Not Agree

**Receptionist:**
1. _3_ The Receptionists are courteous and helpful.

2. _4_ When I call or enter the school, I am treated with respect and professionalism.

3. _3_ The Receptionist is available to assist with questions.

**ADMISSIONS:**
1. _2_ My admissions representative understood my unique, individual situation.

2. _3_ My admissions representative exhibited a high degree of professionalism.

3. _3_ My admissions representative accurately represented the opportunities at WCC.

4. _3_ My admissions representative answered my questions about enrollment.

**ACADEMICS:**

1. _2_ My educational experience at WCC has met my expectations.

2. _4_ My instructors cared about my academic success, and motivated me towards my visions and goals.

3. _2_ The quality of instruction I received in my courses helped prepare me for my career field.

4. _3_ My instructors were always available for assistance, and they represented a *"College That Cares"*.

5. _4_ The Academic Team was approachable, and willing to assist.

6. _4_ The Academic Team exhibits a high degree of professionalism

**FINANCIAL AID:**

1. _3_ I understood the information that was explained to me during my financial planning meeting.

2. _2_ The financial aid officer exhibited a high degree of professionalism.

3. _1_ The financial aid officer answered my questions and concerns in a timely manner.

4. _2_ The financial aid officer is knowledgeable about financial aid opportunities.

5. _2_ The financial aid officer had my best interests in mind.

6. _1_ The financial aid officer worked with me to find a financial plan to pay for school expenses.

7. _1_ My financial aid officer has clearly explained my loan repayment responsibilities.

8. _3_ The financial aid office was open during hours that are convenient.

CONFIDENTIAL                                                                    WCC0000553

**ADMINISTRATION:**

1. __4__ The Campus Director was approachable, and willing to assist..

2. __4__ The Faculty Director was approachable, and willing to assist.

3. __4__ The Campus Director exhibits a high degree of professionalism.

4. __4__ The Faculty Director exhibits a high degree of professionalism.

**CAREER SERVICES:**

1. __4__ The Career Placement Director would provide part-time job opportunities assistance if needed.

2. __3__ The Career Placement Director assisted me with career planning.

3. __3__ The Career Placement Director keeps me updated on current employment opportunities.

4. __3__ The Career Placement Director works hard to help me find employment in my career field.

5. __3__ The Career Placement Director exhibited a high degree of professionalism.

**FACILITY:**

1. __1__ The computer equipment provided by the college was in good working condition.

2. __3__ The Campus Library, Online Resources, and access to public libraries provided adequate resource materials to support my program.

3. __4__ The Library was open during hours that are convenient?

4. __4__ The classrooms, clinic space, and library provided adequate space for learning?

5. __4__ Parking lots are well lighted and I feel safe while on campus grounds.

**MISCELLANEOUS:**

1. __1__ I would recommend WCC to my family and friends.

2. __1__ I am satisfied that WCC demonstrated a commitment to my career goals and success.

**RATE THE FOLLOWING: (4= Outstanding, 3= Good, 2=Poor, 1=Do Not Know)**

1. __4__ Overall rating of my experience with Admissions.

2. __2__ Overall rating of my experience with Financial Aid

3. __3__ Overall rating of my experience with Academics.

4. __3__ Overall rating of my experience with Career Services.

5. __4__ Overall rating of my experience with Administration

6. __3__ Overall rating of the WCC building.

CONFIDENTIAL

WCC0000554

**Wright Career College**
**Overland Park, Kansas**
**Career Development Exit Agreement**

Name: CHRISTI HAMPTON

Address: 926 NE Swann Rd Apt B

City: Lees Summit          State: MO          Zip: 64086

Telephone: 816-912-8551     Major: Assoc.     Day/Night: night
                                      Medical Billing
Social Security Number: 495 90 4856

List three alternate telephone numbers where you can receive a message.

| Name | Telephone # | Relationship |
|------|-------------|--------------|
| 1) Lisa Hardman | 913 475 4114 | Friend |
| 2) Melissa Vanswearingen | 660 492 4238 | Friend |
| 3) Krishana Kihn | 816 286 3484 | Friend |

Are you prepared to begin your job search? (circle one)     No   (Yes)

If No, please explain briefly. _____

Do you plan on participating in the next graduation ceremony? (circle one) (Yes) No

If Yes, please complete the following for cap and gown ordering purposes:

Height: 5     Weight: 4     Gender: F

The cost for cap and gown is $30.00 in cash. By participating in graduation, I understand that my cap and gown will not be ordered unless paid for in advance. If your club will be paying for this cost, please request a Cap/Gown voucher from this office.

