# Exhibit A-2

# State Court File
# (Part 2 of 2)

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| STEFANIE AYALA, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' UNOPPOSED MOTION FOR EXTENSION OF TIME
TO FILE OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DEPOSITION
TESTIMONY OF PLAINTIFF CHRISTI HAMPTON**

COME NOW Plaintiffs, by and through their counsel of record, and for their Unopposed Motion for Extension of Time to File Opposition to Defendants' Motion to Compel Deposition Testimony of Plaintiff Christi Hampton states as follows:

1.      Defendants filed their Motion to Compel Deposition Testimony of Plaintiff Christi Hampton on August 7, 2014.

2.      Plaintiffs calculated the response deadline for ten (10) days after filing which falls on Sunday, August 17, 2014 making the deadline to file opposition Monday, August 18, 2014.

3.      Andrew K. Smith, counsel for Plaintiffs, sent email correspondence to James Monafo and Martin Loring, counsel for Defendants, on Wednesday, August 13, 2014 requesting a fourteen (14) day extension of time to file their opposition.

4.      Mr. Monafo replied the same day stating that "You have our consent". (See email attached as Exhibit "A")

5.      This motion is not brought to delay these proceedings but only to ensure that Plaintiffs' counsel has adequate time in which to properly prepare their opposition.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order granting Plaintiffs additional time until Tuesday, September 2, 2014, to file their Opposition to Defendants' Motion to Compel Deposition Testimony of Plaintiff Christi Hampton.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/    Andrew K. Smith

| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:    (816) 836-5050
Facsimile:    (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

2

## CERTIFICATE OF SERVICE

I hereby certify on this 15th day of August, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,
BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,
 JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

*/s/      Andrew K. Smith*
**ATTORNEY FOR PLAINTIFFS**

3

# Heather M. Tucker

| | |
|---|---|
| **From:** | Andy Smith |
| **Sent:** | Wednesday, August 13, 2014 8:12 PM |
| **To:** | Monafo, Jim |
| **Cc:** | Loring, Martin; Heather M. Tucker; Nichelle L. Closson |
| **Subject:** | Re: WCC - Hampton |

Thanks.

Sent from my BlackBerry 10 smartphone.

**From:** Monafo, Jim
**Sent:** Wednesday, August 13, 2014 6:25 PM
**To:** Andy Smith
**Cc:** Loring, Martin; Heather M. Tucker; Nichelle L. Closson
**Subject:** Re: WCC - Hampton

That's fine, Andy. You have our consent.

Sent from my iPhone

On Aug 13, 2014, at 5:14 PM, "Andy Smith" <AKS@hfmlegal.com> wrote:

> Marty and Jim,
>
> Will you agree to fourteen days additional time to respond to your Motion to compel? Local rule is default of 10 days, which by my calculation would be this Friday. I was out last week. I will ask the court for additional time, but of course would not do so until I sought your agreement.
>
> Please advise by the end of the day tomorrow, as that will be when I need to file my motion for additional time.
>
> Sincerely,
>
> Andrew K. Smith
> Humphrey, Farrington & McClain, P.C.
> 221 W. Lexington, Suite 400
> Independence, Missouri 64050
> (816)836-5050 telephone
> (816)836-8966 fax
> <image001.png>

This electronic mail message contains CONFIDENTIAL information which is (a) ATTORNEY - CLIENT PRIVILEGED COMMUNICATION, WORK PRODUCT, PROPRIETARY IN NATURE, OR OTHERWISE PROTECTED BY LAW FROM DISCLOSURE, and (b) intended only for the use of the Addressee(s) named herein. If you are not an Addressee, or the person responsible for delivering this to an Addressee, you are hereby notified that reading, copying, or distributing this message is prohibited. If you have received this electronic mail message in error, please reply to the sender and take the steps necessary to delete the message completely from your computer system.

IRS CIRCULAR 230 DISCLOSURE: Unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments, is not intended or written by Humphrey, Farrington & McClain, P.C. to be used, and any such tax advice cannot be used, for the purpose of avoiding penalties that may be imposed by the Internal Revenue Service.

Think Green! Before printing this e-mail ask the question, is it necessary?

**PLAINTIFF'S EXHIBIT A**

1

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, ET AL,                )
                                      )
                    Plaintiffs,       )        Case No. 1316-CV27529
vs.                                   )
                                      )
MISSION GROUP KANSAS, INC., ET AL,)            Division 2
                                      )
                    Defendants.       )

## ORDER

Comes now the Court on Plaintiffs' Unopposed Motion for Extension of Time to File Opposition to Defendants' Motion to Compel Deposition Testimony of Plaintiff Christi Hampton filed herein on August 15, 2014. After reviewing the Motion, seeing no objection or response, and being fully advised the law and premises of the motion the Court finds that Plaintiffs' Unopposed Motion for Extension of Time to File Opposition to Defendants' Motion to Compel Deposition Testimony of Plaintiff Christi Hampton should be **GRANTED**.

IT IS THEREFORE **ORDERED** that Plaintiffs' Unopposed Motion for Extension of Time to File Opposition to Defendants' Motion to Compel Deposition Testimony of Plaintiff Christi Hampton is hereby **GRANTED**.

IT IS FURTHER **ORDERED** that Plaintiffs have up to and including September 2, 2014, to file their opposition to Defendants' Motion to Compel Deposition Testimony of Plaintiff Christi Hampton.

IT IS SO **ORDERED**:

August 18, 2014

_____
Judge Kenneth R. Garrett, III

Copies sent to all interested parties on this date

Kurt McGuff, Law Clerk to the Honorable Kenneth R. Garrett, III, Division 2

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | |
|---|---|
| STEFANIE AYALA, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 1316-CV27529 |
| | ) |
| MISSION GROUP KANSAS, INC., et al. | ) |
| | ) |
| Defendants. | ) |

**NOTICE TO TAKE VIDEOTAPED DEPOSITION OF
STACIA G. BODEN, ESQ.**

TO:      ALL COUNSEL OF RECORD

Please take notice that the videotaped deposition of Stacia G. Boden, Esq. will be taken on October 14, 2014, at HUMPHREY, FARRINGTON & McCLAIN, P.C., 221 West Lexington, Ste. 400, Independence, MO 64050, unless another time and place is expressly agreed to by all the parties. The deposition, which will be stenographically recorded and videotaped, will begin at 9:30 a.m. and will continue from day to day until completed at the same time and place. Court reporting and video recording will be provided by Midwest Litigation Services, (800) 280-3376.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith

| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:    (816) 836-5050
Facsimile:    (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

2

## CERTIFICATE OF SERVICE

I hereby certify on this 2nd day of September, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
**JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

*/s/ Andrew K. Smith*
**ATTORNEY FOR PLAINTIFFS**

3

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## ☐ AT KANSAS CITY    ☐ INDEPENDENCE

_____

VS

No. _____
☐ Circuit Judge Case
☐ Associate Circuit Judge Case

_____

# SUBPOENA FOR ATTENDANCE AT A DEPOSITION
## ☐ SUBPOENA          ☐ SUBPOENA DUCES TECUM

STATE OF MISSOURI TO:

YOU are commanded to appear at the following location _____, Missouri, on _____,
at ___ ___ .m., to testify at the taking of a deposition in the above case concerning
_____

_____ has requested your attendance in this case.  You may contact this party, or his/her
attorney, at the telephone number stated below for further information concerning your attendance.  You are further
commanded to bring with you
_____
_____
_____

Any public or private corporation, partnership, association, or governmental agency not a party to this suit that is
subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other
persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the
person will testify.  Missouri Supreme Court Rule 57.09 (b) (4)

COURT ADMINISTRATOR'S OFFICE
**DEPARTMENT OF CIVIL RECORDS**
CIRCUIT COURT OF JACKSON COUNTY, MISSOURI

7-10-14

Date

BY  /s/  Carrie Williams
_____
Deputy

_SUPREME COURT RULE 57.09 © PROVIDES_:  **"Proof of service of a notice to take a deposition as provided in
Rules 57.03 and 57.04 is sufficient to authorize the issuance of a subpoena for taking a deposition."**  Subpoena will
not be issued until proof is provided and attached by Deputy.

NAMES, ADDRESSES, TELEPHONE NUMBERS OF ATTORNEYS FOR RESPECTIVE PARTIES MUST BE PROVIDED

Phone:_____
Address:_____
_____
Attorney for: _____

Phone:_____
Address:_____
_____
Attorney for:_____

(if Multiple parties are involved, provide attachment(s) with required information)

CIRCT 2000A 09/00

## RETURN

I CERTIFY THAT I HAVE EXECUTED THIS WRIT IN _____ COUNTY,

MISSOURI, ON _____.

☐     BY DELIVERING A COPY OF THE WRIT PERSONALLY TO THE WITHIN NAMED

      _____

      PLACE OF SERVICE:_____

      TIME OF SERVICE:_____

☐     BY MAKING A DILIGENT SEARCH FOR AND FAILING TO FIND THE WITHIN-NAMED

      PERSON IN _____ COUNTY, MISSOURI.

FEE PAID $_____       _____

                                                  SIGNATURE


## MUST BE SWORN BEFORE A NOTARY PUBLIC IF
## SUBPOENA IS NOT SERVED BY AN AUTHORIZED OFFICER


STATE OF MISSOURI)
COUNTY OF JACKSON)


SUBSCRIBED AND SWORN TO BEFORE ME ON _____.




     (SEAL)                       _____

                                           NOTARY PUBLIC

MY COMMISSION EXPIRES: _____

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

STEFANIE AYALA, et al.                )
                                      )
          Plaintiffs,                 )
                                      )
     vs.                              )     Case No. 1316-CV27529
                                      )
MISSION GROUP KANSAS, INC., et al.    )     ORAL ARGUMENT REQUESTED
                                      )
          Defendants.                 )

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL AND MOTION FOR ORDER OF PROTECTION UNDER RULE 56.01(c) and RULE 57.03(e)

**COME NOW PLAINTIFFS**, by and through their counsel of record, and oppose the defendants motion to compel additional testimony of Plaintiff Christi Hampton. Additionally, Plaintiffs respectfully move this Court for an Order granting Plaintiff protection pursuant to Rules 56.01(c), Rule 57.03(e) and Rule 61.01(g) of the Missouri Rules of Civil Procedure, and this Court's inherent and broad power to control discovery issues before it. Specifically, Plaintiffs seek an order (1) prohibiting Defendants, or any of their agents, employees, servants and officers, from contacting any Plaintiffs regarding the facts underlying the present lawsuit; (2) from using any documents or statements obtained through direct contact with Plaintiff Christi Hampton after this suit was filed (October 31, 2013), whether such attempted use is in discovery or trial, and (3) for the costs associated with this motion. In support, Plaintiffs offer the following Memorandum in Support, as well as the exhibits attached in support thereof.

WHEREFORE, Plaintiffs pray for an Order of Protection, prohibiting Defendants and their agents from directly contacting, or causing to be contacted, the Plaintiffs in this matter, for an order finding that no inquiry of Ms. Hampton shall be made in deposition or trial, referring to

or relying upon the improper written questions presented to her on or about April 1, 2014, outside of her counsel's presence, and for an order prohibiting the use of any such documents in any manner in discovery or trial of this matter, for the costs associated with bringing this motion, and for such other relief as this Court deems just and proper.

Oral argument is requested.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
Kenneth B. McClain          #32430
Andrew K. Smith             #60485
Lauren E. McClain           #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:      (816) 836-5050
Facsimile:      (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
ATTORNEYS FOR PLAINTIFFS

2

## <u>MEMORANDUM IN SUPPORT</u>

**I.     INTRODUCTION**

*"Discovery should be conducted on a 'level playing field,' without affording either side a tactical advantage. 'The discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants.'"[1]*

Recently, light has been shed on the deceptive trade practices of many secondary education institutions, for so long kept secret.[2] This case involves allegations of such fraud, misrepresentations and deceptive trade practices against Defendant Mission Group Kansas, and individuals in positions of power therein collectively referred to herein as Wright Career College, or WCC. The instant motions bring to further light disturbingly deceptive and ongoing practices, not in the day-to-day business of WCC, but rather improper discovery attempts made **during** this lawsuit, and while WCC is under this Court's authority. Specifically, in March, 2014, Plaintiffs' counsel learned that Plaintiffs in this case were being contacted by WCC representatives, and attempts to interrogate Plaintiffs regarding specific issues with WCC were being made. When Plaintiff's counsel demanded that such improper discovery tactics cease, WCC's attorneys promised that they would. Only during the deposition of Plaintiff Christi Hampton, some three months or more after those promises were made, did counsel learn that in fact these "surveys" **did not** end, and in fact were perpetuated against Ms. Hampton in a specific and manipulative way. Plaintiff's counsel objected to any inquiry based thereon.

---

[1] *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 606 (Mo. 2002) quoting *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (Mo. banc 1999)(internal citations omitted).

[2] In June 14, 2013, a jury in Jackson County Circuit Court at Independence found such practices of one institution so offensive as to award not only compensatory, but also punitive damages. See *Kerr v. Vatterott Educational Centers, Inc.,* WD76903, (August 26, 2014 Opinion Affirming and Remanding)(Attached as Exhibit "1.") As recently as August 26, 2014, the Western District affirmed the judgment entered by the trial court (The Honorable Jack Grate presiding). Notably, the same attorneys defended Vatterott in that matter and WCC here.

3

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

## II.    STATEMENT OF SUPPORTING FACTS

### A.    <u>Defendants Are Made Aware Of Inappropriate Conduct, and Promise That It Will End</u>

1.    Long before any deposition was taken in this case, on March 6, 2014, Plaintiffs' counsel learned for the first time that defendants were attempting to informally and improperly conduct informal depositions of named Plaintiffs outside of counsel's presence.    (Exh. 7, Affidavit of Attorney Smith; Exh. 1, March 6, 2014 E-mail correspondence.)

2.    Plaintiffs' counsel immediately and specifically addressed the defendants' attempts to improperly create evidence in case in which they had been served and had filed answers, outside of counsel's presence:

**March 6, 2014, 12:04 PM**

Dear Mr. Loring,
In the last 24 hours our clients in the matter in which your firm represents various defendants (and about which we have communicated) **have been directly contacted and asked specifically about their claims and suits, and other entirely improper client contact.**

I am going to assume that this was all without your knowledge and approval, **but it must cease immediately.**  Please advise that you have communicated this to all persons in your employ and control, as well as your clients in this case.
Andy

**March 6, 2014, 12:08 PM**

Andy,
Contacted by whom???
I have no idea what you're referring to, and can hardly look into it without you telling me who has purportedly contacted your clients.
So please let me know who contacted who, when, and in what manner.
Martin M. Loring
Partner

**March 6, 2014, 12:16 PM**

4

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

They said they were calling on behalf of WWC, and asking why our clients were unhappy, what occurred in their education, etc.

I understand this to mean it wasn't at your direction, which is of course what I presumed. **I would think a reasonable start thereafter is determining if your clients have taken it upon themselves to serve as some inappropriate investigative arm in the defense, and advise them to stop, if so.**

At this point, I am simply bringing it to your attention, and asking you to take reasonable steps to end it. That way no more will come of this.

Sincerely,

Andy

**March 6, 2014, 1:37 PM**

Thank you for the further details.

I now understand that the College has a standard routine where they call former students, both graduates and non-graduates, to ask them questions about their experiences at WCC. **It is basically a customer <u>survey</u> process.** It was part of this process that caused your clients to be called. Their names were on a list of former students.

**They should have been removed from that list and should not have been called.** It was a mistake. **The people who make these calls to former students have now been specifically instructed not to contact your four clients in this case.**

*     *     *

Let me know if you have any further questions.

Marty Loring

(Exh. 1, March 6, 2014 e-mail correspondence between counsel.) (Exh. 7, Affidavit of

Attorney Smith).

**B.     <u>Defendants Violate Their Promise, Conduct New Surveys of Plaintiff, and Attempt to Use Them in Plaintiff Christi Hampton's Deposition</u>**

5

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

3.      Plaintiff Christi Hampton is a named Plaintiff in the operative Petition in this case. (Exh. 2, Petition.)

5.      Defendant Mission Group Kansas, Inc., is represented by multiple attorneys of record in this case, including its own "general counsel", Attorney Stacia G. Boden has repeatedly appeared as counsel of record in this matter for *all* named defendants.[3]

6.      Ms. Boden has appeared at multiple depositions, and has been identified thusly:

```
10  MR. MONAFO:  This is Jim Monafo on
11  behalf of the defendant, Wright Career College.
12  Also I'm joined by Lindsey McClure-Hartman,
13  Hartman, sorry, and Stacy Boden, and also she's
14  the general counsel for the company.  And John
15  Mucci is here also, President of the School.
```

(Exh. 9, Hampton Dep., at 5)(Emphasis added)

7.      Despite Mr. Lorings' representations, and promise that surveys of identified Plaintiffs would cease, Defendants in fact **did not** cease such practices, and in fact conducted this informal deposition of Ms. Hampton, more than a month **after** counsel promised it would end.  (Exh. 3, "Student Exit Survey";  Exh. 9, portions of on-the-record attorney exchange and Plaintiff Hampton testimony).

8.      As soon as it was presented to the Plaintiff as an exhibit, being seen by Plaintiffs' counsel for the first time, Plaintiffs' counsel explained to the attorney conducting the deposition for defendants it violated the parties' agreement, and tried to find out how it happened:

MR. SMITH:  This is entirely
inappropriate, I think sanctionable. It's a
deposition of a client your client knew was a
plaintiff against them in a lawsuit.  I was not
present.  I was not told about it.  I was not
notified.  **I have warned you in an e-mail before
that your client was doing this, and Mr. -- you**

---

[3] See, for example, the signature block for pleadings herein, including the currently pending Motion to Compel.

6

**or Mr. Loring, one of you, told me you would stop this, that you got ahold of them immediately and it was stopped.** So if you're going use this in a deposition, I am going to ask for all available remedy, including sanctions against your client and your firm if I knew, if you -- if I learn that you knew about it. It's entirely inappropriate. I have never seen such an egregious attempt to depose somebody outside of counsel's presence on the very topic that you know are in the lawsuit.

MR. MONAFO: Okay. Finished?

MR. SMITH: If you don't care about that, go ahead.

MR. MONAFO: I don't, I don't, because I had nothing to do with it, so but –

MR. SMITH: You did know about it, though. You did know about it. Your firm knew that this was happening because I have it in an e-mail and it was before this –

MS. BODEN: No, Andy, that e-mail that –

MR. SMITH: You can't talk. You can't talk.

MS. BODEN: I actually can, I'm an attorney of record and I'm at this deposition and I can talk.

MR. SMITH: Only one attorney can talk on behalf of the parties. If you don't know that, then you need to learn it. You have to sit there.

MR. MONAFO: Oh, Andy.

MS. BODEN: State your objection to my statement, Andy, because –

MR. SMITH: No, I will end the

7

deposition.

MS. BODEN: That e-mail –

MR. SMITH: I will end the
deposition.

MS. BODEN: That e-mail had
absolutely nothing to do with –

MR. SMITH: So you in fact knew
this was happening as counsel of record?

MS. BODEN: No, I did not know that
was happening.

MR. SMITH: You as general counsel
for this school did not know that this form was a
practice that went on? Put that on the record.

MS. BODEN: That's not your
question.

MR. SMITH: I'm asking you that
question.

MS. BODEN: I'm not being deposed.

MR. MONAFO: Right. We're not here
to answer questions.

(Exh. 9, 225:18 – 228:4)

  9.  After this exchange, and limited further inquiry, the deposition was concluded,

and subsequently Defendants' Motion to Compel filed.

  **C.**  **Background and Allegations at Issue**

  10.  This case was first filed on or near October 31, 2013, identifying as the four

Plaintiffs, Stefanie Ayala, Jennifer Decker, Christi Hampton, and Steven Jewsome. (Exh. 2,

Petition.)

8

11.     Hampton was nearly finished with her program at WCC when her suit was filed, and elected to finish the program and graduate, since her financial obligation for the time already spent there was so significant. (Exh. 6, Hampton Affidavit, ¶3).

12.     In the operative petition, the plaintiffs allege the following deceptive practices, among others:

> 11.     Having identified the opportunity to tap into guaranteed payment through federal loan programs, while shielding itself from any risk resulting from its students' student loan defaults, WCC purposely entices prospective students to enroll and apply for student loans they cannot pay back through a systematic, deceptive marketing scheme. It conducts this scheme in large part through its publications and enrollment "advisors."
>
> **12.     Beginning in or around 2011, and before, and continuing on various dates thereafter, Defendants intentionally engaged in a pattern and practice of deceptive conduct and of making certain fraudulent misrepresentations and omissions to Plaintiffs and other prospective students.**
>
> 13.     WCC deceives students about federal financial aid, the true cost of attending WCC, the value of WCC's accreditations, the quality and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.
>
> 14.     WCC does this by improperly hiding information from visitors to its websites and **by misleading students through affirmative misrepresentations and material omissions.** WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value, to re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.
>
> 15.     Collectively, these tactics drive WCC's enrollment practices and work to the company's great financial benefit, at the expense of its students, the federal government, and the American taxpayers.
>
> *          *          *
>
> 18.     In or around 2011 WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

9

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

a)    that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;

b)    that any educational credits earned at WCC would transfer and would apply towards a degree program at another school;

c)    that WCC's instructors all had degrees and were experienced in their respective fields;

d)    that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;

e)    that enrolling in its evening classes offered all of the same benefits as the day classes;

f)    that the cost of the program would be less than WCC knew would be the actual cost of the program;

g)    that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

h)    that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

i)    that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j)    that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k)    in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

19.    As a result of these representations, Plaintiffs enrolled and were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

20.    After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported

10

benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a)  Educational credits earned at WCC were not transferable towards programs at other schools;

b)  The program in which Plaintiffs enrolled lasted longer and was more expensive than Defendants represented;

c)  Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

d)  There was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances class was held with no instructor at all;

e)  Defendants used a class scheduling "protocol" referred to as "pods" wherein new students are placed in courses that are already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier, necessary course work and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f)  The evening classes did not offer all of the same benefits as the day classes. There was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed. Moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

g)  The student loans and grants did not include the total cost of the students program resulting in debt that Plaintiff were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

h)  Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants didn't provide Plaintiff with books. Also, "electronic" textbooks that were promised were either not

11

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i)     In other ways demonstrated by the admitted evidence at any trial in this matter.

21.    Due to the misrepresentations and other conduct as set forth herein of WCC, Plaintiffs will not be and have not been properly trained in the subject areas in which they enrolled, will not receive the salaries they were promised upon graduation, and will fail to attain accreditation in their fields due to a failure of WCC to properly provide an education which will allow accreditation, and the "education" received from WCC, has no value to Plaintiffs, and instead has resulted in crippling debt.

22.    Plaintiffs borrowed thousands, and even tens of thousands of dollars, to attend WCC only to discover later that their degrees and "education" are worthless and their credits won't transfer, even to the point where at least one Plaintiff's current employer refused to accept her WCC credits as evidence of further qualification of employment. Now Plaintiffs are thousands of dollars in debt, for no value in return.

(Petition)

13.    Discovery in this matter is ongoing, and the parties have exchanged interrogatories and requests for production.

## III.    ARGUMENT

When a sophisticated party, with active general counsel, attempts an "end-run" around the rules of discovery, it is the Court who stands between them and the improper fruits of such tactics. When as here, the party does so even after being advised to cease the conduct by its own attorneys (who in turn advise opposing counsel it will end), nothing short of a Court order remedies the harm done and precludes further misconduct. Here, WCC has thumbed its nose at the clear rules governing how discovery must be conducted, and it has done so with purposeful knowledge of the impropriety. Plaintiffs ask this Court's assistance in prohibiting further such conduct and forbidding the use of any results of such conduct already perpetrated.

### A.    Parties Must Conduct Discovery Under Applicable Rules

12

Defendants' motion evades the fundamental flaw in their motion, and indeed their entire approach to discovery in this case: Discovery must be conducted by and through the manner and procedures put in place by the laws and rules of Missouri Courts. Whether it be Rule 57.01's clear and detailed limits on propounding written questions to opposing parties, or Rule 57.03's control of oral examinations, a party to active litigation must conduct fact-finding in appropriate and permitted methods.

If defendants wanted to **depose** Plaintiffs a question in **writing**, the rules provide ample opportunity to do so – albeit they require counsel's involvement. Obviously, a written interrogatory, or set of them, could be propounded. This is a method already utilized by defendants in this case.

Moreover, even if the defendants wanted to utilize the method of "deposing" a Plaintiff here, they could have done so in writing:

**57.04. Depositions Upon Written Questions**

(a) Serving Questions; Notice. After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon written questions. The attendance of witnesses may be compelled by the use of subpoena as provided in Rule 57.09. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes.

**A party desiring to take a deposition upon written questions shall serve them upon every party** with a notice stating: (1) the name and address of the person who is to answer them, if known, and if the name is not known, a general description sufficient to identify the person or the particular class or group to which the person belongs and (2) the name or descriptive title and address of the officer before whom the deposition is to be taken. A deposition upon written questions may be taken of a public or private corporation or a partnership or association or governmental agency in accordance with the provisions of Rule 57.03(b)(4).

Lastly of course, should defendants desired to simply place a Plaintiff, including Ms. Hampton under oath, and ask her all such questions orally, in counsel's presence.

13

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

**57.03. Depositions Upon Oral Examination**

(a) When Depositions May Be Taken. After commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination. Leave of court, granted with or without notice, must be obtained only if the plaintiff seeks to take a deposition prior to the expiration of 30 days after service of the summons and petition upon any defendant, except that leave is not required if a defendant has served a notice of taking deposition or otherwise sought discovery. The attendance of witnesses may be compelled by subpoena as provided in Rule 57.09. The attendance of a party is compelled by notice as provided in subdivision (b) of this Rule. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court describes.

As Plaintiffs, and now this Court have learned, WCC does not wish to conduct discovery under the governing rules. The attempts to conduct a deposition of Ms. Hampton fall outside each and every one of the rules cited above, and any results therefrom must be prohibited from use, and further such tactics prohibited.

**B.      Discovery Rules Provide Plaintiffs Remedy**

Fortunately, the Rules of Discovery not only set forth the appropriate method in which to depose parties, they provide remedy for attempts to avoid such controls.

Rule 56.01(c) unequivocally provides this Court with authority to preclude and prohibit discovery attempts such as WCC attempted:

**(c) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) **that discovery not be had**;

Mo. R. Civ. Pro. 56.01(c). Moreover, the rules governing depositions specifically permit a party to seek the very remedy Plaintiff Christi Hampton now asks this Court to provide.

**(e) Motion to Terminate or Limit Examination**. At any time during the taking of the deposition, on motion of a party or of the deponent and upon a showing that the examination is being conducted in bad faith or in such manner as

14

unreasonably to annoy, embarrass, or oppress the deponent or party, **the court in which the action is pending or a court having general jurisdiction in the place where the deposition is being taken may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition as provided in Rule 56.01(c).** If the order made terminates the examination, it shall be resumed thereafter only upon the order of the court in which the action is pending. **Upon demand of the objecting party or deponent, the taking of the deposition shall be suspended for the time necessary to make a motion for an order.** The provisions of Rule 61.01(g) apply to the award of expenses incurred in relation to the motion.

Mo. R. Civ. Pro. 57.03(e).[4] (Emphasis added.)

Not only did WCC violate the rules of discovery in obtaining statements of a party after suit was filed, and outside of counsel, they insisted on using such improperly gathered documents in deposition, over the objection and suspension by Plaintiffs' counsel. In such circumstances, when a party moves to compel further deposition testimony and the Court denies such motion, the Court **shall** award costs and fees, unless substantial justification is proven.

    **(g)  Failure to Answer Questions on Deposition.**

    \*      \*      \*

If the motion is denied, the court, after opportunity for hearing, **shall require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees,** unless the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

Mo. R. Civ. Pro. 61.01(g)(Emphasis added.).

---

[4] "If the need for a protective order arises during the taking of a deposition, a party, **or the person being deposed**, may seek a protective order from 'the court in which the action is pending or a court having general jurisdiction in the place where the deposition is being taken.' The court before whom the motion for a protective order is heard 'may order the officer conducting the examination to cease forthwith from taking the deposition, or may limit the scope and manner of the taking of the deposition ….' The deposition 'shall be suspended for the time necessary to make a motion for … [a protective] order.'" 2 Mo. Prac., Methods of Prac.: Litigation Guide § 9.42 (4th ed.) (internal citations omitted).

15

WCC cannot be permitted to benefit from the rare position it finds itself in *visa vie* Plaintiffs in this case, who continued to attend WCC. Whereas a plaintiff in standard automobile crash lawsuit would likely have no ongoing direct conduct with her opponent, or at least have no compunction to answer questions therefrom, Ms. Hampton was faced with a stark and purposefully put devil's paradox: Answer these written questions about your experience with defendant, or do not graduate. (Exh. 6, Hampton Affidavit). Not having the advice of counsel, and not being able to suffer a delayed graduation, Ms. Hampton filled out what amounts to written interrogatories or depositions upon written questions, without understanding or comprehending them, and without the protections of timely objection of counsel. (Id.) This serves neither the letter, nor the spirit of the rules controlling fact discovery in Missouri Courts.

**B.     Defendants Knowingly Attempted to Circumvent Rules of Discovery**

As Missouri courts have long held, "Discovery should be conducted on a 'level playing field,' without affording either side a tactical advantage. 'The discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants.'" *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 606 (Mo. 2002) quoting *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (Mo. banc 1999)(internal citations omitted).

> "Discovery is a vital aspect of the truth-seeking mechanism of the adjudicative process. Any conduct that misleads one's adversary in the latter's search for truth anterior to trial impedes and impairs the integrity of forensic fact-finding process. All pretrial discovery, whether carried out by voluntary or involuntary means, must be treated alike .... **In the conduct of our adversary litigation process no stage affords a license for an advocate's use of misleading tactics to impede or thwart the foe's legitimate pursuits**. Abuse of the discovery process and misrepresentation to the court "is an affront to the fundamental and indispensable principle that a lawyer must proceed with absolute candor towards the tribunal. In the absence of that candor, the legal system cannot properly function." "Honesty

16

and integrity are chief among the virtues the public has a right to expect of lawyers. Any breach of that trust is misconduct of the highest order and warrants severe discipline." **"These principles are as applicable to lawyers who are party litigants as they are to lawyers serving in their representative capacity."**

*In re Carey*, 89 S.W.3d 477, 497-98 (Mo. 2002)(Emphasis added)(Internal citations omitted.).

In Missouri, the trial court has the authority and oversight over, among other things: (1) pretrial motion proceedings and trial (i.e. official proceedings in court), and (2) formal discovery (i.e. proceedings authorized by or held under the supervision of a court). *State ex rel. Proctor v. Messina*, WD71326, 2009 WL 3735919 (Mo. Ct. App. Nov. 10, 2009) citing *State ex rel. Norman v. Dalton*, 872 S.W.2d 888, 891 (Mo.App. E.D.1994).

In addition to the affirmative promise made by WCC's litigation counsel that such attempts to "survey" current Plaintiffs in this lawsuit would cease, this Court should consider the role of Ms. Boden.[5] Ms. Boden is, by her own averment, General Counsel for WCC. In other words, either in the direct employ of, or under contract with, defendants in this case. What is more, she is "of record" in this case, as an additional defense attorney herein. She has appeared at every deposition, and at least some Court appearances, including the last CMC before this Court. As noted on the signature block of each of defendants' pleadings, Ms. Boden's business address is that of Mission Group Kansas, Inc. (See Entry of Appearance and pleadings throughout.) In other words, Ms. Boden **is** WCC personified, **and** has attempted to be defense counsel of record in this case. She therefore is duly aware of the admonitions in March, 2014 that all such survey's cease, and at least according to Mr. Loring WCC's promise that indeed such practices had ended (either through Ms. Boden, with her knowledge, or without it).

**C.    Defendants Could Properly Propound Additional Interrogatories**

---

[5] Plaintiffs have Issued a Notice of Deposition of Ms. Boden, as a fact witness, and has requested the Court Clerk issue subpoena therefore.

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Counsel and this Court must strive to avoid every appearance of impropriety. In a case where an ongoing school–student relationship exists between litigants, and the defense attorneys and general counsel are both aware of prior improper discovery attempts, it becomes imperative to protect the import and meaning of the Rules of Discovery.

Importantly, the questions to which WCC seeks responses could be fully and properly asked through discovery. In fact, as discovery in this case is ongoing, defendants can certainly serve written interrogatories upon Plaintiffs, through counsel, asking the questions contained in the survey, or similar questions thereto. To the extent concerns over a limited number of permitted interrogatories exists, undersigned counsel would stipulate to such procedures, so long as this Court makes clear to WCC that the improperly propounded "survey" is not permitted for use in **any** context or setting, whether as an offered exhibit or basis for impeachment at trial, or elsewhere in this lawsuit.

## IV.    CONCLUSION

Unlike, the "usual" litigation, wherein the parties have gone their separate ways, regardless of the personal or contractual history between them, here, defendants exercise a unique, powerful and ongoing control over Plaintiffs: without defendants' consent Plaintiffs cannot receive a diploma for completing coursework or properly exist the school so as to avoid financial aid penalties or negative borrower notations. In case whose fundamental allegations against defendants involve the deceptive and fraudulent use of misleading or false paperwork and oral misrepresentations, *such tactics during the pendency of the suit must be restricted.*

WHEREFORE, Plaintiffs move this Court for an Order: 1) denying Defendants' Motion to Compel, 2) prohibiting Defendants from any reliance on, reference to, or use of Exhibit 3 hereto ("Student Exit Satisfaction Survey"), at any proceeding, briefing or deposition in this

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

matter, and 3) enter an award of costs and fees related to this motion to Plaintiffs, and against

Defendants, and/or their attorneys.

ORAL ARGUMENT IS REQUESTED, as provided for in Rule 61(g) and other provisions.

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith _____
Kenneth B. McClain          #32430
Andrew K. Smith             #60485
Lauren E. McClain           #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:     (816) 836-5050
Facsimile:     (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

19

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above-foregoing document was served via electronic mail or through the Court's electronic filing system to the following counsel of record on the 2nd day of September, 2014:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:    (816) 983-8000
Facsimile:    (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:    (314) 480-1500
Facsimile:    (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:    (913) 396-5453
Facsimile:    (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
**JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**


*/s/ Andrew K. Smith*
**ATTORNEY FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

**Andy Smith**

| | |
|---|---|
| **From:** | Andy Smith |
| **Sent:** | Thursday, March 06, 2014 12:04 PM |
| **To:** | martin.loring@huschblackwell.com |
| **Cc:** | Lauren E. McClain; Heather M. Tucker |
| **Subject:** | Wright Career College |

Dear Mr. Loring,

In the last 24 hours our clients in the matter in which your firm represents various defendants (and about which we have communicated) have been directly contacted and asked specifically about their claims and suits, and other entirely improper client contact.

I am going to assume that this was all without your knowledge and approval, but it must cease immediately. Please advise that you have communicated this to all persons in your employ and control, as well as your clients in this case.

Andy

Humphrey, Farrington & McClain, P.C.
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816)836-5050 telephone
(816)836-8966 fax

**HUMPHREY FARRINGTON McCLAIN**
*Personal Injury* ||| *Trial Attorneys*

Think Green! Before printing this e-mail ask the question, is it necessary?





1

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

# Andy Smith

| | |
|---|---|
| **From:** | Loring, Martin <Martin.Loring@huschblackwell.com> |
| **Sent:** | Thursday, March 06, 2014 1:37 PM |
| **To:** | Andy Smith |
| **Cc:** | Lauren E. McClain; Heather M. Tucker; Loring, Martin |
| **Subject:** | RE: Wright Career College |

Thank you for the further details.

I now understand that the College has a standard routine where they call former students, both graduates and non-graduates, to ask them questions about their experiences at WCC. It is basically a customer survey process. It was part of this process that caused your clients to be called. Their names were on a list of former students.

They should have been removed from that list and should not have been called. It was a mistake. The people who make these calls to former students have now been specifically instructed not to contact your four clients in this case.

One additional issue, which coincidentally also arose today. Mr. Jewsome has been trying to get some NASM Enrollment Key information that he would use to take some kind of certification exam. He contacted the school in January to get that. They were unable to identify it on the spot, and sent it to him by email soon thereafter, on January 28. For some reason he did not receive it. Today he left a voicemail for a school employee. They are going to call him back and give him the information, email it to him again, and send him a letter with a copy of the original email sent to him on January 28.

Let me know if you have any further questions.

Marty Loring

**Martin M. Loring**
**Partner**

**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Direct: 816.983.8142
Fax: 816.983.8080
Martin.Loring@huschblackwell.com
huschblackwell.com
View Bio | View VCard

**From:** Andy Smith [mailto:AKS@hfmlegal.com]
**Sent:** Thursday, March 06, 2014 12:16 PM
**To:** Loring, Martin
**Cc:** Lauren E. McClain; Heather M. Tucker
**Subject:** RE: Wright Career College

They said they were calling on behalf of WWC, and asking why our clients were unhappy, what occurred in their education, etc.

1

Hampton 48
Exhibit No.
Codher Mod LLA

I understand this to mean it wasn't at your direction, which is of course what I presumed. I would think a reasonable start thereafter is determining if your clients have taken it upon themselves to serve as some inappropriate investigative arm in the defense, and advise them to stop, if so.

At this point, I am simply bringing it to your attention, and asking you to take reasonable steps to end it. That way no more will come of this.

Sincerely,

Andy

**From:** Loring, Martin [mailto:Martin.Loring@huschblackwell.com]
**Sent:** Thursday, March 06, 2014 12:08 PM
**To:** Andy Smith
**Cc:** Lauren E. McClain; Heather M. Tucker; Loring, Martin
**Subject:** RE: Wright Career College

Andy,

Contacted by whom???

I have no idea what you're referring to, and can hardly look into it without you telling me who has purportedly contacted your clients.

So please let me know who contacted who, when, and in what manner.

**Martin M. Loring**
Partner

**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Direct: 816.983.8142
Fax: 816.983.8080
Martin.Loring@huschblackwell.com
huschblackwell.com
View Bio | View VCard

*************************** *Begin Notice from Husch Blackwell LLP* ***************************
*This e-mail message and all attachments, if any, may contain confidential and privileged material and are intended only for the intended recipient. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail or by calling (816) 983-8000 and destroy the original and any copies of this e-mail.*

*************************** *End Notice from Husch Blackwell LLP* ***************************

**From:** Andy Smith [mailto:AKS@hfmlegal.com]
**Sent:** Thursday, March 06, 2014 12:04 PM
**To:** Loring, Martin
**Cc:** Lauren E. McClain; Heather M. Tucker
**Subject:** Wright Career College

Dear Mr. Loring,

In the last 24 hours our clients in the matter in which your firm represents various defendants (and about which we have communicated) have been directly contacted and asked specifically about their claims and suits, and other entirely improper client contact.

2

I am going to assume that this was all without your knowledge and approval, but it must cease immediately. Please advise that you have communicated this to all persons in your employ and control, as well as your clients in this case.

Andy

Humphrey, Farrington & McClain, P.C.
221 W. Lexington, Suite 400
Independence, Missouri 64050
(816)836-5050 telephone
(816)836-8966 fax

**HUMPHREY FARRINGTON McCLAIN**
*Personal Injury* ||| *Trial Attorneys*

Think Green! Before printing this e-mail ask the question, is it necessary?

Any tax advice contained in or attached to this message or email string is not intended or written to be used, and cannot be used to (i) avoid penalties that may be imposed on any taxpayer under the Internal Revenue Code or (ii) promote, market, or recommend to another any transaction addressed herein.

3

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA,                               )
629 S. Crysler Ave.                           )
Independence, MO  64052                       )
                                              )
JENNIFER DECKER,                              )        Case No. _____
18633 Arrowhead Lane                          )
Independence, MO  64056                       )        Division _____
                                              )
CHRISTI HAMPTON,                              )
926 NE Swann Rd., Apt. B                      )
Lee's Summit, MO  64086                       )
                                              )
STEVEN JEWSOME,                               )
1323 W. Bluff Dr.                             )
Kansas City, MO  64180                        )        JURY TRIAL DEMANDED
                                              )
                    Plaintiffs,               )
v.                                            )
                                              )
MISSION GROUP KANSAS, INC., d/b/a             )
WRIGHT CAREER COLLEGE,                        )
         Serve at Registered Agent:           )
         CAPITOL CORPORATE SERVICES,          )
         INC.                                 )
         700 SW Jackson St., Ste. 100         )
         TOPEKA, KS  66603                    )
                                              )
BOARD OF DIRECTORS OF MISSION                 )
GROUP KANSAS INC.,                            )
         Serve at Registered Agent:           )
         CAPITOL CORPORATE SERVICES,          )
         INC.                                 )
         700 SW Jackson St., Ste. 100         )
         TOPEKA, KS  66603                    )
                                              )
JOHN MUCCI; IN HIS OFFICIAL AND               )
INDIVIDUAL CAPACITY,                          )
         Serve at:                            )
         10720 Metcalf Ave.                   )
         Overland Park, KS  66210             )
                                              )
                                              )
                                              )
                                              )



PLAINTIFF'S
EXHIBIT
2

STEPHEN BROWNE; IN HIS OFFICIAL )
AND INDIVIDUAL CAPACITY, )
    Serve at: )
    800 West 47th Street, Ste. 43 )
    Kansas City, MO 64112 )
     )
RON HOLT; IN HIS OFFICIAL AND )
INDIVIDUAL CAPACITY, )
    Serve at: )
    1100 Walnut St., Ste. 2900 )
    Kansas City, MO 64106 )
     )
           Defendants. )

## PETITION FOR DAMAGES

    Plaintiffs, through counsel, allege and state the following causes of action against Defendant:

### PLAINTIFFS

    1.    Plaintiffs are all individuals over the age of twenty-one (21) residing in Jackson County, Missouri.

### DEFENDANTS

    2.    Defendant Mission Group Kansas, Inc., d/b/a Wright Career College ("WCC"), is a Kansas Corporation but doing business in the State of Missouri at all relevant times.

    3.    Upon information and belief, Defendant Board of Directors of Mission Group Kansas, Inc., d/b/a Wright Career College, consists of the following members: Mr. James Miller, Jr., Mrs. Gayle L. Miller, Mr. John Mucci, Mr. Ronald L. Hoit, Mrs. Peggy Hodges, Mr. Martin G. Baughman, Dr. Baltazara G. Lotuaco, Ms. Shawn Altman, Mr. Stephen Browne, Mr. Eugene Kivett, and Ms. Kathleen O'Brien.

2

4.     Defendant John Mucci ("Mucci"), upon information and belief, is a resident of Kansas; Mucci was employed by Defendant WCC as President and was acting within the course and scope of his employment at the time of the events alleged herein.

5.     Defendant Stephen Browne ("Browne), upon information and belief, is a resident of Missouri; Browne was employed by Defendant WCC as Treasurer and was acting within the course and scope of his employment at the time of the events alleged herein.

6.     Defendant Ron Holt ("Holt"), upon information and belief, is a resident of Missouri; Holt was employed by Defendant WCC as Secretary and was acting within the course and scope of his employment at the time of the events alleged herein.

### JURISDICTION & VENUE

7.     Jurisdiction is proper in this Court pursuant to R.S.Mo. § 506.500 in that many of the material events that comprise the basis of Plaintiffs' claims occurred in Missouri and Plaintiffs are seeking damages in excess of $15,000.

8.     Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because Plaintiff was first injured in Eastern Jackson County, Missouri and/or because several Defendants reside in – or have registered agents in – Eastern Jackson County, Missouri.

### GENERAL ALLEGATIONS REGARDING DEFENDANTS

9.     Mission Group Kansas, Inc. ("MGK"), is a Kansas non-profit corporation, which operates Wright Career College ("WCC"), a private nonprofit postsecondary vocational institution with campuses in Overland Park, Kansas; Wichita, Kansas; Oklahoma City, Oklahoma; Tulsa, Oklahoma; and Omaha, Nebraska.

10.     WCC participates in federal student loan and grant programs. These programs include, among others, the William D. Ford Federal Direct Loan Program (Direct Loans), the

3

Federal Pell Grant Program, and campus-based aid programs. Grants do not have to be repaid by students, while loans must be repaid whether or not a student completes a degree program.

11.    Having identified the opportunity to tap into guaranteed payment through federal loan programs, while shielding itself from any risk resulting from its students' student loan defaults, WCC purposely entices prospective students to enroll and apply for student loans they cannot pay back through a systematic, deceptive marketing scheme. It conducts this scheme in large part through its publications and enrollment "advisors."

12.    Beginning in or around 2011, and before, and continuing on various dates thereafter, Defendants intentionally engaged in a pattern and practice of deceptive conduct and of making certain fraudulent misrepresentations and omissions to Plaintiffs and other prospective students.

13.    WCC deceives students about federal financial aid, the true cost of attending WCC, the value of WCC's accreditations, the quality and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.

14.    WCC does this by improperly hiding information from visitors to its websites and by misleading students through affirmative misrepresentations and material omissions. WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value, to re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.

15.    Collectively, these tactics drive WCC's enrollment practices and work to the company's great financial benefit, at the expense of its students, the federal government, and the American taxpayers.

4

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

## GENERAL ALLEGATIONS REGARDING THE ENROLLMENT AND EXPERIENCE OF PLAINTIFFS

16.    Plaintiffs are all current WCC students at its Overland Park location.

17.    Defendants' pattern and practice of deceptive conduct and fraudulent misrepresentations and omissions was designed to, and in fact did, induce students to enroll in various programs at its Overland Park location, including specifically each and every one of Plaintiffs.

18.    In or around 2011 WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

    a)  that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;

    b)  that any educational credits earned at WCC would transfer and would apply towards a degree program at another school;

    c)  that WCC's instructors all had degrees and were experienced in their respective fields;

    d)  that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;

    e)  that enrolling in its evening classes offered all of the same benefits as the day classes;

    f)  that the cost of the program would be less than WCC knew would be the actual cost of the program;

5

g) that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

h) that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

i) that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j) that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k) in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

19.    As a result of these representations, Plaintiffs enrolled and were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

20.    After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a) Educational credits earned at WCC were not transferable towards programs at other schools;

6

b) The program in which Plaintiffs enrolled lasted longer and was more expensive than Defendants represented;

c) Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

d) There was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances class was held with no instructor at all;

e) Defendants used a class scheduling "protocol" referred to as "pods" wherein new students are placed in courses that are already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier, necessary course work and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f) The evening classes did not offer all of the same benefits as the day classes. There was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed. Moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

7

g) The student loans and grants did not include the total cost of the students program resulting in debt that Plaintiff were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

h) Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants didn't provide Plaintiff with books. Also, "electronic" textbooks that were promised were either not made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i) In other ways demonstrated by the admitted evidence at any trial in this matter.

21.    Due to the misrepresentations and other conduct as set forth herein of WCC, Plaintiffs will not be and have not been properly trained in the subject areas in which they enrolled, will not receive the salaries they were promised upon graduation, and will fail to attain accreditation in their fields due to a failure of WCC to properly provide an education which will allow accreditation, and the "education" received from WCC, has no value to Plaintiffs, and instead has resulted in crippling debt.

22.    Plaintiffs borrowed thousands, and even tens of thousands of dollars, to attend WCC only to discover later that their degrees and "education" are worthless and their credits won't transfer, even to the point where at least one Plaintiff's current employer refused to accept her WCC credits as evidence of further qualification of employment. Now Plaintiffs are thousands of dollars in debt, for no value in return.

8

23.    Plaintiffs have been damaged not only in terms of inability to earn a living in their field upon graduation but also because they must repay the student loans WCC assisted them in obtaining, which are substantial.

**COUNT I**
**FRAUDULENT MISREPRESENTATION**
**(Against all Defendants)**

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

24.    Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility including but not limited to:

    a.    Job placement and job demand;

    b.    Anticipated starting salary;

    c.    Graduation rates;

    d.    Instructors Qualification;

    e.    Quality of education;

    f.    Transferability of credits to other institutions;

    g.    Instructor's qualifications; and

    h.    Cost and duration of program.

25.    At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

26.    At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

27.    Plaintiffs had a right to rely on Defendants' representation and did, in fact, rely on such representation.

9

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

28.     That in reliance on the material misrepresentations of WCC, Plaintiffs enrolled in its facility and were assisted in applying for financial aid in the form of student loans, which loans much be repaid by Plaintiffs after graduation from WCC.

29.     As a direct and proximate result of Defendants' fraudulent representation the Plaintiffs have incurred damages.

30.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

31.     Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility.

32.     In making said representation, Defendants failed to use ordinary care.

33.     At the time of said representation, Defendants intended for Plaintiff to rely on the representation.

34.     In reliance on the material misrepresentations of WCC, Plaintiffs enrolled in its facility and Plaintiffs were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

10

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

35. These misrepresentations were material to Plaintiffs' enrollment in its facility.

36. Plaintiffs relied on the information supplied by Defendants and such reliance was reasonable under the circumstances.

37. As a direct and proximate result of Defendants' negligent misrepresentation Plaintiffs have been injured and damaged as herein described.

38. Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

**COUNT III**
**NEGLIGENT HIRING/RETENTION**
**(Against all Defendants)**

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

39. Defendants had a duty to possess and use the same degree of care ordinarily used by reasonable and/or careful educational institutions to assess an applicant's suitability for a teaching position.

40. Defendants knew or should have known that their employees ("instructors") were not properly qualified or suitable for the programs in which Plaintiffs are/were enrolled; they wrongfully terminated instructors who were qualified; and by their practice of changing instructors so frequently, that the Plaintiffs were unable to obtain the education promised by the Defendants.

11

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

41.     Defendants knew or should have known that negligently hiring, training, supervising, and monitoring their employees would directly prevent the Plaintiffs' from receiving the education promised to them by the Defendants.

42.     As a direct and proximate result of Defendants negligent hiring/retention, Defendant's employees were not qualified for the work they were hired to perform and were not properly trained or supervised.

43.     As a direct and proximate result of Defendants' negligent hiring/retention, Plaintiffs were unable to receive the education promised and have been injured and damaged as herein described.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT IV
## CIVIL CONSPIRACY
### (Against All Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

44.     Defendants had an agreement and/or understanding, that they would use a pattern of advertising, deceptive enrollment and recruitment techniques to entice Plaintiffs, and other students, to enroll at WCC, all with the purposes of charging exaggerated fees, tuition, and costs, and for the benefit of defendants.

45.     In attempting to accomplish their goal Defendants committed one or more overt acts as fully enumerated above, in paragraphs above, specifically including 18, 20, and 24.

12

46. As a direct and proximate result of Defendants' acts in furtherance of this conspiracy, Plaintiff has experienced emotional pain and mental anguish, and will continue to suffer emotional pain and mental anguish into the future.

47. Defendants' conduct which caused this damage showed complete indifference to the emotional well-being of Plaintiff and other people similarly situated, justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT V
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

48. Plaintiffs and Defendants are within the definition of "person" under the Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

49. Defendants' statements to induce Plaintiff to enroll at WCC constitute "advertisements" as defined by R.S.Mo. § 407.010(1).

50. The objects of the educational programs and services offered by Defendant WCC constitute merchandise as defines by R.S.Mo. § 407.010(4).

51. Defendants' advertising, offering for sale, and/or sale of merchandise constitutes "trade" or "commerce" as defined by R.S.Mo. § 407.010(7).

52. Plaintiffs purchased merchandise from Defendants primarily for personal, family, or household purposes within the meaning of R.S.Mo. § 407.025.1.

13

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

53.     Defendants engaged in a pattern and practice of using deception, fraud, false pretense, false promise, misrepresentation, and unfair practices in connection with the sale or advertisement of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

54.     Defendants engaged in a pattern and practice of using concealment, suppression and omission of material facts in connection with the advertising and sale of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

55.     As a direct result of these violations of the Missouri Merchandising Practices Acts by Defendants, Plaintiff sustained an ascertainable loss of money, including but not limited to; the amounts paid by Plaintiff in tuition and other fees to attend WCC.

56.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, attorney fees and penalties and for such other relief this Court deems just and proper.

## COUNT VI
## ACCOUNTING
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

57.     That Defendants should be required to make a full accounting of each Plaintiffs' tuition charges, separating tuition from the costs of books, laboratory fees, or other supplies or fees, for all that is included in each student's file.

14

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

58. The Defendants should be required to make a full accounting of each Plaintiffs' grants or loan funds received by Defendants, the current location of any such grant or loan funds being held on behalf of Plaintiffs; including the source of stipends or budget plan funds being paid to Plaintiffs and all financial institutions in which such funds are held; all amounts currently owing to Plaintiffs which exceed the amount of books, fees, and tuition incurred by Plaintiffs; and requiring payment to Plaintiffs of all funds exceeding amounts due and owing to Defendants.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT VII
### PUNITIVE DAMAGES
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

59. Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually and/or cumulatively justify the submission of punitive damages in this case.

60. Defendants knew or had information from which they, in the exercise of ordinary care, should have known that their conduct created a high degree of probability of mental distress, bodily harm, and damage to Plaintiffs and other similarly situated patients.

61. The willful, wanton, and malicious acts of Defendants as more fully set forth above, evidence Defendants' complete indifference and conscious disregard for the rights and safety of Plaintiffs and others similarly situated, justifying the submission of punitive damages in this case.

15

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages to punish and deter Defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL OF ALL ISSUES

Plaintiffs demand a trial by jury of all issues in this case.

Date: October 31, 2013

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith

| | |
|---|---|
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX

ATTORNEYS FOR PLAINTIFFS

16

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

C Hampton

**Wright Career College**
**Student Exit Satisfaction Survey**

Below is a series of questions designed to assess your thoughts with regard to the staff and
administration of Wright Career College. Please read the questions below, marking the response
that best corresponds to your individual situation. Mark all responses, using the following scale:

4=Strong Agreement      3=Above Average Agreement      2=Average Agreement      1= Do Not Agree

*Receptionist:*

1. __3__ The Receptionists are courteous and helpful.

2. __4__ When I call or enter the school, I am treated with respect and professionalism.

3. __3__ The Receptionist is available to assist with questions.

**ADMISSIONS:**

1. __2__ My admissions representative understood my unique, individual situation.

2. __3__ My admissions representative exhibited a high degree of professionalism.

3. __3__ My admissions representative accurately represented the opportunities at WCC.

4. __3__ My admissions representative answered my questions about enrollment.

**ACADEMICS:**

1. __2__ My educational experience at WCC has met my expectations.

2. __4__ My instructors cared about my academic success, and motivated me towards my visions and goals.

3. __2__ The quality of instruction I received in my courses helped prepare me for my career field.

4. __3__ My instructors were always available for assistance, and they represented a *"College That Cares"*.

5. __4__ The Academic Team was approachable, and willing to assist.

6. __4__ The Academic Team exhibits a high degree of professionalism

**FINANCIAL AID:**

1. __3__ I understood the information that was explained to me during my financial planning meeting.

2. __2__ The financial aid officer exhibited a high degree of professionalism.

3. __1__ The financial aid officer answered my questions and concerns in a timely manner.

4. __2__ The financial aid officer is knowledgeable about financial aid opportunities.

5. __2__ The financial aid officer had my best interests in mind.

6. __1__ The financial aid officer worked with me to find a financial plan to pay for school expenses.

7. __1__ My financial aid officer has clearly explained my loan repayment responsibilities.

8. __3__ The financial aid office was open during hours that are convenient.

**PLAINTIFF'S EXHIBIT**
**3**

CONFIDENTIAL

WCC0000553

*ADMINISTRATION:*

1. __4__ The Campus Director was approachable, and willing to assist..

2. __4__ The Faculty Director was approachable, and willing to assist.

3. __4__ The Campus Director exhibits a high degree of professionalism.

4. __4__ The Faculty Director exhibits a high degree of professionalism.

*CAREER SERVICES:*

1. __4__ The Career Placement Director would provide part-time job opportunities assistance if needed.

2. __3__ The Career Placement Director assisted me with career planning.

3. __3__ The Career Placement Director keeps me updated on current employment opportunities.

4. __3__ The Career Placement Director works hard to help me find employment in my career field.

.5. __3__ The Career Placement Director exhibited a high degree of professionalism.

*FACILITY:*

1. __1__ The computer equipment provided by the college was in good working condition.

2. __3__ The Campus Library, Online Resources, and access to public libraries provided adequate resource materials to support my program.

3. __4__ The Library was open during hours that are convenient?

4. __4__ The classrooms, clinic space, and library provided adequate space for learning?

5. __4__ Parking lots are well lighted and I feel safe while on campus grounds.

*MISCELLANEOUS:*

1. __1__ I would recommend WCC to my family and friends.

2. __1__ I am satisfied that WCC demonstrated a commitment to my career goals and success.

*RATE THE FOLLOWING: (4= Outstanding, 3= Good, 2=Poor, 1=Do Not Know)*

1. __4__ Overall rating of my experience with Admissions.

2. __2__ Overall rating of my experience with Financial Aid

3. __3__ Overall rating of my experience with Academics

4. __3__ Overall rating of my experience with Career Services.

.5. __4__ Overall rating of my experience with Administration

6. __3__ Overall rating of the WCC building.



# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| JENNIFER KERR, ) | WD76903 |
| ) | |
| Respondent, ) | OPINION FILED: |
| v. ) | |
| ) | August 26, 2014 |
| VATTEROTT EDUCATIONAL ) | |
| CENTERS, INC., ) | |
| ) | |
| Appellant. ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Jack Richard Grate, Judge**

**Before Division Three: Gary D. Witt, P.J.,**
**Joseph M. Ellis, and Thomas H. Newton, JJ.**

Vatterott Educational Centers, Inc., doing business as Vatterott College (Vatterott), appeals the trial court's judgment in favor of Ms. Jennifer Kerr. Ms. Kerr sued Vatterott for damages under the Missouri Merchandise Practices Act (MMPA), sections 407.010 to 407.130.[1] A jury found Vatterott liable to Ms. Kerr for its deceitful practices in selling a certain educational program offered by its institution. The jury awarded Ms. Kerr compensatory and punitive damages. On appeal, Vatterott challenges the denial of its motion for a directed verdict, the submission of a certain damages instruction, and the amount of the punitive damages award. We affirm and remand.

---

[1] Statutory references are to RSMo 2000 and the Cumulative Supplement 2008, unless otherwise stated.

PLAINTIFF'S
EXHIBIT
4

**Factual and Procedural Background**

In late 2008, Ms. Kerr decided to return to school to become a registered nurse.  In 2009, a representative at Concorde College spoke to Ms. Kerr, during a campus visit, and informed her that the institution did not offer a Nursing Program, but offered a Medical Assistant Program (MA Program).  Ms. Kerr felt that the MA Program would not assist her in pursuing a nursing career, so she left.  She then contacted Vatterott to determine what programs it offered.

In 2009, Vatterott's catalog advertised two medical programs: (1) MA Program and (2) Medical Office Assistant (MOA) Program.  The MA Program was described as a 90-week program, during which students received administrative and clinical training; the MOA Program was described as having a duration of 60 weeks, during which students learned only "administrative clerical duties."  At the time, the MA Program cost $33,100, and the MOA Program cost $22,300.

Ms. Leah Lehman, a Vatterott admissions coordinator, met with Ms. Kerr in her office in March 2009.  Ms. Kerr told Ms. Lehman that she wanted to become a registered nurse and that she was a single mother who needed to work.  Ms. Lehman told Ms. Kerr that Vatterott did not have a nursing program, but had a "condensed" MA Program.  Ms. Lehman told Ms. Kerr that she would get "more [there] faster," that "everything [she would] get in medical assisting wa[s] the same as [the classes] in nursing," and that she could take the credits with her and "get done faster."  Additionally, Ms. Lehman told Ms. Kerr that she could earn money working as a medical assistant while pursuing her nursing

2

degree. Ms. Lehman tried to get her to enroll right away, but Ms. Kerr told her that she would think about it.

Soon after, Ms. Kerr returned to Vatterott and again spoke to Ms. Lehman. Ms. Kerr enrolled later that day. Ms. Kerr did not receive a catalog that day, but she had seen one the first day that the MA Program was explained to her. She inquired about the letters, "MOA," appearing before the course numbers in the catalog listings under the MA Program, and Ms. Lehman told her they stood for the "Medical Office Assistant" Program, which was "one in the same." Around the same time, Ms. Lehman told Ms. Kerr that the MA Program was about $21,000; she was also shown a lab fee of $1,200.

Ms. Lehman gave her a tour of the facility, showing Ms. Kerr the classrooms and the technological lab. She told Ms. Kerr that her hands-on training for the clinical part of the MA Program would occur in the lab. Ms. Lehman filled out the enrollment contract for the MOA Program, slid the contract to Ms. Kerr, and told her where to sign it. Ms. Kerr complied.

Ms. Kerr was then sent to meet with one of Vatterott's financial aid advisors, Ms. Barbara Boone. With Ms. Boone's help, Ms. Kerr obtained federal loans and grants to finance her education. At this time, neither Ms. Lehman nor Ms. Boone told Ms. Kerr that she would need to pay an additional $10,000 to participate in the clinical portion of the MA Program. A month later, Ms. Kerr filled out an orientation document and began the program a few days later.

3

Just before completing the MOA Program,[2] Ms. Kerr was told to report to the financial aid office because she was on a list to proceed to the MA Program. Ms. Kerr, along with her classmates, was upset because she and they believed that they all had already enrolled in and paid for the MA Program. Once in the office, Ms. Boone told Ms. Kerr that her financial aid had covered only the MOA Program and that she needed to take out an additional loan to pay for the MA Program or "drop." Ms. Kerr told Ms. Boone that she would think about it.

Ms. Kerr addressed her concerns with Ms. Stephanie Hankins, the Director of the Medical Program at the time, about being misled into believing that the clinical portion was included in the program in which she had already enrolled and financed. Ms. Hankins told her that none of her classes would transfer into nursing. Afterward, Ms. Kerr declined to enroll in the MA Program. She finished her last phase of the MOA Program from home. In 2010, she graduated with a Certificate of Completion rather than an Associate of Occupational Studies, which she would have received if she had enrolled in and completed the MA Program. Ms. Kerr was unable to obtain a job in the medical field with the certificate, nor could she use the credits toward a nursing degree.

In May 2012, Ms. Kerr sued Vatterott for compensatory (actual) and punitive damages, alleging that Vatterott had "engaged in unlawful merchandising practices in violation of the [MMPA]." Specifically, Ms. Kerr alleged that Ms. Lehman's statements and conduct toward Ms. Kerr exemplified Vatterott's "pattern and practice of using

---

[2] The program was comprised of phases that served as semesters. Each phase would start new classes. The entire MOA Program consisted of six phases for a total of sixty weeks. The MA Program consisted of an additional three phases for a total of ninety weeks.

deception, fraud, false pretense, false promise, misrepresentation, and unfair practices in connection with the sale or advertisement of merchandise."

At the jury trial, Ms. Kerr testified to the above facts. Ms. Kerr also testified that she used the technology lab only two or three times during the 60-week period and that her Vatterott education had zero value. Additionally, former Vatterott graduates testified to similar experiences with enrollment and later discovering that the MA Program was separate and required an additional fee. Former Vatterott employees testified that those admission practices were common and top Vatterott employees were made aware of them, as early as 2007. Ms. Lehman's former supervisor, the Director of Admissions from 2009 to 2011, testified that Ms. Lehman was terminated due to dishonesty concerning an application. She further testified that a student could not enroll in the MA Program without first completing the MOA Program, although it was represented that way. Ms. Hankins, the former Director of the Medical Program, also testified that Vatterott merged the MOA Program into the MA Program in 2010. She also testified that Vatterott's advisory board suggested years earlier that the MOA Program be removed. Ms. Kerr adduced evidence that she owed $27,962.23 in student loans.

Vatterott adduced evidence from employees and former employees in an attempt to contravene the evidence of unfair practices in admissions. One of Vatterott's career services employees testified that the benefit of the Certificate of Completion to its holder was that he or she was the more attractive applicant for office positions as compared to an applicant without one. At both the close of the plaintiff's case and at the close of evidence, Vatterott moved for a directed verdict. The trial court denied both motions.

5

The jury returned a verdict in favor of Ms. Kerr. It awarded her $27,676.96 in actual damages and $13,000,000 in punitive damages. The trial court entered judgment to reflect the verdict. Several post-trial motions were filed. As a result, the trial court amended the judgment to award Ms. Kerr $27,696.96 in actual damages, $2,078,679.80 in punitive damages,[3] and $388,059.00 in attorney fees. Vatterott appeals.

## Legal Analysis

Vatterott raises four points. In the first and second points, Vatterott argues that the trial court erred in denying its motion for directed verdict and entering judgment against it because Ms. Kerr did not have a submissible MMPA case. First, Vatterott asserts that the MMPA claim was not submissible to the jury because Ms. Kerr did not "purchase her education primarily for personal, family[,] or household purposes," as required under MMPA. Second, Vatterott asserts that there was no submissible MMPA claim of deception or causation because the contemporaneous documents that Ms. Kerr signed "fully disclosed the truth."

In reviewing the denial of a directed verdict motion, we are limited to determine whether a submissible case was made. *Kelly v. State Farm Mut. Auto. Ins. Co.*, 218 S.W.3d 517, 520 (Mo. App. W.D. 2007). In doing so, we view the evidence and all reasonable inferences from it in the light most favorable to the plaintiff and disregard all contrary evidence. *Oliver v. Ford Motor Credit Co., LLC*, Nos. WD 75585 & WD 75619, 2014 WL 1711490, at *2 (Mo. App. W.D. April 29, 2014). However, our review

---

[3] Statutory cap caused the reduction. See §510.265.1 ("No award of punitive damages against any defendant shall *exceed the greater of* (1) Five hundred thousand dollars; or (2) Five times the net amount of the judgment awarded to the plaintiff against the defendant.").

6

becomes *de novo* when "the denial of a directed verdict is based upon a conclusion of law." *Id.* A submissible case is made if the plaintiff has presented "substantial evidence for every fact essential to liability." *Kelly*, 218 S.W.3d at 520. "[W]e will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion. Thus, '[a] directed verdict is inappropriate unless reasonable minds could *only* find in favor of the defendants.'" *McGinnis v. Northland Ready Mix, Inc.*, 344 S.W.3d 804, 809 (Mo. App. W.D. 2011) (internal quotation marks and citation omitted).

"Civil actions may be brought under the MMPA to recover actual damages by '[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of [an unlawful practice].'" *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 711-12 (Mo. App. W.D. 2009) (quoting § 407.025.1). Thus, to prevail, a plaintiff must show that she: "(1) [purchas]ed merchandise from defendant; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by section 407.020." *Chochorowski v. Home Depot U.S.A., Inc.*, 295 S.W.3d 194, 198 (Mo. App. E.D. 2009).

In the first point, Vatterott claims that Ms. Kerr failed to satisfy the second element of personal purpose because she testified that her education was "worthless because it did not advance her career objectives." Vatterott further claims that because her testimony "establishes that she purchased her education solely to improve her chances of obtaining a job in the nursing field, . . . [s]he specifically disclaimed any purpose to

7

advance her own personal knowledge." Vatterott's reasoning is that, if the *sole* purpose in purchasing an education was to advance a career, it cannot constitute a purchase for "primarily personal, family, or household purposes." Vatterott purports that Ms. Kerr's testimony negates the second element.

Vatterott claims that Ms. Kerr can only have a submissible case if she now argues that her education had value, a position contrary to her damages theory at trial. Vatterott further claims that the law precludes her from doing so, and that her testimony that the education she received had no value would thereby defeat her claim. Vatterott relies on cases from other jurisdictions to support its proposition that, "[a]s a matter of law, an education undertaken solely to enhance one's career prospects is not 'primarily for personal, family or household purposes.'" We have read the cases, and we find that they are distinguishable from the facts of this case.

Vatterott cites to cases in which the courts found that evidence showing a plaintiff using a purchased tangible item for a business purpose negated the element of personal use. *See, e.g.*, *In re Jenkins*, 249 B.R. 532, 536-37 (Bkrtcy. W.D. Mo. 2000) (stating failure to use the truck after it failed in business showed that it was not purchased for personal use). In this case, the merchandise at issue—an education—is intangible and has no objective use. Vatterott also cites to cases in which the courts found against claims under consumer protection laws similar to the MMPA because the allegations in the pleadings mainly stated that the plaintiffs intended to use the education to better themselves by obtaining jobs in their respective fields. *See, e.g.*, *MacDonald v. Thomas M. Cooley Law School*, 724 F.3d 654, 661-62 (6th Cir. 2013). Here, a trial was had, at

8

which Ms. Kerr presented evidence besides her failure to secure the promised employment that her education was worthless. Consequently, Vatterott's cited cases are inapposite.

Ms. Kerr asserts that the contract itself states that the education was purchased for personal use, so the contract entitles her to sue under the MMPA. She relies on the Federal Trade Commission (FTC) Consumer Notice mentioned in Paragraph 16 of Vatterott's enrollment contract, which states:

> Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services pursuant hereto or with the proceeds hereof.

She claims that the presence of the language in the contract implies that the education was purchased for personal use because "consumer," as defined under 16 C.F.R. § 433.1(b) of the FTC, is "a natural person who seeks or acquires goods or services for personal, family, or household use." For additional support, she cites to *Maldonado v. Collectibles International, Inc.*, which found that vocational training was a consumer service. 969 F.Supp. 7, 9 (S.D.N.Y. 1997). In so concluding, the *Maldonado* court provided that the FTC defines "consumer goods and services" to include "courses of instruction or training regardless of the purpose for which they are taken." *Id.* (quoting 16 C.F.R. § 429.0(b)).

In deciding the matter before us, we are cognizant that "[t]he purpose of [MMPA] is to preserve fundamental honesty, fair play and right dealings in public transactions." *Plubell*, 289 S.W.3d at 711 (internal quotation marks and citation omitted). We have found no Missouri cases addressing whether obtaining an education is implicitly for a

9

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

personal purpose or whether it depends on the stated or demonstrated primary purpose by the consumer. Nor have we found cases that state the presence of an FTC Consumer Notice, which is guided by the Truth in Lending Act (TILA), overrides any stated contrary, primary purpose for the good. *Cf. Drew v. Chrysler Credit Corp.*, 596 F.Supp. 1371, 1374-75 (W.D. Mo. 1984) (performing a purpose analysis in determining whether an automobile was a consumer good, even though the retail installment contract contained an FTC Consumer Notice).[4]

Whether a plaintiff purchased a good for primarily a personal, family, or household purpose is a question of fact. *See Chrysler Fin. Co., L.L.C. v. Flynn*, 88 S.W.3d 142, 150 (Mo. App. S.D. 2002) (stating that whether a good is a "consumer good" under Missouri law is a jury question). Because Ms. Kerr provided other reasons for purchasing the education, we do not need to decide whether purchased education, regardless of its intended use, is deemed purchased primarily for a personal purpose under section 407.025.1.

Ms. Kerr testified that she wanted to become a registered nurse. She claimed that she purchased the Vatterott education for those credits to apply toward a nursing degree. In the *MacDonald* case relied on by Vatterott, the Sixth Circuit distinguished between obtaining an education to make money and obtaining an education for the sake of

---

[4] The *Drew* court made a distinction between the phrase, "consumer goods," as defined in Uniform Commercial Code, which focuses on buyer's intent, and the definition of the phrase under the Federal Trade Commission (Truth in Lending Act) and section 408.400.1(2) of the Missouri Revised Statutes, which focuses on the good's primary use. *Drew v. Chrysler Credit Corp.*, 596 F.Supp. 1371, 1374-75 (W.D. Mo. 1984).

receiving it. 724 F.3d at 661-62.[5] It suggested that the latter would be for a personal purpose. *Id.* Thus, although Ms. Kerr presented evidence that the Certificate of Completion lacked value because she could not obtain a job; other evidence suggested that the education was valueless because it did not count toward her nursing degree. As the trial court found, "the jury could have reasonably inferred from the evidence that the purpose for the purchase was primarily for personal use." Vatterott's first point is denied.

In the second point, Vatterott argues that Ms. Kerr failed to satisfy MMPA's causation element because she cannot show deception or a causal connection when the evidence shows that she signed or initialed contemporaneous written documents disclosing the truth. Specifically, Vatterott argues that these documents negate the deception or a causal connection element because each reflects that Ms. Kerr enrolled in the MOA Program, which is different from Ms. Lehman's alleged oral representations to Ms. Kerr that she was enrolling in the MA Program.

Vatterott acknowledges that under the standard of review, we must disregard evidence contrary to the jury verdict such as these written documents. However, Vatterott claims that we are "not free to disregard unambiguous contemporary documents that are plainly inconsistent with the plaintiff's theory of the case." In so arguing, Vatterott cites *Kelly* for support. In *Kelly*, a jury found in favor of the plaintiffs against the defendant for wrongful termination of an agency agreement. We found that the agreement was not ambiguous and plainly allowed for either party to terminate the

---

[5] See *Sibeto v. Capella University*, which disagrees with this reasoning. 2014 WL 3547344, at *1 (W.D. Pa. July 17, 2014).

agreement at will or without cause. S.W.3d at 522. We thus concluded that the defendant did not breach the agreement and that the trial court should have granted the motion for JNOV on the breach of contract claim. *Id.* at 523-24.

In MMPA cases, "[t]he rule that all prior and contemporaneous oral agreements and representations are merged in the written contract entered into by the parties does not apply." *Riley v. Lucas Lofts Investors, LLC,* 412 S.W.3d 285, 292-93 (Mo. App. E.D. 2013). "[T]he [MMPA] prohibits the use of any misrepresentation or deception in connection with the sale. If such misrepresentations or deceptions are made, the statute has been violated whether or not the final sales papers contain no misrepresentation or even correct the prior misrepresentation. *State ex rel. Webster v. Areaco Inv. Co.*, 756 S.W.2d 633, 636 (Mo. App. E.D. 1988). The trial court did not err in disregarding the written documents when it denied Vatterott's motion for JNOV.

Vatterott claims that the Missouri Supreme Court applied the rule that "the written instrument trumps the oral misrepresentations" in the MMPA case, *Chochorowski v. Home Depot U.S.A. (Chochorowski II)*, 404 S.W.3d 220 (Mo. banc 2013). We disagree.

In *Chochorowski II*, the alleged MMPA violation was that the defendant had engaged in the specific unfair practice of including a negative option plan, as listed in the corresponding Missouri regulations. *Id.* at 226. Oral misrepresentations were not involved in that claim, only whether the contract charged for merchandise that the plaintiff had not ordered or solicited. *Id.* Looking to the written contract to determine the parties' intent as to the damage waiver provision, the supreme court determined that the plain language in the contract required the plaintiff to affirmatively accept the damage

12

waiver. *Id.* at 227. It further determined that the plaintiff had done so by initialing the box according to the directions therein and signing the contract. *Id.* at 228. It concluded that the practice was fair under "the basic tenets of contract law" that "[a] signer's failure to read or understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract." *Id.* It further found that the application of the rule in that case did not conflict with legislative intent behind the MMPA. *Id.* As it stands, the merger rule is still inapplicable in MMPA cases.

Here, there were oral misrepresentations in connection with the sale of the merchandise. Substantial evidence showed that Ms. Lehman told Ms. Kerr that she was enrolling in the MA Program, but the truth was that the MA Program was only available to those who had successfully completed the MOA Program. Yet, Ms. Lehman told her the two programs were one in the same. Ms. Lehman did not mention the additional $10,000 fee for the clinical portion. Thus, the fact that the documents signed and initialed by Ms. Kerr revealed that Ms. Kerr actually signed and paid for the MOA Program is of no consequence. Vatterott's second point is denied.

In the third point, Vatterott argues that the trial court erred in giving the MAI 4.01, general damages instruction, as opposed to the MAI 4.03, benefit-of-the-bargain instruction, as is required for MMPA cases. Vatterott claims that, if Ms. Kerr had a submissible MMPA case under the claim that she purchased her education for personal, family, or household purposes, "her testimony proves that the education had some value and her recessionary damage theory is wrong." Vatterott thus requests a new trial to

13

decide the damages and liability determination, as they are "closely intertwined as to make it unfair to limit a new trial to the issue of damages."

Instructional error review is *de novo.* *Peel v. Credit Acceptance Corp.*, 408 S.W.3d 191, 198 (Mo. App. W.D. 2013). We will reverse only if the error served to mislead, misdirect, or confuse the jury and thereby prejudiced the defendant. *Id.*

Broad MAI instructions are not to be used when there is one tailored to address the specific situation. *See Pace Prop., Inc. v. Am. Mfrs. Mut. Ins. Co.*, 918 S.W.2d 883, 887 (Mo. App. E.D. 1996). MAI 4.01 states, in pertinent part, "If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained . . . as a direct result of the occurrence mentioned in the evidence." (footnotes omitted). MAI 4.01 is purposefully worded to eliminate "the risk of the jury being improperly instructed on damages not supported by the record." MAI 4.01, *Committee Comment* (2002 Revision); *see also Hedgecorth v. Union Pac. R.R. Co.*, 210 S.W.3d 220, 228 (Mo. App. E.D. 2006). MAI 4.03 states:

> If you find in favor of the plaintiff, then you must award plaintiff such sum as you believe was the difference between the actual value of the (*describe property, such as "the furnace"*) on the date it was sold to plaintiff and what its value would have been on that date had the (*describe property*) been as represented by defendant.

The Notes on Use for MAI 4.03 state that this instruction should be used when the "plaintiff is suing for misrepresentation." However, it also states that MAI 4.01 "should

14

be used" when evidence supports other damages.[6] MAI 4.03, *Notes on Use*. Otherwise, applicable MAI instructions must be submitted as instructed. *Clark v. Mo. & N. Ark. R.R. Co., Inc.*, 157 S.W.3d 665, 671-72 (Mo. App. W.D. 2004) (internal quotation marks and citation omitted).

Vatterott claims that MAI 4.01 was an improper instruction because it did not instruct the jury to award Ms. Kerr the benefit of the bargain and served as a rescission damage instruction. Rescission damages are provided when a party rescinds the contract by returning the property to the seller, thus entitling that party to a refund. *Davis v. Cleary Bldg. Corp.*, 143 S.W.3d 659, 668 (Mo. App. W.D. 2004). Vatterott claims that because Ms. Kerr did not rescind the contract and instead obtained the education, the appropriate measure of damages was the benefit of the bargain. That method requires findings of the "actual value of the property" purchased and of "what its value would have been if it had been as represented." *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. App. E.D. 1994). As set forth above, MAI 4.03 does require the jury to make these findings.

Vatterott cites *Sunset Pools* to support its contention. In *Sunset Pools*, the defendant argued that the trial court erred in awarding actual damages because the plaintiff failed to prove damages. *Id.* at 885. Finding no guidance from section 407.025, the *Sunset Pools* court found that the MMPA claim based on misrepresentation was a

---

[6] The substantive law allows for MAI 4.01 when those damages are inadequate. "The Missouri Supreme Court has held that MAI and its Notes on Use are not binding to the extent they conflict with the substantive law. If an instruction following MAI conflicts with the substantive law, any court should decline to follow MAI." *Clark v. Mo. & N. Ark. R.R. Co., Inc.*, 157 S.W.3d 665, 671 (Mo. App. W.D. 2004) (internal quotation marks and citation omitted). Otherwise, applicable MAI instructions must be submitted as instructed. *Id.* at 671-72.

15

derivative of common law fraud and looked to applicable remedies. *Id.* at 886. It found

that in common law, the measure of damages employed is the benefit of the bargain when

the defrauded party decides not to rescind the contract. *Id.* It concluded that because

there was no evidence of the value of the spa at the time of purchase, the trial court erred

in awarding plaintiff the amount he paid for it because the plaintiff had not rescinded the

contract and the amount awarded did not account for the value of the item at the time it

was purchased. *Id.* It reversed and remanded the case solely on damages. *Id.*

Vatterott's reliance is misplaced. *Sunset Pools* is inapposite to this case because

the purchased good in question was tangible and had value shown by its intended use. *Id.*

Under common law fraud, the measure of damages . . . is not limited to the benefit-of-

the-bargain method "whe[n] the purchaser rescinds and returns the property received or

whe[n] he received nothing of value." *Salmon v. Brookshire*, 301 S.W.2d 48, 54 (Mo.

App. 1957). When either exception[7] applies, the buyer is entitled to "the amount . . . paid

with interest from the date of payment, plus incidental losses and expenses suffered as a

result of the seller's misrepresentations." *Id.*

Although several of our cases have since held that the appropriate method to

calculate damages in MMPA claims is the benefit of the bargain, they are not controlling

here. In those cases, the buyers did not take the position, as Ms. Kerr does, that the

misrepresented good was worthless. *See, e.g., Plubell*, 289 S.W.3d at 711, 715 (plaintiffs

---

[7] In *Hanes v. Twin Gable Farm, Inc.*, 714 S.W.2d 667, 670 (Mo. App. W.D. 1986), we stated that damages are not so limited to the benefit of the bargain when the plaintiff's request for damages includes consequential damages and the evidence shows that the seller misrepresented despite knowing the buyer's intended use of the good, which we noted were not present in *Salmon*.

16

claimed that product was worth *less* than the value represented); *Schoenlein v. Routt Homes, Inc.*, 260 S.W.3d 852, 855 (Mo. App. E.D. 2008) (finding reversible error in failing to submit MAI 4.03 in a case about the failure to include the warranty in a real estate purchase); *Strebler v. Rixman*, 616 S.W.2d 876, 877 (Mo. App. E.D. 1981) (finding reversible error in failing to submit MAI 4.03 to the jury in a misrepresentation case when plaintiffs used the boat); *but see Davis*, 143 S.W.3d at 670 (stating that, on remand, plaintiffs were entitled to actual damages on their MMPA claim and benefit-of-the-bargain damages on their fraudulent misrepresentation claim).

Here, Ms. Kerr's request for damages stated that the value of the education was zero; the evidence favorable to her showed that the value of the program was zero. Thus, an exception applies. The Missouri Supreme Court has recognized that "[i]n fraud cases where the benefit of the bargain rule is inadequate, other measures of damages may be used." *Dierkes v. Blue Cross & Blue Shield of Mo.*, 991 S.W.2d 662, 669 (Mo. banc 1999) (citing *Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281, 285 (8th Cir. 1984) (holding that submitting MAI 4.01 instead of MAI 4.03 was appropriate because the evidence did not show that the misrepresented commodities had value or an objective way by which to determine their actual value)). Thus, the trial court did not err in submitting Instruction 7.

Even if the submission were erroneous, Vatterott cannot show resulting prejudice. Vatterott claims that it was prejudiced because it was denied an opportunity to "tie" its argument that Ms. Kerr's education had value "directly to the instruction[]." As Ms. Kerr points out, Vatterott did argue that the education had value to Ms. Kerr and that the jury

17

should consider that in deciding the damages. Although it did not incorporate the instruction into that argument, the broad language of MAI 4.01 would have permitted Vatterott to do so. The trial court did not make a ruling preventing Vatterott from arguing that any awarded damages should be discounted by whatever value[8] Vatterott placed on the education to ensure that Ms. Kerr was "fairly and justly compensate[d]," as opposed to being unfairly and unjustly compensated. Notwithstanding, the jury could have determined the same award under the benefit-of-the-bargain method, if it agreed with Ms. Kerr that the value of her education was zero—a point that Vatterott concedes. Thus, Vatterott cannot show that the jury was misled, or confused by the submission of MAI 4.01 instead of MAI 4.03. Vatterott's third point is denied.

In the fourth point, Vatterott argues that the trial court erred in refusing to amend the punitive damages award because the amount awarded violates "substantive due process, in that it is more than 75 times the actual damages." Vatterott claims that any amount in excess of nine times the actual damages violates the due process under Supreme Court precedent. Vatterott thus requests that the punitive damages award be reduced to $250,000.

This challenge is constitutional. *Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC*, 361 S.W.3d 364, 372 (Mo. banc 2012). Thus, our review is *de novo*. *Id.*

We determine whether a punitive damages award is grossly excessive in violation of the constitution, by analyzing the amount under three factors. *Peel*, 408 S.W.3d at

---

[8] Vatterott claimed that Ms. Kerr's personal enjoyment, as well as her acceptance into St. Luke's program, gave value to her education, but it did not suggest a dollar figure.

18

212. The first factor is "the degree of reprehensibility of the defendant's misconduct." *Id.* The second factor is "the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award [proportionality]." *Id.* The third factor is "the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id.*

Vatterott claims that the degree of the reprehensibility of its conduct was low. "The reprehensibility of defendant's conduct is the most important consideration in determining the reasonableness of a punitive damages award." *Id.* (internal quotation marks and citation omitted). Our concern is with the defendant's misconduct and the harm to the plaintiff. *Estate of Overbey*, 361 S.W.3d at 373. The degree of reprehensibility is determined by considering five factors:

> [1] the harm was physical as opposed to economic; [2] the conduct evinced indifference or a reckless disregard of the health or safety of others; [3] the target of the conduct was financial vulnerability; [4] *the conduct involved repeated actions or was an isolated incident; and* [5] *the harm was the result of intentional malice, trickery, or deceit, or mere accident.*

*Id.* (internal quotation marks and citation omitted).

Vatterott claims that "three of the five factors" that show the likelihood of reprehensibility "point to no liability at all for punitive damages." We disagree. Although there was no evidence that the harm was physical or that it raised any health or safety issues, the evidence showed that Ms. Kerr was financially vulnerable. Ms. Kerr was a single mother who needed to work. The evidence also showed that many of the students were financially vulnerable.

19

Vatterott also claims that the law precludes the consideration of the evidence of the students who shared similar experiences to Ms. Kerr in determining the constitutionality of the punitive damages award. Repeated conduct has been interpreted to mean "evidence of other acts . . . [that are] factually as well as legally similar to the plaintiff's claim." *Heckadon v. CFS Enterprises, Inc.*, 400 S.W.3d 372, 383 (Mo. App. W.D. 2013) (internal quotation marks omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003)). The United States Supreme Court held that:

> Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible—although counsel may argue in a particular case that conduct resulting in no harm to others nonetheless posed a grave risk to the public, or the converse. Yet for the reasons given above, a jury may not go further than this and use a punitive damages verdict to punish a defendant directly on account of harms it is alleged to have visited on nonparties.

*Philip Morris USA v. Williams*, 549 U.S. 346, 355, 127 S.Ct. 1057, 1064 (2007).

Since that decision, the Missouri Supreme Court has recognized that plaintiffs are entitled to recover punitive damages based on the wrongs done to them rather than on "the alleged wrongs done to others." *Estate of Overbey*, 361 S.W.3d at 379 (citing *State Farm*, 538 U.S. at 419-23 and *Philip Morris USA*, 549 U.S. 356-57). However, the law "permit[s] considering the wrongfulness of the conduct and whether it is part of a pattern and practice of misconduct. " *Id.* at 373 (internal quotation marks and citation omitted).

The evidence showed that Vatterott had developed a pattern and practice of deception as to the MA Program. Ms. Lehman, a Vatterott admissions coordinator, induced Ms. Kerr into purchasing a seat with student loans through deceit that the

20

financed education would provide her with a job to repay it when, in actuality, the education from the MOA Program equipped her with a hope to repay it. Ms. Lehman and other admission coordinators had deceived other students in the same manner into believing they were enrolling in the MA Program, a degree program, when, in actuality, they were contractually enrolling in the MOA Program, a certificate program. Vatterott accepted more than $20,000 in student loans per student for the MOA Program, despite knowing the high likelihood that Ms. Kerr and other students would not be able to obtain a job that paid enough to repay the loan and cover their living expenses.

Vatterott's career services employee knew that the job market was tight for certificate holders, and Vatterott's advisory board members, comprised of prospective employers, suggested that the programs be combined because employers wanted employees who were trained for both the clinical and office portions. Notwithstanding, Vatterott continued to advertise two separate programs, although the MA Program depended on the student's success in the MOA Program. Vatterott also knew (prior to and after Ms. Kerr's discovery) about the affirmative misrepresentations to students who were enrolled in the MOA Program, but did not resolve the issue. Combining the programs into one degree program in 2010 reduced the tuition from approximately $33,100 to $29,750, a difference of almost $4,000. This was egregious conduct.

As to proportionally, Vatterott claims that the double-digit-ratio between the compensatory and punitive damages awards was improper because under the law an award is unconstitutional if it exceeds nine times the actual damages. Ms. Kerr asks this court to find, in line with other jurisdictions, that attorney fees are included in actual

21

damages, which would result in the punitive damages equaling only five times the amount of compensatory damages. Vatterott claims that attorney fees are excluded from the assessment used to determine the ratio, as set forth in Missouri precedent. Contrary to Vatterott's assertion, Missouri courts have not addressed whether attorney fees are considered actual harm for purposes of the proportionality assessment.[9] We decline to decide the matter.

The awards here clearly exceed a single-digit ratio but that does not render the punitive damages award unconstitutional, although a violation of due process is more likely found in such a case. *See Philip Morris*, 549 U.S. at 352 (citing *State Farm*, 538 U.S. at 425). "[F]ew awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 425. "Nonetheless, because there are no rigid benchmarks that a punitive damages award may not surpass, ratios greater than those [upheld by the Supreme Court] may comport with due process where a particularly egregious act has resulted in only a small amount of economic damages." *Id.* (internal quotation marks and citation omitted). "[I]n the case of small awards, due process does not prevent large ratios if necessary, given particular facts, to impose punishment and deter future misconduct." *Estate of Overbey., LLC*, 361 S.W.3d at 373-74. As we previously found, Vatterott engaged in egregious conduct. Vatterott collected more than $20,000, comprised primarily of

---

[9] Section 510.265.1 states, in pertinent part, "No award of punitive damages against any defendant shall *exceed the greater of* (1) Five hundred thousand dollars; or (2) Five times the net amount of the judgment awarded to the plaintiff against the defendant." *Estate of Overbey v. Chad Franklin Nat'l Auto Sales N., LLC*, 361 S.W.3d 364, 370-71 (Mo. banc 2012) (internal quotation marks and citation omitted). "The net amount of the judgment" includes attorney fees and compensatory damages. *See Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 165 (Mo. banc 2012).

student loans, from several students for years after it had been notified that certificate holders were not marketable and that several students were deceived into believing that they had enrolled in the degree program as opposed to the certificate program. The amount is thus justified to deter and punish, considering the egregious conduct and the small award.

Finally, Vatterott claims that the award is excessive because the MMPA provides a civil penalty that is significantly less than the punitive award against it. Thus, according to Vatterott, the penalty in this case would be $2,000 for the two aforementioned misrepresentations. Section 407.100.6 provides for a $1,000 fine for each violation to be collected by the attorney general on behalf of the State of Missouri. This civil penalty does not address misconduct similar to Vatterott's. Instead, it addresses violations of orders by the court of either injunctions or monetary damages. *See* §§ 407.100.5, 407.100.6. We also find unpersuasive Vatterott's comparison of its behavior to that found in section 570.140, a criminal statute that punishes deceptive business practices. Consequently, the punitive damages award was not "grossly excessive." Vatterott's fourth point is denied.

Ms. Kerr filed a motion for attorney fees on appeal, which we took with the case. In her motion, she asks that we award her appellate attorney fees and that we "reset the punitive damages at five times the net amount of the judgment" pursuant to section 510.265.1 (punitive damages cap) by adding the award of appellate attorney fees to the "net amount." Attorneys are entitled to attorney fees on appeal from MMPA actions. *See Berry v. Volkswagen Group of Am., Inc.*, 397 S.W.3d 425, 433 (Mo. banc 2013)

23

(citing section 407.025.2 as support for granting appellate attorney fees in an MMPA action). We believe "the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Id.* (internal quotation marks and citation omitted). We thus grant the request for attorney fees and remand the cause to the trial court to determine a reasonable award. As for the request to increase the capped amount of punitive damages, we deny it. Section 510.265.1 concerns "the net amount of the judgment awarded to the plaintiff," which our supreme court has interpreted to include an award of attorney fees in the trial context. *See Hervey v. Mo. Dep't of Corr.*, 379 S.W.3d 156, 165 (Mo. banc 2012). Ms. Kerr's arguments have not convinced us that we should extend this holding to include attorney fees on appeal.

## Conclusion

Therefore, we affirm the trial court's judgment and remand the cause to the trial court to determine the appropriate amount of appellate attorney fees and to enter judgment accordingly.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Judge

Witt, P.J., and Ellis, J. concur.

24



Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### AT INDEPENDENCE

JENNIFER KERR,              )
         Plaintiff(s),   )
vs.                      )     CASE NO.   1216-CV12385
                        )
                        )
VATTEROTT EDUCATIONAL   )     DIVISION 17
CENTERS, INC.              )
         Defendant(s). )

### JUDGMENT

This cause came to a bifurcated jury trial on June 10, 2013. Plaintiff Jennifer Kerr appeared by her attorneys Martin Meyers, Kevin Jones and Gene Graham, Jr., Defendant Vatterrott Education Centers appeared by their attorneys James Monafo and Elizabeth Bozicevic.

A jury was seated on June 10, 2013, and evidence was presented through June 14, 2013. Following the close of evidence and closing arguments by each party (which occurred on June 14, 2013), the jury recessed for deliberations.

On June 14, 2013, the jury returned its verdict as follows:

On the claim of Plaintiff Kerr for violations of the Missouri Merchandising Practices Act against Defendant Vatterott, the jury found for Plaintiff and assessed actual damages in the amount of twenty-seven thousand, six hundred seventy six dollars and ninety six cents ($27, 676.96). The jury further found that Defendant was liable for punitive damages.

On the issue of punitive damages, the jury assessed damages in the amount of thirteen million dollars. ($13,000,000.00).

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

Per the verdict reference above, on the claim of violations of the Missouri Merchandising Practices Act against Defendant Vatterott, judgment is entered in favor of Plaintiff in the amount of $27,



PLAINTIFF'S
EXHIBIT
5



676.96 in actual damages and $13,000,000.00 in punitive damages. Costs are assessed against the

Defendant.

6-17-13
_____
DATE

*Jack Grate*
_____
JACK GRATE, Circuit Judge

**Certificate of Service**

This is to certify that a copy of the foregoing was hand delivered/faxed/emailed/mailed and/or sent through the eFiling system to the following: James Monafo and Martin Meyers on 6/18/2013.

_____
Judicial Administrative Assistant/Law Clerk

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al.     )
                       )
       Plaintiffs,      )
                       )
     vs.               )   Case No. 1316-CV27529
                       )
MISSION GROUP KANSAS, INC., et al.   )
                       )
       Defendants.     )

### AFFIDAVIT OF CHRISTI HAMPTON

STATE OF MISSOURI    )
                      )   SS.
COUNTY OF JACKSON   )

COMES NOW Plaintiff Christi Hampton, and for her affidavit in support of her Motion for Order of Protection states and attests:

1.     I am a resident of Missouri, of sound mind and have personal knowledge of the information contained in this affidavit.

2.     I have filed a lawsuit in the Circuit Court of Jackson County, Missouri, alleging that I was defrauded by my school, Wright Career College.

3.     Since I was nearly finished with my program at WCC when my suit was filed, I decided to finish the program and graduate, since my financial obligation for the time already spent there was so significant, and because I did not want to be a "quitter."

4.     During the last session or semester of my coursework at WCC, graduation was drawing near, and yet I had heard nothing regarding the ceremony schedule, and related topics.

5.     Even after my final semester classes were complete, I had heard nothing.

6.     I contacted WCC asking simply for the particulars about graduation, and was told to email a Mr. Nick Foley, which I did.

**PLAINTIFF'S EXHIBIT**
6

7.      At that time, I was told I simply needed to come into the office, and meet with a Mr. Foley, who would then aid in finalizing my graduation papers.

8.      I needed to graduate on time, or my work would be in jeopardy because I could not continue my class load and my work load.

9.      Until I met with Mr. Foley, no one told me I would have to complete anything related to a questionnaire or survey about my time at WCC.

10.     I was specifically and repeatedly told that I was **required** to fill out all the paperwork, if I did not complete all the paperwork presented to me by Mr. Foley at that time, I would not be allowed to graduate.

11.     I had no opportunity to confer with my attorney before completing this paperwork.

12.     Had I been given the opportunity to speak with my lawyer, I would have taken these papers with me, and talked to him before completing them because I did not understand them.

13.     I was never told that any of that paperwork would in any way be related to my lawsuit, and I did not understand the paperwork to be asking me any questions related to the deception, lies and misrepresentations about which I have brought this suit.

14.     Neither Mr. Foley, nor anyone else, ever explained to me the various categories or departments of WCC that the paperwork was inquiring about, and I do not know what people belong to what department or division within WCC.

15.     Even after my deposition on July 30, 2014, I have continued to receive multiple contacts from representatives of Wright Career College, including the attached emails, asking me to re-enroll in classes, and to fill out surveys about my experience while enrolled at WCC.

16. I do not know what employee(s) or representative(s) of WCC constitute the Admissions department, or any other department or division, with the exception of my teachers, either at the time of enrollment, the time I completed the papers at issue, or currently.

17. At no time did I understand that any survey or paperwork I was required to sign by Mr. Foley was applicable to the promises I was made before I enrolled, and I never answered any such question he required of me with these in mind.

18. As I have already testified, I was made specific promises and representations by WCC representatives before I enrolled at WCC, and I enrolled there relying upon those promises and representations.

FURTHER AFFIANT SAYETH NOT

_Christi Hampton_
Christi Hampton

Subscribed and sworn before me, the undersigned Notary Public, in and for said County and State, this 2nd day of September, 2014.

_Heather M Tucker_
Notary Public

My Commission Expires:

Jan. 13, 2015

HEATHER M. TUCKER
Notary Public-Notary Seal
STATE OF MISSOURI
JACKSON COUNTY
Commission # 11959859
My Commission Expires Jan. 13, 2015

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA, et al.         )
                                       )
        Plaintiffs,            )
                                       )
        vs.                      )     Case No. 1316-CV27529
                                       )
MISSION GROUP KANSAS, INC., et al. )
                                       )
        Defendants.        )

## AFFIDAVIT OF ATTORNEY ANDREW K. SMITH

STATE OF MISSOURI    )
                        )    SS.
COUNTY OF JACKSON   )

    Andrew K. Smith, being first duly sworn, states the following:

    1.     I am one of the attorneys of record for the Plaintiffs, in the above-entitled action.

    2.     This affidavit is offered in support of Plaintiffs' Motion for Order of Protection, under Rule 56.01(c).

    3.     I have personal knowledge of the matters set forth herein.

    4.     On March 6, 2014, after learning that WCC and its representatives had begun taking "surveys" of my clients, asking specific questions mirroring the allegations of the pending lawsuit, I wrote to counsel for defendants, explained what was happening, and asking them to cease this practice. (See Exhibit 1 to the contemporaneously filed Motion for Protective Order.)

    5.     Counsel for defendants inquired about the surveys and on the same day promised me that such conduct as to named Plaintiffs in this case was a "mistake" and that it would no longer occur. (Id.)

    6.     In reliance upon the representations of counsel that such attempted inquiries of my clients would end, I did not seek the Court's formal protection for my clients at that time.

**PLAINTIFF'S EXHIBIT 1**

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

7.     I did not know until July 30, 2014, during the course of Ms. Hampton's deposition that in fact the practice had continued, and had been made a requirement before Ms. Hampton could even graduate, some weeks **after** I received Mr. Loring's agreement that surveys of Plaintiffs in this case would end.

8.     Even after the deposition of July 30, 2014, Ms. Hampton received two more attempts to speak to her directly from WCC, through email messages, once on August 7, 2014 – *the very day WCC filed a motion to compel her testimony on these documents* -- and again on August 11, 2014.    (True and accurate copies of these attempts are attached to the contemporaneously filed Motion for Protective Order, as Exh. 8.).

FURTHER AFFIANT SAYETH NOT.

_____
Andrew K. Smith


     Subscribed and sworn before me, the undersigned Notary Public, in and for said County and State, this 2nd day of September, 2014.


_____
Notary Public


My Commission Expires:

_____

HEATHER M. TUCKER
Notary Public-Notary Seal
STATE OF MISSOURI
JACKSON COUNTY
Commission # 11959859
My Commission Expires Jan. 13, 2015

---------- Forwarded message ----------
From: "Alex Vaca" <Avaca@wrightcc.edu>
Date: Aug 7, 2014 9:40 AM
Subject: Please Call
To: "Alex Vaca" <Avaca@wrightcc.edu>
Cc:

# Hello!

I noticed you are no longer attending school. Lets' get you back into class so you can GRADUATE! We now have the flexibility that will allow you to attend school as little as one day a week!

Please call me at <u>913-385-7700 ext. 2024</u>, or e-mail <u>avaca@wrightcc.edu</u> so we can discuss your options. We have classes starting soon!

Alex Vaca

1



---------- Forwarded message ----------
From: "Alex Vaca" <Avaca@wrightcc.edu>
Date: Aug 11, 2014 4:28 PM
Subject: Please Call
To: "Alex Vaca" <Avaca@wrightcc.edu>
Cc:

Hello!

I noticed you are no longer attending school. Lets' get you back into class so you can GRADUATE! We now have the flexibility that will allow you to attend school as little as one day a week!

Please call me at 913-385-7700 ext. 2024, or e-mail avaca@wrightcc.edu so we can discuss your options. We have classes starting soon!

1

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Alex Vaca

Admissions Representative



10700 Metcalf Avenue

Overland Park, KS 66210

Email: avaca@wrightcc.edu

Phone: 913-385-7700 ext. 2024

Fax: 913-385-1711

" An investment in knowledge pays the best interest." - Benjamin Franklin

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

1

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE


STEFANIE AYALA, et al.,        )
                              )
          Plaintiffs,          )
                              )
v.                            )  No. 1316-CV27529
                              )
MISSION GROUP KANSAS,         )
INC., et al.,                 )
                              )
          Defendants.          )



VIDEOTAPED DEPOSITION OF CHRISTI
HAMPTON, a Plaintiff, taken on behalf of the
Defendants before Joan S. Nunnink, CCR No. 543,
CSR, pursuant to Notice on July 30, 2014 at the
offices of Humphrey, Farrington & McClain, P.C.
221 West Lexington Avenue, Suite 400,
Independence, Missouri 64050.

**PLAINTIFF'S
EXHIBIT
9**

Cooper Moeller, LLC
816.474.3376                                        depo@coopermoeller.com

July 30, 2014             Christi Hampton

Stefanie Ayala, et al. v. Mission Group Kansas, Inc., et al.

**Page 1**

```
 1      IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
             AT INDEPENDENCE
 2
 3
 4      STEFANIE AYALA, et al.,  )
                                 )
 5           Plaintiffs,         )
                                 )
 6      v.                       )  No. 1316-CV27529
                                 )
 7      MISSION GROUP KANSAS,     )
        INC., et al.,            )
 8                               )
             Defendants.         )
 9
10
11
12
13
14
15
16
17
18          VIDEOTAPED DEPOSITION OF CHRISTI
19      HAMPTON, a Plaintiff, taken on behalf of the
20      Defendants before Joan S. Nunnink, CCR No. 543,
21      CSR, pursuant to Notice on July 30, 2014 at the
22      offices of Humphrey, Farrington & McClain, P.C.
23      221 West Lexington Avenue, Suite 400,
24      Independence, Missouri 64050.
25
```

**Page 2**

```
 1          A P P E A R A N C E S
 2      FOR THE PLAINTIFFS:
 3          Mr. Andrew K. Smith
            HUMPHREY, FARRINGTON & McCLAIN, P.C.
 4          221 West Lexington Avenue
            Suite 400
 5          Independence, Missouri 64050
            816.836.5050
 6          aks@hfmlegal.com
 7      FOR THE DEFENDANTS:
 8          Mr. James F. Monafo
            Ms. Lindsay McClure-Hartman
 9          HUSCH BLACKWELL LLP
            190 Carondelet Plaza
10          Suite 600
            St. Louis, Missouri 63105
11          314.480.1500
            jim.monafo@huschblackwell.com
12          Lindsay.McClure-Hartman@huschblackwell.com
13          Ms. Stacia G. Boden
            Corporate Counsel
14          MISSION GROUP KANSAS, INC.
            Wright Career College
15          10720 Metcalf Avenue
            Overland Park, Kansas 66210
16          913.396.5453
            sboden@wrightcc.edu
17
18      ALSO PRESENT:
19          Mr. John Mucci
            Mr. Justin Bond, Videographer
20
21
22
23
24
25
```

**Page 3**

```
 1                  I N D E X
 2      WITNESS:                      PAGE:
 3      CHRISTI HAMPTON
 4          Examination by Mr. Monafo        5
 5          Examination by Mr. Smith       274
 6          Examination by Mr. Monafo      293
 7              E X H I B I T S
 8      NO:   DESCRIPTION:           MARKED:
 9      83    WCC Student Transcript      70
10      84    Tuition Reimbursement       87
              E-mail string
11
12      85    Acknowledgement of Receipt of  113
              Catalog, Transfer of Credits
13      86    WCC Tuition Contract        163
14      87    WCC Career Questionnaire    177
15      88    Supportive Family &         179
              Friends Form
16
17      89    GEHA Performance Appraisal  184
18      90    GEHA Communication Report   188
19      91    GEHA Personnel Change and   189
              Addition Notice
20      92    GEHA Application            191
21      93    GEHA Personnel Change and   195
              Addition Notice
22
23      94    E-mail to Elizabeth Taylor  196
24      95    3/27/14 E-mail to Nick Foley  216
25      96    ACICS Placement Verification  221
              Program
```

**Page 4**

```
 1          EXHIBITS, CONTINUED
 2      NO:    DESCRIPTION:          MARKED:
 3      97     E-mail from Andy Smith      270
               To Martin Loring
 4
               
 5      98     E-mail from Martin Loring   270
               To Andy Smith
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21      Reporter's Note:  Original Exhibits were retained
               to be filed with the original transcript.
22
23
24
25
```

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

5

1          (Deposition commenced at 9:02 a.m.)
2          THE VIDEOGRAPHER: Good morning.
3    Today is July 30th, 2014. We'll go on the record
4    at 9:02 a.m. Today we'll take the videotape
5    deposition in case number 1316-CV27529. Counsel,
6    please state your appearance and affiliations for
7    the record.
8          MR. SMITH: Andy Smith on behalf of
9    plaintiff.
10          MR. MONAFO: This is Jim Monafo on
11    behalf of the defendant, Wright Career College.
12    Also I'm joined by Lindsey McClure-Hartman,
13    Hartman, sorry, and Stacy Boden, and also she's
14    the general counsel for the company. And John
15    Mucci is here also, President of the School.
16          THE VIDEOGRAPHER: Thank you.
17    Would you please swear the witness.
18          CHRISTI HAMPTON,
19    a Plaintiff, being first duly sworn, testified
20    under oath as follows:
21          EXAMINATION
22    BY MR. MONAFO:
23    Q.  Ma'am, do you understand you're here
24    giving a deposition in a lawsuit you filed
25    against Wright Career College?

6

1    A.  Yes.
2    Q.  And you understand you're under oath
3    here?
4    A.  Yes.
5    Q.  And under penalties of perjury?
6    A.  Yes.
7    Q.  And why are you suing Wright Career
8    College?
9    A.  I feel that's for the jury to decide,
10    but I have faith in my lawyer and feel that
11    justice needs to be done right.
12    Q.  Okay. And that's fine, I think we would
13    agree with you, we have faith in the jury system
14    as well, but the question is, why did you bring
15    this lawsuit?
16    A.  Mainly from the time that I have wasted
17    away from my family, the large amounts of debt
18    that I have inquired now, the degree I feel I did
19    not receive.
20    Q.  Okay. You did receive a, a degree from
21    Wright Career College; correct?
22    A.  Yes.
23    Q.  A piece of paper?
24    A.  Yes.
25    Q.  And it is an associates degree; right?

7

1    A.  Yes.
2    Q.  Acknowledged by the state of Kansas?
3          MR. SMITH: Foundation.
4    Q.  (By Mr. Monafo) Do you know?
5    A.  I believe so.
6    Q.  Okay. So who, who does not -- when you
7    say you didn't get the degree you thought you
8    were going to get or whatever it is you said
9    exactly, tell me what you mean by that.
10          MR. SMITH: Form.
11    A.  I do not feel that I got the training
12    that I was promised to continue with that degree.
13    Q.  (By Mr. Monafo) Okay. So you do not
14    feel that you got the training that you were
15    promised. Any other reason why you're suing
16    Wright Career College?
17    A.  Other than the time that I have spent
18    away, the time that I feel that I have wasted to
19    better my education, and the fact that I cannot
20    use it at this point.
21    Q.  You cannot use what, your degree or
22    your --
23    A.  The degree, no.
24    Q.  And why can you not use your degree?
25    A.  I don't have the education to take to

8

1    better myself somewhere.
2    Q.  And when did you realize you were going
3    to sue Wright Career College?
4          MR. SMITH: Answer that separate
5    and apart from anything you spoke with me about
6    or with.
7    Q.  (By Mr. Monafo) Yeah, just to be clear,
8    I'm not asking you to disclose any communications
9    you've had with your counsel, those would be
10    privileged and I'm not entitled to know that and
11    I don't want to know that, so I'm not asking you
12    about that. I'm asking about when you, Christi
13    Hampton, came to a conclusion in your mind that
14    you felt you had been wronged and you were going
15    to sue Wright Career College?
16          MR. SMITH: And to that I will
17    object to the foundation as to exact time, but go
18    ahead.
19    A.  Most likely towards the end of --
20    Q.  (By Mr. Monafo) Toward --
21    A.  -- my graduation.
22    Q.  Okay. And what was your -- strike that.
23    Was there a last straw, was there something that
24    motivated you to want to sue? What happened?
25    A.  There was many things that led up to

Cooper Moeller, LLC
816.474.3376                                    depo@coopermoeller.com
Case 4:14-cv-00885-BP    Document 1-2    Filed 10/08/14    Page 90 of 294

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Stefanie Ayala, et al. v. Mission Group Kansas, Inc., et al.

| 213 |
| --- |

1  　　　　MR. SMITH: Okay, are you ready for
2  me?
3  　　　　THE REPORTER: I'm ready.
4  　　　　MR. SMITH: My objection was and is
5  objection to the form of the question, objection
6  that it misstates her previous testimony. It
7  also is an inaccurate and wrongful summary of the
8  document you're referring her to.
9  　　　　MR. MONAFO: Okay, time. Let's
10  move on. She's already answered, so...
11  　　Q. (By Mr. Monafo) You said but, he cut
12  you off, I don't know if I should, if I need to
13  let you finish it or not actually, so why don't
14  we move on to another question.
15  　　　　MR. SMITH: Would you like to
16  finish it?
17  　　**A. I was just going to say that I don't**
18  **feel that putting that on my resume is what got**
19  **me the job.**
20  　　Q. (By Mr. Monafo) Okay, I understand
21  you're speculating about that because you said
22  earlier you don't know.
23  　　**A. I don't know.**
24  　　Q. Right.
25  　　**A. But I also had asked for extra**

| 214 |
| --- |

1  **assistance in other things to get me that**
2  **position.**
3  　　Q. Okay. And the fact of the matter is
4  we're going to have to talk to Miss Parks to find
5  out exactly what they considered when they hired
6  you, gave you this position; correct?
7  　　**A. Yes.**
8  　　Q. And it's also true that since the time
9  you filed the lawsuit, you have not gone back and
10  said anything to Miss Parks about, hey, you know,
11  my attitude about Wright has changed, you should
12  know that I don't think this education was worth
13  anything; you haven't said anything remotely like
14  that to Miss Parks; right?
15  　　**A. No.**
16  　　Q. Okay. What is the HCPC that's listed on
17  your resume? "I have an understanding of medical
18  terminology, HCPC and ICD-9 books."
19  　　**A. It's HCPC, and I believe that that's the**
20  **book that we use for drugs, drug diagnosis book.**
21  　　　　MR. SMITH: She told you about it
22  earlier.
23  　　Q. (By Mr. Monafo) Does that come in, is
24  that something that comes up ever in your current
25  position?

| 215 |
| --- |

1  　　**A. No.**
2  　　Q. When you -- hold on one second. When
3  you -- you told us earlier you applied for a
4  position that you didn't get in June of 2014, do
5  you remember?
6  　　**A. Yes.**
7  　　Q. And I assume your testimony is the same
8  with that one, you don't know exactly, you don't
9  know why they didn't give you that job?
10  　　**A. No, I do not.**
11  　　Q. Did you submit a resume with that
12  application?
13  　　**A. I don't remember.**
14  　　Q. Have you changed your resume at all to
15  remove Wright Career College?
16  　　**A. I have not.**
17  　　Q. Any reason why you have not?
18  　　**A. I haven't applied for anything lately.**
19  　　Q. So the last thing you applied for was
20  this June of 2014 position that you're talking
21  about?
22  　　**A. Yes, and it was an internal position.**
23  　　Q. Right. But as per company policy, you
24  would have filled out some sort of document to
25  make the application official; right?

| 216 |
| --- |

1  　　**A. I filled out the application like they**
2  **have on page 2 of document 93.**
3  　　Q. And I think you said you don't remember
4  whether you gave them a resume or not at this
5  time?
6  　　**A. I don't remember, no.**
7  　　Q. But they certainly would already have
8  the resume in your file as we know because that's
9  where I got it?
10  　　**A. Yes.**
11  　　Q. After you graduated, did you, from
12  Wright Career College, did you go back and talk
13  to anyone at, at the school? Did you go back on
14  campus at all for any reason?
15  　　**A. Before graduation or after graduation?**
16  　　Q. Well, let's start with after graduation?
17  　　**A. No.**
18  　　Q. How about before graduation but after
19  your last class?
20  　　**A. I talked to Nick Foley.**
21  　　Q. And why did you talk to Nick Foley?
22  　　**A. I had to fill out my exiting papers, get**
23  **details on when graduation was.**
24  　　Q. And let's look at that. We got an
25  e-mail on that, too, show you that to kind of

Cooper Moeller, LLC

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

217

1  refresh your memory here.
2       (Hampton Deposition Exhibit 95 was
3  marked for identification.)
4    Q.  (By Mr. Monafo)  We're closing in on
5  100.  This is Exhibit 95.  I will hand you that.
6  Miss Hampton, I have placed before you what I
7  have marked as Exhibit 95, and this appears to be
8  an e-mail or some sort of electronic
9  communication between you and Nick Foley; is that
10  fair to say?
11    A.  Yes.
12    Q.  Was there -- is there some reason you
13  remembered this or you just remembered it or --
14    A.  I remember it because I sent it to him
15  after I graduated, or was graduating I should
16  say, because nobody had contacted me when
17  graduation was, nothing.  I had heard nothing
18  since my last day of school.  So I reached out to
19  Nick to find out details.
20    Q.  Okay.  And is this an e-mail that you
21  wrote that is reflected on Exhibit 95?
22    A.  Yes.
23    Q.  And did you write this from your, your
24  07 e-mail account?
25    A.  Yes.

218

1    Q.  What was your relationship like with
2  Nick Foley?
3    A.  I had seen him, I don't know him other
4  than the one time that I got to meet him for
5  exiting paperwork.
6    Q.  Okay.  And you tell him you were a
7  former student at Wright, I finished on February
8  20th.  Was that your last day of actual classes,
9  February 20th?
10    A.  Yes.
11    Q.  "I need to find a time in the evening
12  that I can come in and sign my documents to be
13  completed with my degree."  Is that what you
14  said; right?
15    A.  Yes.
16    Q.  And then the next sentence says, "I am
17  under the understanding that I owe a balance,
18  which is fine, but unsure on who or where I need
19  to pay that at, so maybe we can find out about
20  that as well."  Did I read that correctly?
21    A.  Yes.
22    Q.  And when you said, "I'm under the
23  understanding that I owe a balance, which is
24  fine," what did you mean by that, which is fine?
25    A.  Well, if you owe something, you pay it.

219

1  I hadn't been explained as to why I owed money,
2  but I was under the understanding that I owed
3  money.
4    Q.  And when did you first, and just to be
5  clear, this is money you owed directly to the
6  school, not a student loan or grant or anything?
7    A.  This is not a student loan, no, this is
8  directly to the school.
9    Q.  And do you know what the circumstances
10  were which led to you owing money directly to the
11  school?
12       MR. SMITH:  Foundation, go ahead.
13    A.  They said I ran out of loan money.
14    Q.  (By Mr. Monafo)  And do you know why you
15  ran out of loan money?
16    A.  I do not.
17    Q.  I think you told me earlier that --
18  well, when did you first find out that there was
19  a balance and you had run out of loan money?
20    A.  A week before I left, so a week before
21  February 20th.
22    Q.  So that, we can agree that this was well
23  after you had filed the lawsuit?
24    A.  Yes.
25    Q.  Okay.  Are you, are you as you sit here

220

1  today, are you disputing the debt that you owe
2  directly to Wright Career College?
3       MR. SMITH:  Form and foundation.
4  You can answer.
5    A.  I'm not necessarily disputing, but I
6  don't exactly know how it's possible.
7    Q.  (By Mr. Monafo)  Okay.  And in fact you
8  did, then, after you sent this e-mail, Mr. Foley
9  responded and you guys set up a meeting and you
10  went down and met with him?
11    A.  Yes.
12    Q.  And did you -- and when you went and met
13  with the school, that was sometime in April of
14  2014?
15       MR. SMITH:  Foundation.
16    Q.  (By Mr. Monafo)  Do you recall?
17    A.  I believe it was before April, but I
18  wouldn't know the exact date, no.  I had to come
19  up there twice.
20    Q.  Okay.  Did you meet with anybody
21  connected with the financial aid office at Wright
22  Career College?
23    A.  I met a lady, yes, on the day that I met
24  Nick Foley to finish my paperwork.  I believe it
25  was the second time that I had been up there.

Cooper Moeller, LLC
816.474.3376                                          depo@coopermoeller.com
Case 4:14-cv-00885-BP     Document 1-2     Filed 10/08/14     Page 92 of 294

Stefanie Ayala, et al. v. Mission Group Kansas, Inc., et al.

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

**221**

1    Q.  Do you remember her name?
2    **A.  I do not.**
3    Q.  And did you discuss with the financial
4    aid representative from Wright Career College how
5    it came about that you had this debt, which I
6    believe was right around, it was $900 and
7    something dollars; right?
8    **A.  Something like that, yes.**
9    Q.  Did she explain to you how that
10   happened?
11   **A.  She showed me copies of where my loan**
12   **was disbursed, but that was about it.**
13   Q.  Okay.  Did you tell her that you were
14   accepting her explanation for what she was
15   providing?
16   **A.  I had tried to dispute it three times**
17   **prior to that day, so no, I did not bring it up.**
18   Q.  You didn't bring it up at all?
19   **A.  No.**
20   Q.  Okay.  All right, let me -- did you
21   agree to a payment schedule?
22   **A.  I did sign a payment schedule, yes.**
23   Q.  Okay.  Second here.
24        (Hampton Deposition Exhibit 96 was
25   marked for identification.)

**222**

1    Q.  (By Mr. Monafo) Let's go to Exhibit 96.
2    Provide your counsel with a courtesy copy, and
3    this is 96; correct?
4    **A.  Yes.**
5    Q.  All right.  Is this your signature on
6    the front page of Exhibit 96?
7    **A.  Yes.**
8    Q.  Is this -- is your handwriting appear
9    anywhere else on the document?
10   **A.  It is all over the document except for**
11   **Career Service/Management signature.**
12   Q.  Okay.  So you filled out the front page
13   of Exhibit 96?
14   **A.  Yes.**
15   Q.  Let's just go through this document.  It
16   says -- did you recall where you were when you
17   filled this document out?
18   **A.  Nick Foley's office.**
19   Q.  And was it April 10th, 2014 when you
20   filled this document out?
21   **A.  Yes.**
22   Q.  And the document says at the top, "By
23   completing and signing this form or authorizing
24   school official to complete it on your behalf,
25   you agree with the information provided.  Please

**223**

1    note that you may be contacted by the Accrediting
2    Council for Independent Colleges and Schools
3    (ACICS) in order to verify the information
4    provided."  Did I read that correctly?
5    **A.  Yes.**
6    Q.  Did you read that before you filled out
7    this document?
8    **A.  No.**
9    Q.  Okay.  Have you ever been contacted by
10   the ACICS?
11   **A.  No.**
12   Q.  And then it says, "I, Christi Hampton,"
13   and you wrote in Christi Hampton where it says
14   that; right?
15   **A.  Yes.**
16   Q.  So you read that, the letter I just
17   before it; right?  Because you would have had to
18   know to put your name in there; right?
19   **A.  Yes.**
20   Q.  "Attest that the training I have
21   received in the Medical Billing program at
22   Wright/Overland Park, located in Overland Park,
23   Kansas was beneficial in obtaining or maintaining
24   the position of data technician at GEHA."  Did I
25   read that correctly?

**224**

1    **A.  Yes.**
2    Q.  And you filled that out, you filled out
3    the, where the -- the part that I just read, some
4    of that is typed, some of that is in printed
5    lettering; correct?
6    **A.  Yes.**
7    Q.  And you printed, you're the one who
8    completed the printing; right?
9    **A.  Yes.**
10   Q.  And so you had to read that before you
11   filled in the words; right?  How else would you
12   know how to fill in the words?
13   **A.  It tells you what to fill-in.**
14   Q.  Okay.  Where does it tell to you put
15   data technician at GEHA in?
16   **A.  It says, position title.**
17   Q.  Okay.
18   **A.  And employer's name.**
19   Q.  Okay.  And so did you read the typed
20   part that's, where it's not printed?
21   **A.  No.**
22   Q.  So you just, how did you know to put
23   data technician in there?
24   **A.  I read what it says.  It says full name,**
25   **I put my full name.**

225

1  Q.  Okay.
2  A.  **That's all I read.**
3  Q.  And then it says, program; right?
4  A.  **Yes.**
5  Q.  You put in medical billing; so how did
6  you know to put Wright/Overland Park it says
7  underneath there?
8  A.  **Because that's the school I attended.**
9  Q.  Okay.  And then there's a -- there's a
10 box, or there's a line, underneath the line it
11 says, position title.
12     MR. SMITH:  Can I -- we can do this
13 off the record or on the record, I don't care.
14     MR. MONAFO:  Do what?
15     MR. SMITH:  What I'm going to say
16 to you.
17     MR. MONAFO:  Oh, okay.
18     MR. SMITH:  This is entirely
19 inappropriate, I think sanctionable.  It's a
20 deposition of a client your client knew was a
21 plaintiff against them in a lawsuit.  I was not
22 present.  I was not told about it.  I was not
23 notified.  I have warned you in an e-mail before
24 that your client was doing this, and Mr. -- you
25 or Mr. Loring, one of you, told me you would stop

226

1  this, that you got ahold of them immediately and
2  it was stopped.  So if you're going use this in a
3  deposition, I am going to ask for all available
4  remedy, including sanctions against your client
5  and your firm if I knew, if you -- if I learn
6  that you knew about it.  It's entirely
7  inappropriate.  I have never seen such an
8  egregious attempt to depose somebody outside of
9  counsel's presence on the very topic that you
10 know are in the lawsuit.
11     MR. MONAFO:  Okay.  Finished?
12     MR. SMITH:  If you don't care about
13 that, go ahead.
14     MR. MONAFO:  I don't, I don't,
15 because I had nothing to do with it, so but --
16     MR. SMITH:  You did know about it,
17 though.  You did know about it.  Your firm knew
18 that this was happening because I have it in an
19 e-mail and it was before this --
20     MS. BODEN:  No, Andy, that e-mail
21 that --
22     MR. SMITH:  You can't talk.  You
23 can't talk.
24     MS. BODEN:  I actually can, I'm an
25 attorney of record and I'm at this deposition and

227

1  I can talk.
2      MR. SMITH:  Only one attorney can
3  talk on behalf of the parties.  If you don't know
4  that, then you need to learn it.  You have to sit
5  there.
6      MR. MONAFO:  Oh, Andy.
7      MS. BODEN:  State your objection to
8  my statement, Andy, because --
9      MR. SMITH:  No, I will end the
10 deposition.
11     MS. BODEN:  That e-mail --
12     MR. SMITH:  I will end the
13 deposition.
14     MS. BODEN:  That e-mail had
15 absolutely nothing to do with --
16     MR. SMITH:  So you in fact knew
17 this was happening as counsel of record?
18     MS. BODEN:  No, I did not know that
19 was happening.
20     MR. SMITH:  You as general counsel
21 for this school did not know that this form was a
22 practice that went on?  Put that on the record.
23     MS. BODEN:  That's not your
24 question.
25     MR. SMITH:  I'm asking you that

228

1  question.
2      MS. BODEN:  I'm not being deposed.
3      MR. MONAFO:  Right.  We're not here
4  to answer questions.
5      MR. SMITH:  Okay.
6      MR. MONAFO:  If you -- as you just
7  pointed out, you have remedies.  I suggest you
8  exercise the remedies you believe you have
9  available to you.
10     MR. SMITH:  Here's what we're going
11 to do.
12     MR. MONAFO:  Sure.
13     MR. SMITH:  We're not going to talk
14 about this document anymore today.
15     MR. MONAFO:  Why not?
16     MR. SMITH:  If you want to ask her
17 more questions today in her deposition not about
18 this document, that's fine.  I'm not going to
19 have her answer anymore about it.  And if you
20 want to go to Judge Garrett and explain that to
21 him and see if he wants us to come back, we can,
22 but it ain't happening today.
23     MR. MONAFO:  Oh, yeah, if it's not
24 happening today --
25     MR. SMITH:  So we can end the whole

Cooper Moeller, LLC
816.474.3376                                    depo@coopermoeller.com
Case 4:14-cv-00885-BP     Document 1-2     Filed 10/08/14     Page 94 of 294

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

229

1  thing and come back.
2          MR. MONAFO:  Adjourn?
3          MR. SMITH:  Actually, no, I'm
4  offering to continue the deposition on all items
5  except for this document or any other document
6  that occurred during that time.
7          MR. MONAFO:  Well, I'm not
8  agreeable today because you're dictating to me,
9  then, the order, my order of proof and the order
10  in which I want to deal with things.  I mean, you
11  have known about this document, we produced it a
12  long time ago.
13          MR. SMITH:  No, no, you didn't.
14          MR. MONAFO:  It's got a Bates label
15  WCC --
16          MR. SMITH:  Yeah, right, I haven't
17  asked for documents yet.
18          MR. MONAFO:  Oh, that's right.
19  Okay, so you haven't because you didn't ask for
20  it, but this document was prepared in --
21          MR. SMITH:  You just said you
22  didn't know anything about it.
23          MR. MONAFO:  I know that Miss
24  Hampton just told me that she prepared this
25  document in Nick Foley's office.

230

1          MR. SMITH:  I know, that's what
2  we're talking about.
3          MR. MONAFO:  Let me, let me -- let
4  me get a little more background on it.
5          MR. SMITH:  No.
6          MR. MONAFO:  I just want to ask
7  about the background.
8          MR. SMITH:  Ask Foley for the
9  background.
10          MR. MONAFO:  Okay.  All right.
11  Thank you, I will do that.  But here's the,
12  here's the problem as I see it.
13          MR. SMITH:  I'm going to move to
14  strike the pleadings is what I'm going to do.
15          MR. MONAFO:  Okay, that's fine.  Do
16  whatever you think you have to do, whatever
17  remedy you think is available to you.  That's
18  what you should do, but you should do that in the
19  normal course of, of the case.
20          MR. SMITH:  Not in this regard.
21          MR. MONAFO:  Okay.  So you can, you
22  have -- another remedy would be to instruct her
23  not to answer any of my questions about this
24  document.
25          MR. SMITH:  And I am.

231

1          MR. MONAFO:  Okay.  So let's just
2  make a record on that so we know what we're
3  dealing with.
4      Q.  (By Mr. Monafo)  Miss Hampton, was there
5  anyone else in the room with you and Mr. Foley?
6          MR. SMITH:  No, she's not answering
7  that question.
8          MR. MONAFO:  We're just making a
9  record.  Just let me make a record.
10          MR. SMITH:  All right, all right.
11  Don't answer it.
12      Q.  (By Mr. Monafo)  Okay.  And you're
13  taking your counsel's advice; correct?
14      A.  Yes.
15      Q.  All right.
16          MR. MONAFO:  And I'm not going to
17  do this for hours, don't -- I just want to make
18  just a sample so the judge can understand what
19  the dispute is.
20      Q.  (By Mr. Monafo)  Ma'am, did you, did you
21  think Nick Foley was a lawyer --
22          MR. SMITH:  Don't answer it.
23      Q.  (By Mr. Monafo)  -- for the company?
24          MR. SMITH:  Don't answer it.
25          MR. MONAFO:  Okay.  So you, just so

232

1  I'm clear, you're not going to let her answer any
2  even background questions so we can possibly get
3  the foundation to make a determination whether
4  something was done wrong or not.
5          MR. SMITH:  I think we got that.
6          MR. MONAFO:  Okay.
7      Q.  (By Mr. Monafo)  Ma'am, do you see the
8  second page of Exhibit 96 is a Wright Career
9  College Student Exit Satisfaction Survey?
10          MR. SMITH:  Don't answer it.  I
11  thought it was a different document, but --
12          THE REPORTER:  I didn't hear you.
13          MR. SMITH:  I thought it was a
14  different document, but it's part of the same
15  Exhibit, so --
16          MR. MONAFO:  Well, I did make it
17  part of the same Exhibit, but I don't know if
18  it's the same document.  Well, that's a good
19  point.  It's actually a different date.
20          MR. SMITH:  What Bates stamp are
21  you talking about?
22          MR. MONAFO:  Okay.  Right now I'm
23  looking at the second page of Exhibit 96, it's
24  got a Bates stamp of WCC 553.
25      A.  Excuse me.

Cooper Moeller, LLC
816.474.3376                                    depo@coopermoeller.com
Case 4:14-cv-00885-BP      Document 1-2      Filed 10/08/14      Page 95 of 294

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

233

1     Q.  (By Mr. Monafo)  Do you see that, Miss
2  Hampton?
3            MR. SMITH:  You said it has a
4  different date, I don't see --
5            MR. MONAFO:  Flip to, well --
6            MR. SMITH:  I see what you're
7  saying.
8            MR. MONAFO:  Flip to the --
9            MR. SMITH:  I don't see a date on
10  either of the two.
11            MR. MONAFO:  Okay, good point.
12     Q.  (By Mr. Monafo)  Do you remember, well,
13  I guess the first question I'd have to ask her
14  is, is that your handwriting where there are
15  numbers there on the second page of Exhibit 96?
16            MR. SMITH:  You can answer that
17  question only.
18     A.  Yes, it's my handwriting.
19     Q.  (By Mr. Monafo)  Do you recall, and just
20  so you're -- just to be fair here, if you look at
21  page 4 of this document, there is, that's another
22  document that looks like you signed maybe on
23  April 1st, 2014, and you testified earlier that
24  you had to go back twice, so I'm assuming you
25  were there on April 10th, 2014 and April 1st,

234

1  2014?
2            MR. SMITH:  You can answer that.
3     A.  Yes.
4     Q.  (By Mr. Monafo)  Do you know which one
5  of those two days or some other day that you
6  filled out this Student Exit Satisfaction Survey?
7            MR. SMITH:  You can answer that.
8  In other words, you have to separate these two
9  out.  Now I need an objection to this entire
10  Exhibit just because I don't think it's -- it's
11  one document, so --
12            MR. MONAFO:  Yeah, maybe, maybe we
13  can break it out, too, that's what I'm trying to
14  figure out.
15     Q.  (By Mr. Monafo)  So here's the question
16  on the table right now just so it's clear.  Do
17  you know when you filled out, when you put these
18  numbers that we see next to the statements on the
19  Student Exit Satisfaction Survey?
20            MR. SMITH:  Yeah.
21     A.  I don't know the exact date, but I
22  believe it was the second time.
23     Q.  (By Mr. Monafo)  So it might have been
24  on -- so you don't know the exact date, but it
25  could have been April 10th, 2014?

235

1     A.  Possibly, yes.
2     Q.  Is it possible that you filled it out
3  some other time, an earlier time?
4     A.  No.
5     Q.  And this was just in your file?
6     A.  No.
7     Q.  Do you remember filling out this form?
8     A.  Yes.
9     Q.  Were you interested in receiving
10  placement services from Wright Career College
11  around this time?
12            MR. SMITH:  You can answer that.
13     A.  When I had talked to Nick Foley, he
14  asked if I was looking for a position somewhere
15  else.  I said that I was open to options as far
16  as if he found positions that would be available
17  to me, but I was content where I was at the
18  time.
19     Q.  (By Mr. Monafo)  Did you discuss the
20  lawsuit at all with Nick Foley?
21            MR. SMITH:  Don't answer that.
22  Actually you can answer that.  Go ahead.
23     A.  No.
24     Q.  (By Mr. Monafo)  We're five minutes to a
25  tape, so probably good time for a break.  Before

236

1  we go, I guess we can keep all this on the tape.
2  Andy, my next thing I wanted to do was go through
3  the Exit Satisfaction Survey with her.  Are you
4  going to allow that or --
5            MR. SMITH:  No.  No, I'm not.
6            MR. MONAFO:  Okay.  And then what
7  I'll do is over the break is I'll think about
8  what, what my next move will be since if you're
9  not going to allow that, because that was, that
10  would take up, take a little time to do that.
11  And again, just for the record, you're -- and
12  we're not going to need the video for this.
13            MR. SMITH:  You might as well let
14  it run until it ends.
15            MR. MONAFO:  Yeah, let it run.
16            MR. SMITH:  We'll be done.  He
17  always fudges a couple of minutes.
18            MR. MONAFO:  The basis for you is
19  you think there was some impropriety that
20  occurred in the completion of this Exit
21  Satisfaction Survey, that's what I understand.
22            MR. SMITH:  Well, I believe the
23  impropriety occurred in bringing my client in a
24  lawsuit known to Wright Career College and its
25  administrators to be ongoing and have her answer

Cooper Moeller, LLC
816.474.3376                              depo@coopermoeller.com
Case 4:14-cv-00885-BP     Document 1-2     Filed 10/08/14     Page 96 of 294

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

237

1   questions in writing directly related to the
2   issues in the case and not to put me on notice of
3   it or anyone else in my firm, and from what you
4   said, not to put you on notice of it either.
5           MR. MONAFO: Okay. Very good. Why
6   don't we take a break.
7           MR. SMITH: Before we go off, I
8   just want to, just to get, I don't know what your
9   decision is going to ultimately be, I want the
10  record to be clear on this section, that I am
11  still offering Miss Hampton today to answer
12  questions on other topics and other documents
13  other than related to that objection and that
14  instruction, since we're all here today, and in
15  light of the fact that the Court, if they rule in
16  my favor, we might not have to come back. So you
17  can choose what to do.
18          MR. MONAFO: Right.
19          MR. SMITH: I just want to make
20  that clear, I'm not shutting it down on all
21  topics.
22          MR. MONAFO: Okay, but wouldn't the
23  appropriate thing to do would be to allow -- the
24  most efficient thing to do would be to allow me
25  to inquire about the Exit Satisfaction Survey and

238

1   then you file your motion to strike it or
2   whatever, and then if you win the motion, then
3   all that goes away.
4           MR. SMITH: No, because part of the
5   harm that could be precluded in the relief I'll
6   seek is that it doesn't -- that it goes away, it
7   doesn't exist for all intents and purposes
8   because it was improperly gained, and so
9   therefore no questions or answers about it will
10  become part of the case.
11          MR. MONAFO: Okay.
12          MR. SMITH: And since we're not on
13  the eve of trial, we've got time, there's no harm
14  to that.
15          MR. MONAFO: And the only reason I
16  say that is because as I came in to take the
17  deposition, this was something that I was going
18  to spend some time on because it is --
19          MR. SMITH: Sure.
20          MR. MONAFO: -- it's got a lot of
21  statements about her experience with the school,
22  so --
23          MR. SMITH: Yeah, directly related
24  to the case.
25          MR. MONAFO: Sure. So by being

239

1   prohibited from getting into that, it kind of
2   throws a big wrench right into the middle of the
3   deposition, so I will take a look at the notes
4   and see what else we might be able to accomplish
5   today.
6           MR. SMITH: Okay.
7           MR. MONAFO: But clearly we're
8   going to have to fight this out and figure out
9   where we're going after that.
10          MR. SMITH: For sure, okay.
11          MR. MONAFO: Let's go off the
12  record.
13          THE VIDEOGRAPHER: Off the record
14  at 3:15 p.m.
15          (Off the record.)
16          THE VIDEOGRAPHER: Back on the
17  record at 3:26 p.m.
18      Q.  (By Mr. Monafo) Miss Hampton, just
19  going back to Exhibit 95 for a moment, which was
20  your e-mail to Nick Foley, I just want to, in
21  light of the situation that arose before our last
22  break, I want to just make sure I understand
23  this. You, you reached out to Nick Foley at the
24  campus because you were wanting some things, you
25  were wanting to find out about graduation and

240

1   other things, right? You told us that?
2       A.  Yes.
3       Q.  And in fact, you, if I was reading your
4   body language correctly or if I was reading your
5   -- you seemed a little perturbed that no one had
6   contacted you?
7       A.  I was a little upset, yes.
8       Q.  And so you were reaching out to Nick
9   Foley, and by the way, at the back of Exhibit 96
10  is the full e-mail exchange between you and Mr.
11  Foley, so if at any time you want to look at
12  that, feel free to look at that.
13          MR. SMITH: You say 95 was not the
14  full?
15          MR. MONAFO: No, 95 is just the
16  initial e-mail that came from Miss Hampton and
17  then 96, the back pages, contain the full e-mail
18  exchange with Mr. Foley.
19      Q.  (By Mr. Monafo) Would you agree with
20  that, Miss Hampton?
21      A.  Yes.
22      Q.  And before sending your e-mail to Mr.
23  Foley, did you check with your lawyers to see if
24  you should be communicating with the school?
25          MR. SMITH: Don't answer that. You

241

1  know that's improper.
2     Q. (By Mr. Monafo) Did you think it was
3  improper, Miss Hampton, in any way for you to be
4  talking to Nick Foley about things you wanted to
5  talk about about your experience at Wright Career
6  College?
7        MR. SMITH: Form, foundation,
8  that's not an accurate summary of what she said
9  she wanted to talk to him about.
10    Q. (By Mr. Monafo) You can answer.
11    **A. I reached out to Nick Foley for one**
12 **reason, exiting papers and graduation.**
13    Q. And he responded and said what time can
14 you come in; right?
15    A. Yes.
16    Q. And you told him you would come in on
17 the evenings and you guys, looks like you
18 arranged for a date, right, pretty innocuous?
19    A. Yes.
20    Q. And it looks, it looks like on April 2nd
21 he e-mailed you and said he had one more for you
22 to come back and sign. Do you see that?
23    A. Yes.
24    Q. And you went back up there and signed
25 it?

242

1    A. Yes.
2    Q. All right. Okay. And if we keep
3  working from the back of Exhibit 96, there's a --
4  it looks like there's a document called Release
5  of Information and Permission. Do you know why
6  you were, why you signed the Release of
7  Information and Permission marked as WCC 559.
8        MR. SMITH: I'm going to instruct
9  her not to answer that one for the same reasons
10 as earlier.
11    Q. (By Mr. Monafo) All right. Ma'am, I
12 want to ask you a series of questions and I want
13 you to respond and tell me whether you agree or
14 disagree with my statement, okay?
15        The receptionists at Wright Career
16 College were courteous and helpful.
17        MR. SMITH: No, no, you're --
18 you're trying to get around the same thing, okay?
19 You are now for the record reading word-for-word
20 from the improper document that we're fighting
21 about, all right? So the well is pretty poisoned
22 at this point. It's academically and
23 elementarily clear what you're doing and she's
24 not going to do that today.
25        MR. MONAFO: Okay, so you're

243

1  instructing her not to answer, right? Okay. Let
2  me, one more just for the record, just make your
3  objection and then we'll move on.
4    Q. (By Mr. Monafo) Miss Hampton, I would
5  like to know whether your admissions
6  representative answered your questions about
7  enrollment?
8        MR. SMITH: Same instruction.
9  Don't answer.
10    Q. (By Mr. Monafo) And one last one. Did
11 your admissions representative represent the
12 represent the opportunities at Wright Career
13 College?
14        MR. SMITH: Same instructions.
15 Don't answer.
16        MR. MONAFO: There was, Andy, there
17 was earlier in this testimony, I asked her about
18 a meeting she had with financial aid around the
19 same time, this woman from financial aid about
20 the debt.
21        MR. SMITH: Uh-huh.
22        MR. MONAFO: And you did not object
23 to that, I wasn't sure if you -- if that was
24 just -- I mean can I get into that area now? I
25 think that occurred also in April of this same

244

1  time frame.
2        MR. SMITH: I have raised heck
3  about that with either you or your partner with
4  one of the other plaintiffs, but with those
5  objections well in mind and because it's
6  financial aid oriented my understanding was, I
7  let her answer those.
8        MR. MONAFO: Okay.
9        MR. SMITH: Now, what you haven't
10 done in those questions today was refer to any
11 kind of a recording, so I'm hoping that that
12 actually didn't take place here. But last time
13 around it came up and I got upset was for the
14 same reason, because they actually recorded her,
15 the other client.
16    Q. (By Mr. Monafo) Do you know if any of
17 your meetings in and around April 2014 with the
18 school were recorded?
19        MR. MONAFO: Can she answer that?
20        MR. SMITH: Sure.
21    A. Yes, it was recorded.
22    Q. (By Mr. Monafo) And how do you know it
23 was recorded?
24    A. She told me.
25    Q. Okay. And --

Cooper Moeller, LLC
816.474.3376                                        depo@coopermoeller.com
Case 4:14-cv-00885-BP      Document 1-2      Filed 10/08/14      Page 98 of 294

**269**

1  A. Yes.
2  Q. Have you ever seen any anything that
3  summarizes the -- your benefits package?
4        MR. SMITH: Foundation, but go
5  ahead.
6  A. I believe they send out information on
7  that every year.
8  Q. (By Mr. Monafo) Do you, do you recall
9  approximately what the company, what kind of
10 number they put on it as a benefit to you?
11 A. I do not.
12 Q. But you have those documents at home
13 potentially?
14 A. I believe I do somewhere.
15 Q. Okay.
16       MR. MONAFO: That's all I have,
17 thanks.
18       MR. SMITH: All right.
19       MR. MONAFO: Subject to Court
20 intervening.
21       MR. SMITH: So I don't forget, this
22 is not a question for her, this is for I guess
23 what we can call an offer of proof if we're at
24 trial, but just so it's all nicely compact, I'm
25 giving you a copy of these. I am, I would like

**270**

1  her to mark these as well, we can mark them in a
2  different way if you would like to, I don't
3  really care about that.
4        MR. MONAFO: Just keep marking
5  them, that's fine.
6        MR. SMITH: Okay.
7        (Hampton Deposition Exhibits 97 and
8  98 were marked for identification.)
9        MR. SMITH: 97, so that's 97 and
10 that's '98.
11       MR. MONAFO: Okay. Do you really
12 need to do this for -- I mean, these are e-mails
13 between the law firms. Do we need to waste the
14 witness's time with this stuff?
15       MR. SMITH: I think she's happy to
16 be here.
17       MR. MONAFO: Okay.
18       MR. SMITH: I'm not going to --
19       MR. MONAFO: You know I'm happy to
20 be here.
21       MR. SMITH: 97 and 98 are
22 communications between myself and Mr. Loring, who
23 is of record in this case and has taken
24 depositions in this case for other plaintiffs.
25 I'm making this part of the transcript today so

**271**

1  that when we go before the Court, it is called to
2  the same location and it's just easier for
3  everyone and so that it's clear that I presented
4  it to counsel today.
5        Exhibit 97 is an e-mail from myself to
6  Mr. Loring and it's dated March 6th, 2014 and it
7  puts Mr. Loring on notice that one of the clients
8  in this case was contacted by telephone by a
9  representative of Wright Career College, and at
10 that point I said to Mr. Loring, in part, I'm
11 going to assume that this was all without your
12 knowledge and approval, but it must cease
13 immediately. Please advise if you communicated
14 this to all persons in your employ and control as
15 well as your clients in the case.
16       Mr. Loring in Exhibit 98 then responded
17 quickly and initially explained to me, as is
18 evidenced in, in his e-mail of March 6th, 2014 at
19 12:08 p.m. that he did not know about this and so
20 he couldn't, quote, "look into it without you're
21 telling me about the purported contact of your
22 clients. Let me know who contacted who, when and
23 in what manner." At that the point I responded
24 to him, quote, "They said they were calling on
25 behalf of WWC and asking why our clients were

**272**

1  unhappy, what occurred in their education, et
2  cetera." I further wrote at that point, "I
3  understand this to mean it wasn't at your
4  direction, which of course, is of course what I
5  presumed. I would think a reasonable start
6  thereafter is determining if your clients have
7  taken it upon themselves to serve as some
8  inappropriate investigative arm in the defense
9  and advise them to stop, if so. At this point I
10 am simply bringing it to your attention and
11 asking you to take reasonable steps to end it.
12 That way no more will come of this. Sincerely,
13 Andy."
14       At that point Mr. Loring responded to me
15 at 1:37 p.m. on that same day, explained that
16 they should have been removed from that list and
17 should not have been called, it was a mistake.
18 The people who make these calls to former
19 students have now been specifically instructed
20 not to contact your four clients in this case.
21       There are some other discussions in the
22 final paragraph of his e-mail at the top of
23 Exhibit 98, and then I refer the Court and
24 transcript back to the first paragraph, first
25 full paragraph of his e-mail where he describes

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

273

1    what was going on and he says, "I now understand
2    that the college has a standard routine where
3    they call former students, both graduates and
4    non-graduates, to ask them questions about their
5    experiences at WCC. This is basically a customer
6    survey process. It was part of the process that
7    caused your clients to be called. Their names
8    were on a list of former students." And then he
9    goes on to say that they would be removed from
10   the list.
11         I offer that to the Court so that we all
12   know that the concept of contacting these four
13   clients was put before counsel well before the
14   meetings in April between Miss Hampton and Mr.
15   Foley where a document which I think could
16   accurately be described as a survey was also
17   presented and filled out outside of the counsel's
18   presence and without any knowledge of myself and
19   hopefully without the knowledge of Mr. Loring or
20   Mr. Monafo. That's my offer on that.
21         MR. MONAFO: And just let me say in
22   response that --
23         MR. SMITH: Sure.
24         MR. MONAFO: -- that all that
25   e-mail trail is totally irrelevant to Miss

274

1    Hampton's situation. Miss Hampton voluntarily
2    reached out to Mr. Foley and asked for the
3    meeting. The meeting that was conducted and the
4    documents that were completed during that meeting
5    are part of the normal process and I believe was
6    even required by our accreditor and nothing to do
7    with the lawyers. It's perfectly acceptable
8    communication between the school and Miss
9    Hampton. And your -- the document is obviously
10   devastating to your case, it completely
11   contradicts everything she's saying in this
12   lawsuit, so I understand why you're trying to
13   take the position to try to get it knocked out.
14   We will file all this in front of the Court and
15   I'm sure we'll come back and talk about it
16   another day.
17         And it's unfortunate that you have to
18   try to pull us into this thing as lawyers to try
19   to get an advantage on a document that is, you
20   know, absolutely devastating to your case. But I
21   understand, it's a lawsuit, so we will file our
22   motion and see what happens.
23              EXAMINATION
24   BY MR. SMITH:
25    Q.  Miss Hampton, did you ask Mr. Foley for

275

1    an opportunity to tell him anything about your
2    experience at Wright Career College?
3          MR. MONAFO: Now, okay, this is
4    going to -- now, okay, you just got done blocking
5    me from asking --
6          MR. SMITH: No, you asked her a lot
7    of questions that I let you answer, let her
8    answer.
9          MR. MONAFO: Okay, I just want to
10   make it clear for the record, you're now going to
11   ask her about her meeting with Foley. That's,
12   that's fine. So I'm showing an objection because
13   you just blocked me from doing it and now you're
14   going to do it.
15         MR. SMITH: Is it your statement
16   that I didn't let you ask any questions about
17   that meeting?
18         MR. MONAFO: Not any questions.
19         MR. SMITH: Okay.
20         MR. MONAFO: But you certainly
21   objected to questions I wanted to ask and we made
22   a record on that. And now you're going ahead and
23   asking anyway. So I think it's interesting and
24   I'm making objection just for the record so that
25   no one can say I waived it, but go ahead.

276

1          MR. SMITH: Okay.
2     Q.  (By Mr. Smith) In the early part of
3    today's examination, I know that feels like a
4    long time ago, you were asked some questions
5    about conversations between yourself and Miss
6    Ayala. Do you remember that generally?
7     A.  Yes.
8     Q.  I want the record to be clear. Did you
9    and Miss Ayala ever have a conversation about you
10   suing Wright Career College?
11    A.  No.
12    Q.  Did you and Miss Ayala ever have a
13   conversation about her suing Wright Career
14   College?
15         MR. MONAFO: Objection, leading.
16    A.  No.
17         MR. SMITH: I would like to
18   perfect, to correct the mistake if I can since
19   it's a form objection, so how was it leading?
20         MR. MONAFO: You suggested the
21   answer.
22         MR. SMITH: How did I do that?
23         MR. MONAFO: Just keep --
24         MR. SMITH: No, generally, if I ask
25   you to help me on a form objection --

Cooper Moeller, LLC
816.474.3376                                    depo@coopermoeller.com
Case 4:14-cv-00885-BP    Document 1-2    Filed 10/08/14    Page 100 of 294

Stefanie Ayala, et al. v. Mission Group Kansas, Inc., et al.

305

1  A. Obviously not.
2  Q. And are you an expert on curriculum?
3  A. I've been to high school, there's
4  curriculum there.
5  Q. Right. Are you an expert on determining
6  what kind of curriculum there should be for
7  college level courses?
8  A. No, I'm not.
9  Q. Do you understand there's an accreditor
10 who does that?
11    MR. SMITH: Foundation.
12 A. Yes.
13 Q. (By Mr. Monafo) Do you understand that?
14 A. Yes.
15 Q. Okay. So you're basically saying that
16 you disagree with the teaching philosophy at
17 Wright Career College; right?
18    MR. SMITH: Form and foundation.
19 A. I do to an extent, yes.
20 Q. (By Mr. Monafo) And when you enrolled,
21 would it be fair to say that you were enrolling
22 at Wright Career College because you wanted to
23 improve your professional standing?
24 A. Yes, I wanted to make more money.
25 Q. And that's why you believe that the

306

1  degree is, is worthless to you, because you don't
2  see how you're going to make anymore money with
3  this degree?
4     MR. SMITH: Asked and answered.
5  Q. (By Mr. Monafo) Is that, that fair to
6  say?
7     MR. SMITH: Misstates entirety of
8  her testimony. Go ahead.
9  A. I don't feel that it's just that being
10 the reason.
11 Q. (By Mr. Monafo) What else is the
12 reason? What was the other reason?
13    MR. SMITH: Form, overly broad.
14 Asked and answered.
15 A. A piece of paper is a piece of paper,
16 but if you don't have the education behind it,
17 it's exactly that.
18 Q. (By Mr. Monafo) And that's not, and
19 you're saying that that is worthless because it
20 won't help you advance your professional career?
21 A. If I don't have the certification, no.
22 Q. So just to be clear on this, and I'll
23 close the loop on it, it was a, this was a career
24 decision you were making when you decided to
25 attend Wright Career College?

307

1     MR. SMITH: Form.
2  A. Yes.
3     MR. MONAFO: Okay. Subject to our
4  dispute over the survey document, which I think
5  goes into many areas, I have no further questions
6  at this point.
7     MR. SMITH: I think we'll just be
8  done.
9     THE VIDEOGRAPHER: Off the record
10 at 4:52 p.m.
11    (Deposition ended at 4:52 p.m.)

308

1  SIGNATURE/ERRATA SHEET TO THE DEPOSITION OF
   CHRISTI HAMPTON
2  STEFANIE AYALA, et al. v. MISSION GROUP KANSAS,
   INC., et al.
3  1316-CV27529 CIRCUIT COURT OF JACKSON COUNTY, MO
   Page - Line  Change Requested   Reason Therefor
4  ___ - ___  _____   _____
5  ___ - ___  _____   _____
6  ___ - ___  _____   _____
7  ___ - ___  _____   _____
8  ___ - ___  _____   _____
9  ___ - ___  _____   _____
10 ___ - ___  _____   _____
11 ___ - ___  _____   _____
12 ___ - ___  _____   _____
13 ___ - ___  _____   _____
14 ___ - ___  _____   _____
15 ___ - ___  _____   _____
16 ___ - ___  _____   _____
17 ___ - ___  _____   _____
18 ___ - ___  _____   _____
19
20    CHRISTI HAMPTON
   Subscribed and sworn to before me
21 this _____ day of _____, 20___.
22 County of_____
23 State of_____
24    Notary Public
25 My Commission Expires:_____

Cooper Moeller, LLC
816.474.3376                        depo@coopermoeller.com
Case 4:14-cv-00885-BP     Document 1-2     Filed 10/08/14     Page 101 of 294

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

Stefanie Ayala, et al. v. Mission Group Kansas, Inc., et al.

309

```
 1              C E R T I F I C A T E
 2
 3         I, Joan S. Nunnink, a Certified Court
 4    Reporter of the State of Missouri, do hereby
 5    certify:
 6         That prior to being examined the witness
 7    was by me duly sworn;
 8         That said deposition was taken down by
 9    me in shorthand at the time and place
10    hereinbefore stated and was thereafter reduced to
11    writing under my direction;
12         That I am not a relative or employee or
13    attorney or counsel of any of the parties, or a
14    relative or employee of such attorney or counsel,
15    or financially interested in the action.
16         WITNESS my hand and seal this 5th day of
17    August, 2014.
18
19         _____
20         JOAN S. NUNNINK, CCR No. 543, CSR
21
22
23
24
25
```

August 5, 2014

Ms. Christi Hampton
c/o Mr. Andrew K. Smith
Humphrey, Farrington & McClain, P.C.
221 West Lexington Avenue
Suite 400
Independence, Missouri 64050

Re: Stefanie Ayala, et al. v. Mission Group
Kansas, Inc., et al.
Dear Ms. Hampton:
Enclosed is your deposition for your examination
and signing. You will also find a signature
page/errata sheet for your convenience in making
any changes or corrections.

Pursuant to the law, any change in "form or
substance" of an answer shall be accompanied with
a statement of the reason given by you for making
such change.
Upon completion of your examination and reading,
please sign the enclosed signature page and
errata sheet and return them to this office in
the enclosed self-addressed envelope. If we have
not received the signed documents from you within
30 days of the date of this letter or by time of
trial, whichever occurs first, an unsigned copy
of your deposition will be filed.

Yours very truly,

COOPER MOELLER, LLC


Joan S. Nunnink, CSR

Enclosures

Cooper Moeller, LLC
816.474.3376                                      depo@coopermoeller.com
Case 4:14-cv-00885-BP     Document 1-2     Filed 10/08/14     Page 102 of 294

Electronically Filed - Jackson - Independence - September 02, 2014 - 10:19 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al.      )
                            )
        Plaintiffs,      )
                            )
       vs.               )      Case No. 1316-CV27529
                            )
MISSION GROUP KANSAS, INC., et al., )
                            )
        Defendants.     )

### PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED PETITION
### AND SUGGESTIONS IN SUPPORT

Plaintiffs, through their counsel of record, respectfully ask this Court to enter an order granting leave to file Plaintiffs' First Amended Petition. In support, Plaintiffs state the following:

1. This case arises out of experiences of various students at Wright Career College, and allegations of misrepresentation, fraud, violations of Missouri's Merchandising Practices Act, due to the Defendants' negligence, and willful conduct.

2. The proposed Amended Petition adds named plaintiffs, all of whom have attended, or still attend Wright Career College, and the claims made therein are substantially the same in factual basis. There are no new "counts" or claims for relief asserted in the proposed amended petition.

3. The parties have only exchanged written discovery at this point, and the four already named Plaintiffs have been deposed.

4. Recently, a CMC was held, and the parties agreed to submit an agreed to Scheduling Order, with ample time to amend pleadings and conduct discovery remaining.

5. Rule 55.33 provides that leave to amend "shall be freely given when justice so requires", and this motion is not brought for purposes of undue delay.

1

6.     Judicial efficiency and the best interests of the parties, supports the proposed amended petition, in that the claims arise out of the same course of conduct, involve the same defendants, and will prevent the re-litigation of multiple, very similar claims, and will eliminate the specter of inconsistent rulings, and substantial delay of justice that would occur by requiring separate actions.

7.     Plaintiffs' proposed First Amended Petition is attached as Exhibit 1.  In the event this motion is ordered as granted, Plaintiffs ask the First Amended Petition be deemed filed as of the date of the Court's Order.

8.     A proposed Order is being submitted under a separate filing in this matter.

WHEREFORE, Plaintiffs, for the reasons stated above, respectfully ask this Court to enter an order, granting leave to file the attached Plaintiffs' First Amended Petition.

Respectfully submitted,

HUMPHREY, FARRINGTON  & McCLAIN, P.C.

/s/ Andrew K. Smith
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:     (816) 836-5050
Facsimile:     (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing was served upon the following by the Court's ECF system and e-mail this 12th day of September 2014:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,**
**BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,**
 **JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

*/s/ Andrew K. Smith*
**ATTORNEY FOR PLAINTIFFS**

3

# EXHIBIT "1"

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | |
|---|---|
| **STEFANIE AYALA, JENNIFER DECKER,** ) | |
| **CHRISTI HAMPTON, STEVEN JEWSOME,** ) | |
| ) | |
| and ) | |
| ) | **Case No. 1316-CV27529** |
| **ROBIN BAILES,** ) | |
| 16410 East 29th Terrace South ) | **Division 2** |
| Independence, Missouri 64055 ) | |
| ) | |
| **JAMES BAKER,** ) | |
| Post Office Box 2272 ) | |
| Liberal, KS 67905 ) | |
| ) | |
| **LEWISTENNA BARNETT,** ) | **JURY TRIAL DEMANDED** |
| 1515 North Belmont Street ) | |
| Wichita, Kansas 67208 ) | |
| ) | |
| **STEPHANIE BARNHARDT,** ) | |
| 1701 East 65th St. North ) | |
| Tulsa, Oklahoma 74103 ) | |
| ) | |
| **PHYLLIS BARTON,** ) | |
| 2624 Brickel Boulevard ) | |
| Kansas City, Kansas 66104 ) | |
| ) | |
| **TRESHUNDA BEASLEY,** ) | |
| 3820 East Morris Street ) | |
| Wichita, Kansas 67218 ) | |
| ) | |
| **HEATHER BEOUGHER,** ) | |
| 499 Road 24 A ) | |
| Longton, Kansas 67352 ) | |
| ) | |
| **KIMBERLY BENSON,** ) | |
| 2202 East 67th Street, Apt. 1406 ) | |
| Tulsa, Oklahoma 74135 ) | |
| ) | |
| **ERNESHA BENTLEY,** ) | |
| 215 West 99th Street ) | |
| Kansas City, Missouri 64114 ) | |
| ) | |
| ) | |
| ) | |

**JORDAN BERGMAN,**
745 Sylvan Lane
Wichita, Kansas 67218

**GLORIA BETTS,**
1419 Moten Place
Kansas City, Missouri 64108

**ANTHONY BOSTIC,**
7924 Brooklyn Avenue
Kansas City, Missouri 64132

**AMBER BOUKNIGHT,**
1201 NW 51st St.
Blue Springs, Missouri 64015

**DANIELLE BOWMAN,**
1359 S. St. Francis Street Apt 4
Wichita, Kansas 67211

**GERALDINE BOWSER,**
2116 E. 67th Terrace
Kansas City, MO 64132

**SHARHONDA BRADEN,**
13612 Cambridge Avenue
Grandview, Missouri 64030

**CHERYL BRADLEY,**
2000 N. 10th Street, Apt. 2
Kansas City, Kansas 66104

**IEISHA BRADLEY,**
1244 Ray Avenue
Kansas City, Kansas 66102

**KATHRYN BRAUGHTON,**
5812 NE 41st Street, Apt. C
Kansas City, Missouri 64117

**SYLVIA BROWN,**
2407 N. Piatt Street
Wichita, Kansas 67219

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**JENNIFER LAKEY BRUBAKER,**
2508 NW Castle Drive
Blue Springs, Missouri 64015

**LAQUEETA BRUCE,**
1015 Harding Street
Wichita, Kansas 67208

**RODERICK BRUCE,**
1015 Harding Street
Wichita, Kansas 67208

**AMANDA BUNNEY,**
7128 Craig Street
Overland Park, KS 66204

**NICOLE BUTLER,**
612 Nichols Ave.
Tecumseh, OK 74873

**MARCUS CANNON,**
842 Quindaro Blvd
Kansas City, KS 66101

**DENISE CARRUTHERS,**
4331 Yecker Ave
Kansas City, KS 66104

**MARILYN CASHIER,**
12204 E. 54th Terrace
Kansas City, MO 64133

**CHELSEA CAVANAH,**
40844 E. 180th Street
Richmond, MO 64085

**LINDA CHARLES,**
1618 W. 22nd St. North
Apt 104
Wichita, KS 67204

**ELLA CHEADLE,**
735 N. Louisville Ave.
Tulsa, OK 74115

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

3

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**LATOYA CHEADLE,**
2018 E. Woodrow St.
Tulsa, OK 74110

**KATRINA CHISM,**
12112 Burdette Circle
Omaha, NE 68164

**BELINDA CLAYTON,**
4841 Boyd St., Apt 112
Omaha, NE 68104

**CHRISTOPHER CLARK,**
13010 E. 57th St.
Kansas City, MO 64133

**KIMBERLY CLARK,**
P.O. Box 103
Alva, OK 73717

**KERA CLEMONS-BIRCH,**
4857 Wyndham Road
Park City, KS 67219

**CIERA COATES,**
3300 NW Jefferson St., Apt. 235
Blue Springs, MO 64015

**RODNEY COLLIER,**
4327 Elmwood
Kansas City, MO 64130

**ANGELA R. CORBIN,**
6556 W. 91st St. Apt 136
Overland Park, KS 66212

**CARRIE CRIM,**
21191 W. 227th St.
Spring Hill, KS 66083

**ASHLEY CROFT,**
623 E. Johnston St.
Olathe, KS 66061

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

4

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**MARIE DAWSON,**
510 Johnston Parkway
Raymore, MO 64083

**JOSEPH DENNIS,**
10 Aspen St.
Belton, MO 64012

**BRISON DOCKERY,**
1004 Highland St., Apt A
Coffeyville, KS 67337

**NAQUITA DORSEY,**
14019 Dunbar Ct.
Grandview, MO 64030

**CENTEL DUNCAN,**
16 N. 35th St.
Council Bluffs, IA 51501

**JAZMINE ELLIS,**
9508 W. 104th St.
Overland Park, KS 66212

**ASHLEY FELTON-KREAGER,**
4857 Wyndham Road
Park City, KS 67219

**LUCRESHIA FINLEY,**
625 S. 71st Terrace, Apt. 4
Kansas City, KS 66111

**TERESA FLEMING,**
304 N. Park Ave., Apt.4
Springfield, IL 62702

**JENNIFER FLOREZ,**
2311 Victoria Drive, Apt. 102
Kansas City, KS 66106

**ROXANA FORTNEY,**
12534 Old Ranier Road, Lot 32
Roseville, OH 43777

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

5

**RACHELLE FOX,**
611 Trevis Ave.
Belton, MO 64012

**LAURA FRANCO,**
3217 Greenhaven Place
Wichita, KS 67216

**ADRIENNE FRANKLIN,**
400 E. Armour Blvd, Apt 206
Kansas City, MO 64107

**LATONIA FREEMAN,**
7724 Webster St.
Omaha, NE 68114

**LATISHA FRIDAY,**
4244 S. Hydraulic St. Apt. 805
Wichita, KS 67216

**ANDRE FULSON,**
1317 West Twin Oaks St.
Broken Arrow, OK 74011

**QUANTILLIA GAINES,**
1622 S. Edgemoor St.
Wichita, KS 67218

**RAEGAN GAREY,**
2363 Chapel Ridge Place, Apt 4T
Salina, KS 67401

**BRITTANY GARRETT,**
416 N. Kokomo St.
Derby, KS 67037

**TAKESHA GATES,**
12806 14th St. Apt 72
Grandview, MO 64030

**RENE GOLDEN,**
5901 S. May Ave., #259
Oklahoma City, OK 73119

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

6

**MYRON GRAHAM,**
9819 Locust St., Apt. 5
Kansas City, MO 64131

**TAMARA GRIM,**
4121 N. Wheeling Ave.
Kansas City, MO 64117

**JANET GROSS,**
3920 N. 104th St. #210
Omaha, NE 68134

**KAYLA HANNAHAN,**
3001 N. 73rd Place
Kansas City, KS 66109

**KILANDRA HARDEN,**
7626 King St., Apt J
Shawnee, KS 66214

**BRANDI HARDIMAN,**
3139 S. Mingo Road, Apt 1803
Tulsa, OK 74146

**CARLISS HARDING,**
1555 E. 54th St North
Tulsa, OK 74126

**MARCHETA HARDISON,**
920 S. Northern Blvd
Independence, MO 64053

**LISA HARDMAN,**
5017 Forest Ave.
Kansas City, KS 66106

**SONATA HARPER,**
12918 Browne St.
Omaha, NE 68164

**BRETTKITA HASKINS,**
1323 Armour Blvd.
Kansas City, MO 64109

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

7

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**MEGAN HATFIELD,**
2200 S. Lori St.
Wichita, KS 67207

**NICKI HILL,**
112 E. Frank St.
Kearney, MO 64060

**SHAYLA HILL,**
3839 E. 61st St.
Kansas City, MO 64130

**MARI J. HOWARD,**
1703 S. King Ave.
Harrisonville, MO 64701

**AUGUST HUGHES,**
1754 N. Estelle St.
Wichita, KS 67214

**YOLANDA HUGHES,**
2525 W. 38th Avenue, Apt. 1C
Kansas City, KS 66103

**STEPHANIE HULSEY,**
1001 N. 14th St.
Collinsville, OK 74021

**KIMBERLY HUNT,**
3634 NW 39th St, Apt 17118
Oklahoma City, OK 73112

**AMBER JACKSON,**
415 W. Harvey St.
Willington, KS 67152

**MARQIEZE JACKSON,**
415 W. Harvey St.
Willington, KS 67152

**NICOLE JACKSON,**
914 S. Dory Lake Drive
Black Hawk, CO 80422

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

8

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**RUTH JACKSON,**
1410 N. Vassar
Wichita, KS 67208

**HEATHER JACOBSON,**
903 Florence Ave.
Raymore, MO 64083

**VICKIE JAGODZINSKI,**
306 S. Darrowby Drive
Raymore, MO 64083

**JESSIE JAMES,**
3146 S. 131st East Ave, #413
Tulsa, OK 74134

**ERICA JEFFERSON,**
1530 E. 17th St. North, #101
Wichita, KS 67214

**KEISHA JOHNSON,**
2500 Independence Ave, Apt. E6
Kansas City, MO 64124

**KENISHA JOHNSON,**
11216 Manchester
Kansas City, MO 64134

**BRIANNE JONES,**
9233 Leglar Circle, Apt. 493
Lenexa, KS 66219

**DENISE SHATRA JONES,**
508 Maple Blvd. Apt 2W
Kansas City, MO 64124

**KATHY LYNN JONES,**
3232 E. Independence St. Apt 6A
Tulsa, OK 74110

**RAVEN JONES,**
4929 Bellefontaine Ave.
Kansas City, MO 64130

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

9

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

CHARITY KATON,
344 W. 6th St., Apt. 305
Chelsea, OK 74016

)
)
)

JENNIFER KEEZER,
6112 S. Ellis St.
Wichita, KS 67216

)
)
)
)

SHERRY KIRKSEY,
901 N. Elgin Ave. Apt 417
Tulsa, OK 74106

)
)
)
)

CHARLOTTE KRAMER,
5406 E. 71st St., Apt 1912
Tulsa, OK 74136

)
)
)
)

LATASHA LAMBERT,
5855 Highland Ave.
Kansas City, MO 64110

)
)
)
)

ABBY LAUGHMAN,
812 Black Oak Drive
Liberty, MO 64068

)
)
)
)

SHARON LAVANIER,
11421 W. 51st Terrace
Shawnee, KS 66203

)
)
)
)

SAMANTHA LEMANSKE,
515 River Falls Road
Edwardsville, KS 66111

)
)
)
)

CHASIDI LEWIS,
1300 Delaware
Pleasant Hill, MO 64080

)
)
)
)

DEEDRE LOMAX,
4331 E. 108th St.
Kansas City, MO 64137

)
)
)
)

CAITLYN MARGRAVE,
1624 Victor Ave.
Omaha, NE 68110

)
)
)
)
)
)
)

10

BRENDA JO MATHER,                    )
7404 Larsen Lane                     )
Shawnee, KS 66203                    )
                                     )
SARAH McCABE,                        )
403 E. Seventh St.                   )
Eudora, KS 66025                     )
                                     )
JOHN McCOY,                          )
16100 W. 136th St.                   )
Olathe, KS 66062                     )
                                     )
AMANDA McCRAY,                       )
3193 S. Davidson St.                 )
Wichita, KS 67210                    )
                                     )
AMY McKINNEY,                        )
7308 Sanders                         )
Leavenworth, KS 66048                )
                                     )
JOSE MELENDEZ,                       )
5800 Prairie Meadows Road            )
Derby, KS 67037                      )
                                     )
HOLLY MILLER,                        )
12825 Hillcrest Dr.                  )
Liberty, MO 64068                    )
                                     )
NATALYA MINNERS,                     )
10155 E. 32nd St. Apt D              )
Tulsa, OK 74146                      )
                                     )
EQUILA MOODY,                        )
528 S. Bluff St.                     )
Wichita, KS 67218                    )
                                     )
STEPHANIE MOONEY,                    )
3028 Mason St.                       )
Independence, MO 64052               )
                                     )
TIEDRE MOORE,                        )
6612 Oxford Ave.                     )
Raytown, MO 64133                    )
                                     )
                                     )
                                     )

11

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**TRACY MOORE,**
911 Brownthrush St.
Wichita, KS 67212

**EMILY MOSLEY,**
545 Shawnee Road
Kansas City, KS 66103

**MARCIE MYERS-ELDER,**
11605 Carter St.
Overland Park, KS 66210

**BARBARA NASH,**
7117 E. 10th St.
Tulsa, OK 74112

**LATIKA NELSON,**
2631 Lawn Ave.
Kansas City, MO 64127

**BRIAN NORTH,**
16322 E. 34th St.
Independence, MO 64055

**LEANNA ODEMS,**
8805 Crystal Lane, Apt. 203
Kansas City, MO 64138

**ANTHONY OSBY,**
2631 Lawn Ave.
Kansas City, MO 64127

**TREMAINE PACE,**
7020 N. Bales Ave., Apt. 343
Gladstone, MO 64119

**TIFFANY PATILLO,**
808 E. 100th Terrace, Apt. 220
Kansas City, MO 64131

**JANET TERRY PAYNE,**
1199 E. Santa Fe, Lot 172
Gardner, KS  66030

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

12

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**RICHARD PAYNE,**
7404 Larsen Lane
Shawnee, KS 66203

**DEANNA PAYTON,**
1414 E. 124th St.
Olathe, KS 66061

**AMBER PETERSON,**
3201 E. MacArthur St.
Wichita, KS 67216

**QUINTON PETTY,**
3319 N. 37th St.
Kansas City, KS 66104

**SANDRA PHILLIPS,**
P.O. Box 781145
Wichita, KS 67278

**TERESA POTTER,**
10231 Movilla Hills Drive
Sand Springs, OK 74063

**SONYA PRUITT,**
416 Rhoades Ct.
Norman, OK 73072

**KRISTI PUGH,**
611 Zay Drive
Excelsior Springs, MO 64024

**PATISHA RANDOLPH,**
5001 NW 92nd Terrace
Kansas City, MO 64154

**ERICA RAY,**
2355 N. Poplar St.
Wichita, KS 67219

**ANGELA REED,**
2507 Quincy Ave.
Kansas City, MO 64128

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

13

QUNTICE REED,                           )
10721 N. Western Ave. #E                )
Oklahoma City, OK 73114                 )
                                        )
ANGELA RICHIE,                          )
4141 S. Seneca, Apt. 919                )
Wichita, KS 67217                       )
                                        )
JUDY RUFFIN,                            )
5904 Henninger Drive, Apt 1008          )
Omaha, NE 68104                         )
                                        )
MELISSA RUSH,                           )
408 E. 7th St.                          )
Newton, KS 67114                        )
                                        )
CIERRA SAUER,                           )
21520 W. 179th St                       )
Olathe, KS 66062                        )
                                        )
KEVIN SHARP,                            )
4022 Nebraska Ave.                      )
Omaha, NE 68111                         )
                                        )
MELISSA SIMON,                          )
4807 Skyline Drive                      )
Roeland Park, KS 66205                  ) )
                                        )
LASHAWNDA SIMONTON,                     )
7304 E. 109th Terrace                   )
Kansas City, MO 64134                   )
                                        )
RONALD A. SMITH,                        )
6904 N. 107th Plaza, Apt. 238           )
Omaha, NE 68122                         )
                                        )
TIMESHA SMITH,                          )
9706 W. 95th St.                        )
Overland Park, KS 66212                 )
                                        )
NICOLE STAAB,                           )
15705 W. 125th Terrace                  )
Olathe, KS 66062                        )
                                        )
                                        )
                                        )

14

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**DAWN STARR,**
621 SW County Road
Holden, MO 64040

**LATISHA STEWART,**
9725 Marsh Ave.
Kansas City, MO 64134

**BRIAN STREET,**
1905 E. Sleepy Hollow Dr.
Olathe, KS 66062

**SEAN SWARD,**
304 SW Fourth St.
Blue Springs, MO 64014

**SARAH TAYLOR,**
1135 NW Willow Drive
Grain Valley, MO 64029

**JOHN TETER,**
104 E. Lakecrest Drive
Augusta, KS 67010

**LASHONE THOMAS,**
14241 W. 128th St.
Olathe, KS 66062

**STEPHANIE THOMPSON,**
8302 Babe Ruth St.
San Antonio, TX 78240

**LORI A. THRONE,**
8702 Slater
Overland Park, KS 66212

**DONYETTA THROWER,**
2206 S. Jackson Ave. Apt E
Tulsa, OK 74107

**NYREE TIGER,**
1020 SW 48th St.
Oklahoma City, OK 73109

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

15

CANISHA TILLER,                          )
237 E. 67th St.               )
Kansas City, MO 64130                    )
                                         )
SHANNON TIMBERLAKE,                      )
1306 Tyer Road                           )
Grain Valley, MO 64029                   )
                                         )
ELIZABETH TRAMEL,                        )
12935 E. 28th Place           )
Tulsa, OK 74134                          )
                                         )
BRENDA TREAT,                            )
3201 E. MacArthur St. #115               )
Wichita, KS 67216                        )
                                         )
RENITA TRIPLETT,                         )
5615 E. 39th Terrace          )
Kansas City, MO 64130                    )
                                         )
MERIAM TURNER,                           )
3828 N. 38th St.              )
Kansas City, KS 66104                    )
                                         )
JACQUELINE TUTTLE,                       )
6701 W. 87th Terrace, #901    )
Overland Park, KS 66212                  )
                                         )
MARIA VALDEZ,                            )
309 NW Shamrock Ave.                     )
Lee's Summit, MO 64081                   )
                                         )
RITA VERGE,                              )
5236 E. 28th St., Unit 1      )
Kansas City, MO 64128                    )
                                         )
ROBERTA VERNER,                          )
4613 N. Cheyenne Ave.                    )
Tulsa, OK 74126                          )
                                         )
RYAN VIVANCO,                            )
1408 Canterbury Lane                     )
Liberty, MO 64068                        )
                                         )
                                         )
                                         )

16

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:23 PM

**CURTIS VON ROUE,**
1919 Olathe Blvd, Apt. 305
Kansas City, KS 66103

**KENDYLL WALKER,**
17532 W. 157th Terrace
Olathe, KS 66062

**PAULA WALLIS,**
348 E. Clark St.
Augusta, KS 67010

**TASHANNA WALLS,**
1740 N. Lennox Dr., Apt. 9C
Olathe, KS 66062

**CRYSTAL WASHINGTON,**
4425 N. Detroit Ave.
Tulsa, OK 74106

**JARRAE WELLS,**
2631 Lawn Ave.
Kansas City, MO 64127

**CHRISTINE WHITWORTH,**
10800 Hemlock St., Apt F
Overland Park, KS 66210

**MICHAEL WILLIAMS,**
6445 East Lincoln St.
Wichita, KS 67207

**RENIDA WILLIAMS,**
724 N. Maplewood St.
Tulsa, OK 74115

**RONALD JACK WILSON,**
10515 E. 136th St. North
Collinsville, OK 74021

**YOLANDA WILSON,**
7924 Brooklyn Ave.
Kansas City, MO 64132

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

17

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**AMANDA WILWERDING,**
919 Kent Drive
Belton, MO 64012

**VANESSA WISEMAN,**
4140 Regents Lane
Wichita, KS 67208

**JENNIFER WOODLEY,**
1838 S. Edgemoor St.
Wichita, KS 67218

**STEPHANIE WOODS,**
408 Back Bay Blvd, #12
Wichita, KS 67209

**ANTHONY WRIGHT,**
602 Bird St.
Harrisonville, MO 64701

**BRIAN WROTEN,**
8013 W. 142nd Terr.
Overland Park, KS 66223

**MARIAH YATES,**
418 E. 14th St. North, Apt. 1
Wichita, KS 67214

**ANTOENETE ZACHARY,**
5818 S. Owasso Ave., Apt. 1338
Tulsa, OK 74105

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

              **Plaintiffs,**     )
v.                          )
                            )

**MISSION GROUP KANSAS, INC., d/b/a**
**WRIGHT CAREER COLLEGE,**

**BOARD OF DIRECTORS OF MISSION**
**GROUP KANSAS INC.,**

**JOHN MUCCI; IN HIS OFFICIAL AND**
**INDIVIDUAL CAPACITY,**

**STEPHEN BROWNE; IN HIS OFFICIAL**
**AND INDIVIDUAL CAPACITY,**

)
)
)
)
)
)
)
)
)
)
)

18

**RON HOLT; IN HIS OFFICIAL AND** )
**INDIVIDUAL CAPACITY,** )
)
**Defendants.** )

## FIRST AMENDED PETITION FOR DAMAGES

Plaintiffs, through counsel, allege and state the following causes of action against Defendants:

## PLAINTIFFS

1.      Plaintiffs are all individuals over the age of eighteen (18).

## OVERLAND PARK CAMPUS

2.      Plaintiff Stephanie Ayala attended Wright Career College's Overland Park campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

3.      Plaintiff Robin Bailes attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Leavenworth County, KS.

4.      Plaintiff Phyllis Barton attended Dickinson Business School in Kansas City, KS from approximately 1984 to 1985. At all times while attending Dickinson Business School, Plaintiff resided in Wyandotte County, KS.

5.      Plaintiff Ernesha Bentley attended Wright Career College's Overland Park campus from approximately 2009 to 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

6.      Plaintiff Heather Beougher attended Wright Career College's Overland Park campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Johnson County, KS and Elk County, KS.

19

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

7.     Plaintiff Gloria Betts attended Dickinson Business School in Kansas City, KS in approximately 1989. At all times while attending Dickinson Business School, Plaintiff resided in Wyandotte County, KS.

8.     Plaintiff Anthony Bostic attended Wright Career College's Overland Park campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

9.     Plaintiff Amber Bouknight attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

10.     Plaintiff Geraldine Bowser attended Dickinson Business School in Kansas City, KS from approximately 1984 to 1985. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

11.     Plaintiff Sharhonda Braden attended Wright Business School's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

12.     Plaintiff Cheryl Bradley attended Wright Career College's Overland Park campus in 2002. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

13.     Plaintiff Ieisha Bradley attended Wright Career College's Overland Park campus from approximately 2002 to 2003. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

14.     Plaintiff Kathryn Braughton has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Clay County, MO.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

15. Plaintiff Jennifer Brubaker attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

16. Plaintiff Amanda Bunney attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Miami County, KS.

17. Plaintiff Marcus Cannon attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

18. Plaintiff Denise Carruthers attended Dickinson Business School in Kansas City, KS from approximately 1984 to 1985. At all times while attending Dickinson Business School, Plaintiff resided in Wyandotte County, KS.

19. Plaintiff Marilyn Cashier attended Wright Career College's Overland Park campus from approximately 1999 to 2000. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

20. Plaintiff Marcus Cannon attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

21. Plaintiff Chelsea Cavanah attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Ray County, MO.

22. Plaintiff Christopher Clark attended Wright Career College's Overland Park campus from approximately 2011 to 2014. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

21

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

23.     Plaintiff Ciera Coates has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Jackson County, MO.

24.     Plaintiff Rodney Collier attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

25.     Plaintiff Angela R. Corbin attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

26.     Plaintiff Carie Crim attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

27.     Plaintiff Ashley Croft attended Wright Career College's Overland Park campus in approximately 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

28.     Plaintiff Marie Dawson attended Wright Career College's Overland Park campus in approximately 1997 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

29.     Plaintiff Jennifer Decker attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

30.  Plaintiff Joseph Dennis attended Wright Career College's Overland Park campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Cass County, MO.

31.  Plaintiff Brison Dockery attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

32.  Plaintiff Naquita Dorsey attended Wright Career College's Overland Park campus from approximately 2004 to 2005. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

33.  Plaintiff Jazmine Ellis attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

34.  Plaintiff Lucreshia Finley attended Wright Career College's Overland Park campus in 2008. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

35.  Plaintiff Teresa Fleming attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

36.  Plaintiff Jennifer Florez attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

37.  Plaintiff Roxana Fortney attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

38.　　Plaintiff Rachelle Fox attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Cass County, MO.

39.　　Plaintiff Adrienne Franklin attended Wright Career College's Overland Park campus from approximately 2001 to 2002. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

40.　　Plaintiff Raegan Garey attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

41.　　Plaintiff Takesha Gates has attended Wright Career College's Overland Park campus from May 2014 to the present. At all times while attending WCC, Plaintiff has resided in Jackson County, MO.

42.　　Plaintiff Tamara Grim attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

43.　　Plaintiff Roxana Fortney attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

44.　　Plaintiff Christi Hampton attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

45.　　Plaintiff Kayla Hannahan attended Wright Career College's Overland Park campus in 2012. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

24

46.     Plaintiff Kilandra Harden attended Wright Career College's Overland Park campus from approximately 2010 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

47.     Plaintiff Marcheta Hardison attended Wright Career College's Overland Park campus in 2006. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

48.     Plaintiff Lisa Hardman attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

49.     Plaintiff Brettkita Haskins attended Wright Career College's Overland Park campus from approximately 2001 to 2003. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

50.     Plaintiff Nikki Hill attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

51.     Plaintiff Shayla Hill has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Jackson County, MO.

52.     Plaintiff Mari Howard attended Wright Career College's Overland Park campus in 2010. At all times while attending WCC, Plaintiff resided in Cass County, MO.

53.     Plaintiff Yolanda Hughes attended Wright Career College's Overland Park campus from approximately 2008 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

25

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

54.     Plaintiff Nicole Fox Jackson attended Wright Career College's Overland Park campus in approximately 1998. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

55.     Plaintiff Heather Jacobson attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Cass County, MO.

56.     Plaintiff Vickie Jagodzinski attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Cass County, MO.

57.     Plaintiff Stephen Jewsome attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

58.     Plaintiff Keisha Johnson attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

59.     Plaintiff Kenisha Johnson attended Wright Career College's Overland Park campus from approximately 2008 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

60.     Plaintiff Brianne Jones attended Wright Career College's Overland Park campus in 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

61.     Plaintiff Denise Shatra Jones attended Wright Career College's Overland Park campus from approximately 2008 and 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

62.     Plaintiff Raven Jones has attended Wright Career College's Overland Park campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Wyandotte County, KS.

63.     Plaintiff Latasha Lambert attended Wright Career College's Overland Park campus in 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

64.     Plaintiff Abby Anderson Laughman attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Clay County, MO.

65.     Plaintiff Sharon LaVanier attended Wright Career College's Overland Park campus in 2007. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

66.     Plaintiff Samantha Bailes Lemanske attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

67.     Plaintiff Chasidi Lewis attended Wright Career College's Overland Park campus from approximately 1999 to 2000. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

68.     Plaintiff Deedra Lomax attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

69.     Plaintiff Brenda Jo Mather attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

70.     Plaintiff Sarah McCabe attended Wright Career College's Overland Park campus in 2011. At all times while attending WCC, Plaintiff resided in Douglas County, KS.

27

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

71.     Plaintiff John McCoy attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

72.     Plaintiff Amy Underwood McKinney attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

73.     Plaintiff Holly Davis Miller attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

74.     Plaintiff Stephanie Mooney attended Wright Career College's Overland Park campus from approximately 2000 to 2001 and 2007 to 2008. At all times while attending WCC, Plaintiff resided in Jackson County, MO and Wyandotte County, KS.

75.     Plaintiff Tiedre Moore attended Wright Career College's Overland Park campus from approximately 2009 to 2010 and in 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO and Wyandotte County, KS.

76.     Plaintiff Emily Mosley attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

77.     Plaintiff Marcie Myers-Elder attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

78.     Plaintiff Latika Nelson attended Wright Career College's Overland Park campus in 2000, 2006 and 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

79.     Plaintiff Brian North attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

80.     Plaintiff Leanna Odems attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

81.     Plaintiff Anthony Osby attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

82.     Plaintiff Tremaine Pace attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

83.     Plaintiff Tiffany Patillo attended Wright Career College's Overland Park campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

84.     Plaintiff Janet Terry Payne attended Wright Career College's Overland Park campus from approximately 2004 to 2005. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

85.     Plaintiff Richard Payne attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

86.     Plaintiff Deanna Payton attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

87.     Plaintiff Quinton Petty attended Wright Career College's Overland Park campus from approximately 2000 to 2001. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

88.     Plaintiff Kristi Pugh attended Wright Career College's Overland Park campus in 2009. At all times while attending WCC, Plaintiff resided in Clay County, MO.

89.     Plaintiff Patisha Randolph attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

90.     Plaintiff Angela Reed attended Wright Career College's Overland Park campus in approximately 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

91.     Plaintiff Cierra Sauer attended Wright Career College's Overland Park campus in 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

92.     Plaintiff Melissa Simon attended Wright Career College's Overland Park campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

93.     Plaintiff LaShawnda Simonton attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

94.    Plaintiff Timesha Smith attended Wright Career College's Overland Park campus in approximately 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

95.    Plaintiff Nicole Staab attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

96.    Plaintiff Dawn Youngblood Starr attended Wright Career College's Overland Park campus from approximately 1999 to 2000. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

97.    Plaintiff Latisha Stewart attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

98.    Plaintiff Brian Street attended Wright Career College's Overland Park campus in from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

99.    Plaintiff Sean Sward attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

100.    Plaintiff Sarah Taylor attended Wright Career College's Overland Park campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

101. Plaintiff Lashone Thomas attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

102. Plaintiff Lori Throne attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

103. Plaintiff Canisha Tiller attended Wright Career College's Overland Park campus in approximately 2004. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

104. Plaintiff Shannon Timberlake attended Wright Career College's Overland Park campus in approximately 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

105. Plaintiff Renita Triplett attended Wright Career College's Overland Park campus from approximately 2005 to 2006. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

106. Plaintiff Meriam Turner attended Wright Career College's Overland Park campus from approximately 2000 to 2002. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

107. Plaintiff Jacqueline Tuttle attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

108.   Plaintiff Maria Valdez attended Wright Career College's Overland Park campus from approximately 2009 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

109.   Plaintiff Rita Verge attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

110.   Plaintiff Ryan Vivanco attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Clay County, MO.

111.   Plaintiff Curtis Von Roue attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

112.   Plaintiff Kendyll Walker attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

113.   Plaintiff Tashanna Walls has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Johnson County, KS.

114.   Plaintiff Jarrae Wells attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

115. Plaintiff Christine Whitworth attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Miami County, KS.

116. Plaintiff Yolanda Wilson attended Wright Career College's Overland Park campus in approximately 2007, 2010 and 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

117. Plaintiff Amanda Wilwerding attended Wright Career College's Overland Park campus from approximately 2004 to 2005. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

118. Plaintiff Anthony Wright attended Wright Career College's Overland Park campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Cass County, MO.

119. Plaintiff Brian Wroten attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

**WICHITA, KANSAS CAMPUS**

120. Plaintiff James Baker attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

121. Plaintiff Lewistenna Barnett has attended Wright Career College's Wichita campus since 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

34

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

122. Plaintiff Treshunda Beasley has attended Wright Career College's Wichita campus since 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

123. Plaintiff Jordan Bergman attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

124. Plaintiff Danielle Bowman has attended Wright Career College's Wichita campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Sedgwick County, KS.

125. Plaintiff Sylvia Brown attended Wright Career College's Wichita campus from 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

126. Plaintiff Laqueeta Bruce attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

127. Plaintiff Roderick Bruce attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS

128. Plaintiff Linda Charles attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

129. Plaintiff Kimberly Clark attended Wright Career College's Wichita campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Butler County, KS.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

130.    Plaintiff Kera Clemons-Birch has attended Wright Career College's Wichita campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Sedgwick County, KS.

131.    Plaintiff Ashley Felton-Kreager attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

132.    Plaintiff Laura Franco attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

133.    Plaintiff Latisha Friday attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

134.    Plaintiff Quantillia Gaines attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS

135.    Plaintiff Brittany Garrett attended Wright Career College's Wichita campus in 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

136.    Plaintiff Megan Hatfield attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

137.    Plaintiff August Hughes attended Wright Career College's Wichita campus in approximately 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

138.    Plaintiff Kimberly Hunt attended Wright Career College's Wichita and Oklahoma City campuses from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS and Oklahoma County, OK.

139.    Plaintiff Amber Jackson attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

140.    Plaintiff Marqieze Jackson attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

141.    Plaintiff Ruth Jackson attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

142.    Plaintiff Erica Jefferson attended Wright Career College's Wichita campus from approximately 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

143.    Plaintiff Jennifer Keezer attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

144.    Plaintiff Amanda McCray attended Wright Career College's Wichita campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

145.    Plaintiff Jose Melendez attended Wright Career College's Wichita campus from in 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

146.     Plaintiff Equila Moody attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

147.     Plaintiff Tracy Moore attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

148.     Plaintiff Amber Peterson attended Wright Career College's Wichita campus in 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

149.     Plaintiff Sandra Phillips attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

150.     Plaintiff Erica Ray attended Wright Career College's Wichita campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

151.     Plaintiff Angela Richie attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

152.     Plaintiff Melissa Rush attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

153.     Plaintiff John Teter attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Butler County, KS.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

154.    Plaintiff Stephanie Thompson attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

155.    Plaintiff Brenda Treat attended Wright Career College's Wichita campus in approximately 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

156.    Plaintiff Paula Wallis attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Butler County, KS.

157.    Plaintiff Michael K. Williams attended Wright Career College's Wichita campus in approximately 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

158.    Plaintiff Renida Williams attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

159.    Plaintiff Vanessa Wiseman attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

160.    Plaintiff Jennifer Woodley attended Wright Career College's Wichita campus from approximately 2010 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

161.    Plaintiff Stephanie Woods attended Wright Career College's Wichita campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

162.    Plaintiff Mariah Yates has attended Wright Career College's Wichita campus from approximately 2012 to the present. At all times while attending WCC, Plaintiff has resided in Sedgwick County, KS.

## TULSA, OKLAHOMA CAMPUS

163.    Plaintiff Ella Cheadle attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

164.    Plaintiff Latoya Cheadle attended Wright Career College's Tulsa campus from approximately 2005 to 2006. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

165.    Plaintiff Stephanie Barnhardt has attended Wright Career College's Tulsa campus from approximately 2012 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

166.    Plaintiff Kimberly Benson attended Wright Career College's Tulsa campus in 2013. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

167.    Plaintiff Andre Fulson has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

40

168.    Plaintiff Brandi Hardiman attended Wright Career College's Tulsa campus from approximately 2010 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

169.    Plaintiff Carliss Harding has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

170.    Plaintiff Stephanie Hulsey attended Wright Career College's Tulsa campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

171.    Plaintiff Jessie James attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

172.    Plaintiff Kathy Lynn Jones attended Wright Career College's Tulsa campus in 2013. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

173.    Plaintiff Charity Katon attended Wright Career College's Tulsa campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

174.    Plaintiff Sherry Kirksey attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

175.    Plaintiff Charlotte Kramer attended Wright Career College's Tulsa campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

41

176.     Plaintiff Natalya Minners has attended Wright Career College's Tulsa campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

177.     Plaintiff Barbara Nash attended Wright Career College's Tulsa campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

178.     Plaintiff Teresa Potter has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Osage County, OK.

179.     Plaintiff Donyetta Thrower attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

180.     Plaintiff Elizabeth Tramel has attended Wright Career College's Tulsa campus from approximately 2012 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

181.     Plaintiff Roberta Verner has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

182.     Plaintiff Crystal Washington attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

183.     Plaintiff Ronald Jack Wilson attended Wright Career College's Tulsa campus from approximately 2006 to 2007. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

184.     Plaintiff Antoenete Zachary attended Wright Career College's Tulsa campus from approximately 2008 to 2013. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

## OMAHA, NEBRASKA CAMPUS

185.     Plaintiff Katrina Chism attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

186.     Plaintiff Belinda Clayton attended Wright Career College's Omaha campus in 2013. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

187.     Plaintiff Centel Duncan attended Wright Career College's Omaha campus in 2012. At all times while attending WCC, Plaintiff resided in Pottawattamie County, IA.

188.     Plaintiff Latonia Freeman attended Wright Career College's Omaha campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

189.     Plaintiff Janet Gross attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

190.     Plaintiff Sonata Harper has attended Wright Career College's Omaha campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Douglas County, NE.

43

191.     Plaintiff Caitlyn Margrave attended Wright Career College's Omaha campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

192.     Plaintiff Judy Ruffin attended Wright Career College's Omaha campus in approximately 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

193.     Plaintiff Ronald A. Smith attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

194.     Plaintiff Kevin Sharp attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

## OKLAHOMA CITY, CAMPUS

195.     Plaintiff Nicole Butler has attended Wright Career College's Oklahoma City campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Pottawatomie County, OK.

196.     Plaintiff Rene Golden has attended Wright Career College's Oklahoma City campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Oklahoma County, OK.

197.     Plaintiff Sonya Pruitt attended Wright Career College's Oklahoma City campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Canadian County, OK.

198.    Plaintiff Quntice Reed attended Wright Career College's Oklahoma City campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Oklahoma County, OK.

199.    Plaintiff Nyree Tiger has attended Wright Career College's Oklahoma City campus from approximately 2014 to the present. At all times while attending WCC, Plaintiff has resided in Oklahoma County, OK.

## DEFENDANTS

200.    Defendant Mission Group Kansas, Inc., d/b/a Wright Career College ("WCC"), is a Kansas Corporation but doing business in the State of Missouri at all relevant times.

201.    Upon information and belief, Defendant Board of Directors of Mission Group Kansas, Inc., d/b/a Wright Career College, consists of the following members: Mr. James Miller, Jr., Mrs. Gayle L. Miller, Mr. John Mucci, Mr. Ronald L. Holt, Mrs. Peggy Hodges, Mr. Martin G. Baughman, Dr. Baltazara G. Lotuaco, Mrs. Shawn Sharpley, Mr. Stephen Browne, Mr. Eugene Kivett, Mr. David O'Brien, Ms. Kathleen O'Brien and Ms. Jane Maskus.

202.    Defendant John Mucci ("Mucci"), upon information and belief, is a resident of Kansas; Mucci was employed by Defendant WCC as President and was acting within the course and scope of his employment at the time of the events alleged herein.

203.    Defendant Stephen Browne ("Browne), upon information and belief, is a resident of Missouri; Browne was employed by Defendant WCC as Treasurer and was acting within the course and scope of his employment at the time of the events alleged herein.

204.    Defendant Ron Holt ("Holt"), upon information and belief, is a resident of Missouri; Holt was employed by Defendant WCC as Secretary and was acting within the course and scope of his employment at the time of the events alleged herein.

45

## JURISDICTION & VENUE

205.     Jurisdiction is proper in this Court pursuant to R.S.Mo. § 506.500 in that many of the material events that comprise the basis of Plaintiffs' claims occurred in Missouri and Plaintiffs are seeking damages in excess of $15,000.

206.     Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because each of the Plaintiffs, or some of them, were first injured in Eastern Jackson County, Missouri and/or because several Defendants reside in – or have registered agents in – Eastern Jackson County, Missouri.

## JOINDER OF CLAIMS

207.     Joinder of Plaintiffs' claims are permissible pursuant to Missouri Supreme Court Rule 52.05(a) in that the claims alleged herein arise out of the same series of occurrences and involve common questions of law and fact.

## GENERAL ALLEGATIONS REGARDING DEFENDANTS

208.     Mission Group Kansas, Inc. ("MGK"), is a Kansas non-profit corporation, which operates Wright Career College ("WCC"), a private non-profit postsecondary vocational institution with campuses in Overland Park, Kansas; Wichita, Kansas; Oklahoma City, Oklahoma; Tulsa, Oklahoma; and Omaha, Nebraska.

209.     WCC participates in federal student loan and grant programs. These programs include, among others, the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Pell Grant Program, and campus-based aid programs. Grants do not have to be repaid by students, while loans must be repaid whether or not a student completes a degree program. However, in many instances, funds from either source (grants or loans) are limited in the amount any one borrower may receive.

46

210.    Having identified the opportunity to tap into guaranteed payment through federal loan programs, while shielding itself from any risk resulting from its students' student loan defaults, WCC purposely entices prospective students to enroll and apply for student loans they cannot pay back through a systematic, deceptive marketing scheme. It conducts this scheme in large part through its publications, televised ads and enrollment "advisors."

211.    Beginning at least by 1984 and on various and continuing dates thereafter, Defendants intentionally engaged in a pattern and practice of deceptive conduct and of making certain fraudulent misrepresentations and omissions to Plaintiffs and other prospective students.

212.    WCC deceives students about federal financial aid, the true cost of attending WCC, the value of WCC's accreditations, the quality and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.

213.    WCC does this by improperly hiding information from visitors to its websites and by misleading students through affirmative misrepresentations and material omissions. WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value and re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.

214.    Collectively, these tactics drive WCC's enrollment practices and work to the company's great financial benefit, at the expense of its students, the federal government, and the American taxpayers.

## GENERAL ALLEGATIONS REGARDING THE ENROLLMENT AND EXPERIENCE OF PLAINTIFFS

215.    Plaintiffs are all current or former WCC students.

47

216.  Defendants' pattern and practice of deceptive conduct and fraudulent misrepresentations and omissions was designed to, and in fact did, induce students to enroll in various programs, including specifically each and every one of the Plaintiffs.

217.  From approximately 1999 to the present WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

a)  that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;

b)  that any educational credits earned at WCC would transfer and would apply toward a degree program at another school;

c)  that WCC's instructors all had degrees and were experienced in their respective fields;

d)  that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;

e)  that enrolling in its evening classes offered all of the same benefits as the day classes;

f)  that the cost of the program would be less than WCC knew would be the actual cost of the program;

g)  that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

48

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

h) that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

i) that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j) that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k) in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

218. As a result of these representations, Plaintiffs enrolled and were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

219. After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a) educational credits earned at WCC were not transferable towards programs at other schools;

b) the programs in which Plaintiffs enrolled lasted longer and were more expensive than Defendants represented;

c) Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

49

d) there was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances classes were held with no instructor at all;

e) Defendants used a class scheduling "protocol" referred to as "pods" wherein new students were placed in courses that were already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier, necessary course work and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f) the evening classes did not offer all of the same benefits as the day classes; there was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed; moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

g) the student loans and grants did not include the total cost of the students' program resulting in debt that Plaintiffs were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

50

h) Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants did not provide Plaintiffs with books. Also, "electronic" textbooks that were promised were either not made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i) In other ways demonstrated by the admitted evidence at any trial in this matter.

220. Due to WCC's misrepresentations and other conduct as set forth herein, Plaintiffs will not be and have not been properly trained in the subject areas in which they enrolled, will not receive the salaries they were promised upon graduation, and will fail to attain accreditation in their fields due to a failure of WCC to properly provide an education which will allow accreditation, and the "education" received from WCC, has no value to Plaintiffs, and instead has resulted in crippling debt.

221. Plaintiffs borrowed thousands, and even tens of thousands of dollars, to attend WCC only to discover later that their degrees and "education" are worthless and their credits won't transfer, even to the point where at least one Plaintiff's current employer refused to accept her WCC credits as evidence of further qualification of employment. Now Plaintiffs are thousands of dollars in debt, for no value in return.

222. Plaintiffs have been damaged not only in terms of inability to earn a living in their field upon graduation but also because they must repay the student loans WCC assisted them in obtaining, which are substantial.

51

## COUNT I
## FRAUDULENT MISREPRESENTATION
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

223. Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility including but not limited to:

    a. job placement and job demand;

    b. anticipated starting salary;

    c. graduation rates;

    d. instructors' qualification;

    e. quality of education;

    f. transferability of credits to other institutions;

    g. instructors' qualifications; and

    h. cost and duration of program.

224. At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

225. At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

226. Plaintiffs had a right to rely on Defendants' representation and did, in fact, rely on such representation.

227. That in reliance on WCC's material misrepresentations, Plaintiffs enrolled in its facility and were assisted in applying for financial aid in the form of student loans, Plaintiffs must repay the loans after graduation from WCC.

52

228. As a direct and proximate result of Defendants' fraudulent representation, the Plaintiffs have incurred damages.

229. Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

**COUNT II**
**NEGLIGENT MISREPRESENTATION**
**(Against all Defendants)**

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

230. Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility.

231. In making said representation, Defendants failed to use ordinary care.

232. At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

233. In reliance on WCC's material misrepresentations, Plaintiffs enrolled in its facility and Plaintiffs were assisted in applying for financial aid in the form of student loans, Plaintiffs must repay loans after graduation from WCC.

234. These misrepresentations were material to Plaintiffs' enrollment in its facility.

235. Plaintiffs relied on the information supplied by Defendants and such reliance was reasonable under the circumstances.

53

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

236. As a direct and proximate result of Defendants' negligent misrepresentation Plaintiffs have been injured and damaged as herein described.

237. Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT III
## NEGLIGENT HIRING/RETENTION
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

238. Defendants had a duty to possess and use the same degree of care ordinarily used by reasonable and/or careful educational institutions to assess an applicant's suitability for a teaching position.

239. Defendants knew or should have known that their employees ("instructors") were not properly qualified or suitable for the programs in which Plaintiffs are/were enrolled; they wrongfully terminated instructors who were qualified; and by their practice of changing instructors so frequently, that the Plaintiffs were unable to obtain the education promised by the Defendants.

240. Defendants knew or should have known that negligently hiring, training, supervising, and monitoring their employees would directly prevent the Plaintiffs' from receiving the education promised to them by the Defendants.

54

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

241.    As a direct and proximate result of Defendants negligent hiring/retention, Defendants' employees were not qualified for the work they were hired to perform and were not properly trained or supervised.

242.    As a direct and proximate result of Defendants' negligent hiring/retention, Plaintiffs were unable to receive the education promised and have been injured and damaged as herein described.

243.    Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

244.    WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT IV
## CIVIL CONSPIRACY
### (Against All Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

245.    Defendants had an agreement and/or understanding, that they would use a pattern of advertising, deceptive enrollment and recruitment techniques to entice Plaintiffs, and other students, to enroll at WCC, all with the purposes of charging exaggerated fees, tuition, and costs, and for the benefit of Defendants.

246.    In attempting to accomplish their goal Defendants committed one or more overt acts as fully enumerated above.

247.     As a direct and proximate result of Defendants' acts in furtherance of this conspiracy, Plaintiffs have incurred damages.

248.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT V
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

249.     Plaintiffs and Defendants are within the definition of "person" under the Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

250.     Defendants' statements to induce Plaintiffs to enroll at WCC constitute "advertisements" as defined by R.S.Mo. § 407.010(1).

251.     The objects of the educational programs and services offered by Defendant WCC constitute merchandise as defines by R.S.Mo. § 407.010(4).

252.     Defendants' advertising, offering for sale, and/or sale of merchandise constitutes "trade" or "commerce" as defined by R.S.Mo. § 407.010(7).

253.     Plaintiffs purchased merchandise from Defendants primarily for personal, family, or household purposes within the meaning of R.S.Mo. § 407.025.1.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

254.     Defendants engaged in a pattern and practice of using deception, fraud, false pretense, false promise, misrepresentation, and unfair practices in connection with the sale or advertisement of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

255.     Defendants engaged in a pattern and practice of using concealment, suppression and omission of material facts in connection with the advertising and sale of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

256.     As a direct result of Defendants' violations of the Missouri Merchandising Practices Acts, Plaintiffs sustained an ascertainable loss of money, including but not limited to; the amounts paid by Plaintiffs in tuition and other fees to attend WCC.

257.     Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, attorney fees and penalties and for such other relief this Court deems just and proper.

### COUNT VI
### ACCOUNTING
#### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

258.     That Defendants should be required to make a full accounting of each Plaintiffs' tuition charges, separating tuition from the costs of books, laboratory fees, or other supplies or fees, for all that is included in each student's file.

57

259. The Defendants should be required to make a full accounting of each Plaintiffs' grants or loan funds received by Defendants, the current location of any such grant or loan funds being held on behalf of Plaintiffs; including the source of stipends or budget plan funds being paid to Plaintiffs and all financial institutions in which such funds are held; all amounts currently owing to Plaintiffs which exceed the amount of books, fees, and tuition incurred by Plaintiffs; and requiring payment to Plaintiffs of all funds exceeding amounts due and owing to Defendants.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

**COUNT VII**
**PUNITIVE DAMAGES**
**(Against all Defendants)**

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

260. Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually and/or cumulatively justify the submission of punitive damages in this case.

261. Defendants knew or had information from which they, in the exercise of ordinary care, should have known that their conduct created a high degree of probability of mental distress, bodily harm, and damage to Plaintiffs and other similarly situated students.

262. The willful, wanton, and malicious acts of Defendants as more fully set forth above, evidence Defendants' complete indifference and conscious disregard for the rights and safety of Plaintiffs and others similarly situated, justifying the submission of punitive damages in this case.

58

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages to punish and deter Defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL OF ALL ISSUES

Plaintiffs demand a trial by jury of all issues in this case.

Date: September 12, 2014

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
Kenneth B. McClain                    #32430
Andrew K. Smith                       #60485
Lauren E. McClain                     #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:   MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:   martin.loring@huschblackwell.com


SERVICE PARTY:   KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:   kbm@hfmlegal.com


SERVICE PARTY:   ELIZABETH ANN MUSHILL, Attorney for Defendant
SERVICE EMAIL:   elizabeth.mushill@huschblackwell.com


SERVICE PARTY:   STACIA GRESSEL BODEN, Attorney for Defendant
SERVICE EMAIL:   sboden@wrightcc.edu


SERVICE PARTY:   JAMES F. MONAFO, Attorney for Defendant
SERVICE EMAIL:   jim.monafo@huschblackwell.com

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

STEFANIE AYALA, et al.                    )
                                          )
                Plaintiffs,               )
                                          )
        vs.                               )        Case No. 1316-CV27529
                                          )
MISSION GROUP KANSAS, INC., et al.,       )
                                          )
                Defendants.               )

## ORDER

NOW BEFORE the Court is Plaintiffs' Motion for Leave to file First Amended Petition and Suggestions in Support. The Court, having reviewed the motion finds that same should be GRANTED and that Plaintiffs' First Amended Petition shall be deemed filed as of the date of this Order.

_____                   _____
DATE                                       JUDGE

# IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, ET AL, )
)
Plaintiff, )
) Case No. 1316-CV27529
VS. )
) Division No. 2
MISSION GROUP KANSAS, ET AL, )
)
Defendant. )

## NOTICE OF HEARING

COMES NOW the Court and does hereby set the above cause for a **HEARING** on Defendants' Motion to Compel Deposition Testimony of Plaintiff Christi Hampton **on OCTOBER 2, 2014, at 11:45 a.m.** in Division 2, located on the 2nd floor of the Jackson County Courthouse Annex, 308 West Kansas, Independence, Missouri 64050.

**IT IS SO ORDERED.**

September 15, 2014

_____
Judge Kenneth R. Garrett, III
Division 2

Copies sent this date to all parties of record:

**Kurt McGuff, Law Clerk to the Honorable Kenneth R. Garrett, III, Division 2**

Electronically Filed - Jackson - Independence - September 16, 2014 - 09:05 AM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' MOTION FOR EXTENSION OF TIME TO FILE RESPONSES TO PLAINTIFFS' INTERROGATORIES AND REQUESTS FOR PRODUCTION

Defendants Mission Group Kansas, Inc., d/b/a Wright Career College; Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively "Defendants"), by and through the undersigned counsel, move this Court for an order extending the current time in which Defendants may respond to Plaintiffs' First Interrogatories and Plaintiffs' First Requests for Production. Plaintiffs do not oppose this motion and have agreed to the relief requested herein. *See* E-mail from Andrew K. Smith to Martin M. Loring, attached hereto as Exhibit A.

WHEREFORE, Defendants respectfully request that this Court extend the time for Defendants to respond to Plaintiffs' Interrogatories and Requests for Production, up to and including September 30, 2014.

Electronically Filed - Jackson - Independence - September 16, 2014 - 09:05 AM

Dated: September 16, 2014.

Respectfully submitted,

By: ___/s/ Elizabeth A. Bozicevic_____

Martin M. Loring, MO Bar # 29712
James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar #59623
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

**_Attorneys for Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne, and Ron Holt._**

SLC-7330047-1

2

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 16th day of September 2014, by first-class mail to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050

/s/ Elizabeth A. Bozicevic

Electronically Filed - Jackson - Independence - September 16, 2014 - 09:05 AM

# Exhibit A

Electronically Filed - Jackson - Independence - September 16, 2014 - 09:05 AM

| | |
|---|---|
| **From:** | Loring, Martin |
| **Sent:** | Monday, September 15, 2014 11:32 AM |
| **To:** | 'Andy Smith' |
| **Cc:** | Bozicevic, Elizabeth; Monafo, Jim; Loring, Martin |
| **Subject:** | RE: Ayala--Defts' discovery responses |

Thank you Andy. There will undoubtedly many objections, but not mere objections. I have reviewed a draft and there are a number of substantive responses. We also should be in a position to produce our first round of documents by then too, although the production process will undoubtedly be a rolling one.

We will file a motion for extension, and you may have our agreement that you have 14 days from last Friday to file your Opposition as requested below.

**Martin M. Loring**
**Partner**
Direct: 816.983.8142
Martin.Loring@huschblackwell.com

**From:** Andy Smith [mailto:AKS@hfmlegal.com]
**Sent:** Monday, September 15, 2014 11:20 AM
**To:** Loring, Martin
**Cc:** Bozicevic, Elizabeth; Monafo, Jim
**Subject:** RE: Ayala--Defts' discovery responses

Marty,

I can agree to the additional two weeks with your personal assurance that what I receive will include substantive responses and production of documents, as opposed to mere objections.

Also may I have your agreement that I have 14 days from Friday to file a Reply to the Opposition you filed re protective order on Friday.

Please advise,


Andrew K. Smith
*Humphrey, Farrington & McClain, P.C.*
*221 W. Lexington, Suite 400*
*P.O. Box 900*
*Independence, Missouri 64051*
*Telephone: (816) 836-5050*
*Facsimile: (816) 836-8966*

**From:** Loring, Martin [mailto:Martin.Loring@huschblackwell.com]
**Sent:** Monday, September 15, 2014 10:55 AM
**To:** Andy Smith
**Cc:** Loring, Martin; Bozicevic, Elizabeth; Monafo, Jim
**Subject:** Ayala--Defts' discovery responses

1

Andy, you previously agreed to a two week extension for us to respond to your written discovery to defendants. They are therefore due tomorrow. We find ourselves needing more time. Please advise if you will agree to an additional two weeks, until September 30.

We need to get our request on file with the court, so please let us know ASAP. Thank you very much.

Marty Loring

**Martin M. Loring**
**Partner**

HUSCH **BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Direct: 816.983.8142
Fax: 816.983.8080
Martin.Loring@huschblackwell.com
huschblackwell.com
View Bio | View VCard

Electronically Filed - Jackson - Independence - September 16, 2014 - 09:05 AM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY:    MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:    martin.loring@huschblackwell.com


SERVICE PARTY:    KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:    kbm@hfmlegal.com


SERVICE PARTY:    ANDREW K SMITH, Attorney for Plaintiff
SERVICE EMAIL:    aks@hfmlegal.com


SERVICE PARTY:    STACIA GRESSEL BODEN, Attorney for Defendant
SERVICE EMAIL:    sboden@wrightcc.edu


SERVICE PARTY:    JAMES F. MONAFO, Attorney for Defendant
SERVICE EMAIL:    jim.monafo@huschblackwell.com

Electronically Filed - Jackson - Independence - September 16, 2014 - 09:05 AM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| STEFANIE AYALA, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., | ) | Division 2 |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

Comes now the Court on Defendants' Motion for Extension of Time to File Responses to Plaintiffs' Interrogatories and Requests for Production, filed September 16, 2014. After reviewing the motion, the Court finds that Defendants' Motion should be **GRANTED**.

IT IS THEREFORE **ORDERED** that Defendants' Motion for Extension of Time to File Responses to Plaintiffs' Interrogatories and Requests for Production is **GRANTED**.

**IT IS SO ORDERED**.

_____          _____
Date                                             Judge Kenneth R. Garrett, III

I certify a copy of the above was sent via the E-filing system this day to all counsel of record:

By: Kurt McGuff, Law Clerk to the Honorable Kenneth R. Garrett, III, Division 2.

SLC-7330326-1

Electronically Filed - Jackson - Independence - September 16, 2014 - 09:05 AM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA, et al.,                     )
                                            )
                    Plaintiffs,             )
                                            )
        vs.                                 )    Case No. 1316-CV27529
                                            )
MISSION GROUP KANSAS, INC.,                 )    Division 2
et al.,                                     )
                                            )
                    Defendants.             )

## ORDER

Comes now the Court on Defendants' Motion for Extension of Time to File Responses to Plaintiffs' Interrogatories and Requests for Production, filed September 16, 2014. After reviewing the motion, the Court finds that Defendants' Motion should be **GRANTED**.

IT IS THEREFORE **ORDERED** that Defendants' Motion for Extension of Time to File Responses to Plaintiffs' Interrogatories and Requests for Production is **GRANTED**.

**IT IS SO ORDERED.**

SEP 1 7 2014
_____
Date

_____
Judge Kenneth R. Garrett, III

I certify a copy of the above was sent via the E-filing system this day to all counsel of record:

By: Kurt McGuff, Law Clerk to the Honorable Kenneth R. Garrett, III, Division 2.

SLC-7330326-1

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| STEFANIE AYALA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 1316-CV27529 |
| | ) | |
| MISSION GROUP KANSAS, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PROTECTIVE ORDER**</u>

Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College" or "WCC"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively "Defendants"), respectfully request that the Court deny Plaintiffs' Motion for Order of Protection under Rule 56.01(c) and Rule 57.03(e) ("Plaintiffs' Motion").[1]

<u>**INTRODUCTION**</u>

Plaintiffs' Motion should be denied, and Defendants should be permitted to resume the deposition of Plaintiff Christi Hampton because the communications between Plaintiff Christi Hampton and WCC employee Nick Foley were completely above board in all respects. Nowhere in the 20 pages of Plaintiffs' Motion do Plaintiffs provide any legal support for the proposition that the communication was in violation of any law or rule. This is because there was nothing wrong with WCC's conduct. It is well-established that parties to a lawsuit are permitted to communicate freely with each other, so there was nothing prohibiting Foley from

---

[1] Defendants filed a Motion to Compel Deposition Testimony of Plaintiff Christi Hampton on August 7, 2014. On September 2, 2014, Plaintiffs filed an Opposition to Defendants' motion, combined with a separate Motion for Order of Protection that addressed the same topics.

talking to Hampton and asking her to complete a survey that is part of WCC's standard graduation packet.

In a complete stretch, Plaintiffs contend that communications between Plaintiffs and WCC amount to a secret "deposition." This is absurd. Plaintiffs chose to file this lawsuit while they were still students at WCC. As such, they knew that they would continue to have daily interactions with WCC employees, all outside the presence of their attorneys. WCC employees would have to talk to Plaintiffs, and Plaintiffs would have to talk to them. Communications between represented parties were expected because they were in constant contact. Missouri law recognizes such situations and it expressly permits communications between parties.

The survey is nothing close to a "deposition." It was not administered under oath. It was not compelled by notice. And, most importantly, counsel was not involved in the communication. It was purely a communication between the parties with no counsel involvement. It was not a deposition, and there is simply nothing improper about Foley's communications with Hampton or the survey he asked her to fill out. She was treated like every other student.

It is interesting to note that Plaintiffs do not object to the daily communications that benefit them. Why is this communication different from every other communication between the parties? This one is different because Hampton made documented statements that directly contradict her allegations in the Petition. The real reason Plaintiffs seek to block this discovery is that they do not like Hampton's responses to the survey. To be sure, Hampton's survey is a devastating piece of evidence that completely undermines her case. But that is no justification for Plaintiffs' counsel to unilaterally obstruct her deposition. To the contrary, that is every reason why Hampton should be compelled to explain in her deposition exactly why she

voluntarily gave WCC high marks in the survey – completely contradicting what she is claiming in the lawsuit.

Plaintiffs' Motion for Protective Order should be denied. Defendants should be permitted to conduct discovery into the survey.

## ARGUMENT

**I.** **Plaintiffs' Motion Should Be Denied, Because There Was Nothing Improper About Foley's Communication with Hampton.**

There is no dispute that Hampton completed the survey solely in the presence of Nick Foley, a WCC employee and a non-lawyer. There is no evidence that any attorney for WCC was involved in this communication in any way. Plaintiffs nonetheless contend that Foley's contact with Hampton was inappropriate. Plaintiffs are wrong.[2]

Under clear Missouri law, only attorneys are prohibited from communicating with represented parties. Missouri Rule of Professional Conduct 4-4.2 ("[A] *lawyer* shall not communicate . . . with a person the lawyer knows to be represented . . . ."). The rule expressly permits represented parties to talk to other represented parties in the same litigation. Rule 4-4.2, cmt. 4 states: "**Parties to a matter may communicate directly with each other . . . .**" See also E.E.O.C. v. McDonnell Douglas Corp., 948 F. Supp. 54, 55 (E.D. Mo. 1996) (interpreting Missouri Rule 4.2 and concluding that "**there is nothing that prohibits one party to a litigation from making direct contact with another party to the same litigation.**").

Because Missouri Rule 4.2 is "essentially identical to ABA Model Rule 4.2," Smith v. Kansas City S. Ry. Co., 87 S.W.3d 266, 271 (Mo. App. W.D. 2002), cases from other jurisdictions applying the same language as the Model Rule provide helpful guidance. For

---

[2] At Hampton's deposition, her counsel acknowledged that defense counsel may have had no notice of Foley's communications with Foley, but he contended that Foley's actions were inappropriate regardless. (Hampton Dep. (excerpts attached as Exhibit A) at 236:22-237:4).

example, in <u>Northwest Bypass Group v. U.S. Army Corps of Engineers</u>, 488 F. Supp. 2d 22 (D.N.H. 2007), the plaintiffs claimed that they had been inappropriately contacted by an employee of the defendant city. The court found that the plaintiff's contention that the employee had violated a law or rule was "plainly wrong" because the prohibition against contacting a represented person "does not apply to non-lawyers." <u>Id.</u> at 28. There was simply nothing improper about the employee's contact of plaintiffs on an issue related to "her longstanding relationship with them." <u>Id.</u> at 29. <u>See also</u> <u>Dorsey v. Home Depot U.S.A., Inc.</u>, 271 F. Supp. 2d 726, 730 (D. Md. 2003) ("Nothing in the law prohibits litigants . . . from speaking among and between themselves . . . . There could be no impropriety in the mere fact that there were direct communications between Home Depot and its employees."); <u>Am. Hardware Mfrs. Assoc. v. Reed Elsevier, Inc.</u>, 2005 WL 2124478, at *1 (N.D. Ill. July 28, 2005) (finding no impropriety in the communication between one of defendant's employees and the represented plaintiff); <u>Carda v. E.H. Oftedal & Sons, Inc.</u>, 2005 WL 2121972, at *3 (D.S.D. Aug. 30, 2005) (stating that South Dakota Rule 4.2 "does not apply to Carda because he is not an attorney representing a client . . . .").

Hampton chose to file her lawsuit while she was still a student at WCC. She could not possibly contend that WCC employees were prohibited from communicating with her, as that would effectively preclude her teachers from teaching her. Such a restriction would also prevent WCC employees from obtaining the same documentation from Hampton that it obtains from all graduates, which includes the survey at issue. There is no prohibition against parties communicating with each other for this very reason.

Notably, Hampton's communication with Foley was prompted by Hampton. (Hampton Dep. at 241:2-12). She testified that she was ***upset that WCC had not initiated communications***

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

with her, so she emailed Foley to set up a meeting. (Id. at 240:3-7). Plaintiffs certainly do not contend that Hampton's communications with Foley were improper. See Spencer v. Dist. of Columbia, 416 F. Supp. 2d 5, 11 n.4 (D.D.C. 2006) (finding nothing inappropriate about communications between represented parties, specifically noting that it was the plaintiff herself who approached the defendant's employee).

Hampton scheduled the meeting with Foley for a week later. Although her affidavit contends that she had "no opportunity to confer with [her] attorney" (Ex. 6 to Pls.' Mot. at ¶ 11), there was nothing preventing Hampton from talking to her attorney at any time during the intervening week. See Dumas v. Hurley Med. Ctr., 837 F. Supp. 2d 655, 667 (E.D. Mich. 2011) ("[T]the court can envision nothing preventing a represented client in litigation simply declining the invitation to communicate . . . ."). Hampton and Foley were allowed to communicate, but if Hampton had any concern or discomfort with the idea of communicating with Foley, she could have sought her attorney's advice. Instead, she reached out to Foley and ultimately completed the survey.

Lacking legal grounds to challenge the appropriateness of Foley's contact with Hampton, Plaintiffs rely upon an email change between counsel in which Defendants' counsel agreed to remove Plaintiffs from a list of *former* students to call for a certain customer service survey. (Pls.' Mot. at 5). This email exchange does not affect the legality of Foley's contact with Hampton. As discussed above, the law permitted Foley to talk with Hampton. Counsel can ask that communications cease, but there is no legal requirement to comply with counsel's request. See Am. Hardware Mfrs., 2005 WL 2124478, at *1 (finding communications between represented parties to be permitted under the rules, even when plaintiff's counsel specifically asked that the communications stop).

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

Moreover, the cited email exchange related to a completely different set of communications. Defendants' counsel never stated that WCC employees would cease *all communications* with Plaintiffs, nor could WCC ever do so. Hampton and Plaintiff Jennifer Decker were still **current** students at the time of the email exchange, and Plaintiffs and their counsel certainly did not expect that WCC employees would cease teaching Plaintiffs, exclude Plaintiffs from the graduation requirements expected of every student, or avoid eye contact with Plaintiffs at their graduation ceremony.

Practically and realistically, Plaintiffs were going to communicate with WCC employees. Legally, such communications were permitted. Any agreement the parties may have had that certain communications not be had did not extend to the Foley-Hampton communications. Even if it did, Foley's communications with Hampton were ethically permissible so there are no grounds to prohibit discovery about the communications. If the Court believes Hampton was somehow "tricked" into giving a favorable survey to WCC, that is something the Court can remedy at the trial of this matter. To be sure, Defendants should be permitted to conduct discovery into the communications so that the Court can have the benefit of a complete record at the time it makes admissibility decisions. Plaintiffs' Motion for Protective Order should therefore be denied in its entirety and Hampton's deposition should be re-opened.

## II. Plaintiff Hampton's Affidavit Waives Any Objection to Questioning about the Survey.

At the same time that Plaintiffs' Motion asks the Court to prohibit Defendants from obtaining discovery about Hampton's survey, the motion provides self-serving testimony from Hampton about the survey. In Hampton's deposition, Defendants' counsel attempted to ask several questions that sought to get to the facts behind the creation of the survey. Plaintiffs'

SLC-7323662-1

6

counsel instructed Hampton not to answer even the most basic of these background questions. For example:

> **Q.    Miss Hampton, was there anyone else in the room with you and Mr. Foley?**
>
> **MR. SMITH: No, she's not answering that question.**

(Hampton Dep. at 231:4-7).

Despite instructing Hampton not to answer questions relating to the survey's creation at her deposition, Plaintiffs see no problem with providing an affidavit from Hampton that attests to those circumstances. Plaintiffs' contention, apparently, is that Hampton can tell the Court her self-serving story about the survey in order to win a motion seeking to block any further questions about the survey. Hampton should not be permitted to tell the Court her self-serving story through an affidavit with one hand while using her other hand to block Defendants' ability to test her story through cross-examination. That is repugnant to our adversarial system.

Hampton's affidavit (attached as Exhibit 6 to Plaintiffs' Motion) contains a number of details about what Hampton was allegedly thinking when she prepared the survey. By submitting an affidavit containing Hampton's interpretation of the survey's creation, Plaintiffs have waived any objection to discovery about the survey. They opened the door. Plaintiffs should not be permitted to leak out their story when convenient to them while barring Defendants from asking questions to get at the truth of that story. At a minimum, Hampton's deposition should be re-opened to permit Defendants to question Hampton about the statements made in her affidavit.

Case 4:14-cv-00885-BP    Document 1-2    Filed 10/08/14    Page 184 of 294

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

## III.    <u>Defendants Are Not Able To Obtain the Discovery Sought Via Other Methods.</u>

Plaintiffs propose now that Defendants use some other discovery method to obtain information about Hampton's views of the school. But Defendants' counsel attempted to do just that at the deposition, and Plaintiffs' counsel completely obstructed those efforts as well:

> Q.      Ma'am, I want to ask you a series of questions and I want you to respond and tell me whether you agree or disagree with my statement, okay? The receptionists at Wright Career College were courteous and helpful.
>
> MR. SMITH: No, no, you're – you're trying to get around the same thing, okay? *You are now for the record reading word-for-word* from the improper document that we're fighting about, all right? So the well is pretty poisoned at this point. It's academically and elementarily clear what you're doing and *she's not going to do that* today.
>
> MR. MONAFO: Okay, so you're instructing her not to answer, right? Okay. Let me, one more just for the record, just make your objection and we'll move on.
>
> Q.      Miss Hampton, I would like to know whether your admissions representative answered your questions about enrollment?
>
> MR. SMITH: Same instruction. *Don't answer.*
>
> Q.      And one last one. Did your admissions representative accurately represent the opportunities at Wright Career College?
>
> MR. SMITH: Same instructions. *Don't answer.*

Hampton Dep., p. 242:11-243:15 (emphasis added).

Defense counsel attempted to examine Hampton on her views of the school without using the survey, and those efforts were also unilaterally blocked. Plaintiffs' argument now that WCC could discover the same information through other means is disingenuous. Moreover, Defendants should be permitted to ask Hampton questions about the survey, a crucial piece of evidence in this case, using the discovery method of Defendants' choice. Plaintiffs should not be permitted to dictate what type of discovery Defendants conduct. Plaintiffs' Motion should be denied in its entirety for this additional reason.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court DENY Plaintiffs' Motion for Order of Protection and GRANT Defendants' Motion to Compel, and for such other relief as the Court deems appropriate.

Dated: September 12, 2014.                    Respectfully submitted,


By:    /s/ Elizabeth A. Bozicevic
Martin M. Loring, MO Bar # 29712
James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar #59623
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

***Attorneys for Mission Group Kansas, Inc., Board of Directors of Mission Group Kansas, Inc., John Mucci, Stephen Browne, and Ron Holt.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing instrument was forwarded this 12th day of September 2014, by first-class mail to:

Kenneth B. McClain
Andrew K. Smith
Lauren E. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington, Suite 400
P.O. Box 900
Independence, MO 64050

/s/ Elizabeth A. Bozicevic

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

1    IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
                   AT INDEPENDENCE
2

3

4    STEFANIE AYALA, et al.,          )
                                      )
5              Plaintiffs,            )
                                      )
6    v.                               )  No. 1316-CV27529
                                      )
7    MISSION GROUP KANSAS,            )
     INC., et al.,                    )
8                                     )
               Defendants.            )
9

10

11

12

13

14

15

16

17

18          VIDEOTAPED DEPOSITION OF CHRISTI

19    HAMPTON, a Plaintiff, taken on behalf of the

20    Defendants before Joan S. Nunnink, CCR No. 543,

21    CSR, pursuant to Notice on July 30, 2014 at the

22    offices of Humphrey, Farrington & McClain, P.C.

23    221 West Lexington Avenue, Suite 400,

24    Independence, Missouri 64050.

25

EXHIBIT
A

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

1          MR. MONAFO:  Okay.  So let's just

2    make a record on that so we know what we're

3    dealing with.

4         Q.   (By Mr. Monafo)  Miss Hampton, was there

5    anyone else in the room with you and Mr. Foley?

6          MR. SMITH:  No, she's not answering

7    that question.

8          MR. MONAFO:  We're just making a

9    record.  Just let me make a record.

10          MR. SMITH:  All right, all right.

11   Don't answer it.

12        Q.   (By Mr. Monafo)  Okay.  And you're

13   taking your counsel's advice; correct?

14        A.   Yes.

15        Q.   All right.

16          MR. MONAFO:  And I'm not going to

17   do this for hours, don't -- I just want to make

18   just a sample so the judge can understand what

19   the dispute is.

20        Q.   (By Mr. Monafo)  Ma'am, did you, did you

21   think Nick Foley was a lawyer --

22          MR. SMITH:  Don't answer it.

23        Q.   (By Mr. Monafo) -- for the company?

24          MR. SMITH:  Don't answer it.

25          MR. MONAFO:  Okay.  So you, just so

1    we go, I guess we can keep all this on the tape.

2    Andy, my next thing I wanted to do was go through

3    the Exit Satisfaction Survey with her. Are you

4    going to allow that or --

5              MR. SMITH:  No.  No, I'm not.

6              MR. MONAFO:  Okay.  And then what

7    I'll do is over the break is I'll think about

8    what, what my next move will be since if you're

9    not going to allow that, because that was, that

10   would take up, take a little time to do that.

11   And again, just for the record, you're -- and

12   we're not going to need the video for this.

13             MR. SMITH:  You might as well let

14   it run until it ends.

15             MR. MONAFO:  Yeah, let it run.

16             MR. SMITH:  We'll be done.  He

17   always fudges a couple of minutes.

18             MR. MONAFO:  The basis for you is

19   you think there was some impropriety that

20   occurred in the completion of this Exit

21   Satisfaction Survey, that's what I understand.

22             MR. SMITH:  Well, I believe the

23   impropriety occurred in bringing my client in a

24   lawsuit known to Wright Career College and its

25   administrators to be ongoing and have her answer

1    questions in writing directly related to the

2    issues in the case and not to put me on notice of

3    it or anyone else in my firm, and from what you

4    said, not to put you on notice of it either.

5                    MR. MONAFO:  Okay.  Very good.  Why

6    don't we take a break.

7                    MR. SMITH:  Before we go off, I

8    just want to, just to get, I don't know what your

9    decision is going to ultimately be, I want the

10   record to be clear on this section, that I am

11   still offering Miss Hampton today to answer

12   questions on other topics and other documents

13   other than related to that objection and that

14   instruction, since we're all here today, and in

15   light of the fact that the Court, if they rule in

16   my favor, we might not have to come back.  So you

17   can choose what to do.

18                   MR. MONAFO:  Right.

19                   MR. SMITH:  I just want to make

20   that clear, I'm not shutting it down on all

21   topics.

22                   MR. MONAFO:  Okay, but wouldn't the

23   appropriate thing to do would be to allow -- the

24   most efficient thing to do would be to allow me

25   to inquire about the Exit Satisfaction Survey and

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

```
 1    know that's improper.
 2         Q.   (By Mr. Monafo)  Did you think it was
 3    improper, Miss Hampton, in any way for you to be
 4    talking to Nick Foley about things you wanted to
 5    talk about about your experience at Wright Career
 6    College?
 7              MR. SMITH:  Form, foundation,
 8    that's not an accurate summary of what she said
 9    she wanted to talk to him about.
10         Q.   (By Mr. Monafo)  You can answer.
11         A.   I reached out to Nick Foley for one
12    reason, exiting papers and graduation.
13         Q.   And he responded and said what time can
14    you come in; right?
15         A.   Yes.
16         Q.   And you told him you would come in on
17    the evenings and you guys, looks like you
18    arranged for a date, right, pretty innocuous?
19         A.   Yes.
20         Q.   And it looks, it looks like on April 2nd
21    he e-mailed you and said he had one more for you
22    to come back and sign.  Do you see that?
23         A.   Yes.
24         Q.   And you went back up there and signed
25    it?
```

1    A.    Yes.

2    Q.    All right.  Okay.  And if we keep

3    working from the back of Exhibit 96, there's a --

4    it looks like there's a document called Release

5    of Information and Permission.  Do you know why

6    you were, why you signed the Release of

7    Information and Permission marked as WCC 559.

8              MR. SMITH:  I'm going to instruct

9    her not to answer that one for the same reasons

10   as earlier.

11   Q.    (By Mr. Monafo)  All right.  Ma'am, I

12   want to ask you a series of questions and I want

13   you to respond and tell me whether you agree or

14   disagree with my statement, okay?

15            The receptionists at Wright Career

16   College were courteous and helpful.

17            MR. SMITH:  No, no, you're --

18   you're trying to get around the same thing, okay?

19   You are now for the record reading word-for-word

20   from the improper document that we're fighting

21   about, all right?  So the well is pretty poisoned

22   at this point.  It's academically and

23   elementarily clear what you're doing and she's

24   not going to do that today.

25            MR. MONAFO:  Okay, so you're

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

1    instructing her not to answer, right?  Okay.  Let

2    me, one more just for the record, just make your

3    objection and then we'll move on.

4        Q.   (By Mr. Monafo)  Miss Hampton, I would

5    like to know whether your admissions

6    representative answered your questions about

7    enrollment?

8              MR. SMITH:  Same instruction.

9    Don't answer.

10       Q.   (By Mr. Monafo)  And one last one.  Did

11   your admissions representative accurately

12   represent the opportunities at Wright Career

13   College?

14             MR. SMITH:  Same instructions.

15   Don't answer.

16             MR. MONAFO:  There was, Andy, there

17   was earlier in this testimony, I asked her about

18   a meeting she had with financial aid around the

19   same time, this woman from financial aid about

20   the debt.

21             MR. SMITH:  Uh-huh.

22             MR. MONAFO:  And you did not object

23   to that, I wasn't sure if you -- if that was

24   just -- I mean can I get into that area now?  I

25   think that occurred also in April of this same

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY:   MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:   martin.loring@huschblackwell.com


SERVICE PARTY:   KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:   kbm@hfmlegal.com


SERVICE PARTY:   ANDREW K SMITH, Attorney for Plaintiff
SERVICE EMAIL:   aks@hfmlegal.com


SERVICE PARTY:   STACIA GRESSEL BODEN, Attorney for Defendant
SERVICE EMAIL:   sboden@wrightcc.edu


SERVICE PARTY:   JAMES F. MONAFO, Attorney for Defendant
SERVICE EMAIL:   jim.monafo@huschblackwell.com

Electronically Filed - Jackson - Independence - September 12, 2014 - 04:16 PM

Electronically Filed - Jackson - Independence - September 19, 2014 - 04:00 PM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al.       )
                                  )
      Plaintiffs,         )
                                  )
      vs.                  )      Case No. 1316-CV27529
                                  )
MISSION GROUP KANSAS, INC., et al., )
                                  )
      Defendants.       )

## PLAINTIFFS' STIPULATED MOTION FOR LEAVE TO FILE REPLY

COME NOW Plaintiffs, by and through their counsel of record, hereby file Plaintiffs' Stipulated Motion for Leave to File Reply. In support, Plaintiffs state as follows:

1.       On September 2, 2014, Plaintiffs filed Plaintiffs' Opposition to Defendants' Motion to Compel and Motion for Order of Protection Under Rule 56.01(c) and Rule 57.03 (e).

2.       On September 12, 2014, Defendants filed Defendants' Opposition to Plaintiffs' Motion for Protective Order.

3.       On Monday, September 15, 2014, Andrew K. Smith, attorney for Plaintiffs, emailed to Martin Loring, attorney for Defendants, requesting his agreement for Plaintiffs' to file a Reply to the Opposition.

4.       Mr. Loring responded the same date stating "…you may have our agreement that you have 14 days from last Friday to file your Opposition…". (See email marked as Exhibit "1"). Plaintiffs calculate the deadline to file their reply as Friday, September 26, 2014.

WHEREFORE, Plaintiffs respectfully request that the Court enter an Order granting Plaintiffs until Friday, September 26, 2014, to file their Reply Suggestions to Defendants' Opposition to Plaintiffs' Motion for Protective Order.

Respectfully Submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.


/s/Andrew K. Smith
Andrew K. Smith,          MO Bar #60485
221 W. Lexington, Ste. 400
P.O. Box 900
Independence, MO 64051
Telephone:     (816) 836-5050
Facsimile:     (816) 836-8966
aks@hfmlegal.com
**ATTORNEY FOR DEFENDANTS STEFANIE
AYALA, JENNIFER DECKER, CHRISTI
HAMPTON AND STEVEN JEWSOME**

Electronically Filed - Jackson - Independence - September 19, 2014 - 04:00 PM

## CERTIFICATE OF SERVICE

I hereby certify on this 19th day of September, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:     (816) 983-8000
Facsimile:     (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:     (314) 480-1500
Facsimile:     (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:     (913) 396-5453
Facsimile:     (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP
KANSAS, INC.,
BOARD OF DIRECTORS OF MISSION
GROUP KANSAS, INC.,
JOHN MUCCI, STEPHEN BROWNE,
AND RON HOLT**

*/s/Andrew K. Smith*
**ATTORNEY FOR DEFENDANTS
AYALA, DECKER, HAMPTON AND
JEWSOME**

3

**Heather M. Tucker**

| | |
|---|---|
| **From:** | Andy Smith |
| **Sent:** | Monday, September 15, 2014 11:34 AM |
| **To:** | Loring, Martin |
| **Cc:** | Bozicevic, Elizabeth; Monafo, Jim; Heather M. Tucker; Nichelle L. Closson |
| **Subject:** | RE: Ayala--Defts' discovery responses |

Yes, I did anticipate some objections past typically being prologue.

Thanks.

Andrew K. Smith
*Humphrey, Farrington & McClain, P.C.*
*221 W. Lexington, Suite 400*
*P.O. Box 900*
*Independence, Missouri 64051*
*Telephone: (816) 836-5050*
*Facsimile: (816) 836-8966*

**From:** Loring, Martin [mailto:Martin.Loring@huschblackwell.com]
**Sent:** Monday, September 15, 2014 11:32 AM
**To:** Andy Smith
**Cc:** Bozicevic, Elizabeth; Monafo, Jim; Loring, Martin
**Subject:** RE: Ayala--Defts' discovery responses

Thank you Andy.   There will undoubtedly many objections, but not mere objections.   I have reviewed a draft and there are a number of substantive responses.   We also should be in a position to produce our first round of documents by then too, although the production process will undoubtedly be a rolling one.

We will file a motion for extension, and you may have our agreement that you have 14 days from last Friday to file your Opposition as requested below.

Martin M. Loring
Partner
Direct:  816.983.8142
Martin.Loring@huschblackwell.com

**From:** Andy Smith [mailto:AKS@hfmlegal.com]
**Sent:** Monday, September 15, 2014 11:20 AM
**To:** Loring, Martin
**Cc:** Bozicevic, Elizabeth; Monafo, Jim
**Subject:** RE: Ayala--Defts' discovery responses

Marty,

I can agree to the additional two weeks with your personal assurance that what I receive will include substantive responses and production of documents, as opposed to mere objections.

Also may I have your agreement that I have 14 days from Friday to file a Reply to the Opposition you filed re protective order on Friday.

Please advise,

PLAINTIFF'S
EXHIBIT
1

1

Electronically Filed - Jackson - Independence - September 19, 2014 - 04:00 PM

Andrew K. Smith
*Humphrey, Farrington & McClain, P.C.*
*221 W. Lexington, Suite 400*
*P.O. Box 900*
*Independence, Missouri 64051*
*Telephone: (816) 836-5050*
*Facsimile: (816) 836-8966*

---

**From:** Loring, Martin [mailto:Martin.Loring@huschblackwell.com]
**Sent:** Monday, September 15, 2014 10:55 AM
**To:** Andy Smith
**Cc:** Loring, Martin; Bozicevic, Elizabeth; Monafo, Jim
**Subject:** Ayala--Defts' discovery responses

Andy, you previously agreed to a two week extension for us to respond to your written discovery to defendants. They are therefore due tomorrow. We find ourselves needing more time. Please advise if you will agree to an additional two weeks, until September 30.

We need to get our request on file with the court, so please let us know ASAP. Thank you very much.

Marty Loring

**Martin M. Loring**
**Partner**

**HUSCH BLACKWELL LLP**
4801 Main Street, Suite 1000
Kansas City, MO 64112-2551
Direct: 816.983.8142
Fax: 816.983.8080
Martin.Loring@huschblackwell.com
huschblackwell.com
View Bio | View VCard

2

Electronically Filed - Jackson - Independence - September 19, 2014 - 04:00 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:


SERVICE PARTY:  MARTIN MCCORMICK LORING, Attorney for Defendant
SERVICE EMAIL:  martin.loring@huschblackwell.com


SERVICE PARTY:  KENNETH BLAIR MCCLAIN, Attorney for Plaintiff
SERVICE EMAIL:  kbm@hfmlegal.com


SERVICE PARTY:  ELIZABETH ANN MUSHILL, Attorney for Defendant
SERVICE EMAIL:  elizabeth.mushill@huschblackwell.com


SERVICE PARTY:  STACIA GRESSEL BODEN, Attorney for Defendant
SERVICE EMAIL:  sboden@wrightcc.edu


SERVICE PARTY:  JAMES F. MONAFO, Attorney for Defendant
SERVICE EMAIL:  jim.monafo@huschblackwell.com

Electronically Filed - Jackson - Independence - September 19, 2014 - 04:00 PM

Electronically Filed - Jackson - Independence - September 19, 2014 - 04:00 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | )  Case No. 1316-CV27529 |
| | ) |
| MISSION GROUP KANSAS, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Upon consideration of Plaintiffs' Stipulated Motion for Leave to File Reply, it is hereby ordered that Plaintiffs may file their Reply Suggestions to Defendants' Opposition to Plaintiffs; Motion for Protective Order on or before Friday, September 26, 2014.

_____                         _____
Date                                                               Honorable Kenneth R. Garrett, III

Electronically Filed - Jackson - Independence - September 19, 2014 - 04:00 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA, et al.       )
                                   )
        Plaintiffs,         )
                                   )
        vs.                  )     Case No. 1316-CV27529
                                   )
MISSION GROUP KANSAS, INC., et al., )
                                   )
        Defendants.     )

## ORDER

Upon consideration of Plaintiffs' Stipulated Motion for Leave to File Reply, it is hereby ordered that Plaintiffs may file their Reply Suggestions to Defendants' Opposition to Plaintiffs; Motion for Protective Order on or before Friday, September 26, 2014.

SEP 2 2 2014
_____
Date

_____
Honorable Kenneth R. Garrett, III

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA, et al.            )
                                  )
            Plaintiffs,           )
                                  )
    vs.                           )   Case No. 1316-CV27529
                                  )
MISSION GROUP KANSAS, INC., et al. )
                                  )
            Defendants.           )

## PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PROTECTIVE ORDER

*"Something is rotten in the state of Denmark."*[1]

## I.      INTRODUCTION

> *"They should have been removed from that list and should not have been called. It was a mistake."*[2]

> *"Any agreement the parties may have had that certain communications not be had did not extend to the Foley-Hampton communications.* **Even if it did, Foley's communications with Hampton were ethically permissible so there are no grounds to prohibit discovery about the communications."**[3]

With apologies to Shakespeare, there is something very rotten in not only Defendants'

solicitation of Plaintiff Christi Hampton's *ex parte* statement, but in the arguments they raise in

defense thereof. Defendants' entire position can fairly be summarized as follows:

- Yes we promised not to contact named Plaintiffs in this lawsuit regarding issues
  in this litigation;

- Yes this promise was made by attorney of record Loring prior to the conduct at
  issue here;

---

[1] *Hamlet*, Act I., Scene 4.
[2] Exh. 1, to Plaintiffs' Opposition to Defendants' Motion to Compel and Motion for Order of Protection under Rules 56.01(c) and 57.03(e), March 6, 2014 email from Attorney Loring to Attorney Smith.
[3] Defendants' Opposition to Plaintiffs' Motion for Protective Order, at p. 6

- Yes, we broke that promise and ignored our outside litigation counsel's admonition to us and compelled Ms. Hampton to provide a recorded (in writing) statement anyway;

- Yes, we concealed it from Plaintiffs' counsel until Ms. Hampton's deposition;

- Yes, our own employee, Stacia Boden, our in-house lawyer, and attorney of record in this case, was aware of all these facts;

- Yes, we want to use this compelled, out-of-counsel's presence, recorded statement as evidence; and

- Yes, we want the Court to not only allow this litigation behavior, but expressly endorse it.

This simply cannot be the way courts permit parties to conduct discovery and litigate cases in Missouri state courts. It is especially outrageous when, as here, the very underlying claims at issue are of fraud and deceptive practices by the very same individuals.

As shown below, this Court has broad discretion to control the discovery in the cases it presides over for a reason: the facts and circumstances surrounding each issue are unique, and only with the authority to advance justice and preclude injustice in discovery, can the Court ultimately ensure its procurement at trial. Here, the conduct at issue should result in a simple, narrow result: preclusion of use of the survey at issue. This will permit the parties to still raise all defenses and complete all discovery, while curing the harm done, and preventing the harm sought to be done.

## II.     ARGUMENT

While Defendants attempt to limit this Court's authority to application and interpretation of a single Rule of Conduct, such is not the issue before the Court. Rather, the Plaintiff has

2

asked to the Court to enter an order of protection under Rule 56, and its own broad discretion to do so in discovery disputes. In doing so, this Court may consider, and should consider not only the limitations of Rule 4-4.2, but also Rule 4-8.4, and the underlying purpose of both: to prevent unfairness in the civil courts of Missouri, and uphold the duties officers of the court owe thereto.

### A. This Court has Broad Discretion to Prevent Unfair Discovery Practices

As shown in section "B" below, there is ample basis for this Court's preclusion of any reference to or use of the offending survey in this litigation arising out of the rules of professional conduct alone. This however, is not the sole basis of Plaintiffs' sought relief. In fact, Plaintiff has asked this Court to simply exercise the discretion given it to prevent unjust results in formal pretrial discovery. As the dispute now before the court first arose during a deposition of Plaintiff, an order for protection was the appropriate remedy and Plaintiffs have moved for such. To the extent that relief is also supported by applying the rules of professional conduct and their underlying principles, an order of protection adequately addresses those offenses in this matter as well.

A circuit court has broad discretion in determining the admission of evidence and imposing sanctions for discovery violations. *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 819 (Mo. banc 2000). Its decision will not be overruled unless there is an abuse of discretion. *Id.* An abuse of discretion only occurs "when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

"Sanctions for discovery violations may only be imposed pursuant to Rule 61.01 'upon motion.'" *Phipps v. Union Elec. Co.*, 25 S.W.3d 679, 681 (Mo. Ct. App. 2000)(internal citations omitted). The relief authorized by Rule 61.01 is "essentially and intrinsically tied to the existence

3

and pendency of the plaintiff's cause of action." *Id.* "Where fraud is alleged to have occurred during the course of discovery, a party should request appropriate relief when the alleged fraud is discovered." *Id.*

The facts and authority already before this court support an entry of an order of protection, and the Defendants' opposition to Plaintiff's motion offers nothing persuasive in response. This Court should exercise its discretion, make right the wrong perpetrated by Defendants in taking an *ex parte* recorded statement of Ms. Hampton (the written survey they made a requisite to graduating), and order the survey precluded from use in this case, in any manner.

**B.     When Statements Are Taken from Represented Parties Outside of Counsel, their Preclusion is Appropriate**

While Defendants reach far and wide for some persuasive authority in defense of their conduct, they ignore directly on-point and local authority, as well as cases from courts with nearly identical rules, such as the State of Kansas.

**1.     Rule 4-4.2 and Rule 4-8.4 Must be Read Together to Avoid the Very Gamesmanship Defendants Attempt Here.**

While Defendants' outside litigation counsel, argued ignorance of the actual contact between Mr. Foley and Ms. Hampton, "the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Comment [8] to Rule 4-4.2. The factual record is already well before this Court that defense counsel was not only well aware that such attempts to take *ex parte* statements, called "surveys," were underway, but they actually promised they would cease. In attempting to use these ill-gotten recorded statements in deposition, counsel not only "[closed his] eyes to the obvious" he sanctioned its occurrence.

4

Electronically Filed - Jackson - Independence - September 26, 2014 - 03:31 PM

Electronically Filed - Jackson - Independence - September 26, 2014 - 03:31 PM

**RULE 4-8.4: MISCONDUCT**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or **do so through the acts of another**;

(Missouri Rule of Professional Conduct 4-8.2)(Emphasis added).

"The purpose of Rule 4.2, which can be found in the first comment to Rule 4.2, is to 'protect[ ] a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers *who are participating in the matter*, interference by *those* lawyers with the client-lawyer relationship and the uncounseled disclosure of information relating to the representation." *United States v. Gonzalez-Lopez*, 403 F.3d 558, 565 (8th Cir. 2005) citing ABA Model Rules of Prof'l Conduct R. 4.2 cmt. 1 (emphasis in original).

Defendants concede that the rules of conduct at issue are sufficiently similar (nearly identical) to their model rule counterparts, as to merit consideration of that resource in reviewing the issue before the court (See Opposition, at p. 3). Other courts have done precisely that, with conclusions fatal to Defendants' position here.

In *Holdren v. Gen. Motors Corp.*, 13 F. Supp. 2d 1192, 1195 (D. Kan. 1998), a federal court for the district of Kansas interpreted both the model rule 4.2 and Kansas' corollary, in circumstances strikingly similar as are presented here. Both the model rule and the Kansas rule were nearly identical to Missouri's Rule 4-4.2. In *Holdren*, the plaintiff obtained written statements from the defendants' employees during the course of litigation, and outside of defense counsel's presence. There, the Court determined that even though the plaintiff's lawyer did not engage in the contact himself, nor direct the plaintiff to do it in his stead, he was still in violation of Rule 4.2.

5

> While it is true that plaintiff's counsel encouraged his client's actions only after plaintiff specifically asked about obtaining written statements, **the court finds that such conduct crosses the line and violates Rule 4.2 "through the acts of another."** . . . In sum, the court concludes that plaintiff's counsel has engaged in conduct prohibited by Rule 8.4(a) and, thus, has **essentially circumvented Rule 4.2.**

*Id.,* at 1195-96 (D. Kan. 1998) (emphasis added).

The *Holdren* Court acknowledged that such violation may well have been without intent in that case. Yet still found a litigation specific remedy was required:

> The court notes, however, that there is no evidence or allegation that plaintiff's counsel knowingly or deliberately violated the disciplinary rules. **Rather, it seems that plaintiff's counsel, while attempting to walk the appropriate line ever so delicately, has simply stepped over that line. Nonetheless, he violated the rule and defendants are entitled to relief. Accordingly, defendants' motion for a protective order is <u>granted</u>.**

*Id.*[4] After setting forth certain specific details it required the offending party to provide, the *Holdren* court entered a protective order, providing the very same remedy sought by Plaintiffs in this case: "**If plaintiff has obtained evidence from 'parties' within the meaning of Rule 4.2, <u>such evidence will be deemed inadmissible</u> at trial.**" *Id.,* 1197. (Emphasis added).

Lawyers attempting an "end-run" around these limitations should not be rewarded. In this case this is particularly true of Ms. Boden, counsel of record for Defendants in this lawsuit, **and** an employee of Defendant, as in-house counsel. As at least one author has pointed out:

> Model Rule 5.3 and Model Code DR 4-101(D) make a lawyer responsible for the actions of her nonlawyer employees and associates. Specifically, Model Rule 5.3(b) states that "a lawyer having direct supervisory authority over the nonlawyer **shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer.**" Model Rule 8.4(a) and Model Code DR 1-102(A) state that it is professional misconduct for an attorney to circumvent an ethical rule through the actions of another.

---

[4] Other courts have gone so far as to find an attorney's **mere knowledge** of a client's contact or action is sufficient to constitute an ethical violation. See *Massa v. Eaton Corp.,* 109 F.R.D. 312, 313 (W.D.Mich.1985) (plaintiff's counsel violated DR 7–104(A)(1) by "allowing" his client to conduct informal interviews of managerial level employees of corporate defendant). *Massa* is also cited in the *Holdren* opinion.

6

Susan J. Becker, DISCOVERY OF INFORMATION AND DOCUMENTS FROM A LITIGANT'S FORMER EMPLOYEES: SYNERGY AND SYNTHESIS OF CIVIL RULES, ETHICAL STANDARDS, PRIVILEGE DOCTRINES, AND COMMON LAW PRINCIPLES, 81 Neb. L. Rev. 868, 1007 (2003).

Clearly, the conduct of Defendants here, whether at the direct command of counsel, or under their willful blindness violates not only the purposes of formal discovery, but also the limits and underlying principles supporting multiple rules of professional conduct in litigation. In this case however, as is shown below, a narrowly tailored order of protection, precluding the use, in any way, of the offending survey will sufficiently remedy the damage to Ms. Hampton, yet still provide Defendants full ability to conduct necessary discovery as the rules permit.[5]

### 2. Exclusion as Evidence or other Use of the "Survey" is a Reasonable and Sufficiently Narrow Sanction

In light of the severe and prejudicial misconduct set forth above, and in Plaintiff's initial motion, it is appropriate to enter an order of protection against defendants, with a limited "evidentiary sanction" being the remedy. The Court should preclude the survey from use, and order the parties to conclude necessary discovery without further reference or reliance thereon.

### i. Defendants Should be Precluded from Any Use of the Improper Survey

Here, this court is faced with the attempted use of ill-gotten statements by retained defense counsel who apparently did not directly engage in their solicitation, but rather recognized their impropriety and advised their client to stop.[6] Since WCC ignored that advice, it

---

[5] Also, it avoids the direct sanctioning of outside defense counsel Husch Blackwell, and in particular, Mr. Monafo or Mr. Loring, which relief undersigned counsel has not, and is not requesting.

[6] Attorney Bowden, as 1) an attorney of record in this litigation, and 2) an employee of the defendant as "in house counsel," had a direct authority over other of WCC employees however. Her voluntary statements at Ms. Hampton's deposition disturbingly indicate that she had prior knowledge of both the attempts to "survey" student plaintiffs, and Mr. Loring's admonition that such practices cease. Plaintiffs have served a subpoena for her deposition, to cover the particulars of this and other issues of fact in this case. At the time of that examination, perhaps additional light will be shed on in house counsel's adequate knowledge and oversight, or perhaps complicity in such litigation tactics.

7

is only fitting that the Court exclude any attempts to benefit therefrom, thereby placing any resulting "sanction" directly on the sophisticated party that perpetrated it.

Multiple courts considering exactly this issue have determined that the appropriate sanction was in fact exclusion of evidence. In this way, the Defendants themselves do not benefit from the "once removed" aspect of the wrongful conduct, yet the attorneys are not assessed penalties beyond the scope of their involvement.

> Considering that one of the main ethical issues in this case was unsettled at the time of defense counsel's conduct, the Court finds that **evidentiary sanctions** provide the necessary sanction. The Court has already excluded from evidence at trial the audiotaped recordings made by the investigator, any testimony from the investigator, his wife and his daughter, and any other evidence obtained by the defense as a result of the audiotaped conversations.

*Midwest Motor Sports, Inc. v. Arctic Cat Sales, Inc.,* 144 F. Supp. 2d 1147, 1160 (D.S.D. 2001) aff'd sub nom. *Midwest Motor Sports v. Arctic Sales, Inc.,* 347 F.3d 693 (8th Cir. 2003) (wherein evidentiary exclusion as a sanction was deemed the appropriate remedy).

In this case, Attorney Loring **agreed** with Plaintiff's counsel that such *ex parte* contact between agents of the defendants and Plaintiffs in this case was "a mistake," and advised the Defendants to stop, **long before Mr. Foley required Ms. Hampton to provide a recorded statement as a condition of graduation**. While his partner Attorney Monafo attempted to use such ill-gotten statements in deposition, it is not clear that he had prior knowledge of the promise made by Loring. Thus, by simply precluding the wrongly procured recorded statement, the remedy will be assured, but not overly severe.

### ii. Defendants Cannot Benefit from In-House Counsel in Litigation, Yet Avoid Control of the Agents Contacting Plaintiff

Defendants here are a very sophisticated entity, replete with educated administrators and board members. In fact, they retain and rely upon a full-time lawyer to govern and oversee

8

whatever legal matters and issues arise in the operation of their business. In fact, this in-house lawyer, Stacia Boden, takes such a "hands-on" approach that she has attended every deposition in this case, and in the case of Ms. Hampton's deposition, voluntarily injected her knowledge and opinion of the facts surrounding the survey at issue. And yet, when Plaintiff's counsel inquired of Ms. Boden whether she knew of this practice and compunction of Ms. Hampton's *ex parte* statement, she refused to answer:

> MS. BODEN: That e-mail had
> absolutely nothing to do with –
>
> MR. SMITH: So you in fact knew
> this was happening as counsel of record?
>
> MS. BODEN: No, I did not know that
> was happening.
>
> MR. SMITH: You as general counsel
> for this school did not know that this form was a
> practice that went on? Put that on the record.
>
> MS. BODEN: That's not your
> question.
>
> MR. SMITH: I'm asking you that
> question.
>
> MS. BODEN: I'm not being deposed.

(Exh. 9 to Plaintiffs' Opposition to Defendants' Motion to Compel and Motion for Order of Protection under Rules 56.01(c) and 57.03(e), 225:18-228:4).

To the extent the defense counsel (Husch Blackwell) asks this Court to look to Rule 4-4.2 to as a "shield" to this impropriety, no such protection is afforded Ms. Boden. Moreover, this Court must read Rule 4-4.2 in conjunction with Rule 4-8.4, which forbids counsel from "knowingly assist[ing] or [inducing] another" to violate **any** other rule of conduct, **or** to "do so through the acts of another." Ms. Boden has already made clear she was well aware of both Mr.

9

Electronically Filed - Jackson - Independence - September 26, 2014 - 03:31 PM

Loring's agreement that such direct interrogation of Plaintiffs in this lawsuit would cease, and that Mr. Foley still did so thereafter with Ms. Hampton. As the face of Defendants, and attorney of record in this matter, ordering the preclusion of this survey is the most narrowly tailored remedy this Court can enter. It makes whole the misconduct, yet does not preclude defendants from full and appropriate inquiry through procedurally proper formal discovery.

Contrary to the Defendants' argument that the Court is handcuffed and impotent to prevent such unfairness, it is wholly within the discretion of the Court to govern discovery in a given case, and enter such orders as reasonably advance the interests of justice while allowing both parties to litigate their claims and defenses as they see fit, *within the rules*.

   iii. **Ms. Hampton will Answer any Remaining Questions and Defendants will Not be Prejudiced by the Preclusion of the "Survey"**

Defendants are correct that once the survey was marked as a deposition exhibit, and repeated examination thereon attempted, undersigned counsel did instruct Ms. Hampton not to further answer until such time as the protections afforded by Rule 56 were sought. It is not however, Plaintiffs' desire to be obstructive. Plaintiff asks this Court to enter an order of protection, precluding defendants from admitting the survey as an exhibit or attempted impeachment devise with Ms. Hampton. In other words, Plaintiff asks this Court to "suppress" its use in this litigation, in any way. Then, Ms. Hampton is willing to sit for the conclusion of her deposition, wherein defense counsel is free to ask her questions in the presence of her counsel, and subject to any objections made at that time. In this way, Plaintiff is afforded the protection her retaining counsel in this case should entitle her to, the Defendants do not benefit from their deceptive practices, and yet they can still fully examine Ms. Hampton by proper deposition.

III. **CONCLUSION**

Only when attorneys conduct discovery in a manner consistent with both the letter of the governing rules, and their underlying spirit, can the integrity of the judicial system remain. Thus, this Court, and all Missouri trial courts, have been given great deference and discretion to uphold and ensure that integrity. Defendants are sophisticated parties with active in-house counsel. In this lawsuit, the very core of Defendants' alleged wrongdoing involves a pattern of deceitful and fraudulent practices against their students. Yet, Defendants have now ignored the admonitions of its own counsel and continued the very same deceit in conducting discovery in this case. Even after their own lawyer told them to cease all attempts to "survey" named Plaintiffs regarding the very issues being litigated, they ignored his instructions in an attempt to trick Ms. Hampton. Despite counsel's admonition and promise to Plaintiff's counsel that it would stop, Defendants purposefully required Ms. Hampton to sit down and provide a written statement attempting to cover the very allegations at issue here. This was all done in a rushed, compelled manner, and outside of the protections afforded Ms. Hampton by the representation she chose to hire. Now, Defendants ask this Court to ignore their own agreement to stop the activity in question, and in fact endorse the practice. It is unfair, it is prejudicial, and it violates both the rules of discovery and professional conduct. It should not be allowed.

WHEREFORE, Plaintiffs respectfully pray that this Court enter an order of protection, precluding Defendants and their counsel from any further use, reference to, or reliance upon the "survey" attached to Plaintiff's original motion for protective order, and for all other relief the Court deems proper.

11

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.

/s/ Andrew K. Smith
| Kenneth B. McClain | #32430 |
| Andrew K. Smith | #60485 |
| Lauren E. McClain | #65016 |

221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
Telephone:  (816) 836-5050
Facsimile:  (816) 836-8966
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - September 26, 2014 - 03:31 PM

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the above-foregoing document was served through the Court's electronic filing system to the following counsel of record on the 26th day of September, 2014:

Martin M. Loring
HUSCH BLACKWELL, LP
4801 Main Street, Ste. 1000
Kansas City, MO 64112
Telephone:      (816) 983-8000
Facsimile:      (816) 983-8080
martin.loring@huschblackwell.com
and
James F. Monafo
Elizabeth A. Bozicevic
HUSCH BLACKWELL, LP
190 Carondelet Plaza, Ste. 600
St. Louis, MO 63105
Telephone:      (314) 480-1500
Facsimile:      (314) 480 1505
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com
and
Stacia G. Boden
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue
Overland Park, KS 66210
Telephone:      (913) 396-5453
Facsimile:      (913) 904-3410
sboden@wrightcc.edu
**ATTORNEYS FOR MISSION GROUP KANSAS, INC.,
BOARD OF DIRECTORS OF MISSION GROUP KANSAS, INC.,
JOHN MUCCI, STEPHEN BROWNE, AND RON HOLT**

*/s/ Andrew K. Smith*
**ATTORNEY FOR PLAINTIFFS**

13

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA, et al. )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MISSION GROUP KANSAS, INC., )<br>et al. )<br>)<br>Defendants. )<br>) | Case No.: 1316-CV27529 |

### JOINT MOTION FOR PROTECTIVE ORDER

COME NOW Plaintiffs and Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College" or "WCC"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants") and jointly request the Court enter a Protective Order in this action as fully set forth in the attached document. The Protective Order proposed is based on good cause and will assist in facilitating discovery and document production in this matter.

Accordingly, Plaintiffs and Defendants request the Court's Order entering a Protective Order in this action in accord with the terms of that which is attached hereto.

Respectfully submitted,

**HUMPHREY, FARRINGTON & McCLAIN, P.C.**

By:   s/Andrew K. Smith
 Kenneth B. McClain, MO Bar # 32420
 Andrew K. Smith, MO Bar # 60485
 Lauren E. McClain, MO Bar # 65016
 221 W. Lexington, Suite 400
 P.O. Box 900
 Independence, MO 64050

*Attorneys for Plaintiffs*

-and-

**HUSCH BLACKWELL LLP**

 s/Elizabeth A. Bozicevic
Martin M. Loring, MO Bar # 29712
HUSCH BLACKWELL LLP
4801 Main Street, Suite 1000
Kansas City, MO 64112
(816) 983-8000
(816) 983-8080 Fax
martin.loring@huschblackwell.com

James F. Monafo, MO Bar # 38774
Elizabeth A. Bozicevic, MO Bar # 59623
HUSCH BLACKWELL LLP
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500 (telephone)
(314) 480-1505 (facsimile)
jim.monafo@huschblackwell.com
elizabeth.bozicevic@huschblackwell.com

Stacia G. Boden, MO Bar # 53601
Mission Group Kansas, Inc.
Wright Career College
10720 Metcalf Avenue

2

Overland Park, Kansas 66210
(913) 396-5453
(913) 904-3410 (fax)
sboden@wrightcc.edu

***Attorneys for Mission Group Kansas, Inc., Board
of Directors of Mission Group Kansas, Inc., John
Mucci, Stephen Browne, and Ron Holt.***

3

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

STEFANIE AYALA, et al.    )
            )
     Plaintiff,    )
            )
v.             )
            )  Case No.: 1316-CV27529
MISSION GROUP KANSAS, INC.,  )
  et al.         )
            )
     Defendants.   )
            )

### PROTECTIVE ORDER

Upon consideration of the motion for protective order of the Plaintiffs and Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College" or "WCC"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants") and for good cause shown, it is hereby ORDERED that, pursuant to Rule 56.01 of the Missouri Rules of Civil Procedure, the following Protective Order is entered in this case:

1.  This Protective Order shall govern the use and dissemination of all interrogatory answers, affidavits, admissions and information, documents, testimony, reports, copies, electronic images, databases, charts, compilations, or tangible items ("Material") that are produced or given in this Litigation, when such Material is expressly and specifically designated as "CONFIDENTIAL" by the producing party, and in accordance with numbered paragraph 3 below.

2.  All Material, as that term is defined in Paragraph 1, produced in connection with pretrial proceedings in this Litigation shall be used only for the prosecution, settlement, and/or defense of the above-captioned action, including any appeals. No Material shall be used by the

party receiving Material for any other purpose or in connection with any other litigation of any nature whatsoever.

3.      Any Material subject to discovery or otherwise provided in the course of this Litigation may be designated as "CONFIDENTIAL" (capitalization of the word is not required), however the mere designation of any Material as CONFIDENTIAL shall not be evidence of whether or not it is actually properly protected as such under this Order.

4.      "Confidential" Material is information that the designating party believes is private, confidential, sensitive, or proprietary information, and in the event such designation is challenged is deemed properly so designated by the Court presiding over the above-captioned matter. Confidential Material is deemed to include, but is not limited to, educational records; student records; medical records; employment records; non-public financial records; personnel records; internal personnel and operational policies and procedures of Wright Career College; proprietary training materials; board meeting handouts, agendas, and minutes; workplace and student investigation records; and all information that is private in nature and may have the effect, if not deemed to be confidential, of embarrassing, humiliating or otherwise invading the privacy of a party, and could potentially cause public and private harm, humiliation, and exposure to the parties. Confidential Material includes any material that quotes, paraphrases, or repeats any such Confidential Material. Confidential Material does not include information that is readily available to the public, information or documents already disclosed or disseminated by the producing party without confidentiality, or that a party obtains independent of any request made in the context of this Litigation, nor any Material originally designated as CONFIDENTIAL by the producing party, and about which the Court presiding over the above-captioned matter deemed to not be CONFIDENTIAL.

2

5.      The designating party may designate Material as "Confidential" by producing the Material marked with a legend reading "CONFIDENTIAL," or by notifying all counsel of record, in writing, that certain information is deemed "CONFIDENTIAL" with sufficient detail to allow all parties to be on notice of information deemed "CONFIDENTIAL."

6.      Confidential Material, as designated by the words "CONFIDENTIAL," or deemed "CONFIDENTIAL" as confirmed in writing, may be used only in this Litigation and may be disclosed only to the following:

    a.      Counsel of Record for the parties in this Litigation and such counsel's support staff;

    b.      In-house counsel to the parties to this Litigation and support staff directly involved in the supervision and management of this Litigation;

    c.      Any party to this Litigation, or present or former employee of Defendant to whom it is necessary to show the Item for purposes of this Litigation;

    d.      Any outside consultant or expert (including such consultant's or expert's support staff) who is being consulted or retained by counsel in this litigation;

    e.      The author of the Item and anyone shown on the item as having received it in the ordinary course of business;

    f.      Clerical or ministerial service providers, including outside copying services and court reporters, retained by a party's counsel to assist such counsel in connection with this Litigation;

    g.      Court reporters and videographers retained for depositions;

    h.      A party's liability insurer(s);

    i.      The Court and its support personnel; and

3

j.     Any other person to whom the Designating Party consents in writing.

7.     Confidential Material shall not be made available to any person except as authorized under this Protective Order. In no event shall any person receiving Confidential Material use it for commercial or competitive purposes or make any public or private disclosure of its contents.

8.     If a Party wishes to disclose any Confidential Material to any person or entity not described in Paragraph 6 of this Protective Order, permission to do so must be requested in writing and in advance of disclosure from the designating party. If the designating party objects to the proposed disclosure, then no such disclosure shall be made unless the Court, upon the filing of an appropriate motion by the requesting party, orders otherwise. Each party may disclose its own Confidential Material without regard to this Protective Order, unless otherwise prohibited by an existing order or duty.

9.     Whenever any Confidential Material is included in or attached to any pleadings, depositions, responses to discovery, motions, briefs, or other documents being filed with the Court, the filing Party shall move to file the Confidential Material under seal in accordance with this order and local rules.

10.     If Confidential Material will be discussed or disclosed at a deposition in this case, counsel may exclude from the deposition any person other than the deponent and individuals described in Paragraph 6 of this Protective Order. Deponents are prohibited from keeping or otherwise retaining Confidential Material after the deposition has been concluded.

11.     Any Party may designate any portion of any deposition transcript or exhibit used at a deposition as CONFIDENTIAL by so indicating on the record at the deposition or within 30 days of receipt of the transcript. The deposition transcripts or portions thereof so designated and

4

Electronically Filed - Jackson - Independence - October 01, 2014 - 04:25 PM

Electronically Filed - Jackson - Independence - October 01, 2014 - 04:25 PM

any CONFIDENTIAL documents that are marked as exhibits to the deposition shall be treated as Confidential Material and shall be subject to the terms of this Protective Order.

12.    Non-parties producing documents in this case pursuant to subpoenas may designate Material as Confidential Material in accordance with this Protective Order, and the provisions of this Protective Order shall apply to those documents.

13.    Review of Confidential Material by any person or entity not identified in Paragraph 6 of this Protective Order shall not waive the confidentiality of the Material.

14.    The inadvertent or unintentional failure to designate any Material as Confidential Material pursuant to this Protective Order shall not constitute a waiver of an otherwise valid claim for protection. Within fifteen (15) days of the discovery of the inadvertent or unintentional failure to so designate, arrangements shall be made for the designating party to substitute properly labeled copies.

15.    Any inadvertent disclosure or production of documents protected by the attorney-client privilege or work-product protection will not constitute a waiver of either any available privilege or protection by the disclosing party. Any material subject to a claim of privilege or attorney work-product protection that is inadvertently produced by a party shall be immediately returned to the producing party. In the event that the receiving party discovers that it has received either attorney-client privilege or work-product-protected documents, it will bring that fact to the attention of the producing party immediately upon discovery. Within five (5) days of the request of the producing party for the return of the privileged or work product documents, the receiving party will promptly return to the producing party any attorney-client privilege or work-product-protected document and any copies that the receiving party may have made. Upon the request of the producing party, the receiving party will promptly disclose the names of any

5

individuals who have read or have had access to the attorney-client privilege or work-product-protected document. If the claim of privilege is disputed by the receiving party, the receiving party may present the claim to the court for *in camera* review. The receiving party may not use or disclose the information until the claim of privilege is resolved.

16.   Return and/or Destruction of Confidential Information. Upon final termination of this action, including all appeals, the receiving party of designated Confidential Material shall be allowed to retain said Material for the limited purpose of defending any malpractice actions or ethical complaints that arise from this action.

17.   Any paragraph, provision or procedure set forth in this Protective Order may be amended or modified by the Court upon written consent of all parties to the Litigation or upon motion by any party upon notice to all the other parties.

18.   Violation of Protective Order. If any person or entity described in Paragraph 6 shall violate this Order, said person or entity shall be subject to proper sanctions as determined by the Court.

19.   The Court will address the use of Confidential Material at trial at the Pretrial Conference or during the course of the trial, as needed.

20.   Neither the termination of this litigation nor the termination of employment of any person who has access to Confidential Material shall relieve counsel or any such person from the obligation of maintaining the confidentiality of any Confidential Material disclosed by any party pursuant to the terms of this Protective Order.

21.   Any party may choose to challenge the designation of CONFIDENTIAL as to any Material so designated by the producing party or non-party. Within sixty (60) days of the production and designation of any such Material, any party that believes the designation of

6

Electronically Filed - Jackson - Independence - October 01, 2014 - 04:25 PM

Electronically Filed - Jackson - Independence - October 01, 2014 - 04:25 PM

CONFIDENTIAL to be without merit shall ask the producing party to remove such designation. If the producing party refuses to remove the designation, or makes no reply, but in no event within ninety (90) days of production and designation, the challenging party shall file a motion with the Court seeking removal of the designation.

22.    In the event the Court determines that the Material in question is not CONFIDENTIAL and was not so designated with a good faith basis that such designation was proper, the challenging party shall be awarded reasonable costs and fees associated with challenging the designation.

23.    The terms of this Protective Order shall continue in full force and effect after the conclusion of this case. The party seeking to enforce the Order following final disposition of the case must move to reopen the case if the case has been closed.

Date: _____          _____

                                JUDGE

7

Electronically Filed - Jackson - Independence - October 01, 2014 - 04:25 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA, et al.         )
                                    )
               Plaintiff,       )
                                    )
v.                                      )
                                    )
                                    )     Case No.: 1316-CV27529
MISSION GROUP KANSAS, INC.,    )
   et al.                       )
                                    )
           Defendants.    )
                                    )

## PROTECTIVE ORDER

Upon consideration of the motion for protective order of the Plaintiffs and Defendants Mission Group Kansas, Inc., d/b/a Wright Career College ("Wright Career College" or "WCC"); Board of Directors of Mission Group Kansas, Inc.; John Mucci; Stephen Browne; and Ron Holt (collectively, "Defendants") and for good cause shown, it is hereby ORDERED that, pursuant to Rule 56.01 of the Missouri Rules of Civil Procedure, the following Protective Order is entered in this case:

1.     This Protective Order shall govern the use and dissemination of all interrogatory answers, affidavits, admissions and information, documents, testimony, reports, copies, electronic images, databases, charts, compilations, or tangible items ("Material") that are produced or given in this Litigation, when such Material is expressly and specifically designated as "CONFIDENTIAL" by the producing party, and in accordance with numbered paragraph 3 below.

2.     All Material, as that term is defined in Paragraph 1, produced in connection with pretrial proceedings in this Litigation shall be used only for the prosecution, settlement, and/or defense of the above-captioned action, including any appeals. No Material shall be used by the

party receiving Material for any other purpose or in connection with any other litigation of any nature whatsoever.

3.    Any Material subject to discovery or otherwise provided in the course of this Litigation may be designated as "CONFIDENTIAL" (capitalization of the word is not required), however the mere designation of any Material as CONFIDENTIAL shall not be evidence of whether or not it is actually properly protected as such under this Order.

4.    "Confidential" Material is information that the designating party believes is private, confidential, sensitive, or proprietary information, and in the event such designation is challenged is deemed properly so designated by the Court presiding over the above-captioned matter. Confidential Material is deemed to include, but is not limited to, educational records; student records; medical records; employment records; non-public financial records; personnel records; internal personnel and operational policies and procedures of Wright Career College; proprietary training materials; board meeting handouts, agendas, and minutes; workplace and student investigation records; and all information that is private in nature and may have the effect, if not deemed to be confidential, of embarrassing, humiliating or otherwise invading the privacy of a party, and could potentially cause public and private harm, humiliation, and exposure to the parties. Confidential Material includes any material that quotes, paraphrases, or repeats any such Confidential Material. Confidential Material does not include information that is readily available to the public, information or documents already disclosed or disseminated by the producing party without confidentiality, or that a party obtains independent of any request made in the context of this Litigation, nor any Material originally designated as CONFIDENTIAL by the producing party, and about which the Court presiding over the above-captioned matter deemed to not be CONFIDENTIAL.

2

5.     The designating party may designate Material as "Confidential" by producing the Material marked with a legend reading "CONFIDENTIAL," or by notifying all counsel of record, in writing, that certain information is deemed "CONFIDENTIAL" with sufficient detail to allow all parties to be on notice of information deemed "CONFIDENTIAL."

6.     Confidential Material, as designated by the words "CONFIDENTIAL," or deemed "CONFIDENTIAL" as confirmed in writing, may be used only in this Litigation and may be disclosed only to the following:

a.     Counsel of Record for the parties in this Litigation and such counsel's support staff;

b.     In-house counsel to the parties to this Litigation and support staff directly involved in the supervision and management of this Litigation;

c.     Any party to this Litigation, or present or former employee of Defendant to whom it is necessary to show the Item for purposes of this Litigation;

d.     Any outside consultant or expert (including such consultant's or expert's support staff) who is being consulted or retained by counsel in this litigation;

e.     The author of the Item and anyone shown on the item as having received it in the ordinary course of business;

f.     Clerical or ministerial service providers, including outside copying services and court reporters, retained by a party's counsel to assist such counsel in connection with this Litigation;

g.     Court reporters and videographers retained for depositions;

h.     A party's liability insurer(s);

i.     The Court and its support personnel; and

3

j.  Any other person to whom the Designating Party consents in writing.

7.  Confidential Material shall not be made available to any person except as authorized under this Protective Order. In no event shall any person receiving Confidential Material use it for commercial or competitive purposes or make any public or private disclosure of its contents.

8.  If a Party wishes to disclose any Confidential Material to any person or entity not described in Paragraph 6 of this Protective Order, permission to do so must be requested in writing and in advance of disclosure from the designating party. If the designating party objects to the proposed disclosure, then no such disclosure shall be made unless the Court, upon the filing of an appropriate motion by the requesting party, orders otherwise. Each party may disclose its own Confidential Material without regard to this Protective Order, unless otherwise prohibited by an existing order or duty.

9.  Whenever any Confidential Material is included in or attached to any pleadings, depositions, responses to discovery, motions, briefs, or other documents being filed with the Court, the filing Party shall move to file the Confidential Material under seal in accordance with this order and local rules.

10.  If Confidential Material will be discussed or disclosed at a deposition in this case, counsel may exclude from the deposition any person other than the deponent and individuals described in Paragraph 6 of this Protective Order. Deponents are prohibited from keeping or otherwise retaining Confidential Material after the deposition has been concluded.

11.  Any Party may designate any portion of any deposition transcript or exhibit used at a deposition as CONFIDENTIAL by so indicating on the record at the deposition or within 30 days of receipt of the transcript. The deposition transcripts or portions thereof so designated and

4

any CONFIDENTIAL documents that are marked as exhibits to the deposition shall be treated as Confidential Material and shall be subject to the terms of this Protective Order.

12.    Non-parties producing documents in this case pursuant to subpoenas may designate Material as Confidential Material in accordance with this Protective Order, and the provisions of this Protective Order shall apply to those documents.

13.    Review of Confidential Material by any person or entity not identified in Paragraph 6 of this Protective Order shall not waive the confidentiality of the Material.

14.    The inadvertent or unintentional failure to designate any Material as Confidential Material pursuant to this Protective Order shall not constitute a waiver of an otherwise valid claim for protection. Within fifteen (15) days of the discovery of the inadvertent or unintentional failure to so designate, arrangements shall be made for the designating party to substitute properly labeled copies.

15.    Any inadvertent disclosure or production of documents protected by the attorney-client privilege or work-product protection will not constitute a waiver of either any available privilege or protection by the disclosing party. Any material subject to a claim of privilege or attorney work-product protection that is inadvertently produced by a party shall be immediately returned to the producing party. In the event that the receiving party discovers that it has received either attorney-client privilege or work-product-protected documents, it will bring that fact to the attention of the producing party immediately upon discovery. Within five (5) days of the request of the producing party for the return of the privileged or work product documents, the receiving party will promptly return to the producing party any attorney-client privilege or work-product-protected document and any copies that the receiving party may have made. Upon the request of the producing party, the receiving party will promptly disclose the names of any

5

Electronically Filed - Jackson - Independence - October 01, 2014 - 04:25 PM

individuals who have read or have had access to the attorney-client privilege or work-product-protected document. If the claim of privilege is disputed by the receiving party, the receiving party may present the claim to the court for *in camera* review. The receiving party may not use or disclose the information until the claim of privilege is resolved.

16. <u>Return and/or Destruction of Confidential Information</u>. Upon final termination of this action, including all appeals, the receiving party of designated Confidential Material shall be allowed to retain said Material for the limited purpose of defending any malpractice actions or ethical complaints that arise from this action.

17. Any paragraph, provision or procedure set forth in this Protective Order may be amended or modified by the Court upon written consent of all parties to the Litigation or upon motion by any party upon notice to all the other parties.

18. <u>Violation of Protective Order</u>. If any person or entity described in Paragraph 6 shall violate this Order, said person or entity shall be subject to proper sanctions as determined by the Court.

19. The Court will address the use of Confidential Material at trial at the Pretrial Conference or during the course of the trial, as needed.

20. Neither the termination of this litigation nor the termination of employment of any person who has access to Confidential Material shall relieve counsel or any such person from the obligation of maintaining the confidentiality of any Confidential Material disclosed by any party pursuant to the terms of this Protective Order.

21. Any party may choose to challenge the designation of CONFIDENTIAL as to any Material so designated by the producing party or non-party. Within sixty (60) days of the production and designation of any such Material, any party that believes the designation of

6

Electronically Filed - Jackson - Independence - October 01, 2014 - 04:25 PM

CONFIDENTIAL to be without merit shall ask the producing party to remove such designation. If the producing party refuses to remove the designation, or makes no reply, but in no event within ninety (90) days of production and designation, the challenging party shall file a motion with the Court seeking removal of the designation.

22.    In the event the Court determines that the Material in question is not CONFIDENTIAL and was not so designated with a good faith basis that such designation was proper, the challenging party shall be awarded reasonable costs and fees associated with challenging the designation .

23.    The terms of this Protective Order shall continue in full force and effect after the conclusion of this case.  The party seeking to enforce the Order following final disposition of the case must move to reopen the case if the case has been closed.


Date: _OCT - 2 2014_                    _____

                                        JUDGE

7

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

STEFANIE AYALA, et al.                    )
                                          )
            Plaintiffs,                   )
                                          )
      vs.                                 )        Case No. 1316-CV27529
                                          )
MISSION GROUP KANSAS, INC., et al.,       )
                                          )
            Defendants.                   )

## ORDER

NOW BEFORE the Court is Plaintiffs' Motion for Leave to file First Amended Petition and Suggestions in Support. The Court, having reviewed the motion finds that same should be GRANTED and that Plaintiffs' First Amended Petition shall be deemed filed as of the date of this Order.

OCT - 7 2014
_____
DATE

_____
JUDGE

EXHIBIT "1"

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

| | |
|---|---|
| STEFANIE AYALA, JENNIFER DECKER, CHRISTI HAMPTON, STEVEN JEWSOME, | ) ) ) |
| and | ) |
| | ) **Case No. 1316-CV27529** |
| ROBIN BAILES, 16410 East 29th Terrace South Independence, Missouri 64055 | ) ) **Division 2** ) |
| | ) |
| JAMES BAKER, Post Office Box 2272 Liberal, KS 67905 | ) ) ) |
| | ) |
| LEWISTENNA BARNETT, 1515 North Belmont Street Wichita, Kansas 67208 | ) **JURY TRIAL DEMANDED** ) ) |
| | ) |
| STEPHANIE BARNHARDT, 1701 East 65th St. North Tulsa, Oklahoma 74103 | ) ) ) |
| | ) |
| PHYLLIS BARTON, 2624 Brickel Boulevard Kansas City, Kansas 66104 | ) ) ) |
| | ) |
| TRESHUNDA BEASLEY, 3820 East Morris Street Wichita, Kansas 67218 | ) ) ) |
| | ) |
| HEATHER BEOUGHER, 499 Road 24 A Longton, Kansas 67352 | ) ) ) |
| | ) |
| KIMBERLY BENSON, 2202 East 67th Street, Apt. 1406 Tulsa, Oklahoma 74135 | ) ) ) |
| | ) |
| ERNESHA BENTLEY, 215 West 99th Street Kansas City, Missouri 64114 | ) ) ) |
| | ) |
| | ) |
| | ) |

**JORDAN BERGMAN,**
745 Sylvan Lane
Wichita, Kansas 67218

**GLORIA BETTS,**
1419 Moten Place
Kansas City, Missouri 64108

**ANTHONY BOSTIC,**
7924 Brooklyn Avenue
Kansas City, Missouri 64132

**AMBER BOUKNIGHT,**
1201 NW 51st St.
Blue Springs, Missouri 64015

**DANIELLE BOWMAN,**
1359 S. St. Francis Street Apt 4
Wichita, Kansas 67211

**GERALDINE BOWSER,**
2116 E. 67th Terrace
Kansas City, MO 64132

**SHARHONDA BRADEN,**
13612 Cambridge Avenue
Grandview, Missouri 64030

**CHERYL BRADLEY,**
2000 N. 10th Street, Apt. 2
Kansas City, Kansas 66104

**IEISHA BRADLEY,**
1244 Ray Avenue
Kansas City, Kansas 66102

**KATHRYN BRAUGHTON,**
5812 NE 41st Street, Apt. C
Kansas City, Missouri 64117

**SYLVIA BROWN,**
2407 N. Piatt Street
Wichita, Kansas 67219

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

JENNIFER LAKEY BRUBAKER,                    )
2508 NW Castle Drive                        )
Blue Springs, Missouri 64015                )
                                            )
LAQUEETA BRUCE,                             )
1015 Harding Street                         )
Wichita, Kansas 67208                       )
                                            )
RODERICK BRUCE,                             )
1015 Harding Street                         )
Wichita, Kansas 67208                       )
                                            )
AMANDA BUNNEY,                              )
7128 Craig Street                           )
Overland Park, KS 66204                     )
                                            )
NICOLE BUTLER,                              )
612 Nichols Ave.                            )
Tecumseh, OK 74873                          )
                                            )
MARCUS CANNON,                              )
842 Quindaro Blvd                           )
Kansas City, KS 66101                       )
                                            )
DENISE CARRUTHERS,                          )
4331 Yecker Ave                             )
Kansas City, KS 66104                       )
                                            )
MARILYN CASHIER,                            )
12204 E. 54th Terrace                  )
Kansas City, MO 64133                       )
                                            )
CHELSEA CAVANAH,                            )
40844 E. 180th Street                  )
Richmond, MO 64085                          )
                                            )
LINDA CHARLES,                              )
1618 W. 22nd St. North                 )
Apt 104                                     )
Wichita, KS 67204                           )
                                            )
ELLA CHEADLE,                               )
735 N. Louisville Ave.                      )
Tulsa, OK 74115                             )
                                            )
                                            )
                                            )

3

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**LATOYA CHEADLE,**
2018 E. Woodrow St.
Tulsa, OK 74110

**KATRINA CHISM,**
12112 Burdette Circle
Omaha, NE 68164

**BELINDA CLAYTON,**
4841 Boyd St., Apt 112
Omaha, NE 68104

**CHRISTOPHER CLARK,**
13010 E. 57th St.
Kansas City, MO 64133

**KIMBERLY CLARK,**
P.O. Box 103
Alva, OK 73717

**KERA CLEMONS-BIRCH,**
4857 Wyndham Road
Park City, KS 67219

**CIERA COATES,**
3300 NW Jefferson St., Apt. 235
Blue Springs, MO 64015

**RODNEY COLLIER,**
4327 Elmwood
Kansas City, MO 64130

**ANGELA R. CORBIN,**
6556 W. 91st St. Apt 136
Overland Park, KS 66212

**CARRIE CRIM,**
21191 W. 227th St.
Spring Hill, KS 66083

**ASHLEY CROFT,**
623 E. Johnston St.
Olathe, KS 66061

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

4

**MARIE DAWSON,**                                              )
510 Johnston Parkway                                          )
Raymore, MO 64083                                             )
                                                              )
**JOSEPH DENNIS,**                                            )
10 Aspen St.                                                  )
Belton, MO 64012                                              )
                                                              )
**BRISON DOCKERY,**                                           )
1004 Highland St., Apt A                                      )
Coffeyville, KS 67337                                         )
                                                              )
**NAQUITA DORSEY,**                                           )
14019 Dunbar Ct.                                              )
Grandview, MO 64030                                           )
                                                              )
**CENTEL DUNCAN,**                                            )
16 N. 35th St.                                                )
Council Bluffs, IA 51501                                      )
                                                              )
**JAZMINE ELLIS,**                                            )
9508 W. 104th St.                                             )
Overland Park, KS 66212                                       )
                                                              )
**ASHLEY FELTON-KREAGER,**                                    )
4857 Wyndham Road                                             )
Park City, KS 67219                                           )
                                                              )
**LUCRESHIA FINLEY,**                                         )
625 S. 71st Terrace, Apt. 4                                   )
Kansas City, KS 66111                                         )
                                                              )
**TERESA FLEMING,**                                           )
304 N. Park Ave., Apt.4                                       )
Springfield, IL 62702                                         )
                                                              )
**JENNIFER FLOREZ,**                                          )
2311 Victoria Drive, Apt. 102                                 )
Kansas City, KS 66106                                         )
                                                              )
**ROXANA FORTNEY,**                                           )
12534 Old Ranier Road, Lot 32                                 )
Roseville, OH 43777                                           )
                                                              )
                                                              )
                                                              )
                                                              )

5

RACHELLE FOX,                                                                )
611 Trevis Ave.                                                              )
Belton, MO 64012                                                             )
                                                                             )
LAURA FRANCO,                                                                )
3217 Greenhaven Place                                                        )
Wichita, KS 67216                                                            )
                                                                             )
ADRIENNE FRANKLIN,                                                           )
400 E. Armour Blvd, Apt 206                                                  )
Kansas City, MO 64107                                                        )
                                                                             )
LATONIA FREEMAN,                                                             )
7724 Webster St.                                                             )
Omaha, NE 68114                                                              )
                                                                             )
LATISHA FRIDAY,                                                              )
4244 S. Hydraulic St. Apt. 805                                               )
Wichita, KS 67216                                                            )
                                                                             )
ANDRE FULSON,                                                                )
1317 West Twin Oaks St.                                                      )
Broken Arrow, OK 74011                                                       )
                                                                             )
QUANTILLIA GAINES,                                                           )
1622 S. Edgemoor St.                                                         )
Wichita, KS 67218                                                            )
                                                                             )
RAEGAN GAREY,                                                                )
2363 Chapel Ridge Place, Apt 4T                                              )
Salina, KS 67401                                                             )
                                                                             )
BRITTANY GARRETT,                                                            )
416 N. Kokomo St.                                                            )
Derby, KS 67037                                                              )
                                                                             )
TAKESHA GATES,                                                               )
12806 14th St. Apt 72                                                        )
Grandview, MO 64030                                                          )
                                                                             )
RENE GOLDEN,                                                                 )
5901 S. May Ave., #259                                                       )
Oklahoma City, OK 73119                                                      )
                                                                             )
                                                                             )
                                                                             )
                                                                             )

6

**MYRON GRAHAM,**
9819 Locust St., Apt. 5
Kansas City, MO 64131

**TAMARA GRIM,**
4121 N. Wheeling Ave.
Kansas City, MO 64117

**JANET GROSS,**
3920 N. 104th St. #210
Omaha, NE 68134

**KAYLA HANNAHAN,**
3001 N. 73rd Place
Kansas City, KS 66109

**KILANDRA HARDEN,**
7626 King St., Apt J
Shawnee, KS 66214

**BRANDI HARDIMAN,**
3139 S. Mingo Road, Apt 1803
Tulsa, OK 74146

**CARLISS HARDING,**
1555 E. 54th St North
Tulsa, OK 74126

**MARCHETA HARDISON,**
920 S. Northern Blvd
Independence, MO 64053

**LISA HARDMAN,**
5017 Forest Ave.
Kansas City, KS 66106

**SONATA HARPER,**
12918 Browne St.
Omaha, NE 68164

**BRETTKITA HASKINS,**
1323 Armour Blvd.
Kansas City, MO 64109

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

7

**MEGAN HATFIELD,**
2200 S. Lori St.
Wichita, KS 67207

**NICKI HILL,**
112 E. Frank St.
Kearney, MO 64060

**SHAYLA HILL,**
3839 E. 61st St.
Kansas City, MO 64130

**MARI J. HOWARD,**
1703 S. King Ave.
Harrisonville, MO 64701

**AUGUST HUGHES,**
1754 N. Estelle St.
Wichita, KS 67214

**YOLANDA HUGHES,**
2525 W. 38th Avenue, Apt. 1C
Kansas City, KS 66103

**STEPHANIE HULSEY,**
1001 N. 14th St.
Collinsville, OK 74021

**KIMBERLY HUNT,**
3634 NW 39th St, Apt 17118
Oklahoma City, OK 73112

**AMBER JACKSON,**
415 W. Harvey St.
Willington, KS 67152

**MARQIEZE JACKSON,**
415 W. Harvey St.
Willington, KS 67152

**NICOLE JACKSON,**
914 S. Dory Lake Drive
Black Hawk, CO 80422

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

8

**RUTH JACKSON,**
1410 N. Vassar
Wichita, KS 67208

**HEATHER JACOBSON,**
903 Florence Ave.
Raymore, MO 64083

**VICKIE JAGODZINSKI,**
306 S. Darrowby Drive
Raymore, MO 64083

**JESSIE JAMES,**
3146 S. 131st East Ave, #413
Tulsa, OK 74134

**ERICA JEFFERSON,**
1530 E. 17th St. North, #101
Wichita, KS 67214

**KEISHA JOHNSON,**
2500 Independence Ave, Apt. E6
Kansas City, MO 64124

**KENISHA JOHNSON,**
11216 Manchester
Kansas City, MO 64134

**BRIANNE JONES,**
9233 Leglar Circle, Apt. 493
Lenexa, KS 66219

**DENISE SHATRA JONES,**
508 Maple Blvd. Apt 2W
Kansas City, MO 64124

**KATHY LYNN JONES,**
3232 E. Independence St. Apt 6A
Tulsa, OK 74110

**RAVEN JONES,**
4929 Bellefontaine Ave.
Kansas City, MO 64130

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

9

**CHARITY KATON,**
344 W. 6th St., Apt. 305
Chelsea, OK 74016

**JENNIFER KEEZER,**
6112 S. Ellis St.
Wichita, KS 67216

**SHERRY KIRKSEY,**
901 N. Elgin Ave. Apt 417
Tulsa, OK 74106

**CHARLOTTE KRAMER,**
5406 E. 71st St., Apt 1912
Tulsa, OK 74136

**LATASHA LAMBERT,**
5855 Highland Ave.
Kansas City, MO 64110

**ABBY LAUGHMAN,**
812 Black Oak Drive
Liberty, MO 64068

**SHARON LAVANIER,**
11421 W. 51st Terrace
Shawnee, KS 66203

**SAMANTHA LEMANSKE,**
515 River Falls Road
Edwardsville, KS 66111

**CHASIDI LEWIS,**
1300 Delaware
Pleasant Hill, MO 64080

**DEEDRE LOMAX,**
4331 E. 108th St.
Kansas City, MO 64137

**CAITLYN MARGRAVE,**
1624 Victor Ave.
Omaha, NE 68110

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

10

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**BRENDA JO MATHER,**
7404 Larsen Lane
Shawnee, KS 66203

**SARAH McCABE,**
403 E. Seventh St.
Eudora, KS 66025

**JOHN McCOY,**
16100 W. 136th St.
Olathe, KS 66062

**AMANDA McCRAY,**
3193 S. Davidson St.
Wichita, KS 67210

**AMY McKINNEY,**
7308 Sanders
Leavenworth, KS 66048

**JOSE MELENDEZ,**
5800 Prairie Meadows Road
Derby, KS 67037

**HOLLY MILLER,**
12825 Hillcrest Dr.
Liberty, MO 64068

**NATALYA MINNERS,**
10155 E. 32nd St. Apt D
Tulsa, OK 74146

**EQUILA MOODY,**
528 S. Bluff St.
Wichita, KS 67218

**STEPHANIE MOONEY,**
3028 Mason St.
Independence, MO 64052

**TIEDRE MOORE,**
6612 Oxford Ave.
Raytown, MO 64133

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

11

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**TRACY MOORE,**
911 Brownthrush St.
Wichita, KS 67212

**EMILY MOSLEY,**
545 Shawnee Road
Kansas City, KS 66103

**MARCIE MYERS-ELDER,**
11605 Carter St.
Overland Park, KS 66210

**BARBARA NASH,**
7117 E. 10th St.
Tulsa, OK 74112

**LATIKA NELSON,**
2631 Lawn Ave.
Kansas City, MO 64127

**BRIAN NORTH,**
16322 E. 34th St.
Independence, MO 64055

**LEANNA ODEMS,**
8805 Crystal Lane, Apt. 203
Kansas City, MO 64138

**ANTHONY OSBY,**
2631 Lawn Ave.
Kansas City, MO 64127

**TREMAINE PACE,**
7020 N. Bales Ave., Apt. 343
Gladstone, MO 64119

**TIFFANY PATILLO,**
808 E. 100th Terrace, Apt. 220
Kansas City, MO 64131

**JANET TERRY PAYNE,**
1199 E. Santa Fe, Lot 172
Gardner, KS 66030

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

12

**RICHARD PAYNE,**      )
7404 Larsen Lane      )
Shawnee, KS 66203      )
      )
**DEANNA PAYTON,**      )
1414 E. 124th St.      )
Olathe, KS 66061      )
      )
**AMBER PETERSON,**      )
3201 E. MacArthur St.      )
Wichita, KS 67216      )
      )
**QUINTON PETTY,**      )
3319 N. 37th St.      )
Kansas City, KS 66104      )
      )
**SANDRA PHILLIPS,**      )
P.O. Box 781145      )
Wichita, KS 67278      )
      )
**TERESA POTTER,**      )
10231 Movilla Hills Drive      )
Sand Springs, OK 74063      )
      )
**SONYA PRUITT,**      )
416 Rhoades Ct.      )
Norman, OK 73072      )
      )
**KRISTI PUGH,**      )
611 Zay Drive      )
Excelsior Springs, MO 64024      )
      )
**PATISHA RANDOLPH,**      )
5001 NW 92nd Terrace      )
Kansas City, MO 64154      )
      )
**ERICA RAY,**      )
2355 N. Poplar St.      )
Wichita, KS 67219      )
      )
**ANGELA REED,**      )
2507 Quincy Ave.      )
Kansas City, MO 64128      )
      )
      )
      )
      )

13

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**QUNTICE REED,**
10721 N. Western Ave. #E
Oklahoma City, OK 73114

**ANGELA RICHIE,**
4141 S. Seneca, Apt. 919
Wichita, KS 67217

**JUDY RUFFIN,**
5904 Henninger Drive, Apt 1008
Omaha, NE 68104

**MELISSA RUSH,**
408 E. 7th St.
Newton, KS 67114

**CIERRA SAUER,**
21520 W. 179th St
Olathe, KS 66062

**KEVIN SHARP,**
4022 Nebraska Ave.
Omaha, NE 68111

**MELISSA SIMON,**
4807 Skyline Drive
Roeland Park, KS 66205

**LASHAWNDA SIMONTON,**
7304 E. 109th Terrace
Kansas City, MO 64134

**RONALD A. SMITH,**
6904 N. 107th Plaza, Apt. 238
Omaha, NE 68122

**TIMESHA SMITH,**
9706 W. 95th St.
Overland Park, KS 66212

**NICOLE STAAB,**
15705 W. 125th Terrace
Olathe, KS 66062

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
) )
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

14

**DAWN STARR,**
621 SW County Road
Holden, MO 64040

**LATISHA STEWART,**
9725 Marsh Ave.
Kansas City, MO 64134

**BRIAN STREET,**
1905 E. Sleepy Hollow Dr.
Olathe, KS 66062

**SEAN SWARD,**
304 SW Fourth St.
Blue Springs, MO 64014

**SARAH TAYLOR,**
1135 NW Willow Drive
Grain Valley, MO 64029

**JOHN TETER,**
104 E. Lakecrest Drive
Augusta, KS 67010

**LASHONE THOMAS,**
14241 W. 128th St.
Olathe, KS 66062

**STEPHANIE THOMPSON,**
8302 Babe Ruth St.
San Antonio, TX 78240

**LORI A. THRONE,**
8702 Slater
Overland Park, KS 66212

**DONYETTA THROWER,**
2206 S. Jackson Ave. Apt E
Tulsa, OK 74107

**NYREE TIGER,**
1020 SW 48th St.
Oklahoma City, OK 73109

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

15

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**CANISHA TILLER,**
237 E. 67th St.
Kansas City, MO 64130

**SHANNON TIMBERLAKE,**
1306 Tyer Road
Grain Valley, MO 64029

**ELIZABETH TRAMEL,**
12935 E. 28th Place
Tulsa, OK 74134

**BRENDA TREAT,**
3201 E. MacArthur St. #115
Wichita, KS 67216

**RENITA TRIPLETT,**
5615 E. 39th Terrace
Kansas City, MO 64130

**MERIAM TURNER,**
3828 N. 38th St.
Kansas City, KS 66104

**JACQUELINE TUTTLE,**
6701 W. 87th Terrace, #901
Overland Park, KS 66212

**MARIA VALDEZ,**
309 NW Shamrock Ave.
Lee's Summit, MO 64081

**RITA VERGE,**
5236 E. 28th St., Unit 1
Kansas City, MO 64128

**ROBERTA VERNER,**
4613 N. Cheyenne Ave.
Tulsa, OK 74126

**RYAN VIVANCO,**
1408 Canterbury Lane
Liberty, MO 64068

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

16

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

**CURTIS VON ROUE,**
1919 Olathe Blvd, Apt. 305
Kansas City, KS 66103

**KENDYLL WALKER,**
17532 W. 157th Terrace
Olathe, KS 66062

**PAULA WALLIS,**
348 E. Clark St.
Augusta, KS 67010

**TASHANNA WALLS,**
1740 N. Lennox Dr., Apt. 9C
Olathe, KS 66062

**CRYSTAL WASHINGTON,**
4425 N. Detroit Ave.
Tulsa, OK 74106

**JARRAE WELLS,**
2631 Lawn Ave.
Kansas City, MO 64127

**CHRISTINE WHITWORTH,**
10800 Hemlock St., Apt F
Overland Park, KS 66210

**MICHAEL WILLIAMS,**
6445 East Lincoln St.
Wichita, KS 67207

**RENIDA WILLIAMS,**
724 N. Maplewood St.
Tulsa, OK 74115

**RONALD JACK WILSON,**
10515 E. 136th St. North
Collinsville, OK 74021

**YOLANDA WILSON,**
7924 Brooklyn Ave.
Kansas City, MO 64132

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

17

**AMANDA WILWERDING,**       )
919 Kent Drive                            )
Belton, MO 64012                       )
                                             )
**VANESSA WISEMAN,**          )
4140 Regents Lane                     )
Wichita, KS 67208                      )
                                             )
**JENNIFER WOODLEY,**         )
1838 S. Edgemoor St.                 )
Wichita, KS 67218                      )
                                             )
**STEPHANIE WOODS,**          )
408 Back Bay Blvd, #12             )
Wichita, KS 67209                      )
                                             )
**ANTHONY WRIGHT,**            )
602 Bird St.                                )
Harrisonville, MO 64701            )
                                             )
**BRIAN WROTEN,**                 )
8013 W. 142nd Terr.                   )
Overland Park, KS 66223          )
                                             )
**MARIAH YATES,**                  )
418 E. 14th St. North, Apt. 1      )
Wichita, KS 67214                      )
                                             )
**ANTOENETE ZACHARY,**      )
5818 S. Owasso Ave., Apt. 1338 )
Tulsa, OK 74105                         )
                                             )
        **Plaintiffs,**                      )
v.                                               )
                                             )
**MISSION GROUP KANSAS, INC., d/b/a**  )
**WRIGHT CAREER COLLEGE,**               )
                                             )
**BOARD OF DIRECTORS OF MISSION**    )
**GROUP KANSAS INC.,**                          )
                                             )
**JOHN MUCCI; IN HIS OFFICIAL AND**     )
**INDIVIDUAL CAPACITY,**                        )
                                             )
**STEPHEN BROWNE; IN HIS OFFICIAL**   )
**AND INDIVIDUAL CAPACITY,**                )

18

RON HOLT; IN HIS OFFICIAL AND )
INDIVIDUAL CAPACITY, )
                            )
            Defendants. )

## FIRST AMENDED PETITION FOR DAMAGES

Plaintiffs, through counsel, allege and state the following causes of action against Defendants:

## PLAINTIFFS

1.     Plaintiffs are all individuals over the age of eighteen (18).

## OVERLAND PARK CAMPUS

2.     Plaintiff Stephanie Ayala attended Wright Career College's Overland Park campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

3.     Plaintiff Robin Bailes attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Leavenworth County, KS.

4.     Plaintiff Phyllis Barton attended Dickinson Business School in Kansas City, KS from approximately 1984 to 1985. At all times while attending Dickinson Business School, Plaintiff resided in Wyandotte County, KS.

5.     Plaintiff Ernesha Bentley attended Wright Career College's Overland Park campus from approximately 2009 to 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

6.     Plaintiff Heather Beougher attended Wright Career College's Overland Park campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Johnson County, KS and Elk County, KS.

19

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

7.    Plaintiff Gloria Betts attended Dickinson Business School in Kansas City, KS in approximately 1989. At all times while attending Dickinson Business School, Plaintiff resided in Wyandotte County, KS.

8.    Plaintiff Anthony Bostic attended Wright Career College's Overland Park campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

9.    Plaintiff Amber Bouknight attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

10.    Plaintiff Geraldine Bowser attended Dickinson Business School in Kansas City, KS from approximately 1984 to 1985. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

11.    Plaintiff Sharhonda Braden attended Wright Business School's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

12.    Plaintiff Cheryl Bradley attended Wright Career College's Overland Park campus in 2002. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

13.    Plaintiff Ieisha Bradley attended Wright Career College's Overland Park campus from approximately 2002 to 2003. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

14.    Plaintiff Kathryn Braughton has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Clay County, MO.

15.     Plaintiff Jennifer Brubaker attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

16.     Plaintiff Amanda Bunney attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Miami County, KS.

17.     Plaintiff Marcus Cannon attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

18.     Plaintiff Denise Carruthers attended Dickinson Business School in Kansas City, KS from approximately 1984 to 1985. At all times while attending Dickinson Business School, Plaintiff resided in Wyandotte County, KS.

19.     Plaintiff Marilyn Cashier attended Wright Career College's Overland Park campus from approximately 1999 to 2000. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

20.     Plaintiff Marcus Cannon attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

21.     Plaintiff Chelsea Cavanah attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Ray County, MO.

22.     Plaintiff Christopher Clark attended Wright Career College's Overland Park campus from approximately 2011 to 2014. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

21

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

23.    Plaintiff Ciera Coates has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Jackson County, MO.

24.    Plaintiff Rodney Collier attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

25.    Plaintiff Angela R. Corbin attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

26.    Plaintiff Carie Crim attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

27.    Plaintiff Ashley Croft attended Wright Career College's Overland Park campus in approximately 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

28.    Plaintiff Marie Dawson attended Wright Career College's Overland Park campus in approximately 1997 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

29.    Plaintiff Jennifer Decker attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

22

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

30.    Plaintiff Joseph Dennis attended Wright Career College's Overland Park campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Cass County, MO.

31.    Plaintiff Brison Dockery attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

32.    Plaintiff Naquita Dorsey attended Wright Career College's Overland Park campus from approximately 2004 to 2005. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

33.    Plaintiff Jazmine Ellis attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

34.    Plaintiff Lucreshia Finley attended Wright Career College's Overland Park campus in 2008. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

35.    Plaintiff Teresa Fleming attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

36.    Plaintiff Jennifer Florez attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

37.    Plaintiff Roxana Fortney attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

23

38.     Plaintiff Rachelle Fox attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Cass County, MO.

39.     Plaintiff Adrienne Franklin attended Wright Career College's Overland Park campus from approximately 2001 to 2002. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

40.     Plaintiff Raegan Garey attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

41.     Plaintiff Takesha Gates has attended Wright Career College's Overland Park campus from May 2014 to the present. At all times while attending WCC, Plaintiff has resided in Jackson County, MO.

42.     Plaintiff Tamara Grim attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

43.     Plaintiff Roxana Fortney attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

44.     Plaintiff Christi Hampton attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

45.     Plaintiff Kayla Hannahan attended Wright Career College's Overland Park campus in 2012. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

24

46. Plaintiff Kilandra Harden attended Wright Career College's Overland Park campus from approximately 2010 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

47. Plaintiff Marcheta Hardison attended Wright Career College's Overland Park campus in 2006. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

48. Plaintiff Lisa Hardman attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

49. Plaintiff Brettkita Haskins attended Wright Career College's Overland Park campus from approximately 2001 to 2003. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

50. Plaintiff Nikki Hill attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

51. Plaintiff Shayla Hill has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Jackson County, MO.

52. Plaintiff Mari Howard attended Wright Career College's Overland Park campus in 2010. At all times while attending WCC, Plaintiff resided in Cass County, MO.

53. Plaintiff Yolanda Hughes attended Wright Career College's Overland Park campus from approximately 2008 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

54.     Plaintiff Nicole Fox Jackson attended Wright Career College's Overland Park campus in approximately 1998. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

55.     Plaintiff Heather Jacobson attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Cass County, MO.

56.     Plaintiff Vickie Jagodzinski attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Cass County, MO.

57.     Plaintiff Stephen Jewsome attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

58.     Plaintiff Keisha Johnson attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

59.     Plaintiff Kenisha Johnson attended Wright Career College's Overland Park campus from approximately 2008 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

60.     Plaintiff Brianne Jones attended Wright Career College's Overland Park campus in 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

61.     Plaintiff Denise Shatra Jones attended Wright Career College's Overland Park campus from approximately 2008 and 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

62.     Plaintiff Raven Jones has attended Wright Career College's Overland Park campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Wyandotte County, KS.

63.     Plaintiff Latasha Lambert attended Wright Career College's Overland Park campus in 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

64.     Plaintiff Abby Anderson Laughman attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Clay County, MO.

65.     Plaintiff Sharon LaVanier attended Wright Career College's Overland Park campus in 2007. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

66.     Plaintiff Samantha Bailes Lemanske attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

67.     Plaintiff Chasidi Lewis attended Wright Career College's Overland Park campus from approximately 1999 to 2000. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

68.     Plaintiff Deedra Lomax attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

69.     Plaintiff Brenda Jo Mather attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

70.     Plaintiff Sarah McCabe attended Wright Career College's Overland Park campus in 2011. At all times while attending WCC, Plaintiff resided in Douglas County, KS.

27

71.     Plaintiff John McCoy attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

72.     Plaintiff Amy Underwood McKinney attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

73.     Plaintiff Holly Davis Miller attended Wright Career College's Overland Park campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

74.     Plaintiff Stephanie Mooney attended Wright Career College's Overland Park campus from approximately 2000 to 2001 and 2007 to 2008. At all times while attending WCC, Plaintiff resided in Jackson County, MO and Wyandotte County, KS.

75.     Plaintiff Tiedre Moore attended Wright Career College's Overland Park campus from approximately 2009 to 2010 and in 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO and Wyandotte County, KS.

76.     Plaintiff Emily Mosley attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

77.     Plaintiff Marcie Myers-Elder attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

28

78. Plaintiff Latika Nelson attended Wright Career College's Overland Park campus in 2000, 2006 and 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

79. Plaintiff Brian North attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

80. Plaintiff Leanna Odems attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

81. Plaintiff Anthony Osby attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

82. Plaintiff Tremaine Pace attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

83. Plaintiff Tiffany Patillo attended Wright Career College's Overland Park campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

84. Plaintiff Janet Terry Payne attended Wright Career College's Overland Park campus from approximately 2004 to 2005. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

85. Plaintiff Richard Payne attended Wright Career College's Overland Park campus in 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

29

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

86.     Plaintiff Deanna Payton attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

87.     Plaintiff Quinton Petty attended Wright Career College's Overland Park campus from approximately 2000 to 2001. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

88.     Plaintiff Kristi Pugh attended Wright Career College's Overland Park campus in 2009. At all times while attending WCC, Plaintiff resided in Clay County, MO.

89.     Plaintiff Patisha Randolph attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

90.     Plaintiff Angela Reed attended Wright Career College's Overland Park campus in approximately 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

91.     Plaintiff Cierra Sauer attended Wright Career College's Overland Park campus in 2012. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

92.     Plaintiff Melissa Simon attended Wright Career College's Overland Park campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

93.     Plaintiff LaShawnda Simonton attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

94.     Plaintiff Timesha Smith attended Wright Career College's Overland Park campus in approximately 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

95.     Plaintiff Nicole Staab attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

96.     Plaintiff Dawn Youngblood Starr attended Wright Career College's Overland Park campus from approximately 1999 to 2000. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

97.     Plaintiff Latisha Stewart attended Wright Career College's Overland Park campus from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

98.     Plaintiff Brian Street attended Wright Career College's Overland Park campus in from approximately 2007 to 2008. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

99.     Plaintiff Sean Sward attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

100.     Plaintiff Sarah Taylor attended Wright Career College's Overland Park campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

101.    Plaintiff Lashone Thomas attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

102.    Plaintiff Lori Throne attended Wright Career College's Overland Park campus from approximately 2009 to 2010. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

103.    Plaintiff Canisha Tiller attended Wright Career College's Overland Park campus in approximately 2004. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

104.    Plaintiff Shannon Timberlake attended Wright Career College's Overland Park campus in approximately 2010. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

105.    Plaintiff Renita Triplett attended Wright Career College's Overland Park campus from approximately 2005 to 2006. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

106.    Plaintiff Meriam Turner attended Wright Career College's Overland Park campus from approximately 2000 to 2002. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

107.    Plaintiff Jacqueline Tuttle attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

32

108.   Plaintiff Maria Valdez attended Wright Career College's Overland Park campus from approximately 2009 to 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

109.   Plaintiff Rita Verge attended Wright Career College's Overland Park campus from approximately 1998 to 1999. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

110.   Plaintiff Ryan Vivanco attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Clay County, MO.

111.   Plaintiff Curtis Von Roue attended Wright Career College's Overland Park campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

112.   Plaintiff Kendyll Walker attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

113.   Plaintiff Tashanna Walls has attended Wright Career College's Overland Park campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Johnson County, KS.

114.   Plaintiff Jarrae Wells attended Wright Career College's Overland Park campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

33

115.    Plaintiff Christine Whitworth attended Wright Career College's Overland Park campus from approximately 2010 to 2011. At all times while attending WCC, Plaintiff resided in Miami County, KS.

116.    Plaintiff Yolanda Wilson attended Wright Career College's Overland Park campus in approximately 2007, 2010 and 2012. At all times while attending WCC, Plaintiff resided in Jackson County, MO.

117.    Plaintiff Amanda Wilwerding attended Wright Career College's Overland Park campus from approximately 2004 to 2005. At all times while attending WCC, Plaintiff resided in Wyandotte County, KS.

118.    Plaintiff Anthony Wright attended Wright Career College's Overland Park campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Cass County, MO.

119.    Plaintiff Brian Wroten attended Wright Career College's Overland Park campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Johnson County, KS.

## WICHITA, KANSAS CAMPUS

120.    Plaintiff James Baker attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

121.    Plaintiff Lewistenna Barnett has attended Wright Career College's Wichita campus since 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

34

122.    Plaintiff Treshunda Beasley has attended Wright Career College's Wichita campus since 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

123.    Plaintiff Jordan Bergman attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

124.    Plaintiff Danielle Bowman has attended Wright Career College's Wichita campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Sedgwick County, KS.

125.    Plaintiff Sylvia Brown attended Wright Career College's Wichita campus from 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

126.    Plaintiff Laqueeta Bruce attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

127.    Plaintiff Roderick Bruce attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS

128.    Plaintiff Linda Charles attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

129.    Plaintiff Kimberly Clark attended Wright Career College's Wichita campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Butler County, KS.

35

130.    Plaintiff Kera Clemons-Birch has attended Wright Career College's Wichita campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Sedgwick County, KS.

131.    Plaintiff Ashley Felton-Kreager attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

132.    Plaintiff Laura Franco attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

133.    Plaintiff Latisha Friday attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

134.    Plaintiff Quantillia Gaines attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS

135.    Plaintiff Brittany Garrett attended Wright Career College's Wichita campus in 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

136.    Plaintiff Megan Hatfield attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

137.    Plaintiff August Hughes attended Wright Career College's Wichita campus in approximately 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

36

138.    Plaintiff Kimberly Hunt attended Wright Career College's Wichita and Oklahoma City campuses from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS and Oklahoma County, OK.

139.    Plaintiff Amber Jackson attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

140.    Plaintiff Marqieze Jackson attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

141.    Plaintiff Ruth Jackson attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

142.    Plaintiff Erica Jefferson attended Wright Career College's Wichita campus from approximately 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

143.    Plaintiff Jennifer Keezer attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

144.    Plaintiff Amanda McCray attended Wright Career College's Wichita campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

145.    Plaintiff Jose Melendez attended Wright Career College's Wichita campus from in 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

37

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

146.    Plaintiff Equila Moody attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

147.    Plaintiff Tracy Moore attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

148.    Plaintiff Amber Peterson attended Wright Career College's Wichita campus in 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

149.    Plaintiff Sandra Phillips attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

150.    Plaintiff Erica Ray attended Wright Career College's Wichita campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

151.    Plaintiff Angela Richie attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

152.    Plaintiff Melissa Rush attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

153.    Plaintiff John Teter attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Butler County, KS.

154.   Plaintiff Stephanie Thompson attended Wright Career College's Wichita campus from approximately 2011 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

155.   Plaintiff Brenda Treat attended Wright Career College's Wichita campus in approximately 2011. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

156.   Plaintiff Paula Wallis attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Butler County, KS.

157.   Plaintiff Michael K. Williams attended Wright Career College's Wichita campus in approximately 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

158.   Plaintiff Renida Williams attended Wright Career College's Wichita campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

159.   Plaintiff Vanessa Wiseman attended Wright Career College's Wichita campus from approximately 2011 to 2012. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

160.   Plaintiff Jennifer Woodley attended Wright Career College's Wichita campus from approximately 2010 to 2013. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

39

161.    Plaintiff Stephanie Woods attended Wright Career College's Wichita campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Sedgwick County, KS.

162.    Plaintiff Mariah Yates has attended Wright Career College's Wichita campus from approximately 2012 to the present. At all times while attending WCC, Plaintiff has resided in Sedgwick County, KS.

## TULSA, OKLAHOMA CAMPUS

163.    Plaintiff Ella Cheadle attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

164.    Plaintiff Latoya Cheadle attended Wright Career College's Tulsa campus from approximately 2005 to 2006. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

165.    Plaintiff Stephanie Barnhardt has attended Wright Career College's Tulsa campus from approximately 2012 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

166.    Plaintiff Kimberly Benson attended Wright Career College's Tulsa campus in 2013. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

167.    Plaintiff Andre Fulson has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

40

168.     Plaintiff Brandi Hardiman attended Wright Career College's Tulsa campus from approximately 2010 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

169.     Plaintiff Carliss Harding has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

170.     Plaintiff Stephanie Hulsey attended Wright Career College's Tulsa campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

171.     Plaintiff Jessie James attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

172.     Plaintiff Kathy Lynn Jones attended Wright Career College's Tulsa campus in 2013. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

173.     Plaintiff Charity Katon attended Wright Career College's Tulsa campus from approximately 2008 to 2009. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

174.     Plaintiff Sherry Kirksey attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

175.     Plaintiff Charlotte Kramer attended Wright Career College's Tulsa campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

176.    Plaintiff Natalya Minners has attended Wright Career College's Tulsa campus from approximately 2011 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

177.    Plaintiff Barbara Nash attended Wright Career College's Tulsa campus from approximately 2010 to 2012. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

178.    Plaintiff Teresa Potter has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Osage County, OK.

179.    Plaintiff Donyetta Thrower attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

180.    Plaintiff Elizabeth Tramel has attended Wright Career College's Tulsa campus from approximately 2012 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

181.    Plaintiff Roberta Verner has attended Wright Career College's Tulsa campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Tulsa County, OK.

182.    Plaintiff Crystal Washington attended Wright Career College's Tulsa campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

183. Plaintiff Ronald Jack Wilson attended Wright Career College's Tulsa campus from approximately 2006 to 2007. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

184. Plaintiff Antoenete Zachary attended Wright Career College's Tulsa campus from approximately 2008 to 2013. At all times while attending WCC, Plaintiff resided in Tulsa County, OK.

**OMAHA, NEBRASKA CAMPUS**

185. Plaintiff Katrina Chism attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

186. Plaintiff Belinda Clayton attended Wright Career College's Omaha campus in 2013. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

187. Plaintiff Centel Duncan attended Wright Career College's Omaha campus in 2012. At all times while attending WCC, Plaintiff resided in Pottawattamie County, IA.

188. Plaintiff Latonia Freeman attended Wright Career College's Omaha campus from approximately 2012 to 2013. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

189. Plaintiff Janet Gross attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

190. Plaintiff Sonata Harper has attended Wright Career College's Omaha campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Douglas County, NE.

43

<br>

191.    Plaintiff Caitlyn Margrave attended Wright Career College's Omaha campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

192.    Plaintiff Judy Ruffin attended Wright Career College's Omaha campus in approximately 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

193.    Plaintiff Ronald A. Smith attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

194.    Plaintiff Kevin Sharp attended Wright Career College's Omaha campus from approximately 2012 to 2014. At all times while attending WCC, Plaintiff resided in Douglas County, NE.

## OKLAHOMA CITY, CAMPUS

195.    Plaintiff Nicole Butler has attended Wright Career College's Oklahoma City campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Pottawatomie County, OK.

196.    Plaintiff Rene Golden has attended Wright Career College's Oklahoma City campus from approximately 2013 to the present. At all times while attending WCC, Plaintiff has resided in Oklahoma County, OK.

197.    Plaintiff Sonya Pruitt attended Wright Career College's Oklahoma City campus in approximately 2013. At all times while attending WCC, Plaintiff resided in Canadian County, OK.

198. Plaintiff Quntice Reed attended Wright Career College's Oklahoma City campus from approximately 2013 to 2014. At all times while attending WCC, Plaintiff resided in Oklahoma County, OK.

199. Plaintiff Nyree Tiger has attended Wright Career College's Oklahoma City campus from approximately 2014 to the present. At all times while attending WCC, Plaintiff has resided in Oklahoma County, OK.

## DEFENDANTS

200. Defendant Mission Group Kansas, Inc., d/b/a Wright Career College ("WCC"), is a Kansas Corporation but doing business in the State of Missouri at all relevant times.

201. Upon information and belief, Defendant Board of Directors of Mission Group Kansas, Inc., d/b/a Wright Career College, consists of the following members: Mr. James Miller, Jr., Mrs. Gayle L. Miller, Mr. John Mucci, Mr. Ronald L. Holt, Mrs. Peggy Hodges, Mr. Martin G. Baughman, Dr. Baltazara G. Lotuaco, Mrs. Shawn Sharpley, Mr. Stephen Browne, Mr. Eugene Kivett, Mr. David O'Brien, Ms. Kathleen O'Brien and Ms. Jane Maskus.

202. Defendant John Mucci ("Mucci"), upon information and belief, is a resident of Kansas; Mucci was employed by Defendant WCC as President and was acting within the course and scope of his employment at the time of the events alleged herein.

203. Defendant Stephen Browne ("Browne), upon information and belief, is a resident of Missouri; Browne was employed by Defendant WCC as Treasurer and was acting within the course and scope of his employment at the time of the events alleged herein.

204. Defendant Ron Holt ("Holt"), upon information and belief, is a resident of Missouri; Holt was employed by Defendant WCC as Secretary and was acting within the course and scope of his employment at the time of the events alleged herein.

45

<br>

**JURISDICTION & VENUE**

205.    Jurisdiction is proper in this Court pursuant to R.S.Mo. § 506.500 in that many of the material events that comprise the basis of Plaintiffs' claims occurred in Missouri and Plaintiffs are seeking damages in excess of $15,000.

206.    Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because each of the Plaintiffs, or some of them, were first injured in Eastern Jackson County, Missouri and/or because several Defendants reside in – or have registered agents in – Eastern Jackson County, Missouri.

**JOINDER OF CLAIMS**

207.    Joinder of Plaintiffs' claims are permissible pursuant to Missouri Supreme Court Rule 52.05(a) in that the claims alleged herein arise out of the same series of occurrences and involve common questions of law and fact.

**GENERAL ALLEGATIONS REGARDING DEFENDANTS**

208.    Mission Group Kansas, Inc. ("MGK"), is a Kansas non-profit corporation, which operates Wright Career College ("WCC"), a private non-profit postsecondary vocational institution with campuses in Overland Park, Kansas; Wichita, Kansas; Oklahoma City, Oklahoma; Tulsa, Oklahoma; and Omaha, Nebraska.

209.    WCC participates in federal student loan and grant programs. These programs include, among others, the William D. Ford Federal Direct Loan Program (Direct Loans), the Federal Pell Grant Program, and campus-based aid programs. Grants do not have to be repaid by students, while loans must be repaid whether or not a student completes a degree program. However, in many instances, funds from either source (grants or loans) are limited in the amount any one borrower may receive.

210.    Having identified the opportunity to tap into guaranteed payment through federal loan programs, while shielding itself from any risk resulting from its students' student loan defaults, WCC purposely entices prospective students to enroll and apply for student loans they cannot pay back through a systematic, deceptive marketing scheme. It conducts this scheme in large part through its publications, televised ads and enrollment "advisors."

211.    Beginning at least by 1984 and on various and continuing dates thereafter, Defendants intentionally engaged in a pattern and practice of deceptive conduct and of making certain fraudulent misrepresentations and omissions to Plaintiffs and other prospective students.

212.    WCC deceives students about federal financial aid, the true cost of attending WCC, the value of WCC's accreditations, the quality and reputation of its academic programs, and the employment prospects and career placements services its graduates can expect.

213.    WCC does this by improperly hiding information from visitors to its websites and by misleading students through affirmative misrepresentations and material omissions. WCC also trains and deploys an army of aggressive, persistent enrollment advisors to reach out and recruit students directly, persuade current students to continue taking courses with no value and re-apply for additional and unnecessary governmentally guaranteed loans, and to purchase, with those funds, additional materials and credit hours from WCC.

214.    Collectively, these tactics drive WCC's enrollment practices and work to the company's great financial benefit, at the expense of its students, the federal government, and the American taxpayers.

## GENERAL ALLEGATIONS REGARDING THE ENROLLMENT AND EXPERIENCE OF PLAINTIFFS

215.    Plaintiffs are all current or former WCC students.

47

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

216.   Defendants' pattern and practice of deceptive conduct and fraudulent misrepresentations and omissions was designed to, and in fact did, induce students to enroll in various programs, including specifically each and every one of the Plaintiffs.

217.   From approximately 1999 to the present WCC made the following misrepresentations to Plaintiffs upon which they reasonably relied:

    a) that its programs would provide an adequate educational experience comparable to other area degree programs in the same field;

    b) that any educational credits earned at WCC would transfer and would apply toward a degree program at another school;

    c) that WCC's instructors all had degrees and were experienced in their respective fields;

    d) that WCC's programs were more rigorous and thorough than other area schools, thereby making WCC graduates more competitive in the job market and resulting in area employers hiring more graduates from WCC than other schools;

    e) that enrolling in its evening classes offered all of the same benefits as the day classes;

    f) that the cost of the program would be less than WCC knew would be the actual cost of the program;

    g) that Plaintiffs were eligible for government grants that would largely offset the program costs, and any remaining program costs would be paid for through student loans;

48

h) that WCC supplied meals, transportation to and from WCC's campus, a laptop for use while students were enrolled, and other amenities and aids that WCC knew were in fact, not available, or only available at an additional cost;

i) that books were included in the total program costs, and that WCC did not require purchase of books from their facility;

j) that WCC would provide assistance with obtaining interviews, drafting resumes, and job placement; and

k) in all other ways demonstrated by the admitted evidence at the jury trial in this matter.

218. As a result of these representations, Plaintiffs enrolled and were assisted in applying for financial aid in the form of student loans, which loans must be repaid by Plaintiffs after graduation from WCC.

219. After his/her enrollment at WCC, and after Plaintiffs had already borrowed significant funds directly paid to WCC, Plaintiffs discovered that many of Defendants' material representations regarding the purported benefits of attending WCC were false and/or misleading in numerous respects, including the following:

a) educational credits earned at WCC were not transferable towards programs at other schools;

b) the programs in which Plaintiffs enrolled lasted longer and were more expensive than Defendants represented;

c) Plaintiffs' instructors did not have the qualifications or experience that Defendants represented;

49

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

d) there was a high degree of employee turnover. Plaintiffs' instructors were frequently fired during the course, and replaced with temporary or substitute professors and in some instances classes were held with no instructor at all;

e) Defendants used a class scheduling "protocol" referred to as "pods" wherein new students were placed in courses that were already in progress, and forced to start in the middle or end of the course material, resulting in many students being tested on advance sections of a subject without having the benefit of earlier, necessary course work and instruction, and producing increased payments to Defendants by guaranteeing a high fail rate, necessitating "re-taking" the course;

f) the evening classes did not offer all of the same benefits as the day classes; there was no administrative staff available to assist students during evening and night hours, despite express promises that there would be, and many of the facilities were even closed; moreover, the evening courses were significantly limited and difficult to schedule, resulting in delayed graduation dates, continued loan applications, and again, increased payments to Defendants;

g) the student loans and grants did not include the total cost of the students' program resulting in debt that Plaintiffs were never informed of, and in direct contradiction to the representations and promises made by Defendants to entice Plaintiffs to enroll at WCC; and

50

<br>

h) Plaintiffs were forced to purchase books from WCC. If Plaintiffs did not purchase books from WCC, Defendants would charge their accounts for the books. Then despite having charged Plaintiffs accounts, Defendants did not provide Plaintiffs with books. Also, "electronic" textbooks that were promised were either not made available, or charged for in contradiction to the promises made to entice Plaintiffs to enroll at WCC; and

i) In other ways demonstrated by the admitted evidence at any trial in this matter.

220. Due to WCC's misrepresentations and other conduct as set forth herein, Plaintiffs will not be and have not been properly trained in the subject areas in which they enrolled, will not receive the salaries they were promised upon graduation, and will fail to attain accreditation in their fields due to a failure of WCC to properly provide an education which will allow accreditation, and the "education" received from WCC, has no value to Plaintiffs, and instead has resulted in crippling debt.

221. Plaintiffs borrowed thousands, and even tens of thousands of dollars, to attend WCC only to discover later that their degrees and "education" are worthless and their credits won't transfer, even to the point where at least one Plaintiff's current employer refused to accept her WCC credits as evidence of further qualification of employment. Now Plaintiffs are thousands of dollars in debt, for no value in return.

222. Plaintiffs have been damaged not only in terms of inability to earn a living in their field upon graduation but also because they must repay the student loans WCC assisted them in obtaining, which are substantial.

## COUNT I
### FRAUDULENT MISREPRESENTATION
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

223.   Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility including but not limited to:

      a.   job placement and job demand;

      b.   anticipated starting salary;

      c.   graduation rates;

      d.   instructors' qualification;

      e.   quality of education;

      f.   transferability of credits to other institutions;

      g.   instructors' qualifications; and

      h.   cost and duration of program.

224.   At the time Defendants made the representation, Defendants knew that the representations were false, or did not know whether the representations were true or false.

225.   At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

226.   Plaintiffs had a right to rely on Defendants' representation and did, in fact, rely on such representation.

227.   That in reliance on WCC's material misrepresentations, Plaintiffs enrolled in its facility and were assisted in applying for financial aid in the form of student loans, Plaintiffs must repay the loans after graduation from WCC.

52

228.    As a direct and proximate result of Defendants' fraudulent representation, the Plaintiffs have incurred damages.

229.    Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT II
## NEGLIGENT MISREPRESENTATION
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

230.    Defendants made material misrepresentations in order to induce Plaintiffs to enroll as students in its facility.

231.    In making said representation, Defendants failed to use ordinary care.

232.    At the time of said representation, Defendants intended for Plaintiffs to rely on the representation.

233.    In reliance on WCC's material misrepresentations, Plaintiffs enrolled in its facility and Plaintiffs were assisted in applying for financial aid in the form of student loans, Plaintiffs must repay loans after graduation from WCC.

234.    These misrepresentations were material to Plaintiffs' enrollment in its facility.

235.    Plaintiffs relied on the information supplied by Defendants and such reliance was reasonable under the circumstances.

53

236.    As a direct and proximate result of Defendants' negligent misrepresentation Plaintiffs have been injured and damaged as herein described.

237.    Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

**COUNT III**
**NEGLIGENT HIRING/RETENTION**
**(Against all Defendants)**

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

238.    Defendants had a duty to possess and use the same degree of care ordinarily used by reasonable and/or careful educational institutions to assess an applicant's suitability for a teaching position.

239.    Defendants knew or should have known that their employees ("instructors") were not properly qualified or suitable for the programs in which Plaintiffs are/were enrolled; they wrongfully terminated instructors who were qualified; and by their practice of changing instructors so frequently, that the Plaintiffs were unable to obtain the education promised by the Defendants.

240.    Defendants knew or should have known that negligently hiring, training, supervising, and monitoring their employees would directly prevent the Plaintiffs' from receiving the education promised to them by the Defendants.

54

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

241.    As a direct and proximate result of Defendants negligent hiring/retention, Defendants' employees were not qualified for the work they were hired to perform and were not properly trained or supervised.

242.    As a direct and proximate result of Defendants' negligent hiring/retention, Plaintiffs were unable to receive the education promised and have been injured and damaged as herein described.

243.    Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

244.    WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

**COUNT IV**
**CIVIL CONSPIRACY**
**(Against All Defendants)**

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

245.    Defendants had an agreement and/or understanding, that they would use a pattern of advertising, deceptive enrollment and recruitment techniques to entice Plaintiffs, and other students, to enroll at WCC, all with the purposes of charging exaggerated fees, tuition, and costs, and for the benefit of Defendants.

246.    In attempting to accomplish their goal Defendants committed one or more overt acts as fully enumerated above.

55

247.   As a direct and proximate result of Defendants' acts in furtherance of this conspiracy, Plaintiffs have incurred damages.

248.   Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT V
## VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

249.   Plaintiffs and Defendants are within the definition of "person" under the Missouri Merchandising Practices Act, R.S.Mo. § 407.010, et seq.

250.   Defendants' statements to induce Plaintiffs to enroll at WCC constitute "advertisements" as defined by R.S.Mo. § 407.010(1).

251.   The objects of the educational programs and services offered by Defendant WCC constitute merchandise as defines by R.S.Mo. § 407.010(4).

252.   Defendants' advertising, offering for sale, and/or sale of merchandise constitutes "trade" or "commerce" as defined by R.S.Mo. § 407.010(7).

253.   Plaintiffs purchased merchandise from Defendants primarily for personal, family, or household purposes within the meaning of R.S.Mo. § 407.025.1.

56

254. Defendants engaged in a pattern and practice of using deception, fraud, false pretense, false promise, misrepresentation, and unfair practices in connection with the sale or advertisement of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

255. Defendants engaged in a pattern and practice of using concealment, suppression and omission of material facts in connection with the advertising and sale of merchandise in trade or commerce in violation of R.S.Mo. § 407.020.1.

256. As a direct result of Defendants' violations of the Missouri Merchandising Practices Acts, Plaintiffs sustained an ascertainable loss of money, including but not limited to; the amounts paid by Plaintiffs in tuition and other fees to attend WCC.

257. Defendants' acts were outrageous due to Defendants' evil motive or reckless indifference to the rights of others, entitling Plaintiffs to an award of punitive damages in an amount sufficient to punish Defendants and deter Defendants and others for like conduct.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, attorney fees and penalties and for such other relief this Court deems just and proper.

## COUNT VI
## ACCOUNTING
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

258. That Defendants should be required to make a full accounting of each Plaintiffs' tuition charges, separating tuition from the costs of books, laboratory fees, or other supplies or fees, for all that is included in each student's file.

57

259.    The Defendants should be required to make a full accounting of each Plaintiffs' grants or loan funds received by Defendants, the current location of any such grant or loan funds being held on behalf of Plaintiffs; including the source of stipends or budget plan funds being paid to Plaintiffs and all financial institutions in which such funds are held; all amounts currently owing to Plaintiffs which exceed the amount of books, fees, and tuition incurred by Plaintiffs; and requiring payment to Plaintiffs of all funds exceeding amounts due and owing to Defendants.

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

## COUNT VII
## PUNITIVE DAMAGES
### (Against all Defendants)

Plaintiffs incorporate by reference the foregoing statements and allegations as though fully set forth herein.

260.    Defendants committed one or more willful, wanton, and malicious acts as more fully set forth above, which individually and/or cumulatively justify the submission of punitive damages in this case.

261.    Defendants knew or had information from which they, in the exercise of ordinary care, should have known that their conduct created a high degree of probability of mental distress, bodily harm, and damage to Plaintiffs and other similarly situated students.

262.    The willful, wanton, and malicious acts of Defendants as more fully set forth above, evidence Defendants' complete indifference and conscious disregard for the rights and safety of Plaintiffs and others similarly situated, justifying the submission of punitive damages in this case.

Electronically Filed - Jackson - Independence - September 12, 2014 - 03:28 PM

WHEREFORE, Plaintiffs pray for judgment against all Defendants for such sums as are fair and reasonable, including punitive damages to punish and deter Defendants, and others similarly situated, from engaging in like conduct, together with any and all costs herein incurred, and for such other relief this Court deems just and proper.

### DEMAND FOR JURY TRIAL OF ALL ISSUES

Plaintiffs demand a trial by jury of all issues in this case.


Date: September 12, 2014

Respectfully submitted,

HUMPHREY, FARRINGTON & McCLAIN, P.C.


*/s/ Andrew K. Smith*
Kenneth B. McClain                    #32430
Andrew K. Smith                        #60485
Lauren E. McClain                      #65016
221 W. Lexington, Suite 400
P.O. Box 900
Independence, Missouri 64050
(816) 836-5050
(816) 836-8966 FAX
kbm@hfmlegal.com
aks@hfmlegal.com
lem@hfmlegal.com
**ATTORNEYS FOR PLAINTIFFS**