Christi Hampton                    4-1-14
Signature                          Date

CONFIDENTIAL

WCC0000555

Upon Graduation, you are eligible to receive placement assistance from the Career Development Department at Wright Career College. It is the school's goal to help you achieve a job utilizing the skills you acquired at Wright; therefore, the Career Development Department will primarily submit your resume to jobs that will allow you to utilize your newly acquired skills. It should be understood that Wright Career College does not guarantee employment, only assistance.

The following guidelines will aid you with better understanding your responsibilities while exercising placement assistance from Wright Career College.

1) The Career Development Department faxes, mails, and e-mails your resumes to various companies, individuals, and organizations. Therefore, it is your responsibility to make sure that the Career Development Department has an accurate and updated copy of your resume and references on file.

2) You must also supply a valid phone number, address, and an alternative phone number that you can be reached at, in order to receive and retain placement assistance. This is also necessary for contact concerning graduation ceremony information.

3) If at any time you would like to either terminate or initiate placement assistance, you must call the Director of Career Development and complete any necessary steps/instructions requested at that time.

4) You are required to contact the Director of Career Development once a week. This assures that both you and the Career Development Department are "on track" with your job search. You are also required to report any phone calls, interviews, or job offers that you receive. Remember that your chances of finding gainful employment increase with every lead, phone call, and interview that you follow up on. This involves continued and consistent contact with the Career Development Staff.

5) You are expected to follow up on all leads, phone calls, and interviews that you receive. If for any reason you are unable to keep a set appointment with a "future" employer or with the Career Development department, you must contact the person you are scheduled to meet with as well as the Career Development Department.

6) No special limitations (i.e. locations, hours or transportation issues) with the exception of medical concerns will be taken into account by the Career Development Department during the submission of your resume to any "future" employers. You should understand that the more limitations, you place on your job search, the longer you will stay unemployed or unhappy with your current employment.

7) The Career Development Department will terminate placement assistance, until privileges are asked to be reinstated by the graduate, when the following situations occur:
- Graduate is offered a long-term paying position.
- Telephone number on graduate's resume is no longer accurate.
- Graduate does not follow the rules outlined in number 1-6 of this document.
- Graduate deliberately disrespects any "future" employer or member of the Career Development Department.
- Graduate deliberately slanders Wright Career College or any of its employees.

8) The following is any explanation of how the Career Development Department assists you—the graduate—in finding employment:
- Every effort is made to represent you in the best possible way to any "future" employer.
- The Career Development Department will counsel you in every step of your job search.
- The Career Development Department will fax or e-mail your resume to any job lead submitted by you.
- Your resume is submitted to all job leads for which you meet the employment criteria. The Career Development Department acquires job leads from local newspapers, various job search websites, and employer networking.

I have read, understand, and agree with the *Acknowledgement of Responsibilities Concerning Placement Assistance from Wright Career College.*

Christi Hampton                                    4-1-14
Signature                                          Date

CONFIDENTIAL

WCC0000556

FAX (408) 68 1-7016

I, CHRISTI HAMPTON , hereby authorize a representative of Wright Career College to use my personal information to complete on-line applications for possible employment positions.

Signature: Christi Hampton

Print Name: CHRISTI Hampton

Date: 4-1-14

CONFIDENTIAL

WCC0000557


*CAREER COLLEGE*

(405) 681-2300
FAX (405) 681-7016

### Authorization to Release of Information

I authorize Wright Career College, its accrediting body, ACICS (Accrediting Council for Independent Colleges and Schools), and appropriate Federal and State agencies access to information pertaining to my employment, including but not limited to, Place of employment, Position held, Supervisor name and Employer contact phone number. This information is to be used to confirm employment. In addition, I authorize Wright Career College access to information from my employer regarding my skill level, achievements, job performance and other relevant information such as rate of pay, to comply with Federal, State and other appropriate reporting requirements through the use of periodic written or verbal surveys conducted by Wright or its designated agent.

A photocopy of this authorization should be accepted with the same authority as the original and this release will remain in effect for up to five years.

_Christi Hampton_        _4-1-14_
Signature                  Date

_HAMPTON_     _CHRISTI_     _L_
Print: Last Name       First Name       Middle Initial

CONFIDENTIAL                                 WCC0000558

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

## Release of Information and Permission

I, CHRISTI L Hampton, 495904856 hereby give
Name (first, middle, last)                SSN

Wright Career College et al, permission to use my name, photograph (actual or
likeness), school affiliation, employment information, and/or credentials for the use
of advertisement in newspapers, website (s), professional publications, or any other
forms of media. I understand that I will not be compensated in any way for the use
of my name, photograph, or credentials. I further understand that the advertisement
will become the property solely of Wright Career College et al, for the use of
promoting the school as an institution of higher learning.

I further give my employer permission to release my employment status, job title,
and description to Wright Career College et al, for the purposes of advertisement and
promotion of the school. I release my liability of my current or former employer for
sharing of this privileged information with Wright Career College et al. I understand
that my employer will not receive any compensation from Wright Career College for
the use of this information

CHRISTI L HAMPTON
Name (first, middle, last)

4-1-14
Date

### Employer Release:

I, CHRISTI HAMPTON, as a representative of GEHA, hereby
give Wright Career College et al, permission to use my company's name in association with
the above said employee's name for the use of advertisement in the newspapers, website
(s), professional publications and any other forms of media. I understand that the company
or I will not be compensated in any way for the use of the company name. I further
understand that the advertisement will become the sole property of Wright Career College
et al, for the use of promoting the school as an institution of higher learning.

CHRISTI L HAMPTON
Employer Representative's Name (first, middle, last)

4-1-14
Date

CONFIDENTIAL

WCC0000559

**Nicholas Foley**

| | |
|---|---|
| **From:** | Christi Hampton <christilou07@gmail.com> |
| **Sent:** | Thursday, April 03, 2014 8:25 AM |
| **To:** | Nicholas Foley |
| **Subject:** | Re: Exiting documentation |

Okay great thank you

On Apr 3, 2014 8:24 AM, "Nicholas Foley" <NFoley@wrightcc.edu> wrote:
I will see you Wednesday the 9th at 4

Sent from my iPhone

On Apr 3, 2014, at 8:23 AM, "Christi Hampton" <christilou07@gmail.com> wrote:

> Its okay. It happens. No worries
>
> On Apr 3, 2014 8:23 AM, "Nicholas Foley" <NFoley@wrightcc.edu> wrote:
> Thank you I am so sorry
>
> Sent from my iPhone
>
> On Apr 3, 2014, at 8:22 AM, "Christi Hampton" <christilou07@gmail.com> wrote:
>
>> I can probably come back up on Wednesday by 4
>>
>> On Apr 2, 2014 12:26 PM, "Nicholas Foley" <NFoley@wrightcc.edu> wrote:
>>
>> Christi,
>>
>>
>> I am sorry but I forgot I have one more form for you to sign. What time could you possibly come back up?
>>
>>
>> Nick Foley
>>
>> Director of Career Services
>>
>> Wright Career College
>>
>> 10700 Metcalf Ave
>>
>> Overland Park, Kansas 66210
>>
>> (O) 913-385-7700

CONFIDENTIAL

1

WCC0000560

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

(C) 918-565-7985

From: Christi Hampton [mailto:christilou07@gmail.com]
Sent: Tuesday, April 01, 2014 3:45 PM
To: Nicholas Foley
Subject: Re: Exiting documentation

I'm on my way

On Mar 27, 2014 9:55 AM, "Nicholas Foley" <NFoley@wrightcc.edu> wrote:

You are welcome have a good day

Sent from my iPhone

On Mar 27, 2014, at 9:55 AM, "Christi Hampton" <christilou07@gmail.com>
wrote:

> It will be closer to 4 and will do. I'll see you then. Thanks nick

> On Mar 27, 2014 9:52 AM, "Nicholas Foley"
> <NFoley@wrightcc.edu> wrote:

> We can do 330 or 4 what works and just bring your laptop with
> you

> Sent from my iPhone

> On Mar 27, 2014, at 9:48 AM, "Christi Hampton"
> <christilou07@gmail.com> wrote:

>> I can do Tuesday next week..what time works for
>> you. I usually work ten hour days so I'll need to log
>> on at home earlier lol

>> On Mar 27, 2014 9:44 AM, "Nicholas Foley"
>> <NFoley@wrightcc.edu> wrote:

>> Can you tonight or no? If not we can do Tuesday
>> next week

>> Sent from my iPhone

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

On Mar 27, 2014, at 9:43 AM, "Christi Hampton"
<christilou07@gmail.com> wrote:

> Any evening after 3 next week
> except thursday . have a doctors
> appointment
>
> On Mar 27, 2014 9:40 AM,
> "Nicholas Foley"
> <NFoley@wrightcc.edu> wrote:
>
> What time can you come in?
>
> Sent from my iPhone
>
>
> On Mar 27, 2014, at 9:39 AM,
> "Christi Hampton"
> <christilou07@gmail.com> wrote:
>
>> Hi Nick,
>>
>> I was a former student
>> at wright and finished
>> on February 20,14. I
>> need to find a time in
>> the evening that I can
>> come in and sign my
>> documents to be
>> completed with my
>> degree. I am under the
>> understanding that I
>> owe a balance which
>> is fine but unsure on
>> who or where I need
>> to pay that at so
>> maybe we can find
>> out about that as well.
>> I am emailing since I
>> work crazy hours and
>> unable to make
>> personal calls during
>> the day. If you can
>> send me a email back
>> or if need be feel free
>> to leave me a message
>> on my cell phone that
>> is fine to. 816-912-
>> 8551. Look forward
>> to chatting with you

CONFIDENTIAL

3

WCC0000562

and completing my
paperwork soon.
thanks again for your
time

Christi Hampton

P.s. I do still have my
laptop from the
school year. I was
unable to leave it with
anyone at the time of
completion so I do
still have that in my
possession.

--
*Christi Hampton*

CONFIDENTIAL

4

WCC0000563

1    questions in writing directly related to the

2    issues in the case and not to put me on notice of

3    it or anyone else in my firm, and from what you

4    said, not to put you on notice of it either.

5            MR. MONAFO:  Okay.  Very good.  Why

6    don't we take a break.

7            MR. SMITH:  Before we go off, I

8    just want to, just to get, I don't know what your

9    decision is going to ultimately be, I want the

10   record to be clear on this section, that I am

11   still offering Miss Hampton today to answer

12   questions on other topics and other documents

13   other than related to that objection and that

14   instruction, since we're all here today, and in

15   light of the fact that the Court, if they rule in

16   my favor, we might not have to come back.  So you

17   can choose what to do.

18           MR. MONAFO:  Right.

19           MR. SMITH:  I just want to make

20   that clear, I'm not shutting it down on all

21   topics.

22           MR. MONAFO:  Okay, but wouldn't the

23   appropriate thing to do would be to allow -- the

24   most efficient thing to do would be to allow me

25   to inquire about the Exit Satisfaction Survey and

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1     then you file your motion to strike it or

2     whatever, and then if you win the motion, then

3     all that goes away.

4            MR. SMITH: No, because part of the

5     harm that could be precluded in the relief I'll

6     seek is that it doesn't -- that it goes away, it

7     doesn't exist for all intents and purposes

8     because it was improperly gained, and so

9     therefore no questions or answers about it will

10    become part of the case.

11           MR. MONAFO: Okay.

12           MR. SMITH: And since we're not on

13    the eve of trial, we've got time, there's no harm

14    to that.

15           MR. MONAFO: And the only reason I

16    say that is because as I came in to take the

17    deposition, this was something that I was going

18    to spend some time on because it is --

19           MR. SMITH: Sure.

20           MR. MONAFO: -- it's got a lot of

21    statements about her experience with the school,

22    so --

23           MR. SMITH: Yeah, directly related

24    to the case.

25           MR. MONAFO: Sure. So by being

Hampton, Christi - 7/30/2014

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

1             MR. SMITH:  Form.

2        A.    Yes.

3             MR. MONAFO:  Okay.  Subject to our

4    dispute over the survey document, which I think

5    goes into many areas, I have no further questions

6    at this point.

7             MR. SMITH:  I think we'll just be

8    done.

9             THE VIDEOGRAPHER:  Off the record

10   at 4:52 p.m.

11        (Deposition ended at 4:52 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY:   MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:   martin.loring@huschblackwell.com

SERVICE PARTY:   KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:   kbm@hfmlegal.com

SERVICE PARTY:   ANDREW K SMITH, Attorney for Plaintiff
SERVICE EMAIL:   aks@hfmlegal.com

SERVICE PARTY:   STACIA GRESSEL BODEN, Attorney for Defendant
SERVICE EMAIL:   sboden@wrightcc.edu

Electronically Filed - Jackson - Independence - August 07, 2014 - 03:22 PM